# KOBRE & KIM LLP

800 THIRD AVENUE
NEW YORK, NEW YORK 10022
TEL 212.488.1200
FAX 212.488.1220
WWW.KOBREKIM.COM

December 15, 2005

**BY FACSIMILE AND HAND DELIVERY**

The Honorable Kenneth M. Karas
United Stated District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 920
New York, New York 10007

        Re:    **United States v. Alberto William Vilar and Gary Alan Tanaka**
                 S1 05 Cr. 621 (KMK)

Dear Judge Karas:

      Defendant Gary Tanaka ("Tanaka") respectfully submits this letter in support of his request to exercise his right to call a witness at the suppression hearing. Specifically, Mr. Tanaka seeks to call U.S. Postal Inspector Cynthia Fraterrigo, the Government's self-declared "Case Agent" who was the affiant of the warrant and the key person responsible for briefing and working with the entire search team during the execution of the search warrant at issue. Mr. Tanaka's counsel seek merely to examine Ms. Fraterrigo in connection with the contention, *proffered by the Government*, that the exclusionary rule should not apply because the search of the offices of Amerindo Investment Advisors Inc. ("Amerindo U.S.") was conducted in good-faith pursuant to *United States v. Leon*, 468 U.S. 897 (1984). Mr. Tanaka asserts that he has the right to test the Government's assertion of good faith, and calling the witness who indisputably has the most knowledge and involvement in the search is not a "fishing expedition" but rather common sense.

      In *United States v. Leon*, the Supreme Court ruled that, in determining whether the warrant was executed in good-faith, "[i]t is *necessary* to consider the objective reasonableness, not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination. Nothing in our opinion suggests, for example, that an officer could obtain a warrant on the basis of a "bare bones" affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search." *Leon*, 468 U.S. 897, 923 n. 24 (emphasis added).

Hon. Kenneth M. Karas
December 15, 2005
Page 2

In *United States v. Burke*, Judge Mukasey observed that "whether a warrant is so facially deficient that the executing officers cannot reasonably presume it valid depends on the *circumstances* of the particular case." *United States v. Burke*, 718 F. Supp. 1130, 1144 (S.D.N.Y. 1989) (citing *Leon*, 468 U.S. 897, 923). In deciding that the warrant was executed in good-faith, the Court in *Burke* relied on two facts. First, *all* of the agents who conducted the search read the affidavits which supported the warrant. Second, the affiants themselves participated in the search and ensured that the search was appropriately limited. *Burke*, 718 F. Supp. at 1144. The Court obviously looked to facts beyond the text of the warrant or the affidavit.[1]

Somewhat relatedly, in *United States v. Santa*, 180 F.3d 20 (2d Cir. 1999), the Second Circuit applied the good-faith exception to admit evidence seized by an officer executing an arrest warrant, which had been vacated 17 days prior to the arrest. The warrant had not been removed from police computer files because the court clerk had failed to notify the sheriff's office that the warrant had been quashed. In holding that the good-faith exception applied, the Second Circuit noted that *both arresting officers testified* and that the evidence indicated that neither officer had any reason to doubt the accuracy of the police computer system and neither officer had ever before arrested a suspect based on a computer record that later proved erroneous. *Id.* at 27. Both of these factors go beyond the text of the face of the warrant.

The requests as limited by the Court do not bear on Ms. Fraterrigo's subjective intent. In this case, it is necessary to examine Ms. Fraterrigo in order to assess whether she and the other members of the team who conducted the search acted objectively reasonable, which includes consideration of what Ms. Fraterrigo knew at the time of the execution of the search and what she told the inspectors executing the warrant. Specifically, Mr. Tanaka asserts that he should be permitted to demonstrate whether and to what extent Ms. Fraterrigo communicated to the team of agents the *"circumstances under which the warrant was obtained." Leon*, 468 U.S. at 923 n. 24 (emphasis added). Mr. Tanaka intends to ask Ms. Fraterrigo to explain what facts she relayed to the inspectors, including what specific allegations were made in the case and the objectives of the search. In addition, Mr. Tanaka would like to examine Ms. Fraterrigo to determine what measures she took in supervising the search to determine the nature of the search. *Burke*, 718 F. Supp. at 1144. Further, Mr. Tanaka would like to determine whether Ms. Fraterrigo had any reason to doubt the validity of the search warrant. *Santa*, 180 F.3d at 27. Indeed, Ms. Fraterrigo collected evidence herself. Finally, Mr. Tanaka certainly should be permitted to ask her questions relating to how she interpreted the overly broad provisions of the search warrant when she collected information. The fact that Ms.

---

[1] Counsel has not identified cases that rely on *Burke* that would assist in the inquiry at bar.

Hon. Kenneth M. Karas
December 15, 2005
Page 3

Fraterrigo submitted facts in an affidavit to a judicial officer is not indisputable evidence of the Government's knowledge.

This issue could be obviated if the Government withdraws its assertion of the good-faith defense. By putting its own good faith in issue, the Government is now in the awkward position of arguing that the defendants have no right to call the person with the most knowledge about every aspect of the search including the Government's knowledge at the time of the search. Indeed, compounding the problem is that the Government decided to call one of the participants in the search who had no recollection of (1) what he told inspectors performing the search, (2) who were the targets of the alleged scheme, (3) who were the "victims" of the alleged scheme, (4) what he was told by Ms. Fraterrigo when she briefed *him* about the investigation prior to the search, (5) what Ms. Fraterrigo told inspectors in her briefing prior to the search, (6) what questions were posed to the witness during the search and how he answered them, (7) what questions were posed to Ms. Fraterrigo and how she answered them, and (8) what documents the witness specifically obtained. Indeed, the witness proffered by the Government had not even read the entire affidavit and referenced complaints supporting the warrant at the time of the search, despite performing supervisory aspects of the search.

In defense against the motion to suppress, the Government attempts to meet its "heavy burden" of establishing its good faith by calling a witness who had no recollection of the key aspects of the preparations for, and the actual search. *United States v. Syphers,* 426 F.3d 461, 468 (1st Cir. 2005); *United States v. Hendricks,* 743 F.2d 653, 656 (9th Cir.1984) (The government, not the defendant, bears the burden of proving that its agents' reliance upon the warrant was objectively reasonable).

In sum, if the Court determines that the Government has not met its burden of establishing good faith, the defendants can appropriately be denied testing the Government's defense. Short of that fact, Mr. Tanaka should be permitted to present evidence to respond to the Government's defense. Indeed, Mr. Tanaka seeks to call the

Hon. Kenneth M. Karas
December 15, 2005
Page 4

witness who knows the most about the relevant facts at issue. Accordingly, Mr. Tanaka respectfully requests permission to call Inspector Fraterrigo as a witness.

Respectfully submitted,

Steven G. Kobre
212.488.1202

cc: Glenn C. Colton, Esq., co-counsel for Gary Tanaka (by fax)
Jeffrey C. Hoffman, Esq., counsel for Alberto Vilar (by fax)
Marc O. Litt, Esq., Assistant United States Attorney (by fax)