UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| -v.- | : | S1 05 Cr. 621 (KMK) |
| ALBERTO WILLIAM VILAR, a/k/a, "Albert Vilar," and GARY ALAN TANAKA, | : | |
| | : | |
| Defendants. | : | |

-------------------------------------------------------x

**GOVERNMENT'S MEMORANDUM IN RESPONSE
TO DEFENDANTS' POST-HEARING MEMORANDA
IN FURTHER SUPPORT OF DEFENDANTS'  MOTIONS TO SUPPRESS**

MICHAEL J. GARCIA
*United States Attorney for the*
*Southern District of New York*

*Attorney for the United States of America*

Marc Litt
*Assistant United States Attorney*

1

*Of Counsel*
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| -v.- | :     S1 05 Cr. 621 (KMK) |
| **ALBERTO WILLIAM VILAR,**<br>  a/k/a, "Albert Vilar," and<br>**GARY ALAN TANAKA,** | :<br><br>: |
| Defendants. | : |

-------------------------------------------------------x

### GOVERNMENT'S MEMORANDUM IN RESPONSE
### TO DEFENDANTS' POST-HEARING MEMORANDA
### IN FURTHER SUPPORT OF DEFENDANTS' MOTIONS TO SUPPRESS

### PRELIMINARY STATEMENT

The Government respectfully submits this memorandum in response to the post-hearing memoranda filed by defendants Alberto William Vilar ("Vilar") and Gary Alan Tanaka ("Tanaka") in further support of the defendants' motions to suppress evidence seized by the Government in the course of executing a search warrant at offices of Amerindo U.S. Defendants argue that: (1) the search warrant approved by Magistrate Maas was unconstitutionally overbroad and insufficiently supported by probable cause; (2) the U.S. Postal Inspectors conducted a prohibited "general" search; (3) the "good faith" exception to the Exclusionary Rule established in *United States* v. *Leon*, 468 U.S. 897 (1984) is inapplicable; and (4) as a consequence, all fruits of the search should be suppressed. For the reasons discussed below, as well as the arguments and authorities set forth in the Government's Memorandum of Law filed on September 26, 2005, the Government contends that the search warrant was fully supported by probable cause, that the warrant neither permitted a general search nor did a general search in

fact occur, and that, even if some aspect of the warrant should not have been approved by the Magistrate, the *Leon* good faith exception applies and defendants' motion to suppress should be denied.

## The Suppression Hearing

United States Postal Inspector John Feiter, a supervisor with 27 years of experience as a Postal Inspector, and the team leader of a securities and commodities fraud team in the Southern District of New York, testified at the suppression hearing held on December 14, 2005. (Tr. 75-76). Inspector Feiter is the supervisor for the case agent assigned to the investigation of the defendants, and also was responsible for supervising the search of the Amerindo U.S. offices at 399 Park Avenue. (Tr. 76-77). Inspector Feiter testified that he organized the personnel who participated in the search, and made sure that each individual who participated in the search reviewed the Warrant and its attachment and the Warrant Affidavit (not including the criminal complaints which were attached thereto and which were incorporated therein by reference). (Tr. 77-78).[1] Inspector Feiter believed that the Warrant was valid based on the fact that it was signed by a Magistrate Judge in the Southern District of New York, and because the Warrant called for the seizure of items related to the investigation. (Tr. 91, 124)

During the course of the search, which lasted approximately 12 hours, Inspector Feiter searched a small area of the premises, fielded questions from inspectors concerning the scope of the warrant and its application, referred certain of such questions to the case agent, Inspector Fraterrigo, and made sure that procedures were followed in accounting for seized materials

---

[1] The four agents who participated in the arrests of the defendants received copies of the criminal complaints. (Tr. 160).

