**EXHIBIT L**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 05 Cr. 621 (KMK)

ALBERT VILAR,

Defendant.

------------------------------x

July 20, 2005

Before:

HON. KENNETH M. KARAS,

District Judge

APPEARANCES

DAVID N. KELLEY
United States Attorney for the
Southern District of New York
BY: MARC LITT
Assistant United States Attorney

HOFFMAN & POLLOK
Attorneys for Defendant
BY: SUSAN WOLFE
JACQUELINE LAND

(Case called)

THE DEPUTY CLERK: If the parties could state their appearances for the record, please?

MR. LITT: Marc Litt for the United States. Good afternoon, your Honor.

THE COURT: Good afternoon, Mr. Litt.

MR. LITT: With me is Postal Inspector Cynthia Frederica.

THE COURT: Good afternoon.

MS. WOLFE: Good afternoon, your Honor. Hoffman & Pollok by Susan Wolfe and Jacqueline Land for Mr. Vilar.

THE COURT: Good afternoon, Ms. Wolfe.

At the last conference, as I'm sure Mr. Hoffman has advised, Ms. Necheles was granted leave to withdraw from the case. Mr. Hoffman had indicated he was going to try to resolve the issues that would allow his firm to represent Mr. Vilar and report today as to where we are on that.

So, Ms. Wolfe?

MS. WOLFE: Yes, your Honor. We're prepared to file notice of appearance today so that issue has been resolved.

THE COURT: So I will say to that, welcome.

MS. WOLFE: Thank you.

THE COURT: We will look forward to get that.

Mr. Litt, all this time you were going to be working on getting discovery ready, so where are we on that?

MR. LITT: Well, I have about 3,000 pages of discovery copied, I have about 15 CD Roms copied and available.

In addition, we have done the forensics on five computers and we are on the verge of finishing the server which is rather large, I think it is a terabyte of information so that one has taken some time, and we anticipate having five more computers done every week. There are a total of 23 computers including the server, so I think in a matter of three to four weeks we anticipate having all the forensic analysis done so that they can be copied.

We are going through boxes. We have another postal inspector and another Assistant U.S. Attorney going through boxes to segregate potentially privileged documents from among the hundred or so boxes that were recovered and we will have to deal with those.

I mean, we have been through some of the boxes already and wherever we have seen a law firm or something that looked like it could be potentially privileged, we have put it in an envelope, sealed it and put it to the side. But we are now systematically, with other folks not related to the case, going through those documents so that lawyers for the company can then look at them and make some kind of determination on privilege, whether they're privileged or not.

THE COURT: I want to make sure I understand.

Anything that you think might be privileged you are

basing it on, for example, letterhead or something that involves attorneys, not so much in connection with this case but anybody who may have represented Mr. Vilar or his company in connection with other matters?

MR. LITT: Correct.

THE COURT: And who is reviewing those materials to check for the privilege?

MR. LITT: Postal inspector not involved in the investigation and an assistant U.S. Attorney will then, who is not involved in the investigation, will then look at them to see whether, from the content they took, to be privileged or not.

Because you can have something on letterhead from a law firm.

THE COURT: No, I understand all of that.

I guess what I am trying to understand is that if it is privileged, I'm not sure why -- and it is not privileged related to this case -- I'm trying to understand what the wall is trying to accomplish. You are using a firewall of people who don't work on the case?

MR. LITT: To make sure we don't see anything that's privileged.

THE COURT: Why do they get to see it -- if the privilege has nothing to do with this case, I understand a Hammond situation where you have something you represented in

this case, you have somebody from the U.S. Attorney's office or another postal inspector reviewing materials to make sure they're not learning anything about defense strategy in this case.

Ms. Wolfe, I don't know what your case is but if it is privileged it is your client's privilege even unrelated to the case.

Do you see what I'm getting at?

MR. LITT: Right. But if I were to, for example, plow through a box of materials, documents to find documents that may be relevant about this case and our investigation, if I -- I don't want to inadvertently come across a document that's privileged for which Mr. Vilar that is privileged.

