**EXHIBIT M**



U.S. Department of Justice

United States Attorney
Southern District of New York

*The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007*

November 3, 2005

BY HAND

The Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 920
New York, New York 10007

      Re:   United States v. Alberto William Vilar and Gary Alan Tanaka,
              S1 05 Cr. 621 (KMK)

Dear Judge Karas:

      The Government respectfully submits this letter in response to Gary Tanaka's October 28, 2005 letter brief ("Opposition Brief" or "Opp. Br.") opposing any request by the Government for further exclusions of time pursuant to the Speedy Trial Act.

      The Government has been working diligently to resolve the privilege issues associated with documents seized as a result of the search of Amerindo US's New York office. The defendants have not done their part with respect to the privilege review process, and therefore there is no way to complete litigating the privilege issues within the current schedule. Moreover, critical documentary and computer evidence related to the London operations of Amerindo Panama that was seized in London in mid-October pursuant to an MLAT request remains in the custody of the Metropolitan Police, and will not be received by the Government until mid-November. That evidence, too, must be analyzed for privilege before the prosecution team can even have access to it. Accordingly, the Government is requesting a further, concurrent, 90-day exclusion of time pursuant to 18 U.S.C. § 3161(h)(9) so that the Government can complete its efforts to obtain that evidence, as well as additional evidence from the Commonwealth of the Bahamas, Panama, and the United Kingdom.

Hon. Kenneth M. Karas
November 3, 2005
Page 2

I.

### The Court Should Exclude Time So That The Privilege Review Process Can Be Completed

The Government requests that the Court exclude from the Speedy Trial Clock, pursuant to 18 U.S.C. § 3161(h)(8)(A), such time as will be necessary for the defendants to assert privilege with respect to any of the seized documents and for the Government review any such claims so that they may be litigated.[1] The Government raised the issue of potential privilege with the defendants in July. Since then, as detailed below, there has been much back and forth on the issue; however, to date, the defendants have made no specific assertions of privilege and therefore we have not been able to start the privilege litigation. Once that litigation begins, upon the filing of motions, there will be an automatic exclusion of time under the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(1)(F). The Government is requesting an exclusion of time so that the parties can reach the point at which such motions may appropriately be filed. The defendants have failed to move the privilege review process forward, and should not be allowed to further delay that process.

It was not clear whether or not the defendants even intended to assert privilege with respect to any of the documents seized from Amerindo US until August 5, 2005. (*See* Exh. A at 3-4). The defendants stated that they would not waive the privilege vis-a-vis the Government, but that they would resolve any personal privilege issues between themselves so that the Government could make all seized materials available to the defendants without violating any privilege. (*Id.* at 4, n.2). On August 12, in response to a question from the Court, the Government made clear that all the documents seized from Amerindo US were available to the defendants for their immediate inspection. (*See* Exh. B at 2-3). The Government also made the seized computer data immediately available to the defendants.[2] Thereafter, the Government promptly completed its review of the approximately 168 boxes of documents seized from Amerindo US and segregated approximately 22 boxes of documents that appeared to involve any of the more than approximately 100 lawyers and law firms identified by Eugene Licker, Esq.,

---

[1] The Government does not seek any additional time to reviewed the computers seized from Amerindo US for potentially privileged materials. The Government has completed that review and is waiting for the defendants and Amerindo US to produce privilege logs.

[2] Mr. Tanaka's lawyers did not request mirror images of the seized computers until approximately one month later. The Government received from Mr. Tanaka's counsel a hard drive on which to copy that data in late September, and returned that drive, with the mirror images, approximately one week later. Mr. Vilar has never requested access to the seized computer data.

Hon. Kenneth M. Karas
November 3, 2005
Page 3

counsel for Amerindo US.[3] That document review process was completed in August 2005.

