**EXHIBIT N**

```
                                                                        1
     629CVILC

 1   UNITED STATES DISTRICT COURT
 2   SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 3
 3   UNITED STATES OF AMERICA,              New York, N.Y.
 4
 4            v.                            05 Cr. 00621 (S-2)
 5
 5   ALBERT VILAR,
 6   GARY TANAKA,
 7
 7                 Defendants.
 8
 8   ------------------------------x
 9
 9
10                                          February 9, 2006
10                                          2:45 p.m.
11
11
12   Before:
12
13                    HON. KENNETH M. KARAS,
13
14                                          District Judge
14
15
15                         APPEARANCES
16
16   MICHAEL J. GARCIA,
17        United States Attorney for the
17        Southern District of New York,
18   MARC LITT,
18   DEIRDRE A. McEVOY,
19        Assistant United States Attorneys.
19
20
20   JEFFREY HOFFMAN, SUSAN WOLFE, ,
21        Attorneys for Defendant Vilar.
21
22
22   GLENN COLTON,
23        Attorney for Defendant Tanaka.
23
24
25
                     SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```

                                                                    28

       629CVILC


  1     want to expend the cost if not necessary.
  2              THE COURT:  All right.  Thank you for letting me know.
  3     go ahead, Mr. Litt.
  4              MR. LITT:  Second issue is I heard from Mr. Kobre who
  5     unfortunately isn't here, but I know Mr. Colton will take care
  6     of him, that there is a fair probability that Mr. Tanaka at
  7     least will be filing feeling a motion to suppress what was
  8     taken in the UK search and  that the government has provided
  9     the defendants with the MLAT requests --
 10              THE COURT:  Mr Colton, I thought you said you didn't
 11     know what the MLAT requests were.
 12              MR. COLTON:  I said I didn't know what the additional
 13     MLAT requests were.  The one we have been provided the 40 boxes
 14     of documents from upper Grosvenor, that we have.  I have no
 15     idea what the others are.
 16              THE COURT:  The ones I was asking Mr. Litt about and
 17     referred to today?
 18              MR. COLTON:  Correct.
 19              THE COURT:  Go ahead, Mr. Litt.
 20              MR. LITT:  We have been provided with the MLAT
 21     requests related to the search.  The two search warrants that
 22     were issued to allow the search to be conducted by a UK
 23     judicial authority, and the inventory from the search.
 24              There is an additional document called an information,
 25     I think it's like what we would call an affidavit, I haven't

                                                                29

         629CVILC

1    seen it, my sources of information are third and fourth hand.
2    Mr. Kobre has requested that the government obtain that
3    document.  It was a document that along -- my understanding is
4    it was a document that along with the MLAT request that was
5    made through OIA was given to the magistrate from the UK and
6    served as part of the basis bases for the magistrate issuing
7    the warrants that were issued.  The government made a request
8    through OIA for that information, and OIA received a response
9    that that document is not ordinarily provided for foreign
10   authorities.
11           THE COURT:  Was the search done solely at the request
12   of the United States government, or other did the British have
13   their own law enforcement interest in conducting the search?
14           MR. LITT:  My understanding is it was done at the
15   request of the U.S. government.
16           THE COURT:  So but for your MLAT request, they
17   wouldn't have done any search, as far s you know, of Amerindo
18   UK?
19           MR. LITT:  Correct.
20           THE COURT:  All right.
21           MR. LITT:  So the state of play is there is an
22   interest or thought of filing this motion to suppress all of
23   the UK search materials.  Mr. Kobre has told me that he is
24   consulting with UK counsel, and that he believes this may
25   implicate issues of the law of United Kingdom as to evaluating

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

629CVILC

1  whether the search was reasonable or not and whether the
2  warrant that was issued was valid, and apparently requires this
3  additional document to be able to make those determinations and
4  to be able to file this motion.  That document is not in the
5  possession of the government.
6           THE COURT:  Mr. Colton?
7           MR. COLTON:  It's a funny spot we are in, your Honor,
8  because what happened, just to put the put a further gloss on
9  what your Honor said, not only was the search conducted
10 solely at the behest of the U.S. government, it was a search
11 conducted by U.S. law enforcement officers physically there
12 working with the British officers.  In fact, I believe
13 Inspector Fraterigo was there doing the search.  So we have
14 actions of the U.S. law enforcement.
15          We have a situation here where previously Mr. Litt
16 informed the court that when Judge Maas issued the search
17 warrants and the complaints, it was necessary to make other
18 representations to the court to get the judicial orders.
19          Here we have yet another judicial order where the
20 defense does not know everything that was presented to the
21 judicial official in order to assess the validity.  We don't
22 know what representations are made, whether they are correct or
23 not correct and we would like to see it.
24          THE COURT:  Right.  The spot you are in is sort of the
25 spot I am in.  I don't have any authority to order the British

31

629CVILC

1  government or any officials to provide a document.  But go
2  ahead.
3         MR. COLTON:  I think that's correct, but your Honor is
4  in a position to tell the U.S. government that if you want go
5  use the fruits of a search, you have to give me all the means
6  to evaluate the validity of the search.
7         THE COURT:  Assume the validity of the search is
8  something you have standing to challenge.
9         MR. COLTON:  That's correct.
10        THE COURT:  That to me is the threshhold issue that
11 has to be addressed.
12        MR. COLTON:  We have standing because Mr. Tanaka, as
13 the government alleges, worked in the office whose documents
14 were searched, and spent a lot of time in that office, so he
15 has standing and expectation of privacy there.  So I am not
16 sure if that is the question you are asking.  If your Honor is
17 asking can we challenge in this court the search that was
18 authorized by a British authority and in Britain, we believe
19 the answer to be yes when it's a operation conducted either by
20 U.S. law enforcement officials or in which U.S. law enforcement
21 took substantial part.  Frankly, U.S. law enforcement officials
22 went into the building to take the material to use in a U.S.
23 prosecution, and we believe -- and I can't cite your Honor
24 chapter and verse because we are missing Mr. Kobre, but we do
25 believe we can support that proposition and we would like to

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300