**EXHIBIT P**

```
                                                                      1
      5CESVILAR
  1   UNITED STATES DISTRICT COURT
  1   SOUTHERN DISTRICT OF NEW YORK
  2   ------------------------------x
  2
  3   UNITED STATES OF AMERICA,
  3
  4
  5            v.                          05 Cr. 621
  6
  6   ALBERTO VILAR and GARY TANAKA,
  7
  7                 Defendants.
  8
  8   ------------------------------x
  9
  9                                    December 14, 2005
 10                                    9:45 a.m.
 10
 11   Before:
 11
 12                    HON. KENNETH M. KARAS,
 12
 13                                    District Judge
 13
 14                         APPEARANCES
 14
 15   MICHAEL J. GARCIA
 15        United States Attorney for the
 16        Southern District of New York
 16   MARC LITT,
 17        Assistant United States Attorney
 17
 18   SUSAN WOLFE, ESQ.
 18   JEFFREY HOFFMAN, ESQ.
 19        Attorneys for Defendant Alberto Vilar
 19
 20   GLENN COLTON, ESQ.
 20   STEVEN KOBRE, ESQ.
 21        Attorneys for Defendant Gary Tanaka
 21
 22
 22
 23
 24
 25
 25
```

193

5Cebwvilc

1    positions with Amerindo Panama, UK, and Cayama, that they

2    participated in a fraudulent scheme to the tune of $2 million

3    that involved the oldest clients in which Amerindo UK, U.S. and

4    Panama were all involved and in which millions of dollars were

5    going around both to off shore entities and out of "off-shore

6    accounts" where the Amerindo brokerage accounts that are

7    affiliated with Amerindo Panama, and given everything laid out

8    in the warrant including these closely held companies, the

9    owners, founders, sole shareholders personally benefiting, the

10   ordinary person at least Mr. Vilar having personal contact with

11   victims that there's probable cause to believe that this other

12   off-shore entity is involved, too.  That's the probable cause

13   argument with respect to Cayman.

14        THE COURT:  All right.  I don't want to get into

15   arguing the whole motion at this point.  I realize I asked the

16   question -- it did pop into my head -- but why should the

17   defendants get to ask the questions that in particular

18   Mr. Kober and I were talking about.

19        MR. LITT:  I don't see how they advanced the ball in

20   getting to the issue that has to be decided.  What was told to

21   the 19 agents or inspectors doesn't tell you what was taken.

22   It doesn't tell you whether a reasonable agent would have or

23   inspector would have relied in good faith on a warrant signed

24   by a judge and as described as by Inspector Feiter as being

25   consistent with other ones that he had even seen, etc.  I don't

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

194

5Cebwvilc

1    see how that advances the issue.

2            THE COURT:  Well, in Burke, Judge Mukasey noted that

3    the affiant was there and participated in the warrant and,

4    therefore, he was able to infer that the person with the

5    knowledge of the investigation and understood the contours of

6    the investigation was able to limit, presumably, the execution

7    of the warrant, and, in that case, ensure the non-Dali work,

8    the documents information related to things other than Dali

9    were not taken.

10           MR. LITT:  And calling Inspector Fraterrigo won't

11   change the evidence that already exists that Inspector

12   Fraterrigo was there, just as the agent was there in Burke.

13   There's already evidence in the record she was there.  There's

14   no dispute the fact that she was there.  That's no dispute the

15   fact that she was one of the people answering questions that

16   people had when they came up.  So I don't see how calling

17   Inspector Fraterrigo --

18           THE COURT:  Anything else you want to say?

19           MR. LITT:  No.

20           THE COURT:  I'm conscious of the hour and the fact

21   that we've been here all day.  What I would like to do is get

22   your answer tomorrow as to the testimony of the case agent, and

23   are you serious about having 19 agents and having them testify,

24   Ms. Wolfe?

25           MS. WOLFE:  Well, I would call agents until the point

195

5Cebwvilc

1    at which your Honor is satisfied that the general search had

2    occurred.

3            MR. KOBRE:  Only that because we're just relying on

4    Burke and the Court's recognition of the facts surrounding the

5    search, including what's in the searcher's head, which is the

6    affiant as it's laid out, he recognizes they had the affidavit,

7    we think that the information that your Honor has proffered

8    would allow us to ask those questions.  That's what we're

9    seeking.  So at this point we sort of diverge from Mr. Vilar in

10    seeking --

11            THE COURT:  You're going to join their application?

12            MR. KOBRE:  Right.

13            THE COURT:  Is there anybody else you want to call?

14            MR. KOBRE:  Mr. Litt, but we're not going to do it.

15    Just kidding.  No, there's no others.

16            THE COURT:  Now, with respect to the statements, I'm

17    happy to proceed either by setting an argument.  We're out of

18    time to argue this tonight.  I'm not going to keep the court

19    reporter here.  The sun's been down for about an hour or you

20    can submit something in writing.  You know, it's up to you.

21            MR. HOFFMAN:  I think writing would be preferable on

22    both sides.

23            THE COURT:  Mr. Litt would prefer argument.

24            MR. LITT:  I would prefer argument, your Honor.  I

25    think it would be brief.  I don't think there are a lot of