

12 East 49th Street, 30th Floor
New York, NY 10017-8203

PHONE 212.999.5800
FAX 212.999.5899

www.wsgr.com

March 22, 2006

**BY HAND**

The Honorable Kenneth M. Karas
United States District Judge
United States Courthouse
Southern District of New York
500 Pearl Street, Room 920
New York, NY 10007

    Re:   *United States v. Alberto Vilar and Gary Tanaka*, 05 Cr. 621 (KMK)

Dear Judge Karas:

    We represent Gary Tanaka in the above-entitled matter and, on his behalf, submit this response to the Government's letters dated March 20, 2006 (authored by Special AUSA Rhonda Jung and AUSA Marc Litt, respectively). Although Mr. Tanaka is sensitive to the fact that the Court has received several submissions on the issues addressed in the Government's letter, a number of items warrant brief response.

    First, the Government mischaracterizes the conversation between Mr. Tanaka's counsel and Ms. Jung and Mr. Barofsky. As an initial matter, Ms. Jung's representation that Mr. Tanaka's counsel advised her that Defendants "had retained a law firm that purportedly specialized in conducting privilege reviews to review the documents at issue" is simply wrong. No such firm was hired (to the extent one even exists), but rather the privilege review of the Amerindo US electronic documents was conducted entirely by attorneys working for Wilson, Sonsini, Goodrich & Rosati (counsel for Gary Tanaka) and Hoffman & Pollok (counsel for Alberto Vilar). Moreover, at the conclusion of the conversation, the Government agreed to send to Mr. Tanaka's counsel documents that the Government intended to challenge as not privileged. Those documents – which apparently constitute only a portion of the document the Government ultimately intends to challenge – were not received by Mr. Tanaka's counsel until over one month later.

    Second, the Government's proposal that Defendants be required to re-review and re-produce the Amerindo US privileged electronic files in "bates-stamped, hard cop[y]" form, with a cover letter "containing a brief description of why each document is privileged," is contrary to the Government's prior agreement with Defendants' counsel and places a tremendous burden and expense on Defendants that cannot be justified. Prior to Defendants' production of the Amerindo US privileged electronic files, the Parties agreed

**Wilson Sonsini Goodrich & Rosati**
PROFESSIONAL CORPORATION

The Honorable Kenneth M. Karas
March 22, 2006
Page 2

that these files would be produced in electronic form and would be organized by party or parties claiming privilege and ground(s) for the privilege claim, thus obviating the need for a log.[1]  Not only did Defendants rely on this agreement in reviewing and producing the privileged materials, but also this agreement was entirely reasonable considering that (1) the "potentially privileged" files were produced by the Government to Defendants in electronic form, and (2) the Government "taint team" would have access to the documents themselves, thus rendering a privilege log superfluous.[2]  To require Defendants to re-produce these documents because the Government has changed its mind as to its preferred form of production cannot be justified.  This is particularly so considering the tremendous expense that would be required for Defendants to comply with the Government's most recent request.  As noted previously, the Government will likely designate <u>over one million documents</u> as "potentially privileged" in this case; to require Defendants to print out, copy and bates-stamp those over which it seeks to assert a privilege claim would not only be highly burdensome, it would be cost-prohibitive.

Third, the schedule proposed by the Government "taint team" is unreasonable in several respects.  As an initial matter, the proposed schedule would require litigation of all privilege issues at the same time.  As noted previously, there is simply no reason to delay resolution of issues relating to the Amerindo US documents until Defendants complete their review of the potentially privileged materials seized from Cadogan Tate, which the Government is still in the process of providing Defendants.  Moreover, although the Government "taint team" purports to take "no position" as to Mr. Tanaka's proposed trial date of September 11, 2006,[3] the Government's proposed schedule would have all privilege issues litigated in the two months before trial.  Not only does this put a significant (and unnecessary) strain on Defendants' resources in the period directly prior to trial, but also it increases the risk that the September 11 trial date will not hold.[4]  Finally, the

---

[1] This agreement was memorialized in correspondence between Mr. Tanaka's counsel and AUSA Marc Litt, copies of which are attached hereto as Exhibit A.

[2] Aside from a short statement of the ground(s) for claiming privilege (usually one or both of attorney-client or work product privilege), privilege logs generally contain information such date of document, author and recipient, and a brief statement of subject matter.  Thus, given the Parties' agreement that the documents would be produced in a manner clearly reflecting who is asserting privilege and on what grounds, there can be no justification for requiring a log in this case.

