Steven G. Kobre
Justin M. Sher
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
Tel: 212.488.1200

Glenn C. Colton
Jessica L. Margolis
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
12 E. 49th Street, 30th Floor
New York, New York 10017
Tel: 212.999.5800

*Attorneys for Defendant*
*Gary Alan Tanaka*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | S2 05 Cr. 621 (KMK) |
| - against - | ECF CASE |
| ALBERTO WILLIAM VILAR, a/k/a "Albert Vilar," and GARY ALAN TANAKA<br><br>Defendants. | |

## REPLY DECLARATION OF GARY ALAN TANAKA

I, Gary Alan Tanaka, declare as follows:

1. I am a defendant in the above-captioned action. I submit this reply declaration in further support of the motion to suppress evidence seized from a storage facility located at 239 Acton Lane, London, United Kingdom ("Cadogan Tate"). Because I am submitting this declaration for the limited purpose of supporting the motion to suppress, I have not included every fact known to me relating to the subject matter of this action.

2. In or about August 2005, based on my communications with agents of Amerindo U.K., I understood that Amerindo U.K. and Cadogan Tate negotiated an arrangement whereby Cadogan Tate would collect all of the materials found in Amerindo U.K.'s offices at 43 Upper Grosvenor Street, including all documents, decorations and furniture, and deliver some items to Christie's, the auction house, and other items to the Cadogan Tate storage facility located at 239 Acton Lane.

3. As I understood this arrangement, Christie's would auction off certain pieces of furniture and art, and the remaining materials would be stored at Cadogan Tate in the name of Amerindo U.K for a period of one year or more. Attached to this declaration as Exhibit A is a copy of a letter that Renata Tanaka received from Paul Higgs of Cadogan Tate on or about August 2, 2005 in connection with this arrangement.

4. Based on my communications with agents of Amerindo U.K., I understood that Amerindo U.K. and Cadogan Tate agreed that Cadogan Tate would receive payment for its services, including the long-term storage of Amerindo U.K.'s files, by collecting a portion of the proceeds of the Christie's auction.

5. In August 2005, I was informed that, pursuant to the arrangement, Cadogan Tate had collected furniture, documents and other assets from Amerindo U.K.'s offices at 43 Upper Grosvenor Street and delivered these items either to Christie's for auction or to its own facility for storage.

6. In or about September 2005, I was informed by agents of Amerindo U.K. that Christie's had not yet sold the assets delivered to it by Cadogan Tate. As of October 14, 2005, I

understood that Christie's continued to possess these items and had given no indication to anyone at Amerindo U.K. that the auction would not take place in the future.

7. As of October 14, 2005, I was not aware of any instance in which any representative of Cadogan Tate informed any agent of Amerindo U.K. that the arrangement described in ¶¶ 2-4 was less than satisfactory or in need of amendment of any kind.

8. As of October 14, 2005, I was not aware of any instance in which any representative of Cadogan Tate indicated to any agent of Amerindo U.K. that the materials held in Amerindo U.K.'s name would be seized or disposed of in the absence of immediate payment.

9. Attached to this declaration as Exhibit B is a copy of a letter which I received from the Official Receiver's Office of the Insolvency Institute of the United Kingdom relating to the November 30, 2005 winding-up order against Amerindo U.K.

10. Other than the fact that a British court issued a winding-up order on November 30, 2005 and the comments that I heard from counsel for Mr. Vilar on March 9, 2006, I have no reason to believe that the arrangement between Amerindo U.K. and Cadogan Tate has changed.

11. It is my understanding that the arrangement described in ¶¶ 2-4 continues to exist to this day with respect to those of Amerindo U.K.'s items that were not seized by the United States Government, and that those items have not been moved since their arrival at Cadogan Tate.

12. Prior to May 26, 2005, Amerindo U.S. had approximately 25 clients. As of October 2005, Amerindo U.S. had only one remaining client.

13. Between May 2005 and October 14, 2005, Amerindo U.S. did not make any payments to Amerindo U.K. pursuant to the service agreement between the two entities. Amerindo U.K. derived its primary source of income from the service agreement between Amerindo U.S. and Amerindo U.K.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed the tenth day of April 2006, at New York, New York.

_____
Gary Alan Tanaka