

12 East 49th Street, 30th Floor
New York, NY 10017-8203

PHONE 212.999.5800
FAX 212.999.5899

www.wsgr.com

June 23, 2006

**BY ECF AND HAND**

The Honorable Kenneth M. Karas
United States District Judge
United States Courthouse
Southern District of New York
500 Pearl Street, Room 920
New York, NY 10007

   Re: *United States v. Alberto Vilar and Gary Tanaka*, 05 Cr. 621 (KMK)

Dear Judge Karas:

  We represent Gary Tanaka in the above-referenced action and, on his behalf, submit this letter advising the Court of certain areas of testimony Mr. Tanaka hopes to elicit from the United States Postal Inspectors who executed the warrant ("Postal Inspectors"), including Inspector Fraterrigo, at the hearing currently scheduled for July 7 and 10, 2006 ("Hearing").  Among other things, Mr. Tanaka seeks to question the Postal Inspectors concerning the totality of the circumstances surrounding the execution of the Amerindo US search warrant, including but not limited to the facts and circumstances known to the Postal Inspectors at the time of the search but not included within the affidavit presented to the magistrate in support of the warrant.  Such evidence is critical to the question of whether the Postal Inspectors acted in good faith, or whether their actions fall under one of the four *Leon* exceptions – including the exception that requires suppression where "the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  *United States v. Leon*, 468 U.S. 879, 923 (1984).  Although Mr. Tanaka also intends to question the Postal Inspectors on other issues relating to the execution of the search warrant and/or the contemporaneous serving of the grand jury subpoena, in anticipation of the Government's objection and in the interest of judicial efficiency, Mr. Tanaka felt it was appropriate to address this particular issue in advance of the Hearing.

**Wilson Sonsini Goodrich & Rosati**
PROFESSIONAL CORPORATION

The Honorable Kenneth M. Karas
June 23, 2006
Page 2

### Defendants Should Be Permitted To Question The Postal Inspectors Concerning The Facts And Circumstances Known To Them When Executing The Warrant

It appears beyond dispute at this point that the Amerindo US warrant was unconstitutionally overbroad and therefore invalid.[1] The critical question, therefore, is whether it was objectively reasonable for the Postal Inspectors to rely on the warrant in executing the search. *Leon*, 468 U.S. at 922 n.23 (the test applied in determining whether to suppress evidence obtained as a result of executing an invalid warrant is "whether a reasonably well-trained officer would have known that the search was illegal despite the [judicial officer's] authorization.").[2] In answering this question, it is appropriate for the Court to look to "the totality of the circumstances, ***including any information known to the officers [executing the warrant] but not presented to the issuing judge***." *United States v. Weeks*, 160 F.3d 1210, 1212-13 (8th Cir. 1998) (internal quotations and citation omitted) (emphasis added).

The *Weeks* court, in assessing whether it was objectively reasonable for the executing officers to believe probable cause existed, took into account information imparted to the officers by the affiant during the pre-search briefing but not included in the affidavit presented to the issuing judge. *Id*. Other courts have similarly held that the knowledge of the executing officers is relevant to a determination of the objective good faith of the officers executing the warrant. *See, e.g., United States v. Martin*, 297 F.3d 1308, 1318-20 (11th Cir. 2002) ("[W]e find that we can look beyond the four corners of the affidavit and search warrant to determine whether [the executing officer] reasonably relied upon the warrant….[I]n examining whether the Leon good faith exception applies, we subscribe to a standard which is focused on a reasonably well-trained officer and is based upon the totality of the circumstances," including facts known to the officer – who was both the affiant and an executing officer – but not included in the affidavit) (collecting cases); *United States v. Marion*, 238 F.3d 965, 969 (8th Cir. 2001) (when assessing whether it was objectively reasonable for the officers to rely on issuing judge's determination

---

[1] Inspector John Feiter – the Government's own witness and one of the agents who supervised the search – testified that the plain language of the warrant authorized the seizure of all items relating to the various Amerindo businesses, as long as the documents had writing on them. Transcript from December 14, 2005 Hearing ("December 14 Hearing Transcript"), pp. 161-62.

[2] In applying this test, *Leon* identifies four situations in which suppression is warranted: (1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" (3) where the issuing magistrate "abandoned his detached and neutral role;" and (4) where, "depending on the circumstances of the particular case, a warrant may be so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." 468 U.S. at 923. Although Defendants assert that the second, fourth and possibly the first items are satisfied in this case, for the purposes of the instant application, Mr. Tanaka requests that the Court focus on the second of the Leon exceptions; that is, whether the executing officers' belief in the existence of probable cause was objectively reasonable in this case.

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Kenneth M. Karas
June 23, 2006
Page 3

that there was probable cause to conduct the search, it is appropriate to take into account information known by the officer – who was both the affiant and one of the executing officers – but not included in affidavit); *United States v. Word*, 2000 WL 724041, *9-*14 (S.D. Ind. May 31, 2000) (in determining whether execution of warrant was objectively reasonable, court "may look beyond the four corners of the affidavit and consider the additional information known to the detectives at the time they executed the warrant" to clarify and correct information given to the issuing judge). *See also United States v. Veras*, 1998 WL 66010 (S.D.N.Y. Feb. 18, 1998) ("'Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions *in light of the facts and circumstances confronting him at the time*,'" as opposed to the particular officer's actual state of mind) (quoting *Maryland v. Macon*, 472 U.S. 463, 470-71 (1985)) (emphasis added). [3]

