

12 East 49th Street, 30th Floor
New York, NY 10017-8203

PHONE 212.999.5800
FAX 212.999.5899

www.wsgr.com

July 6, 2006

**BY ECF AND FACSIMILE**

The Honorable Kenneth M. Karas
United States District Judge
United States Courthouse
Southern District of New York
500 Pearl Street, Room 920
New York, NY 10007

      Re:    *United States v. Alberto Vilar and Gary Tanaka*, 05 Cr. 621 (KMK)

Dear Judge Karas:

      We represent Gary Tanaka in the above-referenced action and, on his behalf, submit this reply to the Government's letter dated June 28, 2006 ("Government Opposition"). For the reasons stated below, the Court should reject the Government's attempt to unduly restrict the testimony of the postal inspectors that executed the search on Amerindo US ("Postal Inspectors"), and instead grant Mr. Tanaka's request that he be permitted to question the Postal Inspectors on areas directly relevant to the question of whether their execution of the search warrant was objectively reasonable.

### Defendants Should Be Permitted To Question The Postal Inspectors Concerning Facts Known To Them At The Time Of The Search

      Contrary to the Government's assertion, Mr. Tanaka's request is not a "back-door" attempt to get a *Franks* hearing, nor would granting Mr. Tanaka's request run "rough shod" over the preliminary showing required for a defendant to obtain such a hearing. Gov. Opp. at 1, 5. Whereas a *Franks* hearing is aimed at discerning whether an affiant who applied for a warrant intentionally or recklessly misled the issuing magistrate, in the instant application, Mr. Tanaka seeks information directly relevant to the determination of whether the officers who executed the search warrant had an objectively reasonable belief that probable cause existed – a wholly separate prong of the *Leon* analysis.[1] Thus, while a

---

[1] As noted in Mr. Tanaka's initial application, *Leon* identifies four situations in which suppression is warranted: (1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" (3) where the issuing magistrate "abandoned his detached and neutral role;" and (4) where, "depending on the circumstances of the particular case, a warrant may be so facially deficient . . . that

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Kenneth M. Karas
July 6, 2006
Page 2

*Franks* hearing focuses on what the ***affiant*** knew (or recklessly turned a blind eye to) at the time he or she applied for the search warrant, Mr. Tanaka seeks to inquire as to the facts known by the ***executing officers*** at the time they conducted the search. Although the Government attempts to conflate these independent inquiries by focusing exclusively on Inspector Fraterrigo, who was both the affiant and an executing officer in this case, Mr. Tanaka's request pertains to the latter inquiry only and applies equally to all of the postal inspectors who executed the search.[2]

Also flawed is the Government's contention that Mr. Tanaka's request is inconsistent with the objective nature of the *Leon* test. A subjective test would require the Court to look into the minds of the officers that ***actually*** executed the search on Amerindo US and assess whether ***those particular individuals*** felt they were acting in good faith. *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984) (characterizing the subjective test as "sending state and federal courts on an expedition into the minds of police officers"). Mr. Tanaka is not requesting that the Court undertake such an inquiry. Instead, Mr. Tanaka is simply asking the Court to assess whether it was objectively reasonable for the executing officers to rely on the warrant in light of "***all of the circumstances***," *id*. (emphasis added), including the information that was known to the officers at the time of the search. Such an inquiry is entirely consistent with *Leon*.

Notably, the Government has not cited any case holding that courts are prohibited from considering facts known to the officers but not included in the search warrant affidavit when assessing whether it was objectively reasonable for the executing officers to

---

the executing officers cannot reasonably presume it to be valid." 468 U.S. at 923. Whereas a *Franks* hearing pertains to the first *Leon* exception, Mr. Tanaka's current request is focused primarily on the second exception.

[2] In a further attempt to unduly restrict the scope of Inspector Fraterrigo's testimony, the Government states that Mr. Tanaka's application is nothing more than an attempt to "use the opportunity presented by having the case agent testifying" to "obtain[ ] early free discovery" and "develop[ ] impeachment testimony for use at trial." Gov. Opp. at 3. The Government, however, offers no support for this contention, and it should not be credited by the Court. Moreover, it is useful to recall that in opposing Defendants' initial attempt to call Inspector Fraterrigo, the Government similarly branded Defendants' request as "a fishing expedition into the cross examination [of] the case agent," *see* Transcript of December 14, 2005 Conference, p. 65, only subsequently to reverse course and request that the Court re-open the hearing to permit Inspector Fraterrigo's testimony. Finally, the Government's attempt to limit Inspector Fraterrigo's testimony by alluding to prior discussions on the issue should also be rejected. The fact that certain potential areas of testimony may have been referenced at prior conferences and in earlier briefing has no bearing on the instant application. Moreover, in granting the Government's request that Inspector Fraterrigo be permitted to testify, the Court did not purport to define the precise contours of her testimony, but rather stated generally that the testimony was necessary to provide "more information about the execution of the search." Order dated April 4, 2006 at 3.

