**EXHIBIT B**



12 East 49th Street, 30th Floor
New York, NY 10017-8203

PHONE 212.999.5800
FAX 212.999.5899
www.wsgr.com

March 31, 2006

<u>**BY ECF AND HAND DELIVERY**</u>

The Honorable Kenneth M. Karas
United States District Judge
United States Courthouse
Southern District of New York
500 Pearl Street, Room 920
New York, NY 10007

Re:    *United States v. Alberto Vilar and Gary Tanaka*, 05 Cr. 621 (KMK)

Dear Judge Karas:

We represent Gary Tanaka in the above-entitled matter.  In light of the anticipated five month additional delay in bringing this matter to trial, we submit this application for modification of the conditions of Mr. Tanaka's release.  Specifically, Mr. Tanaka requests that the Court reduce the amount of security required to support the $10 million personal recognizance bond ("PRB") pursuant to which he was released to permit the return of the $1 million in cash.[1]  The $1 million in cash, which is a relatively small portion of the assets currently securing Mr. Tanaka's bail (which, taken together, total $8 million), is needed for Mr. Tanaka to fund his legal defense, as well as to care for his family, for which he had been the primary bread winner.  Given that Mr. Tanaka has been completely cooperative with pre-trial services for ten months (a fact that the Court can confirm with pre-trial services officer Leo Barrios), and that the longer than anticipated delay in the trial has further delayed any serious attempt by Mr. Tanaka to rebuild his career in financial services, a modification of the bail is both reasonable and equitable.  It is also compelled by the Court's obligation to impose the "least restrictive . . . combination of conditions" that "will reasonably assure [Mr. Tanaka's] appearance" in this matter.  18 U.S.C. §3142(c).

## PRELIMINARY STATEMENT

On August 11, 2005, upon granting the Government's request for a 120-day exclusion of time under the Speedy Trial Act (over Mr. Tanaka's strenuous objection), the Court expressly acknowledged the effect this delay would have on Mr. Tanaka given the strict conditions imposed on his release, and invited him to apply to the Court to modify these conditions.  In

---

[1] The full details of Mr. Tanaka's bail package are set forth in his October 27, 2005 application for bail modification ("October 27 Submission"), a copy of which is attached hereto as Exhibit A.

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Kenneth M. Karas
March 31, 2006
Page 2

response to the Court's invitation, on October 27, 2005, Mr. Tanaka submitted an application in which he requested that the Court (1) permit the release of the $1 million cash securing Mr. Tanaka's PRB (above and beyond the $7 million of assets pledged by Mr. Tanaka's immediate family), and (2) relax the terms of his home detention to permit him to leave his eldest son's apartment during the day.  Although the Court granted certain modifications to the conditions of Mr. Tanaka's home detention, the Court denied Mr. Tanaka's request that the $1 million in cash be released.

Since the Court's ruling in November of last year, at least two developments have occurred that warrant reconsideration of the Court's decision not to release the $1 million in cash.  First, since the Government's initial request for an extension of time was granted in August 2005, the Government has continued to delay the progress of this action.  This repeated delay not only has caused Mr. Tanaka and his family to suffer severe emotional strain (including that which obviously results from being separated from your wife and young son for nearly a year while at the same time living under the specter of unproven charges), but also it has caused significant financial strain.  Mr. Tanaka's United States company, which constituted the majority of his investment advisory business, was essentially destroyed by the Government's intervention, despite the fact that absolutely nothing has been proven.  Moreover, the nature of the pending yet unproven charges in this case, as well as the resulting damage to his reputation, have effectively rendered him unable to work in his previous capacity as an investment advisor.  Second, on January 31, 2006, Government filed its final superseding indictment in this case, which sets forth once and for all the charges that will be brought against Mr. Tanaka in this action.  This indictment – which specifically enumerates only five "victims" of an alleged financial fraud – makes clear that the initial bail package imposed on Mr. Tanaka is vastly disproportionate to the nature of the alleged offense.[2]  Accordingly, the conditions of Mr. Tanaka's bail should be revised at minimum to permit the release of the $1 million cash.[3]

---

[2] Indeed, at the time of Defendants' bail hearings, the Government suggested that the charges were just the "tip" of what they led the Court to believe would be a massive fraud.  *See* Transcript of May 27, 2005 Hearing, p. 6 (attached hereto as Exhibit B).

[3] It is Mr. Tanaka's position that the $8 million security currently required to support his $10 million PRB is excessive in an amount beyond the $1 million cash requested in this application.  Presently, however, Mr. Tanaka requests only that the Court release the $1 million, leaving undisturbed the remaining $7 million in assets that immediate family members have pledged.

