**EXHIBIT C**

Case 1:05-cr-00621-RJS    Document 134-4    Filed 08/23/2006    Page 1 of 7



Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

12 East 49th Street, 30th Floor
New York, NY 10017-8203
PHONE 212.999.5800
FAX 212.999.5899

www.wsgr.com

October 27, 2005

**BY HAND**

The Honorable Kenneth M. Karas
United States District Judge
United States Courthouse
Southern District of New York
500 Pearl Street, Room 920
New York, NY 10007

Re: *United States v. Alberto Vilar and Gary Tanaka*, 05 Cr. 621 (KMK)

Dear Judge Karas:

We represent Gary Tanaka in the above-entitled matter. On his behalf, and pursuant to 18 U.S.C. § 3145(b), we submit this application for modification of the conditions of Mr. Tanaka's release – most of which the Pre-Trial Services office has no objection to and with respect to the rest of which it takes no position. On August 11, 2005, over Gary Tanaka's strong objection, the Court granted the Government's request for a 120-day exclusion of time under the Speedy Trial Act. In so doing, the Court expressly acknowledged the effect this delay would have on Mr. Tanaka given the strict conditions imposed on his release, and invited him to apply to the Court to modify these conditions. *See* Transcript of August 11, 2005 Conference, p. 44 (attached hereto as Exhibit A). This letter constitutes that application.

## FACTS

Gary Tanaka was arrested on May 26, 2005. On June 3, 2005, a detention hearing was held before the Honorable Theodore Katz, United States Magistrate Judge for the Southern District of New York. As a result of the hearing, an Appearance Bond was issued ("Appearance Bond") pursuant to which Mr. Tanaka was released on a $10,000,000 personal recognizance bond ("PRB").[1] The Appearance Bond requires that the PRB be co-signed by three financially responsible persons and secured by collateral in the amount of $8,000,000, including $1,000,000 in cash and assets valued at approximately $7,000,000.

The Appearance Bond also requires that Gary Tanaka be subject to "strict pre-trial supervision," including 24-hour home detention (at his son's home) and electronic monitoring. Under these conditions, Mr. Tanaka is not permitted to leave his son's apartment for any reason

---

[1] A copy of the Appearance Bond is attached as Exhibit B.

C:\Documents and Settings\pxm\Local Settings\Temporary Internet Files\OLK42C\Tanaka_ Request for Modification of Release Conditions_(PALIB1_2744280_2).DOC

PALO ALTO    AUSTIN    NEW YORK    RESTON    SALT LAKE CITY    SAN DIEGO    SAN FRANCISCO    SEATTLE

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Kenneth M. Karas
October 27, 2005
Page 2

without first obtaining the approval of his assigned pre-trial services officer. Finally, under the terms of the Appearance Bond, Mr. Tanaka was required to surrender his travel documents (including his passport) prior to release, and is not permitted to travel outside the Southern and Eastern Districts of New York.

On July 26, 2005, the Government filed a Superseding Indictment in its case against Alberto Vilar. This indictment adds Gary Tanaka as a named defendant and alleges, among other things, counts of securities fraud, mail fraud, investment adviser fraud and conspiracy. In support of these facially broad charges, the indictment specifies only one alleged "Victim," from whom defendants Vilar and Tanaka purportedly misappropriated approximately $5,250,000.

On July 28, 2005, the Government orally moved for a 120-day exclusion of time under the Speedy Trial Act. Gary Tanaka opposed the motion and requested that the Court vindicate his right to a trial within the statutory seventy days. In support of his assertion of his statutory and constitutional right to a Speedy Trial, Mr. Tanaka noted the strict conditions of his pretrial detention, including the requirements that he wear an electronic monitoring device and seek prior approval from pre-trial services before leaving his son's apartment. After hearing argument on the motion, the Court granted the Government's request and excluded time until November 30, 2005. In so doing, the Court explicitly acknowledged the impact such a delay would have on Mr. Tanaka in light of his bail conditions, and invited Mr. Tanaka to submit an application to loosen these conditions. *See* Exhibit A. On October 14, 2005, the Government wrote a letter to the Court in which it stated its intention to request that additional time be excluded beyond the 120 days, thereby delaying this matter even further. A copy of this letter (without exhibits) is attached hereto as Exhibit C. As of yet, despite Mr. Tanaka's request that a trial date be set in this matter, none has been set.

