**EXHIBIT D**

Transcript April 7 2006.txt

12       THE COURT: Without getting into the blame game, if,
13  for example, the $1 million is all he has, for example, to pay
14  for his defense and that when the bail was set it could be
15  argued that people didn't anticipate in good faith that there
16  would be such a delay between indictment and when the trial
17  would actually take place, why isn't that enough?
18       MS. McEVOY: Because it is not relevant to the issue
19  of whether he poses a risk of appearance.
20       THE COURT: Then why wouldn't the other argument that
21  Mr. Colton makes, his compliance with the conditions thus far?
22  At the beginning stage, it is one thing; it is a bit of a leap
23  of faith. On the other hand, there is a bit of a track record,
24  Mr. Colton would say almost a year's worth of a track record.
25       MS. McEVOY: I think the case law and certainly the
            SOUTHERN DISTRICT REPORTERS, P.C.
                   (212) 805-0300

29

647rvilc
1  act itself contemplates a changed circumstance with respect to
2  his risk of appearance to be necessary in order for the
3  conditions to be changed. I don't think that has been
4  presented here.
5       The administration of justice taking longer because of
6  various motions and privilege issues I think is a separate
7  issue from whether or not there are changed circumstances with
8  respect to his risk of appearance in this case, which is what
9  the Bail Reform Act looks at to determine whether or not his
10 bail conditions should be modified.
11      THE COURT: Mr. Litt was whispering something to you.
12 No? Just whistling? Mr. Colton.
13      MR. COLTON: Two issues. First, the threshold
14 question. Ms. McEvoy posits that the defense must demonstrate
15 to the Court a set of changed circumstances. I don't see that
16 in 3142. 3142, specifically 3142(c)(3), says, "The judicial
17 officer may at any time amend the order to impose additional or
18 different conditions of release." It doesn't impose, as I read
19 it, unless I am missing something, a burden of proof on either
20 side. It merely asks the court to make the determination
21 earlier, in 3142(c), to impose the least restrictive conditions
22 to assure appearance.
23      THE COURT: Ms. McEvoy?
24      MS. McEVOY: I think defense counsel's argument that
25 compliance suggests that his bail conditions should be changed
            SOUTHERN DISTRICT REPORTERS, P.C.
                   (212) 805-0300

30

647rvilc
1  would apply in almost every case.
2       THE COURT: I am more focused on the first point. I
3  agree that that in and of itself would not justify a change.
4  As you point out, that would always be the case. The message
5  that it would send to people is behave yourself for a couple of

Page 17

Transcript April 7 2006.txt
```
 6  months, then get your bail conditions reduced so you can then
 7  flee and not pose so much of a cost to those who are putting up
 8  security for your bond.
 9          My view is that one changed circumstance is that the
10  trial has gone on, the trial has been delayed longer than
11  people expected.  In my view, again, I don't think there is
12  anything that contravenes the statute or Mr. Tanaka's
13  constitutional rights from that, but I don't know that it is
14  improper for the Court to take into account the delay in terms
15  of evaluating the bail conditions.
16          Moreover, as Mr. Tanaka suggests, more than suggests,
17  as he argues, at the risk perhaps of alienating those sitting
18  next to him at the same table, his bail conditions are more
19  stringent than those of his co-defendant.  I am not sure why
20  that at this point needs to be the case.  That is just as a way
21  of sending a message to Mr. Hoffman and Ms. Wolfe that I am not
22  going to entertain an application from them because I think Mr.
23  Vilar's conditions are right in any event.
24          MS. McEVOY:  As your Honor assessed, and certainly the
25  magistrate judge also assessed in setting the bail conditions
              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300
```
                                31
```
    647rvilc
 1  early on have not changed.  A determination has been made that
 2  $8 million is sufficient security and the least security that
 3  is necessary in order to ensure the defendant's appearance.
 4  The only thing that has changed since then is that the
 5  defendant has appeared, which is true, as your Honor noted, in
 6  a number of cases.  I think it is also pretty common for a
 7  trial date to be adjourned, and that also is not unique.
 8          If the factors are the same in terms of what the
 9  defendant's risk of appearance is from when your Honor
10  initially determined that that was the appropriate amount of
11  security, under 3142 the government doesn't see how that really
12  constitutes a changed circumstance.
13          THE COURT:  Where are you looking at the changed
14  circumstance?
15          MS. McEVOY:  That is the case law interpreting 3142.
16          THE COURT:  So when it says may at any time amend, it
17  is only if there is a change in circumstances?
18          MS. McEVOY:  Yes.
19          THE COURT:  What about another change in circumstance
20  from the standpoint of Mr. Tanaka might need the money to pay
21  for his defense?  Why isn't that a change in his circumstance
22  at least?  That is suggested to me as one of the reasons that
23  he would like the money freed up.
24          MS. McEVOY:  It also is suggested to your Honor that
25  the defendant would like the money to be freed up so he could
              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300
```
                                32

Transcript April 7 2006.txt

647rvilc

1  trade.
2         THE COURT: Maybe so he could afford his lawyers. He
3  is optimistic in his trading ability, I recognize that.
4         MS. McEVOY: There are a number of reasons why the
5  defendant may want that extra million dollars. But that,
6  again, is not the assessment. The assessment is whether $8
7  million is sufficient security or is required security to
8  assure the defendant's appearance.
9         THE COURT: Since I didn't set the bail, whose assets
10 are we talking about here, the 7 million?
11        MR. COLTON: Mr. Tanaka's son Mark, his sister, and
12 his elderly mother. There is probably no greater group of
13 moral suasion than that group. He is actually living with his
14 son Mark right now and sees him on a daily basis.
15        THE COURT: I am going to in part grant the request.
16 What I am going to do at this stage is reduce the cash amount
17 to $500,000. I am going to do so because I think that this
18 case has gone a little longer than could reasonably have been
19 anticipated and it has been represented to me that Mr. Tanaka
20 needs the money to help finance his defense. I think that is a
21 reasonable request.
22        I am not granting the request in its entirety, because
23 at this point, as I said, I don't want the trial to get delayed
24 longer than this fall.
25        In granting this request, though, in part, I want it

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

33

647rvilc

1  to be crystal clear I don't think that one of the changed
2  circumstances is any sort of dilatory conduct on behalf of the
3  government in its production of the discovery in this case or
4  its handling of the privileged matters.
5         I have said this before, I will say it again: I think
6  all attorneys on this case who have a well-earned reputation in
7  this community have been working very hard. That is apparent
8  to me even though I obviously don't see you all day-to-day. I
9  am impressed by the quality of the work. I am impressed by the
10 quantity of the work.
11        I don't think it has been fair to the extent the
12 government is suggesting a dilatory conduct on behalf of the
13 defense lawyers, and I don't think it is fair at all from what
14 I have heard to suggest that the government has been dilatory
15 at all.
16        It is absolutely true, as Mr. Barofsky says, that when
17 you are dealing with tens of thousands of pages of documents
18 and terabytes and gigabytes of computer data, some of which
19 come from a foreign country that involve encryption, that
20 involve foreign language, that involve technical difficulties
21 that arise from the quantity of the materials at issue here,
22 resource constraints are not bad faith. In any event, I think

Page 19