Exhibit H

3-9-06 hearing transcript.txt

1

```
     639HVILA
 1   UNITED STATES DISTRICT COURT
 1   SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 2
 3   UNITED STATES OF AMERICA,
 3
 4            v.                              05 Cr. 621 (KMK)
 4
 5   ALBERTO WILLIAM VILAR,
 5   GARY ALAN TANAKA,
 6
 6            Defendants.
 7
 7   ------------------------------x
 8
 8                                    New York, N.Y.
 9                                    March 9, 2006
 9                                    2:45 p.m.
10
10
11   Before:
11
12                 HON. KENNETH M. KARAS
12
13                                    District Judge
13
14                 APPEARANCES
14
15   MICHAEL J. GARCIA
15        United States Attorney for the
16        Southern District of New York
16   MARC O. LITT
17   DEIDRE A. MCEVOY
17        Assistant United States Attorneys
18
18   JEFFREY C. HOFFMAN
19   SUSAN C. WOLFE
19        Attorneys for Defendant Vilar
20
20   GLENN C. COLTON
21   STEVEN G. KOBRE
21        Attorneys for Defendant Tanaka
22
22
23
23
24
25
25
              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300
```

2

```
     639HVILA
 1            (In open court)
 2            THE DEPUTY CLERK:  United States of America v. Vilar
 3   and Tanaka, criminal cause for a motion.
 4            Please state your appearances.
 5            MR. LITT:  Marc Litt, along with Deirdre McEvoy,
 6   assistant U.S. attorneys, for the government.
 7            With us in the back are Neil Barofsky and Rhonda Jung,
 8   who are on the taint team, who have been reviewing documents
                          Page 1
```

```
                             3-9-06 hearing transcript.txt
12        very well represented and they can make an informed choice on
13        that.
14                All right.  Now let's take up the question of the
15        search.  The taint team can go, right, Mr. Litt, because they
16        have had enough?
17                MR. LITT:  They were here for the court.
18                MR. BAROFSKY:  Thank you, your Honor.
19                THE COURT:  Thank you very much.
20                With respect to the search, Mr. Litt, your one and
21        only witness said that pursuant to the first paragraph of the
22        warrant he thought that the inspectors conducting the search
23        could take anything with writing on it.
24                Bottom line, if that is what the supervisor thought,
25        how could it be viewed as anything other than a license to
                          SOUTHERN DISTRICT REPORTERS, P.C.
                                    (212) 805-0300
                                                                        42
          639HVILA
 1        take, as he said, anything with writing on it, regardless of
 2        how you nuance it, corporate records versus business records,
 3        and how I am supposed to read one phrase next to the other?
 4        The bottom line is, the person in charge interpreted it the way
 5        he interpreted it.
 6                MR. LITT:  First of all, the court, I believe, has to
 7        look at the warrant objectively.  Secondly --
 8                THE COURT:  Aren't I also supposed to look at how it
 9        was carried out?
10                MR. LITT:  There is no evidence that it was carried
11        out in the way that Inspector Fider indicated that paragraph
12        could be interpreted.  The evidence was to the contrary, that
13        the inspectors were throughout -- they had the rider in their
14        hands, they were looking at the rider, they were consulting the
15        rider, they were consulting with Inspector Frederico and
16        others.  And if everybody had interpreted it that way, none of
17        that would have been necessary.
18                THE COURT:  Inspector Fider said that he was one of
19        the people to whom those conducting the search could ask
20        questions, and if some inspector came up to him and said, I've
21        got two documents, I've got this one which is blank and this
22        one which has some handwriting on it, which one can I take,
23        which admittedly is a silly question, based on what Inspector
24        Fider said, he said, you can take the one that has the
25        handwriting on it but leave the blank one behind.  That was his
                          SOUTHERN DISTRICT REPORTERS, P.C.
                                    (212) 805-0300
                                                                        43
          639HVILA
 1        perception of the first paragraph of the warrant.
 2                I am just trying to understand.  If any inspector came
 3        to him and asked the question, why wouldn't one expect, because
 4        he didn't give any details as to what questions were asked or
 5        what his answers were, why wouldn't one expect his answer to be
 6        if it's got writing on it, take it?
 7                MR. LITT:  That was his testimony sitting here on that
 8        day, December 14.
 9                There was no evidence that that is the advice that he
10        gave anybody who came to him.  As a matter of fact, there was
11        testimony, I think the weight of the testimony, that he
12        referred most to Inspector Frederico, or at least he said if he
13        couldn't answer the question -- now, look, that wouldn't square
14        with his testimony that if he couldn't answer the question, he
15        referred the inspector to Inspector Frederico.  If it was that
16        simple, that if it had writing, you took it, then he wouldn't
                                      Page 20
```

3-9-06 hearing transcript.txt

```
17   have had to refer anybody to anybody.  If that is how he was
18   instructing the other inspectors to interpret the first
19   paragraph of the warrant, there wouldn't have been any
20   questions.
21            THE COURT:  You will agree with me that the burden
22   here is ultimately yours, right?
23            MR. LITT:  Yes.
24            THE COURT:  You made a choice not to call your case
25   agent, Inspector Frederico, right?
                  SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
```

