Exhibit M

```
                      8-9-06 Hearing transcript.txt
                                                                      163
       689ztan1
   1   UNITED STATES DISTRICT COURT
   1   SOUTHERN DISTRICT OF NEW YORK
   2   ------------------------------x
   2
   3   UNITED STATES OF AMERICA
   3
   4              v.                        05 Cr. 621 (KMK)
   4
   5   ALBERTO VILAR                        Hearing
   5   GARY TANAKA,
   6                    Defendant.
   6   ------------------------------x
   7                                        New York, N.Y.
   7                                        August 9, 2006
   8                                        9:45 a.m.
   8   Before:
   9
   9           KENNETH M. KARAS
  10                                        District Judge
  10
  11   MICHAEL J. GARCIA
  11   United States Attorney for the
  12   Southern District of New York
  12        One St. Andrew's Plaza
  13        New York, N.Y.  10007
  13   DEIRDRE A. McEVOY
  14   MARC O. LITT
  14        Assistant United States Attorneys
  15
  15   JEFFREY C. HOFFMAN, ESQ.
  16   Attorneys for Defendant Vilar
  16        Hoffman & Pollik, LLP
  17        260 Madison Avenue, 22nd Floor
  17        New York, New York  10016
  18        (212) 679-2900
  18
  19   GLENN C. COLTON, ESQ.
  19   Attorney for Defendant Tanaka
  20        Wilson Sonsini Goodrich & Rosati (NYC)
  20        12 East 49th Street, 30th Floor
  21        New York, New York  10017
  21        (212) 999-5804
  22
  22   STEVEN G. KOBRE, ESQ.
  23   Attorney for Defendant Tanaka
  23        Kobre & Kim LLP
  24        800 Third Avenue
  24        New York, New York  10022
  25        (212) 488-1200
                   SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
                                                                      164
       689ztan1
   1        (Hearing resumed)
   2        THE DEPUTY CLERK:  All rise.
   3        MS. McEVOY:  May I proceed, your Honor?
   4        THE COURT:  You may.  The record will note that
   5   everyone everybody is now here  Mr. Kobre was standing up to
   6   reaffirm that.
   7        MR. HOFFMAN:  Good morning, your Honor.  Thank you.  I
   8   apologize.
                                 Page 1
```

```
                    8-9-06 Hearing transcript.txt
22          THE COURT:  Of course she has.  She looked at them
23   yesterday.  Let's get to the punch line.  We have been doing
24   this for an hour.
25          MS. HOFFMAN:  This is the end.
               SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                              208
     6896TAN2                    Fraterrigo - recross
 1   Q.  Do you remember seeing some information in the MLAT request
 2   talking about eight victims who had invested $30 million?
 3          MS. McEVOY:  Objection, beyond the scope.
 4          THE COURT:  It is beyond the scope.  Sustained.
 5          MS. HOFFMAN:  I have no further questions.
 6          THE COURT:  How long do you have, Mr. Kobre?  It is
 7   roughly time for our mid-morning break, unless you will be five
 8   or 10 minutes.
 9          MR. KOBRE:  I think we should take a break.  I think I
10   will be less than 20 minutes.
11          THE COURT:  I have a 12:30 meeting that I can't get
12   out of.  Our lunch break will be about an hour and a half that
13   is why I want to take a break now.  Let's take a break and we
14   will finish up with the cross.  Let's take 10 minutes.
15          (Recess)
16   RECROSS-EXAMINATION
17   BY MR. KOBRE:
18   Q.  Ms. Fraterrigo, you testified on redirect examination to
19   the fact that you had a conversation with the government
20   yesterday prior to the commencements of your redirect, correct?
21   A.  Yes.
22   Q.  How long was that conversation?
23   A.  I believe it was 10 -- 10 minutes, 15 minutes.
24   Q.  Who was present?
25   A.  The assistance Deirdre McEvoy, Marc Litt and also Bill
               SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                              209
     6896TAN2                    Fraterrigo - recross
 1   Johnson.
 2   Q.  And then you said there was another conversation last night
 3   for about an hour and a half?
 4   A.  Yes.
 5   Q.  Who was present during that conversation?
 6   A.  Deirdre McEvoy and Marc Litt.
 7   Q.  Was there any one else there besides these assistants
 8   assigned to this case?
 9   A.  Yes.
10   Q.  One of the things that Ms. McEvoy asked you was the
11   questions she was going to ask you today?
12   A.  I don't think she specifically said she was going to ask me
13   specific questions.
14   Q.  How about general, did she tell you what she was going to
15   discuss?
16   A.  Yes.  I think she just mentioned some things.
17   Q.  I take it as a given that you understand that you have an
18   obligation in this hearing to testify truthfully, correct?
19   A.  Yes.
20   Q.  Earlier do you recall testifying today that in your view
21   reason to be concerned is equivalent to the same thing as
22   probable cause, do you recall saying that this morning?
23   A.  Yes.
24   Q.  That statement that you just made is patently false, isn't
25   it?
               SOUTHERN DISTRICT REPORTERS, P.C.
