**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) ) ) S3 05 Cr. 621 (KMK) |
| against | ) ) ) ECF CASE |
| ALBERTO WILLIAM VILAR, a/k/a "Albert Vilar," and GARY ALAN TANAKA, | ) ) ) |
| Defendants. | ) ) ) |

## AFFIDAVIT OF EUGENE LICKER

STATE OF NEW YORK     )
                             ) ss.:
COUNTY OF NEW YORK    )

Eugene Licker, being duly sworn, deposes and says:

1.      I am counsel for Amerindo Investment Advisors Inc., a California corporation, frequently referred to in various proceedings as Amerindo U.S. I submit this affidavit at the request of counsel for Gary Tanaka to set forth certain information for the Court's consideration with regard to certain motions pending before it. The information set forth herein is either personally known to me or gleaned from a review of Amerindo U.S. information during the course of my representation of it.

2.      At the outset, I wish to stress that Amerindo U.S. has, from the start, been committed to cooperating with the government's ongoing investigation, and it remains so to this day. Equally, Amerindo U.S. cooperates, and intends to continue to do so, with efforts by Messrs. Tanaka and Vilar to understand the charges against them and prepare for their defense. Neither side has indicated to me that Amerindo U.S. should do anything to the contrary, and I would be surprised if either side were to do so. I thus am providing this affidavit because I was requested to do so and for the benefit of the Court. It would not be warranted to draw any inference about the motivation for my submission of this affidavit other than what is set forth herein.

3.      Amreindo U.S. was an investment advisor. As such, it advised institutional clients and mutual funds. The number of institutional clients ebbed and flowed but as of May 2005, there were somewhat less than two dozen. As of May 2005, Amerindo U.S. managed four funds: Amerindo Technology Fund (the sole portfolio of Amerindo Funds Inc., which was the client of Amerindo U.S.), Amerindo Internet

Growth Fund (as sub-advisor to Amerindo Advisors (Cayman) Ltd.), Emerging

Technology Portfolio, and Amerindo Internet Fund plc.

4.      Although I am aware of allegations with regard to what certain individuals

allegedly were told, as far as Amerindo U.S. is concerned, it did not have any clients

other than those identified immediately above and thus did not advise individuals.

5.      These accounts were not "custodied" with Amerindo U.S.  Rather, each

account was maintained in the client's name at a financial institution.  Although

Amerindo U.S. had, for certain accounts, the authority to direct securities trades, only the

client had the right to withdraw or transfer money or securities from the client's account.

6.      In May 2003, the SEC (through its San Francisco office) served an

informal request for documents.  They served another such request in December 2003.

Those requests are attached.  In response, after some negotiation to try to narrow the

breadth of the requests and manage the burden of compliance, Amerindo provided

thousands of pages of documentation.  In January 2005, Amerindo U.S. was informed by

the SEC office in San Francisco that it had closed its investigation and would take no

action.  A copy of that letter is attached.

7.      After execution of the search warrant and the arrest of the principals of

Amerindo U.S., a number of clients sent notices of termination to the Company.  Indeed,

shortly after that day, the Company reached out to its remaining clients to inform them

that it would waive the termination notice period (30 to 90 days depending on the

contract).  Although ultimately all of the clients terminated, there were a number –

perhaps a half dozen or so – who did so seemingly reluctantly and only after repeated

prompting from the Company.

2

8.      I am not aware of any client, according to the books and records of

Amerindo U.S., who has complained of any conduct like that described in the indictments

of the principals of Amerindo U.S. or in the SEC complaint, as amended, against

Amerindo U.S. and others.

9.      To the best of my recollection, on May 26, 2005, the day that the search

warrant was executed, I spoke to representatives of the SEC who were present at

Amerindo U.S.'s San Francisco office seeking documents.  It is possible that the

conversation took place the following day, but my recollection is that the conversation

took place on May 26, 2005.  On one of those days, a team of SEC examiners appeared at

the New York office and began to conduct an examination.

