# Exhibit C

AMERINDO U.S. INVESTMENT ADVISORS INC.

## INVESTMENT MANAGEMENT AGREEMENT

This INVESTMENT MANAGEMENT AGREEMENT ("the Agreement") is made as of the 30th day of April 1987 between AMERINDO U.S. INVESTMENT ADVISORS INC., a company incorporated in California, whose address is 60 East Sir Francis Drake Blvd., Suite 300, Larkspur, California 94939 (the "Investment Manager") and Lily Cates of _____ ("the Client"). [REDACTED]

WHEREAS, the Client desires to avail itself of the experience, sources of information, advice, assistance and facilities available to the Investment Manager and desires to have the Investment Manager perform for it various investment management services; and

WHEREAS, the Investment Manager is willing to perform such services and furnish such facilities under the terms and conditions hereinafter set forth;

The parties hereto agree as follows:

1. **Appointment; The Portfolio; Custodian**

(a) The Client hereby agrees to entrust the investment management of an initial amount of $_____ (the "Portfolio") to the Investment Manager on a fully discretionary basis so that it can participate in the stock market. The Client authorizes the Investment Manager to undertake reasonable risk commensurate with the objective of seeking capital appreciation and long trading opportunities in the common shares and other instruments related to common shares of publicly listed quoted companies on all U.S. stock exchanges.

(b) The Client will deliver to Prudential Bache Securities ("the Custodian") the Portfolio in the initial amount specified in paragraph 1(a) above, for custody of the Portfolio with instructions that the Portfolio is to be managed by the Investment Manager as set forth in this Agreement with the right to issue instructions to the Custodian as follows:

1. To deliver securities which have been sold based on a sale against payment of the net proceeds therefrom;

2. To pay the purchase price of securities which have been bought based on a purchase statement against delivery of the securities bought.

## 2. Contributions and Withdrawals

(a) Additional contributions and withdrawals to the Portfolio can be made in minimum amounts of $50,000 at any time. The Client agrees to notify the Investment Manager by telephone or telex seven days in advance when such contribution or withdrawal is to be made; however, if notice is given by telephone, the Client agrees to confirm the notice by mail or telex within five business days.

## 3. Discretion

(a) Subject to the terms and conditions contained herein, the Investment Manager will have complete discretion in managing the investments and reinvestment of the cash and securities comprising the assets of the Portfolio. The Investment Manager undertakes to give the Portfolio the benefits of its best professional judgement, efforts and facilities in rendering its services.

(b) While the Investment Manager cannot guarantee any results in advance, it will undertake to exercise its best professional judgement in the management of the Portfolio and avail itself of all investment information it deems helpful to discharge this duty.

(c) The client acknowledges that the investment approach and philosophy of the Investment Manager have been explained to it and acknowledges that the minimum period in which professional results can reasonably be expected to materialize is about one year.

(d) The Investment Manager may, in its absolute discretion, determine to liquidate the whole or part of the Portfolio if, in its professional judgement, it feels that market conditions warrant such action to protect the value of the Portfolio.

## 4. Fees    NOT APPLICABLE

(a) The Investment Manager's fee shall be charged at the rate of 1½% per annum calculated and invoiced to the Client on either a quarterly or a semiannual basis, at the discretion of the Investment Manager, and is to be based upon the daily average of the total assets under management for the account of the Client during the previous quarter or semiannual period.

(b) The Investment Manager shall also receive on an annual basis, as per the anniversary of the account, an annual incentive fee which shall be 5% of the appreciation of the "Net Portfolio Value" (as defined below) over and above the greater of:

(i) the initial amount placed in the Portfolio, or

(ii) the amount of the highest Net Portfolio Value on which an incentive fee has previously been based.

(c)  The amounts described in subparagraphs (a) and (b) above shall be adjusted for intervening withdrawals or deposits made by the client.

(d)  Both fees mentioned in Subparagraphs (a) and (b) will be payable only if earned through positive investment performance.

(e)  As per paragraph 3(c) above stating the minimum amount of time the Investment Manager believes is required to obtain professional results, if the Client terminates this Agreement within the first six months, the Investment Manager will assess the Client for one-half of the first year's Management fee; if the Client terminated any time between the first six and twelve months, the Investment Manager will assess the Client for the entire year's Management Fee, provided termination has not been based on negative results (losses).

Net Portfolio Value is to be determined by the gross value of all assets in the Portfolio valued at their publicly traded market value, reduced by any accrued but unpaid charges against the Portfolio for expenses, custodian fees, management fees, brokerage fees and any governmental withholding or taxes of any nature whatsoever.

5. Affirmative Covenants

The Investment Manager agrees to undertake the following on behalf of the Client:

(a)  to trade securities as already described for the account of the Client, on an unleveraged basis, unless otherwise expressly stated in writing by the Client, as indicated by appropriate addenda and signature at the end of this Agreement.

(b)  To provide the Client with regular detailed reports which analyze individual holdings of securities and cash in the Portfolio.

6. Negative Covenants

The Investment Manager covenants that it will not:

(a)  Invest more than 20% on an original cost basis, except in exceptional circumstances, but in no event more than 25% of the Portfolio or the total assets under its management (calculated at the time of investment) in the securities of any one issuer;

(b)  Invest in more than 4.99% (calculated at the time of investment) of the voting securities of any other issuer, except in exceptional circumstances;

(c)  Buy or sell commodities, real estate, or currencies.

AUS-016-00191

### 7. Limitation of Liability

The Investment Manager, its officers and employees shall not be liable for any error of judgement or for loss suffered by the Client in connection with the subject matter of this Agreement, except loss resulting from any breach of section 6 or from bad faith or gross negligence in the performance of the obligations and duties of the Investment Manager hereunder.

### 8. Termination or Interim Liquidation

Either party can terminate this Agreement by telex or in writing. If the Client wishes to liquidate the entire Portfolio at any time, for whatever reason, the Investment Manager may require up to four weeks time to effect an orderly sales program if the manager is required to liquidate the client's holdings.

### 9. Miscellaneous

(a)   All notices and requests from the Client to the Investment Manager must be sent either by telex or certified mail to the Investment Manager's address set forth at the beginning of this Agreement.

(b)   This Agreement may only be altered in writing signed by both parties.

(c)   This Agreement shall be governed and construed in accordance with the laws of California and its courts shall have sole jurisdiction to decide controversies or claims beteween or among the parties.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement on the day and year appearing below:

Investment Manager

By: *Albert Vilar*

Name: Albert W. Vilar

Title: President

Date: 30 April 1987

CLIENT

By: _____

Name: _____

Title: _____

Date: _____