before leaving the Amerindo offices. (Tr. 81-86). In his supervisory capacity, Inspector Feiter walked constantly throughout the office, where he observed members of the search team "reviewing folders or binders or documents, comparing them to the [Warrant] rider, and filling out inventory sheets if they seized items." (Tr. 81-82). Inspector Feiter saw other Postal Inspectors with the Warrant riders in their possession "all the time," observed Inspectors reviewing those riders, and did not see inspectors simply boxing up every document in a room. (Tr. 82). Inspector Feiter estimated that approximately 170 cartons of material were seized from the office, which amounted to an estimated 60-70 percent of the paper from the areas of the premises that were searched. Those areas did not include a wall of floor-to-ceiling file cabinets and a storage room. Outside counsel for Amerindo U.S. had agreed to produce materials from those areas pursuant to a Grand Jury subpoena that he accepted on the day of the search. (Tr. 89, 101-03, 112-13). There were numerous "positions" (that is, locations within designated rooms) from which no materials were taken. (Tr. 85-86, 120; *see* last 61 pages of GX 2). Inspector Feiter opined that the volume of material taken in connection with the search of Amerindo's offices was comparable to that seized in executing search warrants in connection with other white collar crime investigations in which he had participated.[2] (Tr. 90).

## ARGUMENT

### I.

### The Breadth of the Warrant Was Appropriate

Defendants contend that the Warrant was overbroad because it authorized a "general

---

[2] Inspector Feiter testified that the "vast majority" of the close to 200 searches in which he had participated during his 27-year career related to fraud investigations. (Tr. 76).

search," or, alternatively, that such a "general search" was conducted. The record does not support those allegations. Of the eighteen paragraphs in the Warrant specifying documents and objects to be seized, defendants focus on only four of those paragraphs (¶¶ 1, 14, 16A, and 17), and implicitly concede that the authorization to search for and seize the vast majority of the materials described in the Warrant was appropriate. Defendants' challenge to the breadth of the Warrant is without merit.

First, as the Supreme Court has recognized, broad warrants are appropriate in cases in which a complex fraud scheme is under investigation "whose existence could be proved only by piecing together many pieces of evidence." *Andresen* v. *Maryland*, 427 U.S. 463, 482 n. 10 (1976). The Court noted that, "[t]he complexity of an illegal scheme may not be used as a shield to avoid detection when the State has demonstrated probable cause to believe that a crime has been committed and probable cause to believe that evidence of this crime is in the suspect's possession." *Id*. Here, as in *Andresen*, a complex fraud scheme was under investigation. Indeed, the Warrant Affidavit in this case described a far more complex fraud scheme than the fraud scheme associated with the purchase and sale of a single piece of real estate in Montgomery County, Maryland, that was at issue in *Andresen*. The Warrant Affidavit here detailed several overlapping international fraud schemes involving multiple brokerage accounts, multiple types of investments, and multiple victims, some of which were known and some of which were unknown. Based on the Warrant Affidavit, there was probable cause to believe that there was evidence of those schemes in Amerindo's possession, and the Magistrate appropriately acknowledged the breadth of the frauds being investigated by approving an appropriately broad, yet circumscribed, warrant.

Second, the terms of the Warrant were not as broad as defendants allege. Defendants take phrases out of their immediate context and the context of the Warrant generally, and in so doing expand the breadth of the Warrant in ways that were clearly neither contemplated nor applied in practice. Notwithstanding Inspector Feiter's acknowledgment that paragraph 1 of the Warrant could be broadly interpreted to authorize the seizure of all business documents of four Amerindo entities (*see* Tr. 161-63), the Government maintains that the plain meaning of the paragraph is significantly more limited than that. The "corporate records" (not "business records") part of paragraph 1, including the examples which immediately follow the "including but not limited to" language, clearly relate to documents reflecting the formation and organization of the Amerindo entities (*e.g.*, corporate formation documents, lists of officers and directors, bylaws and resolutions). The listed items that follow that subset of illustrations – "client lists, client files, investment brochures, marketing materials, investment advisory agreements, copies of correspondence sent to or received from clients, and other documents concerning or reflecting the identities of and communications with clients who have investments managed or advised by Amerindo" – appropriately could have been included in one or more separately numbered paragraphs because they are clearly different from the category of documents commonly understood to be "corporate records." Although paragraph 1 may have been inartfully drafted, viewed objectively, the addition of those items relating to marketing materials and client communications should not be interpreted as expanding the meaning of "corporate records" to include every business document in Amerindo's offices. Such a reading ignores the fact that other specifications in the Warrant delineate documents that could be characterized broadly as business records, but would not ordinarily be described as "corporate

records."