THE COURT: I understand, but the privilege has nothing to do with his lawyering or work with lawyers in this case. The privilege, in other words, why doesn't the privilege cover anybody looking at it? I'm just trying to --

Ms. Wolfe, are you comfortable that this is how it is being done?

MS. WOLFE: Because we are new in the case I do not -- I am not sure where the information came from that Mr. Litt is talking about.

Are we talking about documents and boxes of documents that have been subpoenaed?

MR. LITT: No, we are talking about the search

warrant, the hundred or so boxes that were taken from Amerindo, U.S.

THE COURT: And so, in any legal matters that Mr. Vilar and his company may have had before you took the case down and before there was any representation in connection with this case?

MR. LITT: Right.

THE COURT: I understand the contours of it, I'm just trying to make sure that Ms. Wolfe understands what you are doing and that she is copacetic with it. That's all. That's all I'm trying to do.

MS. WOLFE: I have heard of the procedure Mr. Litt has described and I'm aware that it has been used in other cases. I think that Mr. Hoffman and I need to give some thought to whether it is sufficient in this case.

THE COURT: Okay.

MS. WOLFE: Now that we are aware that this is occurring.

THE COURT: So you were going through the litany of discovery. Go ahead.

MR. LITT: I think that's pretty much most of it.

THE COURT: Okay.

MR. LITT: I mean, I will advise the Court also there are MLAT requests pending in Washington, in other words that have not yet gone out to countries. I anticipate somewhere

between six and 10, more to follow, and that's what I have to report on discovery.

THE COURT: All right. Putting the MLATs to the side for a minute, what's your best guess on when you will complete the discovery production?

MR. LITT: Well, I guess part of it is going to depend on what we do now on the privilege issue and if we are to stop doing what we are doing for now.

THE COURT: I don't think -- I wasn't beginning to suggest that. To the extent that stuff is being culled out from the review that may be privileged, first of all the nonprivileged stuff, that can get turned over.

MR. LITT: Yes.

THE COURT: To the extent that the privileged stuff is being put in a sealed envelope to be reviewed by a walled off postal inspector, AUSA; it is the normal course, in most instances, that that's how it is done. I want to make sure that that is going to be resolved expeditiously.

But, in any event, it will be reviewed by somebody but that's not a -- the substantial bulk of the material we are talking about anyway, I would assume, right?

MR. LITT: Well, there is one issue because there is one employee who served a dual role at Amerindo who was both, at least for a period of time, general counsel and CFO, and so there may be a fair amount of material with that individual's

name on it, whether it was authored by him or not.

THE COURT: And what role he was playing? And what role he was playing at the time?

MR. LITT: Some of it may be clear on its face if it is clearly financial, a spreadsheet kind of document. Other documents, you can imagine, could be mixed and others could be purely legal.

THE COURT: Sure.

MR. LITT: I haven't seen them, I don't know, but that's what I would anticipate seeing. And I don't have a sense yet for what positive portion of the material we are talking about.

The other thing, since I sense the Court is heading toward scheduling issues, the government anticipates at this point seeking to supersede next week, next Tuesday. That may change, but that's our present intention and I wanted the Court to know that.

THE COURT: I appreciate the heads up on that.

I think in light of the volume, in light of the fact that Mr. Hoffman and his firm are brand-new to the case we are going to need, obviously, to allow counsel some time to review the voluminous discovery, for the government to cull through it and separate the privileged from the nonprivileged and deal with the privileged information and the MLATs. I mean, I could be senior by the time some of that stuff is done and that's

saying something.

MR. LITT: We hope to move as expeditiously as we can.

THE COURT: I know you do and you can tell your colleagues in Washington the same.

So, Ms. Wolfe, what do you want to do in terms of trying to schedule another status conference? I realize you haven't seen the material but you have heard what the volume is and, to some extent, what the form it is going to come to you is in, but what do you want to do?

MS. WOLFE: I think we should schedule a conference in the near future for this reason: The prosecutor indicated that there may be a reason why we have to come back to court next week. In addition, I understand the Court would prefer that the application I would like to make be made in writing, and I'm happy to do that and will do that by tomorrow, but there are certain issues that have come up with the home detention.