In the first week of September, the Government informed the defendants that those 22 boxes were available to be reviewed for privilege, and encouraged defendants' counsel to conduct that review promptly so that any privilege issues could be litigated within the current schedule. In addition, the Government expended considerable resources to conduct searches of the computer data seized from Amerindo US, and isolated approximately 26 DVDs containing materials that are potentially privileged. The Government sent 13 DVDs to the defendants on September 29, and subsequently sent to Mr. Licker 2 DVDs on October 21, 9 DVDs on October 28, and 2 DVDs on October 31.[4]

The defendants took no steps to review the 22 boxes of documents until the Government wrote a letter to defense counsel on September 29, 2005 stating, among other things, "[u]nless we promptly agree upon a process and an appropriate timetable to complete the [privilege review] process, the Government intends to seek the assistance of the Court to set a schedule or, in the alternative, to find that any applicable privilege has been waived by your clients' failure to assert it in a timely manner." (*See* Exh. F at 2). The next day, the defendants announced that they would deputize Mr. Licker to review the documents identified by the Government as potentially privileged to determine what individuals and/or entities could possibly assert privilege with respect to those segregated documents, and that they would then review certain categories of documents identified by Mr. Licker and create privilege logs. The Government immediately contacted Mr. Licker to make arrangements for his team to have access to the materials.

The Government then wrote to defense counsel on October 7, 2005 to confirm that the defendants were waiving any privilege with respect to documents not identified by Mr. Licker as possibly privileged. (*See* Exh. C). Mr. Kobre responded on October 11: "Mr. Tanaka reserves the right to assert any applicable privilege with respect to any documents, including those documents which Mr. Licker determines are not privileged." (*See* Exh. G). The Government replied on October 12, 2005, noting that Mr. Tanaka's position effectively rendered the privilege

---

[3] Despite its requests for input from defense counsel concerning the accuracy and completeness of that list, the Government received no response whatsoever and has pressed forward using the only information available.

[4] There was some delay in forwarding DVDs to Mr. Licker because, despite the Government's request for guidance concerning who would be conducting the privilege review of the DVDs, *see* Exh. C at 2, the Government has never received a direct response on the issue, and Mr. Licker was unaware of any request by the defendants that he take on that task. Instead, the Government learned on October 21 that Mr. Tanaka's counsel had forwarded the original 13 DVDs to Mr. Licker. (*See* Exh. D). That day, the Government acted on that information, and sent the additional 2 DVDs then in its possession to Mr. Licker. *See* Exh. E.

Hon. Kenneth M. Karas
November 3, 2005
Page 4

review process a meaningless exercise and requesting that Mr. Tanaka (and Mr. Vilar, if applicable) indicate when the defendant(s) would be in a position to assert any privilege. (*See* Exh. H). The Government received no response to that letter for more than two weeks. On October 25, 2005, Ms. Wolfe wrote to the Court on behalf of Mr. Vilar and stated that "we intend to review the other half of the documents [not identified as privileged or potentially privileged by Mr. Licker in his review of the 22 boxes] in order to ensure that there are no privileged doucments among them. We will follow the same procedure with respect to the computer evidence; Mr. Licker will separate out the privileged materials that he is able to identify, and we will undertake our own additional review of the remaining materials." (*See* Exh. I). Ms. Wolfe has never informed the Government when that review will be completed, and neither defendant has informed the Govenment when it can expect to receive their privilege logs.

The Opposition Brief asserts that the Government misunderstood Mr. Kobre's October 11 letter, and that the sole purpose of the letter was to preserve his right to object to the introduction into evidence of a privileged document at trial, and that Mr. Tanaka would not argue that the Government prosecution team had been tainted by exposure to any document that Mr. Licker had not identified as potentially privileged and as to which Mr. Tanaka had not independently asserted a privilege. (Opp. Br. at 2). That position is unacceptable to the Government. The defendants should not be permitted to withhold the assertion of privilege – holding it instead as a trump card to be played at trial, should they so decide. The defendants should be required to either assert or waive privilege, and any issues concerning the appropriateness of such assertions should be resolved far in advance of trial. The Government should not have to prepare for trial with the spectre of unasserted claims of privilege hanging over vast quantities of evidence.