[3] Mr. Tanaka's proposal of a September 11, 2006 trial date – which would have the trial take place <u>sixteen months after his arrest</u> – was necessitated by the Government's delay in processing the electronic materials seized from Amerindo US and Cadogan Tate, which delay put Defendants in the position of having to choose between their Speedy Trial rights and their right to assert privilege.

[4] In fact, the Government prosecution team has not consented to Mr. Tanaka's proposed trial date, but rather has suggested vaguely that "it should be possible to resolve all issues sufficiently in advance of the defendants' proposed trial date…to make that a realistic trial date <u>assuming that a reasonable schedule for litigating privilege issues can be established within that time frame</u>."  Government Letter Dated March 20,

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Kenneth M. Karas
March 22, 2006
Page 3

Government's attempt to shift the burden to Defendants to file a motion for a protective order to preclude the use by the prosecution team of privileged documents takes undue advantage of the Government's ability to view privileged documents and should be rejected. Instead, as is generally the case, the Government "taint team" should be required to move to compel the production of allegedly privileged documents to the prosecution team, which motion would be responded to by Defendants in due course.

      Fourth, the Government's attempt to attribute the delay in the privilege review process to Defendants does not withstand scrutiny. Thus far, the Government's objections to Defendants' privilege production have related to the electronic materials seized from Amerindo US.[5] However, aside from "making available" to Defendants the entire Amerindo US computer system seized by the Government in May 2005, which system consisted of approximately two terabytes of data and had not been screened for responsiveness to the applicable search warrant, the Government does not dispute that it did not produce to Defendants potentially privileged electronic materials seized from Amerindo US until September 29, 2005, with the final production provided to Defendants on October 31, 2005. A similar delay has occurred with respect to the electronic materials seized from Cadogan Tate; while these materials were received by the Government on or around November 10, 2005, the Government did not begin to produce "potentially privileged" electronic files to Defendants until March 6, 2005, which production is still ongoing. In fact, at the February 9, 2006 Court conference, the Government acknowledged that, due to "resource allocation issues," it had yet to begin the process of identifying "potentially privileged" documents from the electronic files seized from Cadogan Tate, nor could the Government state when it would begin that process.[6] *See* Transcript of February 9, 2006 Court Conference, pp. 21-22 (attached hereto as Exhibit B). The Government's

---

2006 (authored by AUSA Marc Litt) (emphasis added). It is precisely this caveat that renders the Government's proposed schedule for resolution of privilege issues a concern.
[5] The privileged hard-copy documents seized from Amerindo US were reviewed by Amerindo US's counsel, and were separately produced to the Government by Amerindo US's counsel on January 18, 2006.
[6] Notably, the resource allocation problem identified by the Government is a problem of its own making. Not only did the Government seize two entire computer systems, but also the Government has yet to run even basic key word searches to ensure that the seized files fall within the scope of the applicable search warrants. As a result, all Parties have been forced to contend with a massive quantity of documents, at least some portion of which was improperly seized by the Government.

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Kenneth M. Karas
March 22, 2006
Page 4

decision not to devote resources to the privilege review process is not a legitimate basis for delay; at the very least, it warrants holding the Government to a strict (yet reasonable) schedule for the remainder of the process.

 Respectfully submitted,

 WILSON SONSINI GOODRICH & ROSATI
 Professional Corporation

 /s/
 Glenn C. Colton
 Jessica L. Margolis

Enclosures

cc: Marc Litt, Esq. (via electronic filing)
  Jeffrey Hoffman, Esq. (via electronic filing)

**EXHIBIT A**



12 East 49th Street, 30th Floor
New York, NY 10017-8203
PHONE 212.999.5800
FAX 212.999.5899
www.wsgr.com

December 21, 2005

BY FACSIMILE

Marc Litt
Assistant United States Attorney
One St. Andrew's Plaza
New York, New York 10007

Re: *United States v. Alberto Vilar and Gary Tanaka*, 05 Cr. 621 (KMK)

Dear Marc:

Consistent with Judge Karas' Order dated December 7, 2005 ("Order"), we (jointly with Amerindo US and Alberto Vilar) expect to complete our privilege review of the electronic data seized by the Government from Amerindo US by December 31, 2005. In satisfaction of our obligations under the Order, and consistent with your conversations with Glenn Colton, we will produce to the Government DVDs containing the privileged documents (for the taint team's eyes only). These DVDs will be marked and/or otherwise structured to clearly indicate (1) the individuals and/or entities asserting privilege with respect to the files contained therein, and (2) the ground(s) based upon which privilege is asserted (attorney-client communication, work product doctrine, etc.).