As these cases demonstrate, the fact that the applicable test is "objective" and not "subjective" does not preclude the Court from inquiring into what the officers knew at the time of the search. Whereas a subjective test would focus on whether the particular officers who executed the search **actually believed** there was probable cause, the *Leon* test looks to what a **reasonable** officer would believe **in light of the particular facts and circumstances presented**, including both the language of the affidavit and the facts known to the officers when executing the search. A similar distinction exists in the context of the qualified immunity doctrine, which operates to protect an official from personal liability, including in the execution of search warrants, where the official's conduct was "objectively reasonable." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). In assessing whether qualified immunity applies, the Supreme Court has held that the question of whether the behavior of officials was objectively reasonable "will often require examination of the information possessed by [those] officials." *Id*. at 641. In so holding, the Court explicitly distinguished between "the objective (albeit fact-specific) question whether a reasonable officer could have believed [his behavior] to be lawful, in light of clearly established law **and the information the [ ] officers possessed**," and the officer's "subjective beliefs about the search," which the Court deemed "irrelevant." *Id*. (emphasis added); *see also Marshall v. Sullivan*, 105 F.3d 47, 53 (2d Cir. 1996) (availability of qualified immunity defense "depends on whether a reasonable officer could have believed his action to be lawful, in light of clearly established law **and the information [he] possessed**") (internal quotations and citation omitted)

---

[3] It appears the Second Circuit has not expressly addressed the precise issue of whether a court may appropriately consider facts known to the executing officers but not set forth in the affidavit when assessing whether it was objectively reasonable for the officers to rely on a warrant. In *United States v. Fama*, however, the Second Circuit held that the agent's expert opinion is an "important factor" that should be considered when determining objective good faith. 758 F.2d 834, 838 (2d Cir. 1985). Although the agent's "expert opinion" in *Fama* was set forth in the supporting affidavit, the Second Circuit did not expressly limit its holding to such situations. Moreover, as discussed below, both the Second Circuit and the Supreme Court have held that it is appropriate to look at the facts and circumstances known to the official when analyzing objective reasonableness in the context of the qualified immunity defense.

**Wilson Sonsini Goodrich & Rosati**
PROFESSIONAL CORPORATION

The Honorable Kenneth M. Karas
June 23, 2006
Page 4

(emphasis added); *Brawer v. Carter*, 937 F. Supp. 1071, 1082 (S.D.N.Y. 1996) ("[A] police officer will be accorded qualified immunity if, ***based on the facts known to the officer***, it was objectively reasonable for the officer to believe that his or her actions did not violate plaintiff's clearly established constitutional rights.") (emphasis added).

      Applying the above standards to the instant case, it is clearly appropriate for the Court to hear testimony concerning facts known to the Postal Inspectors at the time the search was executed, including but not limited to (a) the full extent of the information provided by the two alleged "victims," including any positive experiences with Defendants, (b) information provided by individual investors other than the two alleged "victims" noted in the affidavit, (c) information provided by institutional clients of Amerindo US, and (d) information as to the full scope of Amerindo US's business, including the various investment services offered by the company and the total amount of money under management. Although this evidence is relevant with respect to each of the officers who executed the search, it is particularly crucial with respect to Postal Inspector Fraterrigo. Inspector Fraterrigo was not merely the affiant in this case. To the contrary, Inspector Fraterrigo was present during the search and actively participated in executing the warrant. Moreover, Inspector Fraterrigo briefed the executing officers prior to the search and fielded questions from these officers as the search was being conducted. *See* December 14 Hearing Transcript, pp. 79, 93-94, 130. Under such circumstances, the facts known to Inspector Fraterrigo at the time of the search are highly relevant and bear directly upon the question of whether it was objectively reasonable for the executing officers, who received their information from Inspector Fraterrigo, to believe that probable cause existed.

      It is important to emphasize that in making the instant application, Mr. Tanaka is not requesting – either explicitly or implicitly – that the Court permit a *Franks* hearing to determine whether the magistrate judge who issued the warrant was misled. To the contrary, Mr. Tanaka is mindful of the court's prior ruling that, as the record currently stands, there is insufficient evidence to justify *Franks* hearing.[4] Instead, Mr. Tanaka seeks to elicit the Postal Inspectors' testimony to determine whether – ***in light of all of the facts and circumstances known to them*** – their belief in the existence of probable cause was objectively reasonable. As discussed above, this inquiry is critical to the Court's determination of whether the officers' execution of a constitutionally defective warrant can nevertheless be saved.

---

[4] Of course, consistent with the Court's prior statements on the issue, Mr. Tanaka reserves the right to request that the Court revisit the issue of whether a *Franks* hearing is appropriate depending on the testimony elicited at the hearing. See December 14 Hearing Transcript, p. 5.

4

**Wilson Sonsini Goodrich & Rosati**
PROFESSIONAL CORPORATION

The Honorable Kenneth M. Karas
June 23, 2006
Page 5

### **Conclusion**

     For the reasons stated above, we respectfully request that Mr. Tanaka be permitted to question the Postal Inspectors concerning the totality of the circumstances surrounding the execution of the Amerindo US search warrant, including but not limited to the facts and circumstances known to them but not included within the affidavit presented to the magistrate in support of the warrant.

     Respectfully submitted,

     WILSON SONSINI GOODRICH & ROSATI
     Professional Corporation


     /s/
     Glenn C. Colton
     Jessica L. Margolis

cc:    Marc Litt, Esq. (via email)
        Jeffrey Hoffman, Esq. (via email)
        Steven Kobre, Esq. (via email)