**Wilson Sonsini Goodrich & Rosati**
PROFESSIONAL CORPORATION

The Honorable Kenneth M. Karas
July 6, 2006
Page 3

believe probable cause existed.[3]  By contrast, Mr. Tanaka has cited cases from various Circuits clearly holding that, in determining whether the executing officers' conduct was objectively reasonable, it is entirely appropriate to look outside the four corners of the warrant affidavit and consider facts known to the officers at the time of the search.  *See, e.g., United States v. Martin*, 297 F.3d 1308, 1318-20 (11th Cir. 2002) ("[W]e find that we can look beyond the four corners of the affidavit and search warrant to determine whether [the executing officer] reasonably relied upon the warrant."); *United States v. Marion*, 238 F.3d 965, 969 (8th Cir. 2001) (in assessing whether it was objectively reasonable for the officers to rely on the issuing judge's probable cause determination, it is appropriate to take into account information known by the officer but not included in affidavit); *United States v. Weeks*, 160 F.3d 1210, 1212-13 (8th Cir. 1998) (it is appropriate for the Court to look to "the totality of the circumstances, including any information known to the officers [executing the warrant] but not presented to the issuing judge"); *United States v. Word*, 2000 WL 724041, *9-*14 (S.D. Ind. May 31, 2000) (court "may look beyond the four corners of the affidavit and consider the additional information known to the detectives at the time they executed the warrant"); *see also United States v. Veras*, 1998 WL 66010 (S.D.N.Y. Feb. 18, 1998) ("Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time.") (quoting *Maryland v. Macon*, 472 U.S. 463, 470-71 (1985)).[4]

Although the Government attempts to distinguish these cases, this attempt does not withstand scrutiny and should be rejected by the Court.  According to the Government, these cases are inapposite because the courts looked to information outside the warrant and affidavit to ***uphold*** the relevant searches, whereas Mr. Tanaka is seeking to ***suppress*** the fruits of the Amerindo US search.  The Government's argument, although perhaps facially appealing, misses the point.  Regardless of whether these courts ultimately held that the facts known to the executing officers supported rather than opposed probable cause, the principle articulated in these cases is clear and consistent:  Courts can consider facts known

---

[3] As the Government concedes, the Second Circuit cases cited on page six of the Government's opposition do ***not*** hold that the good faith analysis must be confined to the facts set forth in the affidavit.  Instead, these cases simply recognize that it is appropriate to take into account the contents of the warrant application when determining whether officers' belief in the existence of probable cause was objectively reasonable – a proposition that is undisputed in this case.  *See, e.g., United States v. Singh*, 390 F.3d 168, 183 (2d Cir. 2004); *United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992).  Moreover, in one of the cases cited by the Government, the Second Circuit actually looks beyond the four corners of the affidavit to testimony given by the affiant when applying for the warrant in determining that the good faith exception applies.  *See United States v. Smith*, 9 F.3d 1007, 1015-16 (2d Cir. 1993).

[4] The Government concedes that the Second Circuit has not yet decided the issue of whether facts known to the executing officers but not included in the search warrant affidavit may be considering when assessing whether the officers' reliance of the warrant was objectively reasonable.  Gov. Opp. at 6.

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Kenneth M. Karas
July 6, 2006
Page 4

to the executing officers but not included in the warrant and affidavit when assessing whether the officers were objectively reasonable in executing the search. To hold that this principle applies only when the conclusion favors upholding the search – as the Government urges this Court to do – would impose a double standard contrary to our system of justice.