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Kenneth M. Karas
March 31, 2006
Page 3

# ARGUMENT

A.    Continuous Government Delay In This Action Has Rendered The Financial
Conditions of Mr. Tanaka's Release Unjustifiably Severe

Mr. Tanaka's initial request for modification of his bail conditions was filed at the Court's invitation, after it had granted Government's first request for a 120-day delay. Since then, the Government has continued its pattern of delaying this action at every opportunity, despite Mr. Tanaka's repeated objections and attempts to assert his constitutional and statutory Speedy Trial rights. More specifically, in October 2005, the Government requested another 120-day exclusion, which request was granted by the Court on November 7, 2005 (again, over Mr. Tanaka's objection). The result of this ruling was that Mr. Tanaka's trial was delayed until at least April 2006 – eleven months after his arrest. Mr. Tanaka's trial was then further delayed by the Government's failure to promptly process evidence in this case. For example, after seizing documents from Amerindo US's New York office and a Cadogan Tate facility in London, the Government took over four months to even begin to return potentially privileged electronic files to the Defendants so that privilege claims could be asserted.[4] Moreover, although Defendants reviewed the Amerindo US electronic files and asserted privilege claims by December 31, 2005, as had been required by the Court in order for Defendants to maintain their previous trial date, the Government did not identify documents that it intends to challenge as not privileged until March 9, 2006.

The Government has also delayed in providing Mr. Tanaka with copies of evidence that had been "made available" to him for inspection, pursuant to Rule 16. For example, although on February 6, 2006, Mr. Tanaka's counsel provided the Government with a list of boxes to be copied from those seized from Amerindo US, those materials have not yet been provided.[5] Finally, despite the fact that Mr. Tanaka's proposed trial date would have the trial take place sixteen months after his arrest, the Government has yet to consent to this date, instead suggesting vaguely that "it should be possible to resolve all issues sufficiently in advance of the defendants' proposed trial date of September 11, 2006 to make that a realistic trial date assuming that a reasonable schedule for litigating privilege issues can be established within that time frame."[6]

---

[4] The Government produced potentially privileged electronic materials seized from Cadogan Tate to Defendants on a rolling basis, with the most recent (and presumably final) disks provided on March 28, 2006.

[5] On March 7, 2006, Mr. Tanaka (through his counsel) requested copies of additional materials that had been made available to him by the Government, which copies also have not yet been received. Although on March 28, 2006, the Government sent a letter to Mr. Tanaka's counsel advising that certain documents are ready to be delivered, the Government did not specify which of the requested documents are in fact available.

[6] Notably, Mr. Tanaka's proposal of a September 11, 2006 trial date was necessitated by the Government's delay in processing the electronic materials seized from Amerindo US and Cadogan Tate, which delay put Defendants in the unenviable position of having to choose between their Speedy Trial rights and their right to assert privilege.

3

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Kenneth M. Karas
March 31, 2006
Page 4

Government Letter Dated March 20, 2006 (authored by AUSA Marc Litt) (emphasis added). Indeed, although the Government "taint team" purportedly "takes no position" as to Mr. Tanaka's proposed trial date, its proposed schedule would have the Parties litigating any privilege issues in the two months leading up to Mr. Tanaka's proposed trial date, thus calling into question whether the September 11 date will hold. Government Letter Dated March 20, 2006 (authored by Special AUSA Rhonda Jung).

The impact of this continuous delay on Mr. Tanaka and his family has been severe. First, Mr. Tanaka has been separated from his wife and young son for nearly ten months, during which time he has been confined to his oldest son's apartment with only limited permission to exit the home. Indeed, even under the most optimistic of schedules, Mr. Tanaka's separation from his family is likely to extend for at least seventeen months, or nearly a year and a half. Second, and more pertinent for the purposes of this application – the delay has put a significant financial strain on Mr. Tanaka and his family, including his wife, two college-age children and ten year old son. Mr. Tanaka's ability to work from New York City (where he is on home detention) has been severely compromised by the demise of Amerindo US, which was effectively destroyed by the Government's intervention.[7] The impact of the destruction of the US company has been particularly devastating considering that Amerindo US had been the bulk of Mr. Tanaka's investment advisory business, at times managing in excess of $8 billion.[8] The destruction of Amerindo US aside, it is extremely difficult (if not impossible) for Mr. Tanaka to obtain work as an investment advisor at all, given the nature of the charges against him and the dramatic impact these charges have had on his reputation (despite the fact that these charged remain unproven). Indeed, with each delay that is sought by and granted to the Government, Mr. Tanaka's reputation (and thus his ability to earn a living as an investment advisor) becomes further compromised as he continues to live under the specter of unproven charges.[9]

In essence, Mr. Tanaka has been stripped of the ability to make a living as he had for over thirty-five years at a time when he is forced to fund a legal defense against charges that could cause him to spend significant time in jail, and at a time when his family needs him most. Given the tremendous expense of defending this criminal proceeding (caused in part by the Government's repeated refusals to narrow down the exorbitant volume of documents made available to Defendants, at the very least to weed out those documents that are outside the scope of the relevant search warrants), as well as the continuous Government delays (rendering it unknown when Mr. Tanaka and his wife will be able to reunite and begin rebuilding their lives),

---

[7] Notably, the court-appointed monitor charged with overseeing the wind-down of Amerindo US found that there is no evidence that any Amerindo US clients of lost any of their funds entrusted to that company.