## ARGUMENT:
## THE CONDITIONS OF GARY TANAKA'S RELEASE SHOULD BE MODIFIED

Where a judicial officer determines that releasing an individual on personal recognizance or an unsecured appearance bond would not reasonably assure the appearance of that individual, that judicial officer may impose further conditions on the person's release. *See* 18 U.S.C. §3142(c). Such conditions, however, must be the *"least restrictive* . . . combination of conditions" that the judicial officer determines "will reasonably assure the appearance of the person as required ...." *Id.* (emphasis added). Where, as here, the conditions of release were set by a judicial officer other than the judge of a court having original jurisdiction over the offense, the Court may, in its discretion, revise these conditions. *See* 18 U.S.C. 3145(b). For the reasons stated below, this Court should exercise that discretion to revise the conditions of Gary Tanaka's release by (1) reducing amount security required to support the PRB to permit the release of the

C:\Documents and Settings\pxm\Local Settings\Temporary Internet Files\OLK42C\Tanaka_ Request for Modification of Release Conditions_(PALIB1_2744280_2).DOC

2

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Kenneth M. Karas
October 27, 2005
Page 3

$1M in cash, and (2) loosening the restrictions on Mr. Tanaka's home detention to permit him to travel within the Southern and Eastern Districts of New York Monday through Friday between 7:30 a.m. and 5:30 p.m., provided that he leave a message for his assigned pre-trial officer indicating his whereabouts prior to leaving the home.[2]

1. The Security Required Under The Appearance Bond Is Unnecessarily Excessive

Under the terms of the Appearance Bond, in order to be released from custody, Gary Tanaka was required to pledge as collateral (or get friends or family to pledge as collateral) nearly the entire amount of his $10,000,000 personal recognizance bond. Specifically, the Appearance Bond required the PRB to be secured by approximately $7,000,000 in assets *plus* $1,000,000 cash, for a total of $8,000,000 – or 80% of the bond amount. For at least three reasons, such a high level of security is excessive and constitutes a greater level of security than that which is necessary to secure Mr. Tanaka's appearance at trial.

*First*, the level of security required by the Appearance Bond is vastly disproportionate to the nature of the offenses with which Gary Tanaka is charged, as well as the specific allegations asserted the indictment. Mr. Tanaka is not charged with a violent or drug-related crime, but rather with non-violent financial offenses such as securities and investment adviser fraud. *See* 18 U.S.C. §§ 3142(g)(1) (among the factors to be considered when setting conditions of release are the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug). Moreover, although the charges in the indictment appear broad in scope, the indictment specifies only one "Victim," from whom defendants allegedly misappropriated approximately $5,250,000. Such conclusory allegations of broad misconduct – without any underlying support – cannot in themselves justify such a high bail amount. *Compare id.* at § 3142(g)(2) (the weight of the evidence against the person is another factor to be considered when determining conditions of release) *with* Exhibit C, pp. 3-4 (acknowledging that the Government has yet to obtain evidence it purportedly needs to proceed with their prosecution of Mr. Tanaka).

In fact, the security required in support of Gary Tanaka's bond significantly exceeds that which has been required for defendants accused of similar, if not more serious, offenses. For example, while former Worldcom Chief Financial Officer Scott Sullivan was also released on a

---

[2] We spoke with Leo Barrios, the Pre-Trial Services officer assigned to Gary Tanaka, prior to filing this application. Mr. Barrios stated that he has no objection to the requested modification of the conditions of Mr. Tanaka's home detention and that he takes no position with respect to the release of the $1M cash. We also attempted to resolve this matter with Assistant United States Attorney Marc Litt prior to filing this application; however, we were unable to reach a resolution.

C:\Documents and Settings\pxm\Local Settings\Temporary Internet Files\OLK42C\Tanaka_ Request for Modification of Release Conditions_(PALIB1_2744280_2).DOC

3

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Kenneth M. Karas
October 27, 2005
Page 4

$10,000,000 personal recognizance bond, Sullivan's bond was secured only by a $5,000,000 lien on property located in Boca Raton.[3] *See* Exhibit D (relevant portions of the docket reports for Sullivan and Ebbers). Similarly, Worldcom CEO Bernie Ebbers – who was accused (and ultimately convicted) of orchestrating one of the biggest corporate frauds in American history – was released on a $10,000,000 bond secured only by his home and the surrounding property in Mississippi. *Id.*

Perhaps most instructive, however, are the conditions imposed on Gary Tanaka's co-defendant, Alberto Vilar. Although named in the same indictment and charged with the same offenses as Gary Tanaka, Alberto Vilar was released on a $10,000,000 personal recognizance bond ***secured only by $4,000,000 of collateral*** – or 40% of the bond amount. That Gary Tanaka was required to post ***double*** the amount of security as his co-defendant in order to be released from custody cannot reasonably be justified.

***Second***, the impact of these already severe financial conditions has been further exacerbated by the four-month delay sought and obtained by the Government. Because Mr. Tanaka is on 24-hour house arrest, he is unable to work and earn a living as he was prior to his arrest. Indeed, even if Mr. Tanaka were able to work, his U.S. company has effectively been destroyed by the Government's intervention -- despite indications from the court-appointed monitor that no clients of the U.S. company lost any of their funds entrusted to that company.[4] Moreover, the Government has taken similar steps to interfere with Amerindo's U.K. and Panama affiliates. *See* Exhibit C. Release of the cash portion of the security will better enable Gary Tanaka to support himself and his family, including the funding of his defense.