44

```
     639HVILA
1            MR. LITT:  Right.
2            THE COURT:  There was a fight over whether or not you
3    were required to have her testify, and I, based on the case law
4    I reviewed, said you didn't have to.  But that doesn't mean
5    that by not calling her somehow you have satisfied your burden.
6            You admit it is your burden here.  The only witness
7    who testified said his interpretation of the warrant was, if
8    it's got writing, it can go.  I think those were even his
9    words.
10           It may very well be that Inspector Frederico had a
11   different interpretation of that first paragraph, but we don't
12   know that.  So to say that he referred people to Inspector
13   Frederico doesn't really answer the question as to what the
14   searching investigators were being told, right?
15           MR. LITT:  No, but I am responding --
16           THE COURT:  You are saying he told them go to
17   Inspector Frederico, but we don't know what she told him.  For
18   all we know she said the same thing, if it's got writing on it,
19   it goes.  We don't know.
20           MR. LITT:  That is true, there is no evidence in the
21   record on that.
22           THE COURT:  That is my point.  You would agree with me
23   that if it's got writing on it, it goes, that would probably
24   not satisfy the particularity requirement.
25           MR. LITT:  Yes.  If anything was taken under that --
                  SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
```

45

```
     639HVILA
1    that couldn't be justified under any other provision of the
2    warrant except for the including but not limited to of
3    paragraph one, yes.
4            THE COURT:  I guess I am just trying to understand
5    then what evidence there is in the record that would suggest
6    that the other inspectors didn't have the same mind frame.  The
7    idea that they carried the warrant around with them might
8    support the inference, but of course they are going to carry
9    the warrant around with them.  No inspector reasonably thinks
10   they can just go into an office, take a big cart and just dump
11   the file cabinet into the bin.  Nobody believes that, not in
12   this day and age.
13           So maybe, at best, what they are doing is trying to
14   determine what kind of writing it is.  But not based on
15   Inspector Fider's testimony.  So what evidence is there in the
16   record that the inspectors had a more narrow view of that first
17   paragraph?
18           MR. LITT:  Part of the evidence in the record is the
19   quantity of documents that were taken, 60 to 70 percent, that
20   30 to 40 percent were left behind.
21           THE COURT:  Do we know that the 30 or 40 percent that
                             Page 21
```

```
                        3-9-06 hearing transcript.txt
22       was left behind have writing on them?
23                MR. LITT:  No, that would be an inference that the
24       court would have to draw.  There was no evidence presented one
25       way or the other about whether there was writing on those
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                  (212) 805-0300
                                                                      46
         639HVILA
 1       documents or not.
 2                THE COURT:  Your tone is a little sarcastic, but my
 3       question is a serious one.  If they left behind reams of blank
 4       paper, it would be accurate to say we left behind 30 percent of
 5       the paper that we saw, but it doesn't necessarily tell us
 6       anything about why things were left behind.
 7                MR. LITT:  Well, there was evidence that some of the
 8       things that were left behind were certainly personal items.
 9                THE COURT:  Like a photograph I think was the example,
10       right?
11                MR. LITT:  It went beyond that as well.
12                THE COURT:  Such as?
13                MR. LITT:  I thought he said more than photographs.  I
14       would have to look at the testimony.
15                THE COURT:  I recall him saying photographs.  So they
16       left behind some personal photographs, and they may have left
17       behind other bulky items that could also be part of the
18       assessment as to what they left behind.
19                By the way, did the government turn over any inventory
20       of what was actually seized?
21                MR. LITT:  Yes.
22                THE COURT:  All right.  It was a little unclear from
23       the papers as to whether or not it was an inventory of what
24       wasn't seized.
25                MR. LITT:  Both.
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                  (212) 805-0300
                                                                      47
         639HVILA
 1                THE COURT:  I understand that.  I understand both.
 2                What about the point that the defense makes, that in
 3       order to create that inventory you have for Fourth Amendment
 4       purposes searched something that you may not have had authority
 5       to do?
 6                MR. LITT:  There was authority to search the entire
 7       office --
 8                THE COURT:  Right.
 9                MR. LITT:  -- to see what was seizable under the terms
10       of the warrant, and so the inspectors were entitled to look in
11       those file cabinets.
12                The testimony was all they did was get an overview of
13       what was there to make a list so they knew what was left
14       behind.  But there is no question that the inspectors had the
15       authority to search the premises, including those file
16       cabinets.
17                THE COURT:  Of course.  I understand what the warrant
18       provides.
19                All right.  Those are the questions I had.  I don't
20       know who wants to go first on this issue because obviously
21       there are common issues here.
22                Let me just clarify one thing.  Are you relying on the
23       All Records Exception, Mr. Litt?
24                MR. LITT:  We do in part as an alternative argument,
25       yes.  We briefed that in the first go round.
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                    Page 22
```