                          Page 22
```

```
                    8-9-06 Hearing transcript.txt
                           (212) 805-0300
                                                                     210
     6896TAN2                    Fraterrigo - recross
 1   A.   No.
 2   Q.   Untrue?
 3   A.   No.
 4   Q.   Do you recall testifying on July 10 in this hearing?
 5   A.   Yes.
 6   Q.   Do you recall being asked the following questions about the
 7   exact same subject matter and giving the following answers --
 8   this is a question -- this is on cross-examination, I believe,
 9   by Mr. Hoffman, July 10, page 18, line seven.
10   "Q. You understood when you signed this sworn affidavit, did
11   you not, that there is a significant difference between the
12   standard described here quote, unquote reason to be concerned
13   as opposed to much higher standard probable cause?
14   "A. That is correct.
15   "Q. So you knew that the reason you used the term reason to be
16   concerned that other investors are likewise being victimized by
17   Vilar and Tanaka was because you didn't have probable cause to
18   believe that other victims -- excuse me -- that other investors
19   were being likewise victimized by Vilar and Tanaka, correct?
20   "A. I felt this was a reason to be concerned as it is worded in
21   the affidavit.
22   "Q. Had you had probable cause to believe that other investors
23   were being victimized had you -- had you had information that
24   went to that higher level then you would have used that term if
25   you had it, correct?
                      SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                     211
     6896TAN2                    Fraterrigo - recross
 1   "A. Correct."
 2          Isn't it the case that just on July 10 you recognized
 3   the fact that there is a difference between reason to be
 4   concerned and probable cause?
 5   A.   Yes.   I think what it is that in my affidavit there are
 6   certain statements that I made that are not -- probable cause
 7   and reason to be concerned are interchangeable.  That is what I
 8   understand.  What the series of questions from Mr. Hoffman was
 9   specifically naming particular items that were in the
10   affidavit.  He was asking me about particular items that were
11   in the affidavit.
12   Q.   Ms. Fraterrigo, the question that he asked you: "You
13   understood when you signed this sworn affidavit, did you not,
14   there is a significant difference between the standard
15   described here reason to be concerned as opposed to much higher
16   standard probable cause?"  And you answered, "Yes, that's
17   correct."  Are you saying that answer you gave is not right, is
18   not accurate?
19   A.   I -- I am not saying it is not accurate.  I am just saying
20   I didn't clarify it and I clarified it yesterday and I
21   clarified it today.
22   Q.   And your testimony is this morning when you actually
23   testified on redirect examination in questions from Mr. McEvoy
24   that reason to be concerned in your mind was equivalent to
25   probable cause, your testimony is that is somehow consistent
                      SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                     212
     6896TAN2                    Fraterrigo - recross
 1   with your testimony on July 10?
 2          MS. McEVOY:  I don't believe she testified to that on
                                 Page 23
```

```
                        8-9-06 Hearing transcript.txt
 3    redirect.
 4              THE COURT:  It was on recross.
 5              MR. KOBRE:  I am sorry.
 6    A.  Yes.
 7    Q.  Those two testimonies are consistent, is that what your
 8    testimony is?
 9    A.  With what?
10    Q.  From July 10 and what you said this morning?
11    A.  From what I said this morning is that reason to believe and
12    probable cause, that is what caused the confusion with my
13    testimony with Mr. Hoffman.  He was asking me about particular
14    items that were in the affidavit and asking me to identify
15    where specifically was in the affidavit.  If there was a fact
16    or a statement, where is it.  And I told him it wasn't
17    specifically mentioned in the statement.  I told him there was
18    reason to believe probable cause, reason to be concerned that
19    there are other investors being defraud.
20    Q.  The last question and I will move on from this topic.  My
21    recollection is -- I confess I don't have the written record.
22    My recollection is you were asked about two different things
23    this morning about reason to believe and you were also asked
24    specifically about reason to be concerned.  In the context of
25    reason to be concerned, your answer was in your mind it was the
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300
```

213

```
      6896TAN2                     Fraterrigo - recross
 1    equivalent of probable cause?
 2    A.  Yes.
 3    Q.  Is that the position you are taking here at this time, is
 4    that in your mind reason to be concerned and probable cause are
 5    equivalent?
 6    A.  Yes.
 7    Q.  You also testified this morning about there being a
 8    negative cash balance.  Do you recall that testimony?
 9    A.  Yes.
10    Q.  And you said that was one of the reasons that led to your
11    belief there was probable cause?
12    A.  It was one of the inferences.  I think it was in the
13    complaints.
14    Q.  It wasn't in the affidavit, correct?
15    A.  I don't believe -- I can't recall right now.  I think it
16    was in the complaints.
17    Q.  You also recall testifying this morning that the two
18    victims in this case were personal friends -- I think what you
19    said "of theirs" -- meaning the defendants, I assume?
20    A.  Yes.
21    Q.  Isn't it correct that there was no evidence that the two
22    victims were personal friends of Mr. Tanaka?
23              MS. McEVOY:  Objection, scope.
24              THE COURT:  Overruled.  Go ahead.
25    A.  My understanding they were personal friends of both.  They
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300
```

214

```
      6896TAN2                     Fraterrigo - recross
 1    had a closer relationship with Vilar but they knew both Gary
 2    Tanaka and Mr. Vilar.
 3    Q.  They knew them, is that right?
 4    A.  They had a friendship, yes.
 5    Q.  Do you recall whether the affidavit in this case alleges
 6    that both of the investors or victims in this case as alleged
 7    were friends with Mr. Tanaka?
                                 Page 24
```