_____
Eugene Licker

Sworn to before me this 29th
day of August, 2006

_____
Notary Public

ANTOINETTE PEPPER
Notary Public, State of New York
No. 01PE4973633
Qualified in Nassau County
Commission Expires January 7, 2007

NY526856.1

**ATTACHMENT 1**



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**SAN FRANCISCO DISTRICT OFFICE**
44 Montgomery Street
SUITE 1100
SAN FRANCISCO, CALIFORNIA 94104

DIRECT DIAL: (415) 705-2480
FAX NUMBER: (415) 705-2501

December 16, 2003

<u>**VIA FAX (212) 536-3901 AND FIRST CLASS MAIL**</u>

Custodian of Records
Amerindo Investment Advisors Inc.
C/o Eugene R. Licker
Kirkpatrick & Lockhart LLP
599 Lexington Avenue
New York, New York 10022

Re:  <u>Amerindo Investment Advisors Inc., SF-02656-A</u>

Dear Mr. Licker:

This office is conducting an informal inquiry into the above referenced matter to determine whether certain provisions of the federal securities laws have been violated.

Accordingly, we request that your client voluntarily provide us with the documents and information that are more fully described on the enclosed "Attachment." For your convenience, you may produce photocopies of the requested documents. If you do produce copies, however, you should maintain the originals. We will notify you if and when such originals are required. The materials should be sent to the undersigned at:

U.S. Securities and Exchange Commission
44 Montgomery Street, Suite 1100
San Francisco, CA  94104
Attention: Victor W. Hong

Documents produced in response to our request should be accompanied by a list briefly identifying each document or other material and the item or items of the request to which it relates. Please also indicate whether a diligent search has been made for the requested documents and whether you have produced all of the documents called for by the request. We ask that if for any reason any of the requested documents are not furnished, that you list and indicate the location of such materials and the reason for non-production.

In addition, if any requested document is withheld because of a claim of attorney client privilege, you should identify: (a) the attorney and client involved; (b) all persons or entities

Custodian of Records
December 16, 2003
Page 2

shown on the document to have received or been sent the document; (c) all persons or entities known to have been furnished the document or informed of its substance; (d) the date of the document; and (e) the subject matter of the document.

This investigation is confidential and should not be construed as an indication by the Commission or its staff that any violations of the law have occurred, nor should it be considered a reflection upon any person, entity or security.

Enclosed please find SEC Form 1661 entitled "Supplemental Information for Regulated Entities Directed to Supply Information Other than Pursuant to a Commission Subpoena."

I have also enclosed SEC Form 1662 entitled "Supplemental Information For Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena." It describes certain considerations involved in providing information to the staff, including the staff's "routine uses" of information.

The materials should be sent to the undersigned no later than **January 9, 2004** at the address indicated above.

If you have any questions relating to this request please contact the undersigned at (415) 705-2480. The office's general telephone number is (415) 705-2500 and the fax number is (415) 705-2501.


Very truly yours,


Victor W. Hong
Staff Attorney


Enc.    Form 1661
        Form 1662
        Attachment

## ATTACHMENT

In the Matter Amerindo Investment Advisors Inc., SF-02656-A
December 16, 2003

1.    DEFINITIONS AND INSTRUCTIONS.

"CONCERNING" means relating to, referring to, describing, evidencing, or constituting.

"DOCUMENT" or "DOCUMENTS" means any and all records and information in the possession, custody or subject to YOUR control, whether drafts or finished versions, originals or annotated or non-identical copies, however and by whomever created, produced or stored (manually, mechanically, electronically or otherwise) including, but not limited to, books, papers, files, notes, account statements, confirmations, reports, correspondence, electronic files, electronic mail, memoranda, ledger sheets, reports, telegrams, telexes, telephone bills, messages or logs, notes or minutes of conversations or meetings, contracts, agreements, calendars, datebooks, diaries, computer programs, records of billings, checks, receipts, wire transfers, drafts for money, records of payment, magnetic tape, tape recordings, disks, diskettes, diskpacks or other electronic media, microfilm, microfiche, and other storage devices.

"AMERINDO" means Amerindo Investment Advisors Inc., its related corporations, affiliates, partnerships, subsidiaries, predecessors, successors, principals, officers, directors, employees, attorneys, accountants, agents, parents, successors and anyone acting on behalf of the company with express, implied, or apparent authority to do so.

"AMERINDO PANAMA" means Amerindo Investment Advisors, Inc., a Panamanian corporation, its related corporations, affiliates, partnerships, subsidiaries, predecessors, successors, principals, officers, directors, employees, attorneys, accountants, agents, parents, successors and anyone acting on behalf of the company with express, implied, or apparent authority to do so.