For example, paragraph 7's authorization to seize "[d]ocuments reflecting any effort made by any Amerindo entity . . . to obtain an SBIC license . . ." was clearly not subsumed in paragraph 1, notwithstanding the fact that such evidence was central to one of the fraud schemes alleged in the Vilar Complaint. Those records would be business records of Amerindo, but not "corporate records" as the term is commonly understood. Likewise, paragraph 8's authorization to seize documents reflecting the holdings of any Amerindo entity in certificates of deposit or government securities, and documents reflecting all securities underlying any investment in a GFRDA, could not reasonably be construed to fall under a common-sense reading of paragraph 1. Similarly, paragraph 13's authorization to seize bank account statements and other documents reflecting or relating to movements of funds into or out of the Amerindo Brokerage Accounts would clearly not have been covered by paragraph 1 as written. Indeed, if the "including but not limited to" language of paragraph 1 was intended to operate as broadly as the defendants suggest, there would be little need for any of the other seventeen specifications contained in the Warrant.

There is simply no evidence that, in executing the Warrant, anyone, including Inspector Feiter, interpreted paragraph 1 as broadly as he indicated it could be construed. Had the agents who conducted the search construed paragraph 1 to include any business document bearing the name of an Amerindo entity, the instructions given to agents would have been easy to remember: "Take every non-personal item that mentions Amerindo U.S., Amerindo U.K., Amerindo Panama, and Amerindo Cayman." Had they interpreted paragraph 1 so broadly, there would have been no reason for the search team to carry around the Warrant and the rider which defined

6

the items to be seized.  Inspector Feiter testified that he saw search team members with the Warrant and rider in their possession "[a]ll the time."  (Tr. 82).  Had the Postal Inspectors believed that they were operating under such a broad grant of authority, there would have been no need for members of the search team to consult the Warrant, as Inspector Feiter saw them do.  (*Id.*)  Similarly, there would have been no reason for those executing the search to ask questions of Inspector Feiter about what fell within the terms of the Warrant, and no reason for Inspector Feiter to pass along any such questions to Inspector Fraterrigo, as Inspector Feiter reported.  (Tr. 81).  Finally, and perhaps most importantly, the agents would not have left behind 30-40 percent of the paper at Amerindo, as Inspector Feiter estimated that they did.  (Tr. 89).

   Defendants also complain about the breadth of paragraph 14 of the Warrant.  That paragraph also contains a specific list of items to be seized (mainly documents related to the expenses incurred by Amerindo and accounting records), but ends with the language, "and other documents relating to the running and supervision of the operations of the investment advisory business(es) of Amerindo."  That language should be construed in a commonsense fashion, in the context of the language that immediately precedes it.  Viewed in that context, immediately following "documents reflecting communications with boards of directors," it is apparent that the final phrase of the paragraph was not intended to expand the paragraph to cover every conceivable document involved in Amerindo's businesses, but rather only to include documents comparable to communications with boards of directors related the running and supervision of the operations of Amerindo's business.  Again, defendants take language contained in one paragraph out of the context of the entire paragraph, and out of the context of the Warrant.  In so doing, the defendants urge the Court to read the Warrant in a hypertechnical rather than a

7

commonsense fashion, something that the law clearly forbids. *See*, *e.g.*, *United States* v. *Ventresca*, 380 U.S. 102, 109 (1965); *United States* v. *Dinero Express*, No. 99 Cr. 975 (SWK), 2000 WL 254012, *6 (S.D.N.Y. Mar. 6, 2000).[3]

In sum, when viewed objectively, and in a commonsense manner, the Warrant was not overbroad and did not authorize a general search – a conclusion which is amply supported by the evidence concerning the search which did occur, as described in section II, below.