The pretrial services officer has taken a very, very restrictive view of the conditions, which I'm not faulting him, it is just that he is going to continue to take that view unless he hears otherwise from your Honor.

So, I will submit a letter tomorrow explaining why certain conditions should be adjusted and perhaps we can take that up next week.

So, it sounds like there is a massive amount of discovery. I don't think there is any reason for the

government to wait to give it to us all at once and we will take it as it becomes available.

MR. LITT: That's why the government went to the trouble of copying about 15 CD Roms which have significant material on them, as well as 3,000 pages of documents.

THE COURT: That's how I took what you are saying.

MR. LITT: So they're ready to go and as we work through the boxes -- and I will say the same privilege issue arises with these computers, and what we are doing on that front is running search terms, the same names that we are looking for on physical documents, to try to segregate out from the computer digitally stored material documents which may be privileged so that they can be reviewed.

But, yes, as things -- you know as we go through boxes and we pull out the ones that there is an issue about, the rest that there is available for inspection and copying, we're happy to do that on a rolling basis.

THE COURT: All right. So, there is your answer on that, Ms. Wolfe, and I will leave it to you all to work out the logistics on that.

MS. WOLFE: If I can just go back to the privilege issue?

What I will look into in the next day or so is whether we, on behalf of Mr. Vilar, have a right to request that the privilege review be conducted by individuals not associated

                                                                  with the U.S. Attorney's office, and I will discuss that with Mr. Litt once I have reviewed the issue.

THE COURT: Okay. There may be a related question about anybody else who might have a privilege at stake in discovery review. I mean, I realize your client may not have standing on that, but there may be others who might.

But, whatever that is, that's why I appreciate Mr. Litt raising it. It is true that it is normally done the way he is describing it but if you want to resolve that, that's fine.

Mr. Litt, it seems is to me that certainly if you are going to supersede next week it does make sense -- we would need to do an arraignment anyways -- to the extent that Ms. Wolfe does raise some bail issues, that she can go ahead and send me a letter, you can respond, and we can take that up along with the arraignment sometime next week. But you weren't a hundred percent sure on the Tuesday date, so.

MR. LITT: At this point that's my -- that's the government's intention and that's what I expect to happen.

THE COURT: All right. So then, why don't we put this down for a conference Thursday at 4:00, next Thursday, the 28th.

MR. LITT: Is there anything available on Wednesday or is that not available.

THE COURT: Are you out all day on Thursday? Is that

a problem.

MR. LITT: I have an all day proffer. Do you have something later than 4:00?

THE COURT: 4:30, is that good?

MR. LITT: Yes.

THE COURT: Can even do 4:45 if you want, but then we start to get in trouble with others.

MR. LITT: 4:30 is fine. I know where my bread is buttered.

Is that okay with you, Ms. Wolfe?

MS. WOLFE: Yes. Fine, your Honor.

THE COURT: So we will see everybody again on Thursday the 28th at 4:30, and the discovery is available so you can all work that out.

MR. LITT: Obviously if something changes I will inform the Court and Ms. Wolfe.

THE COURT: It sounds like we may or may not need the conference anyway depending on what these issues are regarding pretrial services, but we will see on that.

Okay, anything else we need to talk about while we are here?

MR. LITT: Not on behalf of the government, no.

THE COURT: What about speedy trial clock?

MR. LITT: Well, we would ask that time be excluded between now and Thursday the 28th so that discovery can

continue and we can go through the process that has been discussed today, and so that the superseder can be done and the then current charging instrument be before the Court.

THE COURT: Ms. Wolfe?

MS. WOLFE: With the government's representation that there is discovery available to us, we don't object.

THE COURT: I think based on the discovery, in particular the volume of discovery that's been represented is at issue in this case, I think certainly an exclusion from today until the 28th is in the interest of justice and that the interests outweigh the defendant's and the public's interest in speedy trial. I make that finding pursuant to 18 U.S.C., section 3161(h)(8)(A).

Anything else?

MR. LITT: Not from the government, your Honor. No.

THE COURT: Ms. Wolfe?

MS. WOLFE: Not from us. Thank you.

o0o