There is no reasonable prospect for completing the privilege review process within the current schedule. Defendant Tanaka's position that the privilege review process "is proceeding in a smooth and timely manner," Opp. Br. at 2, and that "there is no reason . . . why this process should not be able to be completed within the already extended time period," *id.*, ignores reality. The defendants have not completed the relatively "easy" part of the review process – reviewing the 22 boxes of documents and supplying the Government with privilege logs – let alone begun the far more daunting task of reviewing the large volume of potentially privileged computer data. As of today, the defendants have yet to identify with specificity a single document for which they are asserting privilege, and the basis for that assertion. Moreover, according to an e-mail sent to the parties on October 31, 2005 by Mr. Licker, it will take a considerable amount of time to review the potentially privileged computer data identified by the Government. (*See* Exh. J). Mr. Licker reports that the first 15 DVDs of potentially privileged computer materials that he received included "45 gigabytes of data . . . [consisting of] 36,406 excel spread sheet files, 371 pdf files, 24,197 Word documents, and 398,978 e-mail messages." Mr. Licker further reported that "a gigabyte of data roughly equals 70,000 pages of documentation and that the normal rate of effective document review is about 450 to 500 pages a day." *Id.* Mr. Licker is researching what can be done to remove duplicate documents (*e.g.* e-mail chains that replicate the data, e-mails

Hon. Kenneth M. Karas
November 3, 2005
Page 5

sent to multiple recipients that appear in multiple in-boxes, and duplicate documents), and otherwise streamline the review process.[5] By any measure, however, it appears that the privilege issues will not be resolved within the current schedule, as suggested in the Opposition Brief.

The defendants' delay in reviewing the materials that the Government has identified as potentially privileged has prevented the Government from reviewing a substantial quantity of evidence that it must review to prepare for trial. Ever since the defendants announced that they were not waiving any applicable privilege, the Government effectively has been precluded from examining approximately 22 boxes of seized documents and hundreds of thousands of e-mail messages and other data that the Government identified as being potentially privileged. The defendants made no effort to review any documents in August. The month of September was lost when the defendants failed to undertake any review of the documents culled out by the Government. The first three weeks of October went by without the defendants reviewing, or turning over for Mr. Licker's review, the first 13 DVDs of potentially privileged materials identified by the Government. Finally, Mr. Vilar's position precludes the Government from even reviewing the materials for which Mr. Licker found no applicable privilege until some unspecified time in the future when he completes his independent review. The process is at a standstill and any delay required by the need to identify and litigate defendants' assertions of privilege lies squarely at the feet of the defendants.

Any schedule set in this case should require the defendants to either assert or waive privilege with respect to all the evidence sufficiently in advance of the trial date that the Government can review the non-privileged evidence, and so that a "taint team" can make reasoned decisions about whether or not to litigate any of the assertions of privilege. Because the Government can not anticipate the speed with which the defendants and Amerindo US will review the documents and make their decisions concerning the assertion of privilege, it can be no more specific than to request that sufficient time be excluded to allow the defendants and Amerindo US to make their privilege determinations, and for the Government to litigate those claims, if necessary.

II.

A Further Ninety-Day Exclusion Of Time
Is Warranted To Permit The Government To
Gather Evidence From Foreign Countries

The Government is hereby respectfully requesting a further exclusion of 90 days, pursuant to 18 U.S.C. § 3161(h)(9), to permit it to complete the process of gathering and

---

[5] Mr. Licker's request to defendants for suggestions as to how to proceed has, as of today, been unanswered.

Hon. Kenneth M. Karas
November 3, 2005
Page 6

evaluating evidence from foreign governments. (That exclusion of time, if granted, would run concurrently with any exclusion of time granted by the Court to permit the privilege review process to be completed). Under 18 U.S.C. § 3161(h)(9), the Court may grant Speedy Trial Act exclusions totaling up to one year to allow the Government to collect evidence from foreign governments through the MLAT process. On August 12, 2005, the Court approved the Government's prior request to exclude 120 days for that purpose. This request seeks to extend that time by 90 days to a total of 210 days – just over one-half the maximum time permitted under the statute.