If for any reason you believe that this does not satisfy in full the obligations of Amerindo US, Alberto Vilar and Gary Tanaka with respect to the privilege review of the electronic data seized from Amerindo US, please let us know as soon as possible but in any event no later than close of business Thursday, December 22, 2005. This will enable us to timely resolve any outstanding issues, including seeking the involvement of the Court if necessary.

Sincerely,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Jessica L. Margolis

PALO ALTO   AUSTIN   NEW YORK   RESTON   SALT LAKE CITY   SAN DIEGO   SAN FRANCISCO   SEATTLE



**WSGR** Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

12 East 49th Street, 30th Floor
New York, NY 10017-8203

PHONE 212.999.5800
FAX 212.999.5899

www.wsgr.com

December 30, 2005

BY FEDERAL EXPRESS

Marc Litt
Assistant United States Attorney
One St. Andrew's Plaza
New York, New York 10007

Re:   *United States v. Alberto Vilar and Gary Tanaka*, 05 Cr. 621 (KMK)

Dear Marc:

In accordance with Judge Karas' Order dated December 7, 2005 ("Order"), enclosed are (1) two DVDs containing files with respect to which claims of privilege are asserted, (2) one box of hard copy documents with respect to which claims of privilege are asserted (labeled Box 5), and (3) four boxes of hard copy documents from which privileged content has been redacted (labeled Box 1 – Box 4). As per our agreement, the documents and files are organized by entities and/or individuals claiming privilege and by basis for the privilege claim, thus obviating the need for a log. We are providing these privileged materials to you based on your representation that you will not review the items, but rather will immediately pass them along to the team designated by your office to handle issues relating to privilege in this matter – a team that you have represented will not communicate with you or anyone working with you on the above-referenced matter with regard to the contents of the materials sent herewith.

Also enclosed is a DVD containing files that were inaccessible to us for technical reasons. Because we were unable to access and review these files, we are including them among the materials with respect to which privilege is asserted, and they should be treated as such by your office.

Finally, pursuant to your request, and solely as a courtesy, we are undertaking to provide you with DVDs containing files provided to us by the Government as potentially privileged but not claimed as such for the purposes of this review (i.e., files with respect to which defendants will not object on the ground that the prosecution team has been "tainted" due to exposure to privileged documents). As discussed earlier this week, we expect to deliver these DVDs to you by January 6, 2006. Please note that our agreement to undertake this task should in no way be interpreted as an admission that we have an obligation to do so

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

Marc Litt
December 30, 2005
Page 2

### Reservation of Rights

Defendants understand that to the extent they have not designated documents as privileged at this stage of the proceedings, they are waiving any objection that exposure to such documents has "tainted" the prosecution team in this case. Defendants, however, reserve the right to object – on privilege grounds or otherwise – should the Government ultimately seek to use documents not designated as privileged in this production.

Although the Government has previously objected to this position, Defendants' reservation of rights is necessitated by the unusual circumstances presented in this case. As you are aware, on May 26, 2005, pursuant to a search warrant, the Government seized and mirror-imaged in their entireties twenty-three (23) computers and three (3) servers from the New York offices of Amerindo Investment Advisors Inc. ("Amerindo US"). Despite the fact that over seven months have passed since the Government seized these computers and servers, the Government has made no attempt to return to Amerindo US any computerized files seized but not called for by the warrant.

Rather than review the seized data to determine the extent to which this data legitimately falls within the scope of the warrant and return to Amerindo US that which is outside of the scope of the warrant, the Government sent to Defendants a mass of data it identified as "potentially privileged," including over 660,000 emails and over 60,000 electronic files. The Government then stated its position that this data had to be reviewed for privilege before a trial in this matter could even be scheduled; in other words, the Government took the position that Defendants' right to a Speedy Trial was contingent on their ability to review the hundreds of thousands of files identified by the Government as "potentially privileged." *See* Government's November 3, 2005 Letter. As a result, Defendants were forced to undertake the daunting task of reviewing this massive quantity of data (some of which was taken but not authorized by the warrant) by December 31, 2005, or else risk losing the April 17, 2006 trial date – a date set only after repeated requests by Defendants that their Speedy Trial rights be vindicated, and a date which Gary Tanaka continues to maintain already violates his Speedy Trial rights. Defendants met the onerous deadline only by virtue of circumscribing the review in a fashion that may not have been necessary had the Government excised the material seized outside the scope of the warrant.