The Government's argument that the Court should disregard the qualified immunity jurisprudence cited by Mr. Tanaka in his initial application similarly should be rejected. *See* June 23 Tanaka Letter, pp. 3-4. These cases clearly demonstrate that the classification of a test as "objective" does not preclude inquiry into facts known to the individuals whose behavior is being analyzed for objective reasonableness – a conclusion that is equally applicable in the context of a suppression motion as it is in the context of the qualified immunity defense. Indeed, as the Government acknowledges, *Leon* itself draws from the qualified immunity doctrine when formulating the standards applicable in evaluating whether the fruits of a search should be suppressed. *See* 468 U.S. at 922 (citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), for the proposition that "an officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable"). Although the Government attempts to distinguish *Leon* by once again focusing on the Court's conclusion rather than the principle upon which that conclusion is based – according to the Government, whereas the Court in *Leon* relies on qualified immunity principles to "constrain the limits of the good faith inquiry," Mr. Tanaka is attempting to "expand" them (Gov. Opp. at 8 n.6) – it remains undisputed that the *Leon* Court regarded qualified immunity jurisprudence as instructive in determining the standard for assessing objective good faith. *See* 468 U.S. at 922; *see also Hinnen v. Kelly*, 992 F.2d 140, 144 (7th Cir. 1993) ("Qualified immunity is evaluated under the same objective reasonableness standard used in the good faith inquiry of [*Leon*]."); *Olson v. Tyler*, 825 F.2d 1116, 1120 (7th Cir. 1987) ("The Supreme Court has recently lent support to the notion that qualified immunity under section 1983 may be equated with the good-faith exception to the exclusionary rule in the context of arrest and search warrants.") (citing *Malley v. Briggs*, 475 U.S. 335 (1986) and *Leon*). Moreover, the Government's underlying assumption that Mr. Tanaka is somehow urging the Court to "expand" the standard articulated in *Leon* and its progeny misconstrues Mr. Tanaka's request. Mr. Tanaka does not seek to alter the applicable standard, but rather simply asks that it be properly applied to permit Mr. Tanaka to solicit evidence directly related to the issue of whether the Postal Inspectors' belief in the existence of probable cause was objectively reasonable.

4

**Wilson Sonsini Goodrich & Rosati**
PROFESSIONAL CORPORATION

The Honorable Kenneth M. Karas
July 6, 2006
Page 5

### Discovery Issues

With respect to the discovery issues raised by the Government (*see* Gov. Opp. at 8-9), Mr. Tanaka respectfully requests that the Court refrain from ruling on the proper scope of the Government's obligations under Rule 26.2 of the Federal Rules of Criminal Procedure until the Government concludes its direct examination of each Postal Inspector. To the extent that the Government possesses materials that fall within the scope of *Giglio*, however, Mr. Tanaka respectfully requests that the Court order the Government to produce such materials in advance of the relevant witness' testimony. Contrary to the Government's assertion, the obligations set forth in *Giglio* and its progeny apply with equal force in the context of a suppression hearing as they do in the context of a trial. *See, e.g., United States v. Floyd*, 1999 WL 476438, * 2 (S.D.N.Y. July 7, 1999) (ordering the Government to make impeachment material available to the Defendant one week prior to the suppression hearing, stating "[t]he standard practice in the Second Circuit is that information bearing on a witness' credibility be disclosed at the same time as other [Section 3500] materials"). As for *Brady* materials, Mr. Tanaka assumes that the Government will continue to provide such materials as they are discovered. *See United States v. Crozzoli*, 698 F. Supp. 430, 436-37 (E.D.N.Y. 1988) (holding that Government could not satisfy its *Brady* obligations by withholding documents until trial).

Finally, with respect to the emails recently identified by the Government, in which Inspector Fraterrigo apparently requests that Detective Sergeant Shaw provide copies of the various documents presented to the U.K. courts in applying for the search warrants, Mr. Tanaka disagrees with the Government's assertion that it is not required to produce these emails in advance of the hearing. In its direct examination of Detective Sergeant Shaw, the Government explicitly inquired as to whether copies of these documents were shown to the postal inspectors that executed the UK search, including Inspector Fraterrigo. *See* Transcript of May 31, 2006 Hearing, pp. 277-78. Although Mr. Tanaka has not seen the precise content of the emails in question, it appears that the Government's representation that it "did not elicit testimony from Detective Sergeant Shaw concerning the subject of the emails" may be inaccurate. At the very least, therefore, we respectfully request that the Court review the relevant emails *in camera* to determine whether production is appropriate.

### Conclusion

For the reasons stated above, as well as in his initial request dated June 23, 2006, Mr. Tanaka respectfully requests that he be permitted to question the Postal Inspectors concerning the totality of the circumstances surrounding the execution of the Amerindo US search warrant, including but not limited to the facts and circumstances known to them but

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Kenneth M. Karas
July 6, 2006
Page 6

not included within the affidavit presented to the magistrate in support of the warrant. Alternatively, Mr. Tanaka requests that the Court withhold ruling on this issue until hearing the direct testimony of the Postal Inspectors.

                                        Respectfully submitted,

                                        WILSON SONSINI GOODRICH & ROSATI
                                        Professional Corporation

                                        /s/
                                        Glenn C. Colton
                                        Jessica L. Margolis

cc:     Marc Litt, Esq. (via email)
         Deirdre McEvoy (via email)
         Jeffrey Hoffman, Esq. (via email)
         Steven Kobre, Esq. (via email)