[8] At the time of Mr. Tanaka's arrest in May 2005, Amerindo US was managing in excess of $1 billion.

[9] Mr. Tanaka's wife's ability to work has also been compromised by these proceedings. Prior to the inception of these proceedings, Mrs. Tanaka worked for Amerindo Advisors (UK) Ltd., which ceased operations in the wake of the pending charges.

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Kenneth M. Karas
March 31, 2006
Page 5

it is only appropriate that Mr. Tanaka be provided some relief so that he is able to channel resources toward his criminal defense, as well as care for the needs of himself and his family.

      B.    <u>The Specified Charges In The Final Indictment Warrant A Reduction In The Amount of Security</u>

When Mr. Tanaka's bail package was initially ordered by Magistrate Judge Katz, the scope of the charges against Mr. Tanaka were entirely unclear. In fact, in related proceedings before Magistrate Judge Pitman, the Government stated that the charges against Mr. Tanaka's co-defendant were "just the tip of the iceberg," and that "there is cause for significant concern about the scope of the theft that has gone on here." See Transcript of May 27, 2005 Hearing, p. 6 (attached hereto as Exhibit B). Now, after ten months of investigation, the final charging indictment has been filed against Defendants. Far from revealing a massive fraud, however, the indictment specifies only five alleged "victims." It is true that the ambiguous language of the indictment suggests that the Government may later assert that there are other alleged "victims." Indeed, only after being ordered to do so by the Court, the Government identified nine additional investors upon which it "may" rely to prove its allegations of fraud. Irrespective of whether the Government eventually decides to interpret its own indictment as referring to five or fourteen alleged "victims," this is hardly the "iceberg" that was initially suggested by the Government; certainly, it does not warrant bail conditions more severe than those that were imposed on executives accused of orchestrating one of the biggest corporate frauds in American history. *See* October 27 Submission.

In contrast with the decision faced by Magistrate Judge Katz, the Court is now in the position to assess Mr. Tanaka's bail conditions in light of the final charges that that the Government will seek to prove against him at trial. Given the nature of those charges – which allege between nine and fourteen "victims" of a purely financial fraud – it is clear that the level of security required in support of the PRB is disproportionately excessive. In addition to the $1 million in cash that Mr. Tanaka requests be released, the $10 million PRB is co-signed by Mr. Tanaka's mother, sister and son, and is secured by $7 million of collateral, also pledged by these same immediate family members. Not only is requiring security in the amount of 80% of the PRB unjustifiably excessive in this case, but also it is ***double*** the amount of security required to be posted by Mr. Tanaka's co-defendant Alberto Vilar, who (in a separate hearing determined by a different Judge) was permitted to be released on a $10 million PRB secured by only $4 million assets. Moreover, the entire security amount supporting Mr. Vilar's PRB was pledged by third parties who are not even family members with a presumed degree of moral suasion. In other words, Mr. Vilar was not required to offer up a penny of his or his family's funds as a condition of his release.

5

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Kenneth M. Karas
March 31, 2006
Page 6

Finally, the security offered in support of Mr. Tanaka's PRB – which, even with the requested modification, is extremely high given the crimes alleged in this case – is reinforced by the severe restrictions on Mr. Tanaka's liberty: Mr. Tanaka's travel documents have been confiscated and he is subject to strict pre-trial supervision, including electronic monitoring and home detention.[10]  Given these safeguards – as well as the Court's obligation to impose the "least restrictive" combination of conditions on Mr. Tanaka's release – retaining the $1 million cash is simply unnecessary in this case.  *See* 18 U.S.C. § 3142(c); *see also* 18 U.S.C. §3142(g)(1) (among the factors to be considered when setting conditions of release are the nature and circumstances of the office charged, including whether the offense is a crime of violence or involves a narcotic drug); § 3142(g)(2) (weight of the evidence against the person is another factor to be considered when determining conditions of release).

## CONCLUSION

For the reasons stated herein, Gary Tanaka respectfully requests that the Court modify the conditions of his release and order that the $7,000,000 in assets pledged to secure Gary Tanaka's $10,000,000 personal recognizance bond is sufficient, such that the $1,000,000 in cash may be released.

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

/s/
Glenn C. Colton

cc:    Marc Litt (by electronic filing)
       Jeffrey Hoffman (by electronic filing)

---

[10] In response to Mr. Tanaka's prior application for bail modification, the Court made certain slight adjustments to the conditions of his home detention, which permit Mr. Tanaka to leave the home twice a week to run errands, as well as between 7:30 a.m. and 5:30 p.m. for business-related appointments (provided that Mr. Tanaka's pre-trial services officer is advised of any appointment in advance).