***Third***, even if the Court grants Gary Tanaka's request, the remaining security, along with the other conditions for release specified in the Appearance Bond, are more than sufficient to "reasonably assure the appearance" of Mr. Tanaka. Mr. Tanaka's $10,000,000 PRB is co-signed by his mother, sister and son, and is secured by $7,000,000 of collateral, also pledged by these same family members. Mr. Tanaka's travel documents have been confiscated and he subject to strict pre-trial supervision, including electronic monitoring and home detention. Given these safeguards – as well as the Court's obligation to impose the "least restrictive" combination of

---

[3] Although Sullivan ultimately pled guilty and cooperated with the Government, based on publicly available information, it appears that Sullivan was not cooperating with authorities at the time of his arraignment.
[4] The full report of the monitor, who was appointed by the court to oversee the U.S. company, is expected on December 1, 2005. At this time, upon information and belief, Amerindo Investment Advisors Inc. ("Amerindo US") has no remaining clients and the monitor is overseeing the process of winding down the business.

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Kenneth M. Karas
October 27, 2005
Page 5

conditions on Mr. Tanaka's release – retaining the $1,000,000 cash is simply unnecessary in this case.[5] *See* 18 U.S.C. §3142(c).

2. <u>The Conditions Of Gary Tanaka's Home Detention Are Unduly Restrictive</u>

As it currently stands, Mr. Tanaka must request permission from his pre-trial services officer each time wants to exit his son's apartment – whether to go to the doctor, visit his lawyers, or simply get some fresh air. Such severe restrictions on Mr. Tanaka's liberty are simply unnecessary to secure his appearance in this case. Accordingly, we ask that the Court modify conditions of Gary Tanaka's home detention to permit him to leave his son's apartment and travel within the Southern and Eastern Districts of New York Monday through Friday between the hours of 7:30 a.m. and 5:30 p.m., provided that he leave a message for his pre-trial services officer indicating his whereabouts prior to leaving the home.

As discussed above, a consideration of the relevant statutory factors clearly supports a relaxation of Mr. Tanaka's bail conditions, including the conditions governing his home detention. *See supra*, pp. 3-5. Moreover, a modest relaxation of the restrictions on Mr. Tanaka's liberty is warranted in light of the Government's continued attempts to delay this matter – attempts which so far have been successful. The Court itself has acknowledged the impact such delay can have on a criminal defendant, particularly where that defendant's liberty has been significantly restrained. *See* Exhibit A. Finally, even with the requested modification, the conditions of Gary's Tanaka's release – which include 24-hour electronic monitoring, confiscation of travel documents and severe financial penalties – are more than sufficient to address any risk of flight. *See supra*, p. 4. Indeed, since his release in the beginning of June, Gary Tanaka has fully complied with the requirements set forth in his Appearance Bond, including the terms of his home detention. There is no reason to believe he will not continue to abide by the conditions of his release even with this modest adjustment.[6]

---

[5] The remaining factors enumerated in Section 3142 also support modifying Mr. Tanaka's bail conditions. As an initial matter, it cannot seriously be contended that Mr. Tanaka's release poses any danger to the community. 18 U.S.C. § 3142(g)(4). Moreover, Mr. Tanaka has important ties to the New York community. Although Mr. Tanaka has family in the United Kingdom – in particular, a wife and young son, both of whom he misses dearly – he also has family in the United States, including his mother and sister in Los Angeles, and his son and daughter-in-law in Manhattan, with whom he is residing. In addition, for several years Mr. Tanaka has been receiving cancer treatment at Sloan-Kettering in New York, and he remains under the care of numerous doctors in the area. *Id*. at § 3142(g)(3)(B). Finally, Mr. Tanaka has no prior criminal record. *Id*. at § 3142(g)(3)(B).

[6] Notably, on June 27, 2005, the Court modified the conditions of Alberto Vilar's release to permit him to leave his home on the same weekday each week at a time and for a duration to be determined by Pre-Trial Services. The stated purpose of this modification was to allow Vilar to take care of certain of his needs without having to request explicit approval from Pre-Trial Services. *See* Exhibit E.

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Kenneth M. Karas
October 27, 2005
Page 6

## CONCLUSION

For the reasons stated herein, Gary Tanaka respectfully requests that the Court modify the conditions of his release and order that (1) the $7,000,000 in assets pledged to secure Gary Tanaka's $10,000,000 personal recognizance bond is sufficient, such that the $1,000,000 in cash may be released, and (2) Mr. Tanaka may travel within the Southern and Eastern Districts of New York Monday through Friday between the hours of 7:30 a.m. and 5:30 p.m., provided that he leave a message for his pre-trial services officer indicating his whereabouts prior to leaving the home. We further request that Your Honor docket this letter to make it part of the official court record.

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

/s/

Glenn C. Colton


KOBRE & KIM LLP


Steven G. Kobre

cc: AUSA Marc Litt
Jeffrey Hoffman, Esq.

C:\Documents and Settings\pxm\Local Settings\Temporary Internet Files\OLK42C\Tanaka_ Request for Modification of Release Conditions_(PALIB1_2744280_2).DOC

6