The time period for the requested documents is from July 1, 1998 to the present.

## DOCUMENTS TO BE PRODUCED.

1.    All DOCUMENTS CONCERNING communications with any and all underwriters that allocated shares to AMERINDO or AMERINDO PANAMA in connection with any initial public offerings or secondary offerings by such underwriters.

2.    All DOCUMENTS CONCERNING any proposed or final agreements, whether formal or informal, pertaining to the allocation of shares to AMERINDO or AMERINDO PANAMA in connection with any initial public offerings or secondary offerings.

3.    All DOCUMENTS CONCERNING the commissions, markups and/or markdowns paid by AMERINDO or AMERINDO PANAMA to any and all underwriters that allocated

Custodian of Records
December 16, 2003
Page 4

shares to AMERINDO or AMERINDO PANAMA in any initial public offerings or secondary offerings by such underwriters.

4.    All DOCUMENTS CONCERNING after-market support and indications of interest provided by AMERINDO or AMERINDO PANAMA to underwriters in which such underwriters allocated shares to AMERINDO or AMERINDO PANAMA in any initial public offering or secondary offering.

5.    All DOCUMENTS CONCERNING AMERINDO's decision to purchase securities on the open market for its mutual funds where initial public offering or secondary offering shares of such issuer had been allocated by AMERINDO to AMERINDO PANAMA, including without limitation, all notes, memoranda, due diligence, analyses, valuations, communications or negotiations with the offerings' respective underwriters.

6.    All DOCUMENTS CONCERNING the meetings of AMERINDO's Board of Directors and/or any of its committees, including, but not limited to, minutes (and exhibits thereto), agendas, notes, resolutions and all DOCUMENTS prepared for, provided, distributed or displayed in connection with any such meeting.

7.    All DOCUMENTS prepared for, or provided to, the Board of Directors of AMERINDO CONCERNING the private placement securities held by any of the funds advised by AMERINDO.

8.    DOCUMENTS sufficient to identify each partnership or mutual fund in which AMERINDO or its officers, directors or employees had a beneficial interest by name of partnership or fund, dollar amount invested, date of purchase (and of sale, if applicable), number of shares or units owned, purchased (and sold, if applicable).

9.    All DOCUMENTS CONCERNING any purchases or sales made by AMERINDO, or for which AMERINDO made any investment decisions, of securities issued by companies in private placement transactions, or pursuant to initial public offerings, whose securities were also purchased or sold by any of the funds advised by AMERINDO.

10.    All DOCUMENTS CONCERNING AMERINDO's implementation of any procedures set forth in exemptive orders under Sections 6(c) and 17(d) of the Investment Company Act and Rule 17d-1 thereunder.

11.    All DOCUMENTS CONCERNING any requests made by AMERINDO to the Securities and Exchange Commission for no-action relief or for an exemptive order under Sections 6(c) and 17(d) of the Investment Company Act, and Rule 17d-1 thereunder, with respect to transactions entered into by any AMERINDO or any of mutual funds advised by AMERINDO.

Custodian of Records
December 16, 2003
Page 5

12.     All DOCUMENTS CONCERNING securities purchased by any affiliated persons of, and/or officers, directors or employees of, AMERINDO where the same series of security was also purchased by or on behalf of any of mutual funds advised by AMERINDO, including without limitation, all DOCUMENTS CONCERNING offering memoranda, term sheets, agreements, due diligence, analyses, valuations, pricing of shares, lists of investors, flow of funds between the issuer and AMERINDO, communications or negotiations with the issuers.

**ATTACHMENT 2**

*T pages*

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
SAN FRANCISCO DISTRICT OFFICE
44 Montgomery Street
SUITE 1100
SAN FRANCISCO, CALIFORNIA 94104

DIRECT DIAL: (415) 705-2480
FAX NUMBER: (415) 705-2501

May 6, 2003

**VIA FAX (212) 371-6988 AND FIRST CLASS MAIL**

Custodian of Records
Amerindo Investment Advisors Inc.
C/o Alberto Vilar
399 Park Avenue, 22nd Floor
New York, New York 10022

Re: Amerindo Investment Advisors Inc., SF-02656-A

Dear Mr. Vilar:

This office is conducting an informal inquiry into the above referenced matter to determine whether certain provisions of the federal securities laws have been violated.