## II.

### The Search Team Did Not Conduct A General Search And The Fruits Of Their Search Should Not Be Suppressed

The evidence presented at the December 14, 2005 suppression hearing makes abundantly clear that the search team did not conduct a "general search." The search that was conducted was neither "wide-ranging" and "exploratory," *Maryland* v. *Garrison*, 480 U.S. 79, 84 (1987), nor an "indiscriminate rummaging." *Untied States* v. *George*, 975 F.2d 72, 75 (2d Cir. 1992). Rather, it is evident that the searching agents complied with the terms of the Warrant.

First, the testimony of Inspector Feiter makes clear that all individuals who participated in the search were given, and reviewed, the Warrant prior to conducting the search. In addition, he observed members of the search team with the Warrant throughout the day, referring to its terms, and asking questions both of him and Inspector Fraterrigo, concerning its scope. (Tr. 81-82, 120). Furthermore, Inspector Feiter specifically denied seeing any agent indiscriminately boxing up the contents of a room. (Tr. 82). Second, the volume of material seized – approximately 60 to 70 percent of the searched areas – shows that the search team did not simply

---

[3] The Government already addressed defendants' challenges to the breadth of paragraphs 16A and 17 in its September 26, 2005 Memorandum, and relies on the arguments set forth therein.

cart away everything in the office, but rather took steps to ensure that they complied with the Warrant. Third, the members of the search team took special pains to avoid seizing personal items. (Tr. 104-05). Finally, the defendants' reference to certain pages from GX2, *see* Vilar Br. at 9-12, fail to show that a general search occurred. Not only do those references relate to a very small fraction of the items listed in the approximately 144 pages of GX2 dedicated to itemizing documents seized from the various search locations at Amerindo, but it is unclear exactly what complaint the defendants are asserting with respect to the seizure of many of the listed items. For example, items listed in paragraphs (F)(i), (iii), (v), (vii), (ix), (x) and (xv) of Vilar's Memorandum (*see* Vilar Mem. at 9-11) appear for the most part to be records of expenses of Amerindo, the seizure of which was called for by paragraph 14 of the search warrant.[4] Although the Government concedes that a relatively small quantity of documents was seized that should not have been seized under the terms of the Warrant – documents that the Government is collecting and will return to Amerindo – such inadvertent seizures did not convert the search into the type of "general, exploratory rummaging in a person's belongings" that the law forbids. *See Coolidge* v. *New Hampshire*, 403 U.S. 443, 467 (1971).

Moreover, the remedy sought by defendants – suppression of all fruits of the search – is inappropriate. "[T]he appropriate remedy for the seizure of materials beyond the scope of a valid warrant is the suppression of only those materials." *United States* v. *Regan*, 706 F. Supp.

---

[4] Paragraph 14 of the search warrant specifically listed, "[r]ecords of expenses such as copies of checks and/or wires sent to landlords, employees, counsel, accountants, brokers, utility companies, and other organizations and individuals who provide goods and services to Amerindo . . . ." Given the allegation in the Warrant Affidavit that $650,000 of Cates's SBIC investment and more than $15 million of other investor funds were transferred from the Amerindo Brokerage Accounts to the Amerindo U.S. business checking account to pay corporate expenses, *see* Vilar Cplt. ¶ 15; Tanaka Cplt. ¶ 13, there was a fair probability that the documents described in paragraph 14 were evidence of the fraud schemes under investigation.

1102, 1117 (S.D.N.Y. 1989) (citing *Andresen* v. *Maryland*, 427 U.S. 463, 482 n. 11 (1976); *National City Trading Corp.* v. *United States*, 635 F.2d 1020, 1026 (2d Cir. 1980); *United States* v. *Dunloy*, 584 F.2d 6, 11 n. 4 (2d Cir. 1978) ("the remedy with respect to any items exceeding the scope of the warrant would not have been invalidation of the search but suppression of those items")); *see United States* v. *Matias*, 836 F.2d 744, 747 (2d Cir. 1988).  As the Second Circuit has held, "the drastic remedy of the suppression of all evidence seized is not justified unless those executing the warrant acted 'in flagrant disregard' of the warrant's terms."  *Matias*, 836 F.2d at 747-48 (citing *United States* v. *Medlin*, 798 F.2d 407, 411 (10th Cir. 1986); *United States* v. *Crozier*, 777 F.2d 1376, 1381 (9th Cir. 1985); *United States* v. *Lambert*, 771 F.2d 83, 93 (6th Cir. 1985); *Marvin* v. *United States*, 732 F.2d 669, 674-75 (8th Cir. 1984); *United States* v. *Wuagneux*, 683 F.2d 1343, 1354 (11th Cir.1982); *United States* v. *Heldt*, 668 F.2d 1238, 1259 (D.C. Cir. 1981)).