The Government seeks this exclusion of time primarily to permit it to obtain and analyze documents seized as a result of a search conducted in London on October 13 and 14 (the "Amerindo Panama Documents"). Those materials, packed in a large shipping crate containing the equivalent of approximately forty boxes of documents and ten computers, include business records of Amerindo Panama including client files, account information and financial records. Not only does the Government expect those documents to include critical evidence concerning the fraud charged in the Indictment, but those documents are likely to be essential to determining the scope of the fraud scheme and to determining whether or not the Government will seek a superseding indictment containing additional charges.

The Amerindo Panama Documents are still in the custody and control of the Metropolitan Police. The Government learned this morning that those documents will not be received by the Government until approximately November 15.[6] Before the prosecution team can have access to those materials, they must be reviewed for potential privilege. The Government believes that the physical documents can be screened for privilege within approximately one week's time, and the prosecution team intends to review documents on a rolling basis, as boxes are "cleared." Based on the experience with the Amerindo US computers, it will take somewhat longer to perform the necessary forensic analysis and screening for potentially privileged data on the computers. Without the benefit of having a computer analyst look at the computers to determine what they are (e.g. servers, e-mail servers, stand-alone desktops or laptops), the quantity of data contained on those computers, and the nature of that data, the Government contends that it is reasonable to expect that the Government will require an additional 90 days to complete the computer analysis, search for potentially privileged documents, and for any claims of privilege to be asserted by the defendants (depending, of course, on the volume of potentially privileged material that is generated from that analysis and the speed with which the defendants review the material and assert privilege). The Government anticipates that privilege issues concerning the Amerindo Panama Documents may prove to be particularly thorny. Mr. Vilar has asserted that Amerindo Panama was sold in 2001, and that the defendants have no role in the management and

---

[6] That estimate is based on an air shipment, for which the Government is paying an additional $8,000 in order to receive the materials two weeks earlier than it would otherwise receive them if shipped by sea.

Hon. Kenneth M. Karas
November 3, 2005
Page 7

operations of that company. (*See* Exh. K at 2). Accordingly, the Government does not know who to contact concerning the privilege issues related to these documents.

The Government has acted diligently in its attempts to obtain the Amerindo Panama Documents. As the Court found on August 12, "the efforts by the government to resolve within two months of the arrest of the defendants efforts to get this evidence suggests anything but the government has been dilatory." (*See* Exh. B at 43). The Government has continued to press the UK authorities, through the MLAT process, to seize those documents expeditiously. As of August 12, when Mr. Colton stated in Court that the documents were still at Amerindo UK's offices at 43 Upper Grosvenor Street, the Government was optimistic that the UK authorities would be able to promptly execute a search warrant as had been requested by the Government through its July MLAT. Those documents, however, were moved to a storage facility on or about August 17, 2005, before the Metropolitan Police could obtain and execute such a search warrant.

The Government was informed on September 7, that the Metropolitan Police had received information concerning the location of that storage facility as of on or about September 5. The very next day, in accordance with the requirements of the UK authorities, the undersigned immediately drafted and sent to the Department of Justice Office of International Affairs a supplemental MLAT request to the UK to cover the search at that warehouse. The following day, on September 9, 2005, the undersigned sent a revised supplemental request, in response to comments received from OIA, and the supplemental request was approved and forwarded to the UK authorities during the week of September 12. It then took the UK authorities approximately one month to conduct the search, and seize the documents.

In these circumstances, where the evidence sought from the United Kingdom, the Bahamas, and Panama, is critical to the Government's investigation and prosecution, where the Government diligently has sought the evidence from the outset and has not been dilatory in any way, and where the Government is seeking a total exclusion of just over one-half of the time permitted to be excluded for these purposes, the Court should exercise its discretion and grant this request.[7]

---

[7] As noted in its October 14, 2005 letter, the Government also has other MLAT requests pending with the Bahamas and Panama, and is waiting for a second supplemental MLAT request to be forwarded to the United Kingdom. Those requests seek important additional financial and business records, some of which may be found among the Amerindo Panama Documents. Specifically, the Bahamas MLAT primarily seeks information concerning a bank account to which approximately $360 million of funds were transferred from the Amerindo Panama brokerage accounts and from which Mr. Vilar personally received millions of dollars in domestic and overseas bank accounts. The Panama MLAT primarily seeks information about a variety of purported Panamanian corporations, including Amerindo Panama and the corporations listed as