In the event that the Government continues to object to Defendants' reservation of rights as set forth above, such objection is not grounds for further delaying Defendants' trial – a trial that, over Defendants' protests, has already been delayed for nearly ten months. The issue of whether the documents can be used in any proceeding simply need not be decided at this juncture. Instead, the issue can be addressed by the Court in due course should the Government

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

Marc Litt
December 30, 2005
Page 3

in fact attempt to rely on an allegedly privileged document that was not so designated in this process. In light of the Government's failure to return documents seized but not authorized by the warrant, forcing Defendants to choose at this stage of the proceedings between their right to a Speedy Trial and their right to objection on the ground of privilege to the eventual use of a document is both unnecessary and unjust.

    We are available to discuss any of issues raised by the production or this letter with you or a representative of the "taint team." Please note that this letter is being copied to the Court in order to provide a status report on the privilege review process. The Court had requested a verbal report at the December 14, 2005, hearing, but, due to the late hour, no such report was given.

                                                   Sincerely,

                                                   WILSON SONSINI GOODRICH & ROSATI
                                                   Professional Corporation

                                                   Glenn C. Colton

Enclosures

cc:    The Honorable Kenneth M. Karas (by Federal Express) (w/o enclosures)
       Jeffrey Hoffman, Esq., counsel for Alberto Vilar (by fax) (w/o enclosures)
       Steven Kobre, co-counsel for Gary Tanaka (by fax) (w/o enclosures)
       Eugene Licker, Esq., counsel for Amerindo US (by fax) (w/o enclosures)

**EXHIBIT B**

Case 1:05-cr-00621-RJS    Document 100    Filed 03/22/2006    Page 10 of 11

629CVILC.txt

1   government could go ahead and look at the remaining documents
2   that it didn't believe there was any issue of privilege about,
3   so that the government could look at the evidence that it sees.
4        In other words, for the government's convenience, and
5   also for efficiency, the government had a team go through the
6   Amerindo U.S. search documents, isolate documents that were
7   potentially privileged, narrowing the universe for the defense
8   to look at; did the same with respect to the electronic
9   documents, in that it could get a head start in looking at
10  that.
11       We made the electronic documents seized from the UK
12  available to the defense as soon as we were able to, in other
13  words as soon as the devices were imaged and the defendants
14  provided storage material, the hard drive necessary to transfer
15  them, and we have not taken it to the next step yet.
16       THE COURT:  I guess the question is, why not?  If the
17  taint team looked at the U.S. documents, both hard copy and
18  electronic, and the UK hard copy, why stop there?  Why wasn't
19  there a team to do that with the electronic?
20       MR. LITT:  What was done with the electronic in the
21  U.S. was searches were done, searches, electronic searches
22  involving 100 or so law firms' and lawyers' names.  It's a
23  resource allocation question for the government, and that
24  hasn't gotten done yet for the government with the UK
25  computers; and as a result, we either don't look at the UK

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

22

629CVILC

1   computer materials or we look at them at our own peril.  We
2   risk being tainted.  And so it's a resource question and that
3   preliminary screening has not occurred.
4        THE COURT:  So what is your intention with respect to
5   the UK electronic documents?  Do you intend to go through them
6   and have your taint team do a word search, or are you going to
7   act at your own peril, as you put it?
8        MR. LITT:  We are trying to arrange to get them looked
9   at and screened, so we are not acting at our own peril.
10       THE COURT:  When did you intend to do that by?
11       MR. LITT:  We hope to do it as soon as possible.  I
12  don't have a time frame.
13       THE COURT:  Do you know about how many gigabytes,
14  megabytes?  Are we talking about a significant quantum of
15  electronic documents, more so, for example, in terms of
16  Amerindo U.S.?
17       MR. LITT:  I believe it's considerably less in terms
18  Amerindo U.S.
19       THE COURT:  All right.  We are talking about word
20  searches that are done electronically, right?
21       MR. LITT:  That's correct.
22       THE COURT:  All right.  I appreciate everybody in this

Page 13