Accordingly, we request that your firm voluntarily provide us with the documents and information that are more fully described on the enclosed "Attachment." For your convenience, you may produce photocopies of the requested documents. If you do produce copies, however, you should maintain the originals. We will notify you if and when such originals are required. The materials should be sent to the undersigned at:

U.S. Securities and Exchange Commission
44 Montgomery Street, Suite 1100
San Francisco, CA 94104
Attention: Victor W. Hong

Documents produced in response to our request should be accompanied by a list briefly identifying each document or other material and the item or items of the request to which it relates. Please also indicate whether a diligent search has been made for the requested documents and whether you have produced all of the documents called for by the request. We ask that if for any reason any of the requested documents are not furnished, that you list and indicate the location of such materials and the reason for non-production.

In addition, if any requested document is withheld because of a claim of attorney client privilege, you should identify: (a) the attorney and client involved; (b) all persons or entities shown on the document to have received or been sent the document; (c) all persons or entities

Custodian of Records
May 6, 2003
Page 2

known to have been furnished the document or informed of its substance; (d) the date of the document; and (e) the subject matter of the document.

This investigation is confidential and should not be construed as an indication by the Commission or its staff that any violations of the law have occurred, nor should it be considered a reflection upon any person, entity or security.

Enclosed please find SEC Form 1661 entitled "Supplemental Information for Regulated Entities Directed to Supply Information Other than Pursuant to a Commission Subpoena."

I have also enclosed SEC Form 1662 entitled "Supplemental Information For Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena." It describes certain considerations involved in providing information to the staff, including the staff's "routine uses" of information.

The materials should be sent to the undersigned no later than **May 20, 2003** at the address indicated above.

If you have any questions relating to this request please contact the undersigned at (415) 705-2480. The office's general telephone number is (415) 705-2500 and the fax number is (415) 705-2501.

Very truly yours,

Victor W. Hong
Staff Attorney

Enc.    Form 1661
        Form 1662
        Attachment

**ATTACHMENT**
In the Matter Amerindo Investment Advisors Inc., SF-02656-A
May 6, 2003

I.    DEFINITIONS AND INSTRUCTIONS.

"CONCERNING" means relating to, referring to, describing, evidencing, or constituting.

"DOCUMENT" or "DOCUMENTS" means any and all records and information in the possession, custody or subject to YOUR control, whether drafts or finished versions, originals or annotated or non-identical copies, however and by whomever created, produced or stored (manually, mechanically, electronically or otherwise) including, but not limited to, books, papers, files, notes, account statements, confirmations, reports, correspondence, electronic files, electronic mail, memoranda, ledger sheets, reports, telegrams, telexes, telephone bills, messages or logs, notes or minutes of conversations or meetings, contracts, agreements, calendars, datebooks, diaries, computer programs, records of billings, checks, receipts, wire transfers, drafts for money, records of payment, magnetic tape, tape recordings, disks, diskettes, diskpacks or other electronic media, microfilm, microfiche, and other storage devices.

"ACCOUNT DOCUMENTS" mean:

a.    All account opening and closing documentation, account agreements, margin agreements, trading authorizations, guarantees of account, and powers of attorney and any other materials granting or relating to control over the accounts; and

b.    For the period from the opening of the account through the present, all monthly or other periodic account statements.

"AMERINDO" means Amerindo Investment Advisors Inc., its related corporations, affiliates, partnerships, subsidiaries, predecessors, successors, principals, officers, directors, employees, attorneys, accountants, agents, parents, successors and anyone acting on behalf of the company with express, implied, or apparent authority to do so.

"AMERINDO PANAMA" means Amerindo Investment Advisors, Inc., a Panamanian corporation, its related corporations, affiliates, partnerships, subsidiaries, predecessors, successors, principals, officers, directors, employees, attorneys, accountants, agents, parents, successors and anyone acting on behalf of the company with express, implied, or apparent authority to do so.

The time period for the requested documents is from July 1, 1998 to the present.

DOCUMENTS TO BE PRODUCED.