In explicating the standard for "flagrant disregard," the Second Circuit has held that, "Government agents 'flagrantly disregard' the terms of a warrant so that wholesale suppression is required only when (1) they effect a widespread seizure of items that were not within the scope of the warrant, and (2) do not act in good faith."  *United States* v. *Shi Yan Liu*, 239 F.3d 138, 140 (2d Cir. 2000) (internal quotations and citations omitted).  In *Shi Yan Liu*, the Second Circuit explained that, "to satisfy the first prong of the two-part test described above, the search conducted by government agents must *actually resemble* a general search" such as that described in *United States* v. *Dzialak*, 441 F.2d 212, 217 (2d Cir. 1971), in which law enforcement officers were described as having conducted a "general search" when, "[i]n executing what was a very precise warrant, the[y] spent more than four hours ransacking a[] house for any possible

10

incriminating evidence," and "[o]f the items seized, those which were not described in the warrant far outnumbered those described." In *Regan*, the court found that even if allegations that 69 of 259 boxes seized during the execution of a search warrant contained documents relating exclusively to entities entirely outside the scope of the warrant were true, that would not "show the kind of egregious, callous, reckless conduct needed to suppress all of the evidence obtained." *Regan*, 706 F. Supp. at 1116. The court in *Regan* noted that, "[t]his means that nearly three-quarters of all the boxes seized contain at least some documents falling within the scope of the warrant. This degree of accuracy does not reveal the kind of flagrant disregard necessary to consider suppressing all of the evidence obtained, particularly since this percentage figure would inevitably rise if the government's definition of what legitimately falls within the scope of the warrant were used." *Id*. at 1117 n. 19.

     Here, there is simply no evidence that the searching agents either conducted a general search or that they so flagrantly disregarded the terms of the warrant, and did so in bad faith, such that their conduct actually resembled a general search. Unlike the facts in *Dzialak*, there is no evidence that the search team ransacked the Amerindo U.S. Office, nor is there any evidence that the volume of evidence seized that fell outside the terms of the Warrant "far outnumbered" the volume of evidence that fell within the terms of the Warrant. Furthermore, there is no allegation here that only three-quarters of the boxes of documents seized contained at least some documents falling within the scope of the Warrant – a degree of accuracy that the *Regan* court found did not reflect the kind of flagrant disregard necessary to even consider suppressing all of the seized evidence. Accordingly, defendants' motion for a blanket suppression order should be denied.

### III.

### The Seized Evidence Should Not Be Suppressed Because The Searching Agents Acted In Good Faith Reliance On The Approved Warrant

Even were the Court to conclude that some portion of the Warrant was overbroad or insufficiently particularized, defendants' motion to suppress the seized evidence should nevertheless be denied because the agents acted in objective, good faith reliance on the Warrant signed by Magistrate Judge Maas.

In reviewing a warrant application, a Magistrate Judge must "make a practical, common-sense decision whether given *all* the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois* v. *Gates*, 462 U.S. 213, 238 (1983) (emphasis supplied). Such determinations must be approached in a practical way, *id*. at 232, because "probable cause is a flexible, common-sense standard." *Texas* v. *Brown*, 460 U.S. 730, 742 (1983). When a Magistrate's decision is reviewed, the issue is not whether the reviewing court would issue the same warrant, based on a *de novo* review of the supporting affidavit, but rather whether there was a "substantial basis" for the Magistrate's decision. *See*, *e.g.*, *Gates*, 462 U.S. at 236; *United States* v. *Singh*, 390 F.3d 168, 181 (2d Cir. 2004).