Hon. Kenneth M. Karas
November 3, 2005
Page 8

### III.

### The Interests Of The Public In A Speedy Trial

As the Court well knows, the "ends of justice" in the balancing test referred to in 18 U.S.C. § 3161(h)(8)(A) involve considerations far broader than the perceived financial interests of a few witnesses vouching for the defendants. Such witnesses do not have all of the information that the Government or the Court has, and they have no obligation to act in the public interest, but rather only in his own private interest.[8] The interests of justice and the public interest include, among other things: an interest in the expeditious resolution of criminal actions; an interest in protecting the integrity of the attorney-client and work product privileges; an interest in seeing that the truth-seeking mission of the criminal justice system is fulfilled; and, an interest in providing the Government the time needed to diligently collect and present all relevant evidence so that cases are resolved efficiently, without the need for wasting judicial and public resources on multiple prosecutions. Here, there are hundreds of thousands of documents that the Government has been precluded from reviewing by the defendants' blanket assertion of privilege and lack of diligence. In this case, there are documents vital to understanding the scope of the defendants' fraudulent scheme that are in foreign countries and that the Government has diligently sought to obtain from the outset of this case. In these circumstances, the Government's requests for further exclusion of time are in the interests of justice and the public interest, and

---

the owners of Amerindo Panama's brokerage accounts. The supplemental UK MLAT primarily seeks financial records related to transfers from Amerindo Panama brokerage accounts that relate to Mr. Tanaka's purchases of thoroughbred racehorses, and other accounts to which funds were transferred from the Amerindo Panama brokerage accounts. The request to Panama has been assigned to a local prosecutor, and the authorities in the Bahamas are waiting to be assigned a court date to receive an order requiring the production of the information sought. The Government does not expect that any of the materials sought from the Bahamas, Panama or the United Kingdom will raise any privilege issues, and is hopeful that responsive material will be received within the 90-day period of further exclusion sought by the Government.

[8] For example, Mr. Marcus and those investors in "defendants' non-U.S. based companies," *see* Opp. Br. at 5, may or may not be aware of Mr. Vilar's May 20, 2005 assertion to the SEC that the defendants sold Amerindo Panama in 2001 and have no control over the management and operations of Amerindo Panama. (*See* Exh. K at 2). It is likewise doubtful that Mr. Heitkonig, who pledged his $600,000 house as partial security for Mr. Vilar's bail, is aware of the document attached hereto as Exhibit L – a document in which Mr. Vilar instructs his co-defendant to send the Heitkonigs an account statement on U.S. letterhead to assuage their concerns about having investments with Amerindo Panama, and to make them think that they had responded to the Heitkonigs' request that their account be transferred to Amerindo US when, in fact, it had not.

Hon. Kenneth M. Karas
November 3, 2005
Page 9

outweigh the defendants' interest in a speedy trial. Accordingly, the Court should exercise its discretion and grant the exclusions of time sought by the Government.

* * *

The Government certainly does not oppose the setting of a schedule and deadlines in this case, and respectfully suggests that the Court start by setting a deadline for the defendants to either assert or waive privilege so that those issues can finally be resolved, and excluding a sufficient amount of time under the Speedy Trial Act for that purpose. Second, the Government respectfully requests, for the reasons set forth above, that 90 days be excluded for Speedy Trial Act purposes so that the Government can obtain and analyze critical information sought from foreign governments through the MLAT process.

Respectfully submitted,

MICHAEL J. GARCIA
UNITED STATES ATTORNEY

By: _____
Marc Litt
Assistant United States Attorney
(212) 637-2295

cc:  Glenn C. Colton, Esq. (By facsimile)
     Steven Kobre, Esq. (By facsimile)
     Jeffrey Hoffman, Esq. (By facsimile)
     Eugene Licker, Esq. (By facsimile)