1.  All ACCOUNT DOCUMENTS for the accounts of clients of AMERINDO PANAMA.

2. Documents sufficient to identify: (a) all clients of AMERINDO PANAMA; and (b) all persons located outside the United States whose accounts are held at AMERINDO PANAMA.

3. For each client of AMERINDO PANAMA that consists of a trust, corporation, partnership, or other entity, documents sufficient to identify the beneficial owners, beneficiaries, officers, directors and limited partners of such entity.

4. All correspondence between AMERINDO and any broker-dealer CONCERNING the allocation of shares of any initial public offerings to any client account of AMERINDO PANAMA.

5. All correspondence between AMERINDO PANAMA and any broker-dealer CONCERNING the allocation of shares of any initial public offerings to any client account of AMERINDO PANAMA.

6. All correspondence between AMERINDO and the clients of AMERINDO PANAMA.

7. All correspondence between AMERINDO PANAMA and the clients of AMERINDO PANAMA.

8. All correspondence between AMERINDO and AMERINDO PANAMA regarding the clients of AMERINDO PANAMA.

**ATTACHMENT 3**



UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
SAN FRANCISCO DISTRICT OFFICE
44 Montgomery Street
SUITE 2600
SAN FRANCISCO, CALIFORNIA 94104

DIRECT DIAL: (415) 705-2350
FAX NUMBER: (415) 705-2501

January 14, 2005

VIA FAX (212) 536-3901 AND FIRST CLASS MAIL

Richard Marshall, Esq.
Kirkpatrick & Lockhart Nicholson Graham LLP
599 Lexington Avenue
New York, New York 10022-6030

Re:  Amerindo Investment Advisors Inc., SF-02656-A

Dear Mr. Marshall:

This investigation has been terminated, and no enforcement action has been
recommended to the Commission. We are providing this information under the guidelines in the
final paragraph of Securities Act Release No. 5310 (copy enclosed).

Very truly yours,

Kathleen K. Bisaccia
Branch Chief, Enforcement

Enclosure.

# PROCEDURES RELATING TO THE COMMENCEMENT OF ENFORCEMENT PROCEEDINGS AND TERMINATION OF STAFF INVESTIGATIONS

## SECURITIES ACT OF 1933, Release No. 5310; SECURITIES EXCHANGE ACT OF 1934, Release No. 9796; INVESTMENT COMPANY ACT OF 1940, Release No. 7390; INVESTMENT ADVISORS ACT OF 1940, Release No. 336

### September 27, 1972

The Report of the Advisory Committee on Enforcement Policies and Practices, submitted to the Commission on June 1, 1972, contained several recommendations designed to afford persons under investigation by the Commission an opportunity to present their positions to the Commission prior to the authorization of an enforcement proceeding.[1] These procedural measures, if adopted, would in general require that a prospective defendant or respondent be given notice of the staff's charges and proposed enforcement recommendation and be accorded an opportunity to submit a written statement to the Commission which would accompany the staff recommendation. The objective of the recommended procedures is to place before the Commission prior to the authorization of an enforcement proceeding the contentions of both its staff and the adverse party concerning the facts and circumstances which form the basis for the staff recommendation.[2]

The Commission has given these recommendations careful consideration. While it agrees that the objective is sound, it has concluded that it would not be in the public interest to adopt formal rules for that purpose. Rather, it believes it necessary and proper that the objective be attained, where practicable, on a strictly informal basis in accordance with procedures which are now generally in effect.

The Commission desires not only to be informed of the findings made by its staff but also, where practicable and appropriate, to have before it the position of persons under investigation at the time it is asked to consider enforcement action.

---

[1] See Report of the Advisory Committee on Enforcement Policies and Practices, June 1, 1972, page 31 et seq.

[2] It should be noted that the obtaining of a written statement from a person under investigation is expressly authorized by Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934. Section 21(a) of the Exchange Act provides as follows:

"The Commission may, in its discretion, make such investigations as it deems necessary to determine whether any person has violated or is about to violate any provision of this title or any rule or regulation thereunder, and may require or permit any person to file with it a statement in writing, under oath or otherwise as the Commission shall determine, as to all the facts and circumstances concerning the matter to be investigated . . . ."