In *United States* v. *Leon*, 468 U.S. 897 (1984), the Supreme Court established that the Exclusionary Rule does not apply where evidence is "obtained in objectively reasonable reliance on a subsequently invalidated Warrant." *Id*. at 922. In so holding, the Court noted that, "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Id*. at 921. The test for whether *Leon's* "good faith" exception to the Exclusionary Rule applies is "whether

12

a reasonably well trained officer would have known that the search was illegal despite the [judicial officer's] authorization." *Id*. at 922 n. 23.  The test is objective, not subjective. *Id*. "'[A] warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.'" *Id*. at 922 (quoting *United States* v. *Ross*, 456 U.S. 798, 823, n. 32 (1982).  "An officer's decision to obtain a warrant is *prima facie* evidence that he or she was acting in good faith."  *United States* v. *Koerth*, 312 F.3d 862, 868 (7th Cir. 2002) (citing *Leon*, 468 U.S. at 921 n. 21).

As the Fourth and Sixth Circuits have held, in considering whether the good faith exception of *Leon* applies, the standard is even lower than the "substantial basis" test used to assess whether the issuing court appropriately found probable cause to issue the warrant.  In *United States* v. *Carpenter*, 360 F.3d 591 (6th Cir. 2004), the Sixth Circuit opined:

> [W]e agree with the following analysis by the Fourth Circuit:
>
> "If a lack of a substantial basis also prevented application of the *Leon* obective good faith exception, the exception would be devoid of substance.  In fact, *Leon* states that . . . a finding of objective good faith [is inappropriate] when an officer's affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'  This is a less demanding showing than the 'substantial basis' threhold required to prove the existence of probable cause in the first place."

*Id*. at 595 (quoting *United States* v. *Bynum*, 293 F.3d 192, 195 (4th Cir. 2002)).

Defendants claim that because the warrant was: (1) "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (2) "so facially deficient – *i.e.*, in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid," the good faith exception may not be employed to preclude suppression of the seized evidence.  Tanaka Mem. at

13

22 (quoting *Leon*, 468 U.S. at 923) (internal quotations omitted).  The Defendants are wrong on both scores.

      First, for the reasons previously discussed, the Warrant Affidavit was sufficiently particularized, and even were this Court to conclude otherwise, any deficiency in the particularity of the Warrant was not so extensive that it could be characterized as "so facially deficient . . . that the executing officers [could] not reasonably presume it to be valid."  Not only are the vast majority of the specifications in the Warrant beyond any challenge whatsoever, but the items specifically listed in the challenged specifications are likewise beyond challenge.  Furthermore, even were the Court to determine that the Warrant, viewed objectively, called for the seizure of all business records of Amerindo, a reasonably trained officer would have been entitled to rely on the decision of the Magistrate who approved the Warrant because it is at least reasonable to believe that the Warrant Affidavit established sufficient probable cause to support such a broad authorization.  (*See* Gov't Mem. at 9-16, 25-29).  The law does not require that agents acting in good faith – and there is no assertion or evidence of bad faith here – second guess such a decision made by a neutral magistrate.

      Second, the Warrant was fully supported by probable cause described in the Warrant Affidavit for the reasons that have already been discussed.  In an effort to overcome the high hurdle posed by *Leon*, defendants focus on two subjects – evidence relating to Amerindo Cayman and evidence relating to three possible victims (Bryan Harvey, Joy Urich, and Paul Marcus) (collectively, the "Victims") – and claim that the alleged insufficiency of the allegations in the Warrant Affidavit concerning those isolated subjects was so severe that no reasonable officer could have believed that any part of the Warrant was valid.  In the alternative, defendants

argue that at least those provisions of the Warrant that specifically permitted the seizure of documents concerning the Victims and Amerindo Cayman could not reasonably have been relied upon and that any such evidence seized pursuant to those provisions should be suppressed.  *See* Tanaka Mem. at 25-28.  These arguments are seriously flawed and should be rejected by the Court.