The Commission, however, is also conscious of its responsibility to protect the public interest. It cannot place itself in a position where, as a result of the establishment of formal procedural requirements, it would lose its ability to respond to violative activities in a timely fashion.

The Commission believes that the adoption of formal requirements could seriously limit the scope and timeliness of its possible action and inappropriately inject into actions it brings issues, irrelevant to the merits of such proceedings, with respect to whether or not the defendant or respondent had been afforded an opportunity to be heard prior to the institution of proceedings against him and the nature and extent of such opportunity.

The Commission is often called upon to act under circumstances which require immediate action if the interests of investors or the public interest are to be protected. For example, in one recent case involving the insolvency of a broker-dealer firm, the Commission was successful in obtaining a temporary injunctive decree within 4 hours after the staff had learned of the violative activities. In cases such as that referred to, where prompt action is necessary for the protection of investors, the establishment of fixed time periods, after a case is otherwise ready to be brought, within which proposed defendants or respondents could present their positions would result in delay contrary to the public interest.

The Commission, however, wishes to give public notice of a practice, which it has heretofore followed on request, of permitting persons involved in an investigation to present a statement to it setting forth their interests and position. But the Commission cannot delay taking action which it believes is required pending the receipt of such a submission, and, accordingly, it will be necessary, if the material is to be considered, that it be timely submitted. In determining what course of action to pursue, interested persons may find it helpful to discuss the matter with the staff members conducting the investigation. The staff, in its discretion, may advise prospective defendants or respondents of the general nature of its investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing a submission. The staff must, however, have discretion in this regard in order to protect the public interest and to avoid not only delay, but possible untoward consequences which would obstruct or delay necessary enforcement action.

Where a disagreement exists between the staff and a prospective respondent or defendant as to factual matters, it is likely that this can be resolved in an orderly manner only through litigation. Moreover, the Commission is not in a position to, in effect, adjudicate issues of fact before the proceeding has been commenced and the evidence placed in the record. In addition, where a proposed administrative proceeding is involved, the Commission wishes to avoid the possible danger of apparent prejudgment involved in considering conflicting contentions, especially as to factual matters, before the case comes to the Commission for decision. Consequently, submissions by prospective defendants or respondents will normally prove most useful in connection with questions of policy, and on occasion, questions of law, bearing upon the question of whether a proceeding should be initiated, together with considerations relevant to a particular prospective defendant or respondent which might not otherwise be brought clearly to the Commission's attention.

3

Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Administrator with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which it relates. In the event that a recommendation for enforcement action is presented to the Commission by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

It is hoped that this release will be useful in encouraging interested persons to make their views known to the Commission and in setting forth the procedures by which that objective can best be achieved.

The Advisory Committee also recommended that the Commission should adopt in the usual case the practice of notifying a person who is the subject of an investigation, and against whom no further action is contemplated, that the staff has concluded its investigation of the matters referred to in the investigative order and has determined that it will not recommend the commencement of an enforcement proceeding against him.[3]

We believe this is a desirable practice and are taking steps to implement it in certain respects. However, we do not believe that we can adopt a rule or procedure under which the Commission in each instance will inform parties when its investigation has been concluded. This is true because it is often difficult to determine whether an investigation has been concluded or merely suspended, and because an investigation believed to have been concluded may be reactivated as a result of unforeseen developments. Under such circumstances, advice that an investigation has been concluded could be misleading to interested persons.

The Commission is instructing its staff that in cases where such action appears appropriate, it may advise a person under inquiry that its formal investigation has been terminated. Such action on the part of the staff will be purely discretionary on its part for the reasons mentioned above. Even if such advice is given, however, it must in no way be construed as indicating that the party has been exonerated or that no action may ultimately result from the staff's investigation of that particular matter. All that such a communication means is that the staff has completed its investigation and that at that time no enforcement action has been recommended to the Commission. The attempted use of such a communication as a purported defense in any action that might subsequently be brought against the party, either civilly or criminally, would be clearly inappropriate and improper since such a communication, at the most, can mean that, as of its date, the staff of the Commission does not regard enforcement action as called for based upon whatever information it then has. Moreover, this conclusion may be based upon various reasons, some of which, such as workload considerations, are clearly irrelevant to the merits of any subsequent action.

By the Commission.

---

[3]  Report, page 20.