Just as the initial review of warrant application requires the magistrate to review the "totality of the circumstances," *see*, *e.g.*, *Gates*, 462 U.S. at 238, so too should this Court review the totality of the Warrant Affidavit in determining whether the searching agents relied upon the Warrant in good faith.  Although the allegations concerning Amerindo Cayman and the Victims would not in and of themselves (separately or jointly) provide probable cause to search for and seize evidence, the sufficiency of probable cause to do so must be assessed based on <u>all</u> the information contained in the Warrant Affidavit, not a mere fraction of that information.  In light of all the information contained in that application, it cannot seriously be argued that there was no probable cause to search for and seize evidence related to Amerindo Cayman and the Victims.

The Warrant Affidavit and attached criminal complaints, which were incorporated into the affidavit by reference, described several fraud schemes perpetrated by the defendants.  *See* Gov't Mem. at 9-16.  Significantly, the Warrant Affidavit recounted how Amerindo Panama, Amerindo U.S., Amerindo U.K. and the defendants were each involved in, and/or beneficiaries of, the fraudulent activities of Vilar and Tanaka.  Paragraph 3 of both the Vilar and Tanaka criminal complaints averred that the defendants were shareholders, officers and directors of Amerindo U.S., and were "also all of the shareholders, directors and officers of" Amerindo Cayman, Amerindo U.K., and Amerindo Panama.  Thus, contrary to the argument in Tanaka's

Memorandum that "there is no evidence alleged in the Affidavit that the Amerindo entities were 'closely held[,]'" Tanaka Mem. at 26, the Affidavit could not have made that fact any more plain. The only way that the entities could have been asserted to be more "closely held" would have been if the Warrant Affidavit had alleged that they were owned by only one shareholder instead of two.

As the Government explained at the hearing, there was no direct evidence of the involvement of Amerindo Cayman in the fraud schemes described in the Affidavit. (Tr. 192-93). The Warrant Affidavit, however, detailed frauds of long duration that were perpetrated by Vilar and Tanaka through Amerindo U.S. and two Amerindo off-shore entities (U.K. and Panama) using brokerage accounts owned by Panamanian companies. Those frauds victimized long-time investors who were well-known to Vilar and Tanaka, as well as investors whose identities were not known to the Government (*i.e.*, the investors whose funds were used by Tanaka to purchase thoroughbred racehorses). The Warrant Affidavit further specifically alleged that the perpetrators of the fraud schemes were the *sole* shareholders, officers and directors of Amerindo Panama and Amerindo U.K., and the fact that the defendants were likewise the sole shareholders, officers and directors of Amerindo Cayman – yet another offshore Amerindo entity. These facts, along with all the other facts set forth in the Warrant Affidavit, gave rise to the reasonable inference that evidence of the fraud would be found among Amerindo Cayman documents.

Likewise, taking the content of the entire Warrant Affidavit into account, there was probable cause established to seize documents pertaining to the Victims. The Warrant Affidavit documented evidence of large-scale fraud against two of the defendants' long-time clients, the

16

theft of investor funds, and information provided by Ms. Cates that she believed the Victims to be investors of Amerindo who may have had trouble redeeming part or all of their investments. That information was sufficient to authorize the search for evidence of fraud in connection with any Amerindo investments made by the Victims.

Accordingly, the Court should deny the defendants' invitation to suppress all seized evidence that relates to Amerindo Cayman and the Victims, and should likewise reject defendants' argument that the alleged lack of allegations concerning Amerindo Cayman and the Victims in the Warrant Affidavit forecloses the application of the "good faith" exception to the Exclusionary Rule either with respect to that part of the Warrant that permitted the seizure of documents related to Amerindo Cayman and the Victims, or with respect to the Warrant generally.

## CONCLUSION

For all the reasons stated herein and those stated in the Government's September 26, 2005 Memorandum, the defendants' motions to suppress evidence gathered as a result of the search conducted at the Amerindo U.S. office should be denied.

Dated: January 30, 2006
      New York, New York

                         Respectfully submitted,

                        MICHAEL J. GARCIA,
                        United States Attorney for the
                        Southern District of New York,
                        *Attorney for the United States of America*

                  By: __/s/_____
                        MARC LITT
                        Assistant United States Attorney
                        (212) 637-2295