# Exhibit S

| Schedule F of Form ADV Continuation Sheet for Form ADV Part II | Applicant: Amerindo Investment Advisors Inc. | SEC File Number: 801-24922 | Date: 07/31/04 |
|---|---|---|---|

(Do not use this Schedule as a continuation sheet for Form ADV Part I or any other schedules.)

| 1.. Full name of applicant exactly as stated in Item 1A of Part I of Form ADV: Amerindo Investment Advisors Inc. | IRS Empl. Ident. No.: 94-299-7472 |
|---|---|

| Item of Form (identify) | Answer |
|---|---|
| 1A, 1D & 4B | **GENERAL; FEES**<br><br>Amerindo Investment Advisors Inc. ("Amerindo") is an emerging technology stock manager specializing in leading edge technology-oriented companies, including companies involved in electronics and software, companies benefiting from technological advances and biotechnology and allied small health care companies.<br><br>Stock selection is based on internal original fundamental research that is corroborated by technical factors, such as price momentum. Amerindo's source of investment ideas is the collective effort provided by Amerindo's specialized internal professional investment management staff, which includes members who are educated in the technology and health care sectors. Amerindo actively participates in the venture capital and entrepreneur network extant in the emerging growth sectors of its investment concentration, and Amerindo's professional staff maintains a prominent presence in the industry and can thus rely upon industry contacts and the Wall Street community to assist them with their investment research. Amerindo also frequently conducts on-site visits, and also regularly attends investment and trade conferences, all in addition to intensive study and review of current technical and scientific publications.<br><br>Amerindo's investment methodology, which has been refined somewhat but which remains essentially unchanged since Amerindo's founding, is believed to have been a major contributor to Amerindo's performance over that period of time Major tenets of this methodology are: (i) acquiring sizable initial positions; and (ii) letting the winners run to their fullest potential.<br><br>Separate account client portfolios are generally constructed by initially concentrating positions in approximately 15 to 20 stocks in the three principal emerging growth sectors in which Amerindo invests. These stocks tend to begin to mature in the first 18 to 24 months after their initial purchase and, thus, a portfolio new to Amerindo will normally take at least 24 months to begin to mature in the Amerindo style. Then, owing to Amerindo's policy of letting its winners run, portfolios which are generally initially relatively evenly weighted at cost will, over time and as they mature, tend to become heavily weighted at market value in favor of a limited number of successful issues.<br><br>As compensation for its investment supervisory services, Amerindo charges its separate account clients a base fee tied to a fixed percentage of the assets under management for the client. This base fee is arrived at on an individually negotiated basis, generally varies depending on the amount of assets under management and the specific |
| 10 | investment mandate involved, and generally runs from 1/2% to 2 1/2% of the assets under management. Such fee is generally payable quarterly in arrears. Many clients also opt to have Amerindo's base fee arrangement combined with a negotiated performance fee component (satisfying the requirements of Rule 205-3 under the Investment Advisers Act of 1940, as amended)(hereinafter referred to as the "Advisers Act") where Amerindo's compensation can be adjusted based on Amerindo's performance against pre- established criteria or indices. Collective investment vehicles managed or advised by Amerindo are typically charged a combination of base and performance fees.<br><br>The minimum dollar amount of assets required in an institutional client account is $10,000,000; however, exceptions to this requirement can be made in certain circumstances. |

AUS-066-00246

| Schedule F of Form ADV Continuation Sheet for Form ADV Part II | Applicant: Amerindo Investment Advisors Inc. | SEC File Number: 801-24922 | Date: 07/31/04 |
|---|---|---|---|

(Do not use this Schedule as a continuation sheet for Form ADV Part I or any other schedules.)

| I. Full name of applicant exactly as stated in Item 1A of Part I of Form ADV: Amerindo Investment Advisors Inc. | | IRS Empl. Ident. No.: 94-299-7472 |
|---|---|---|
| **Item of Form (identify)** | **Answer** | |
| 1A, 1D, 3B, 3C & 3L | Although in the case of a majority of its clients Amerindo manages portfolios under investment mandates limited to investment in publicly traded equity securities, Amerindo also (with the consent of and explicit mutually agreed mandate from the client) offers management services with respect to investment in "restricted" securities of both publicly traded and non-publicly traded companies in Amerindo's sector. Amerindo does not offer to make these services available to all clients, and offers these services primarily to collective investment vehicles of which Amerindo is the manager and/or advisor. Additionally, but to an even more limited extent and only where Amerindo believes that special circumstances warrant, Amerindo may also offer management services with respect to investment in publicly traded and "restricted" convertible debt or equity securities and/or in warrants or other rights of issuers in Amerindo's sector.

ASSET ALLOCATION POLICY; PORTFOLIO MANAGEMENT

Amerindo has adopted an asset allocation policy for the allocation of assets among its clients. That asset allocation policy provides as follows:

1. <u>Overall Approach</u>: Amerindo is an investor in emerging technology companies, companies whose stocks are fundamentally different from the large cap stocks managed by big board fund managers. Stocks in Amerindo's universe can be characterized by thin markets, and Amerindo's desire often to take large positions in these stocks can even further complicate matters. The especially challenging nature of executing in thinly capitalized markets, however, allows the skill and experience of Amerindo and its traders in the emerging technology universe to make their influence felt

2. <u>Asset Allocation Decision Making</u>: Amerindo's Investment Committee meets regularly to review all of the securities Amerindo holds in client accounts, as well as any stocks Amerindo is considering adding to its buy list. The Investment Committee adds, confirms, or deletes stocks from Amerindo's core buy list. In addition, the Committee agrees on strategy for all stocks in the portfolio.

3. <u>Purchases</u>: When a stock is added to the buy list, Amerindo's portfolio managers instruct its traders to accumulate the stock within a recommended price range. This means that Amerindo generally reevaluates its "buy" decision if a stock moves out of the upper end of its range, and may reevaluates its "buy" decision if an issue falls below the bottom of the price range.

4. <u>Full Position Policy</u>: Amerindo's policy is to allocate shares to accounts on a "full position" basis. Amerindo separate account portfolios are generally divided into 15-20 positions of 5-8% of the portfolio at cost. Amerindo's "full position" policy means that it will completely fill an account position in a stock before it starts buying for a second or third account. This is because there may be no further price dips to accommodate additional accumulation of shares. Not all additions to portfolios lend themselves to the normal full 5-8% at original cost at the first purchase opportunity, in those instances smaller positions may be spread across a limited number of portfolios, or even one portfolio, in terms of a starting position of less than 5% if and when other attractive price entry points present themselves, additional shares will be purchased for other portfolios and/or additional shares will be purchased for the initial group or our subset of portfolios. | |

AUS-066-00247

| Schedule F of Form ADV Continuation Sheet for Form ADV Part II | Applicant: Amerindo Investment Advisors Inc. | SEC File Number: 801-24922 | Date: 07/31/04 |
|---|---|---|---|

(Do not use this Schedule as a continuation sheet for Form ADV Part I or any other schedules.)

| 1. Full name of applicant exactly as stated in Item 1A of Part I of Form ADV: Amerindo Investment Advisors Inc. | IRS Empl. Ident. No.: 94-299-7472 |
|---|---|

| Item of Form (identify) | Answer |
|---|---|
| 1A, 1D &4C continued | 5. <u>Equal Treatment Policy</u>: When it is possible to fill more than one account on a given day, Amerindo endeavors to ensure that accounts filled on a given day are filled at approximately the same price. See responses to 9E and 12, below, with respect to aggregation of trades.<br><br>6. <u>New Accounts</u>: It may take up to six months before the account is fully invested. Amerindo makes investments on the following basis (in order of priority). First, Amerindo looks at the degree of equity exposure it believes is sensible for a portfolio at the time; Second, Amerindo looks at a given stock's appropriateness for the portfolio in terms of technology versus biotechnology and then sub-sector weightings within a given sector. Finally, as Amerindo invests it makes a continuing assessment of the overall market vulnerability and tries to time its entry accordingly.<br><br>7. <u>Market Timing For New Accounts</u>: Inevitably, the initial cost of new portfolios is strongly impacted by the immediate level and direction of the market when Amerindo takes its initial positions. Therefore, for accounts invested after a strong up- leg in Amerindo's stock universe, it will normally take up to two years for a new portfolio to mature and develop the typical performance pattern.<br><br>8. <u>Existing Accounts</u>: Amerindo's account allocation policy is to select an account on a priority basis for new purchases if it meets two specific conditions: There must be cash available in the account, and the account must be underweighted in the sector of the stock which Amerindo is buying. As set forth in response to Item 2C, 8C, 8D and 9D below, Amerindo advises an open-end mutual fund. New investments in that fund tend to occur more frequently than is typical for separately managed accounts, which means that that fund is likely to have cash available for investment and to be considered for new additional positions more often than is the case for Amerindo's separately managed accounts.<br><br>9. <u>Sales</u>: When Amerindo is selling out of a stock, Amerindo is frequently a large shareholder relative to the trading volume in the stock. When Amerindo is selling out of a very large position, Amerindo's policy is to exit as the market accommodates it, albeit gradually. Amerindo's policy is to sell on an uptick to avoid pushing the price of the stock down. Amerindo is an opportunistic seller in that it often sells aggressively into rallies in stocks that Amerindo is negative about. Amerindo selects accounts in the following sequence: First, any account with a payout request pending; Second, accounts where it wants to make a portfolio adjustment to fund future purchases; Third, in accordance with an account's cost basis, whereby Amerindo tries to exit as many accounts out with a profit as possible. Owing to the fact that redemption requests tend to occur more often as to the open-end investment company which Amerindo manages than is the case with Amerindo's separately managed accounts, the fund is likely to be considered for liquidation of holdings somewhat more frequently than is the case with separately managed accounts.<br><br>10. <u>Short Sales</u>: Some of Amerindo's accounts authorize short sales. This can lead to a situation where Amerindo enters a short position on a stock while it is still long for a number of accounts. Whereas Amerindo's core holdings consist of long positions on issues where it expects values to increase several fold over two to three years, these stocks often fluctuate widely over the period. Therefore, Amerindo may sometimes, and |

| Schedule F of Form ADV Continuation Sheet for Form ADV Part II | Applicant: Amerindo Investment Advisors Inc. | SEC File Number: 801-24922 | Date: 07/31/04 |
|---|---|---|---|

(Do not use this Schedule as a continuation sheet for Form ADV Part I or any other schedules.)

| 1. Full name of applicant exactly as stated in Item 1A of Part I of Form ADV: Amerindo Investment Advisors Inc. | IRS Empl. Ident. No.: 94-299-7472 |
|---|---|

| Item of Form (identify) | Answer |
|---|---|
| 5 | only in accounts where it is authorized to take short positions, (i) choose to sell short in order to exploit an intermediate term fluctuation, and (ii) go short at the same time it changes its view on a stock from buy/hold to sell.<br><br>PROXY VOTING<br><br>Amerindo has been delegated the authority and responsibility to vote the proxies of its respective investment advisory clients, including both ERISA and non-ERISA clients. Amerindo has engaged a third party, Institutional Shareholder Services ("ISS"), to act as its agent for the administrative and ministerial aspects of proxy voting of the Fund's securities, as well as to provide independent research. ISS votes proxies on routine matters in accordance with established guidelines. Inherent conflicts of interest accompany this role. Amerindo is required to vote proxies in the best interests of its clients. Information regarding how Amerindo voted proxies during the most recent 12-month period ended June 30 or a copy of Amerindo's proxy voting policy are available without charge by calling 1-888-832-4386. Amerindo's proxy voting information is also available on the SEC's website at www.sec.gov. |
| 6 | AMERINDO AND ITS PORTFOLIO MANAGERS AND ANALYSTS<br><br>Portfolio Managers, Analysts and other professional employees must have a college degree.<br><br>Investment advice will be determined by Messrs. Vilar, Tanaka, Stableford, Weiss and Sandifer whose dates of birth and educational and business backgrounds are as follows: ALBERTO W. VILAR, 10/04/40, began his career with Citibank N.A. in New York in 1964 and worked there as an International Credit Officer until 1967. From 1967 to 1971, he served as Vice President, Portfolio Manager and Manager of the Investment Management Division of Drexel Burnham Lambert in New York. From 1971 to 1973, he served as Executive Vice President, Portfolio Manager and Director of Equity Strategy at M.D. Sass Investor Services in New York. In 1973, he became Vice President and Portfolio Manager of Endowment Management & Research Corporation in Boston. From 1977 to 1979, he served as Senior Vice President, Director of Research, Chief Investment Strategist and Company Manager of the Boston Company in Boston. He founded the predecessors of Amerindo Advisors (U.K.) Limited and Amerindo Investment Advisors, Inc. (Panama) in 1979 and has served since then as a Principal Portfolio Manager. Mr. Vilar holds the degrees of B.A. in Economics from Washington & Jefferson College and an M.B.A. from Iona College, and he completed the Doctoral Studies Program in Economics at New York University. Mr. Vilar has been a Chartered Financial Analyst since 1975.<br><br>GARY A. TANAKA, 06/23/43, served as a Portfolio Manager for Crocker Bank in San Francisco from 1971 to 1977, and as a Company Manager for Crocker Investment Management Corp. in San Francisco from 1978 to 1980. From 1975 to 1980, he also served as a Consultant to Andron Cechettini & Associates in San Francisco. In 1980, he joined the predecessors of Amerindo Advisors (U.K.) Limited and Amerindo Investment Advisors, Inc. (Panama) and has served since then as a Principal Portfolio Manager. Dr. Tanaka holds the degrees of B.S. in Mathematics from Massachusetts Institute of Technology and Ph.D. in Applied Mathematics from Imperial College, University of London. |

| Schedule F of Form ADV Continuation Sheet for Form ADV Part II | Applicant: Amerindo Investment Advisors Inc. | SEC File Number: 801-24922 | Date: 07/31/04 |
|---|---|---|---|

(Do not use this Schedule as a continuation sheet for Form ADV Part I or any other schedules.)

| 1. Full name of applicant exactly as stated in Item 1A of Part I of Form ADV: Amerindo Investment Advisors Inc. | IRS Empl. Ident. No.: 94-299-7472 |
|---|---|

| Item of Form (identify) | Answer |
|---|---|
| 6 continued | JAMES P.F. STABLEFORD, 10/8/64, began his career in 1985 with Rocke Securities in London, where he served for year as a broker until moving to Cigna International Investment Advisors, where he served from 1986 through October 1987 in operations and as a portfolio assistant. He joined the UK Company in 1989 and has been with them since in operations and portfolio management. His services are provided to Amerindo pursuant to arrangement with the UK Company. Mr. Stableford attended Brunel University in Middlesex, receiving a BSC in Economics in 1987.

MARC WEISS, 5/26/66, is the Director of Research of Amerindo. Mr. Weiss joined Amerindo in 1994. Prior to joining Amerindo, Mr. Weiss was a Senior Associate Engineer with IBM. Mr. Weiss earned a B.S. in Electrical Engineering from Rensselaer Polytechnic Institute in 1989, an M.S. in Electrical Engineering from Cornell University in 1990, M.B.A. from Columbia University in 1995.

MICHAEL J. SANDIFER, 06/01/44, began his financial career with Brown Brothers Harriman in New York in 1970, where be became an Investment Officer in the International Department. From 1973 to 1976, he served as a Principal of Baker Weeks & Co., one of the original institutional investment research firms on Wall Street. In 1976, that firm was acquired by Reynolds Securities, where Mr. Sandifer became Vice President in charge of the firm's nine office international network. In 1977, Reynolds was merged with Dean Witter, and Mr. Sandifer served as an International Vice President. From 1978 to 1982, he held various positions in research, sales and management at Donaldson Lufkin and Jenrette in New York, and became Regional Vice President in charge of the firm's businesses in the twelve western states out of San Francisco. After a brief period at Montgomery Securities in San Francisco in 1982, he became a Partner of the investment banking and venture capital firm of Woodman Kirkpatrick & Gilbreath late in that same year. That firm specialized in medical and electronic high technology, and was acquired in 1984 by Hambrecht & Quist, one of the premier firms in the same area of expertise. Mr. Sandifer was a Principal at Hambrecht & Quist from 1984 to 1990, where he served in San Francisco, managed the firm's European sales effort from London and finally posted in New York until he became associated with Amerindo in 1990. Mr. Sandifer holds the degrees of B.A. in Economics from Occidental College in Los Angeles, and J.D. from the University of California at Los Angeles.

The services of Mr. Sandifer are provided to Amerindo under a consulting arrangement. |
| 8 | Alberto Vilar and Gary Tanaka, the original founders of Amerindo, each of whom is a shareholder, officer and director of Amerindo, are also all of the shareholders, directors and officers of Amerindo Investment Advisors (Cayman) Limited, Amerindo Investment Advisors, Inc. and Amerindo Advisors (U.K.) Limited. Those companies are organized in the Cayman Islands, Panama and the U.K., respectively.

The latter two have both historically managed off-shore institutional accounts, with the former managing off-shore non-U.K. client portfolios and with the UK Company (the "UK Company") having historically managed portfolios of U.S. emerging growth stocks for U.K. based clients (although the UK Company's existing accounts were assigned to Amerindo in 1996). The UK Company is duly qualified on a limited license basis by the UK's financial authority, which performs a function similar to the SEC in the U.K. |

AUS-066-00250

| Schedule F of Form ADV Continuation Sheet for Form ADV Part II | Applicant: Amerindo Investment Advisors Inc. | SEC File Number: 801-24922 | Date: 07/31/04 |
|---|---|---|---|

(Do not use this Schedule as a continuation sheet for Form ADV Part I or any other schedules.)

1. Full name of applicant exactly as stated in Item 1A of Part I of Form ADV:

   Amerindo Investment Advisors Inc.

   IRS Empl. Ident. No.: 94-299-7472

| Item of Form (identify) | Answer |
|---|---|
| 2C, 8C, 8D and 9D | Amerindo has an arrangement with the UK Company pursuant to which the UK Company performs certain administrative and "back office" functions for Amerindo which are of a non-management nature.<br><br>In May 1995, the UK Company settled certain proceedings which had been brought by IMRO (the FSA's predecessor) as the result of a periodic inspection of the UK Company by IMRO in 1994. IMRO had brought the proceedings for alleged breaches of its Rules relating to compliance arrangements, financial resources and information to be provided to IMRO. No charges were brought against the principals of the UK Company or any of its employees. There were no allegations of any damage to or wrong doing in connection with any client accounts, any accounting for client accounts or any performance reporting. Any alleged deficiencies cited have now been addressed. The UK Company voluntarily settled the proceedings without admitting the charges by agreeing to pay 25,000 plus stipulated costs. |
| 9 | Amerindo is investment manager to an open-end registered investment company which is organized and which is known as Amerindo Technology Fund ("ATF"). ATF invests in Amerindo's specialty sectors. ATF affords investors the opportunity to have smaller dollar amounts of assets not meeting minimum portfolio size requirements for separate account management to have their assets managed by Amerindo on a pooled basis. Amerindo itself and its associated persons have purchased ATF shares. Amerindo is also an advisor to a collective investment vehicle sponsored by Citicorp Investment Services, advisor, organize and sponsor of a collective investment vehicle organized in the Cayman Islands, and the advisor to a London Stock Exchange listed investment trust. |
| 9 continued | PERSONAL TRADING: ALLOCATIONS; IPO'S AND PRIVATE EQUITY; AGGREGATION; BROKERAGE<br><br>1. Personal Trading and Allocations in General.<br><br>It is the overall policy of Amerindo that the personal trading transactions of its personnel not be adverse to the interests of its clients. Accordingly, Amerindo's internal policies and procedures require that the interests of Amerindo's clients come first in any situation where securities to be purchased or sold for clients are also purchased, sold or held for the accounts of persons who are either Amerindo Advisory Personnel, affiliates of Amerindo or dependents of Amerindo Advisory Personnel. Thus, although transactions for the accounts of affiliates of Amerindo, Amerindo Advisory Personnel and their dependents (collectively, "Affiliated Accounts") may be permitted to take place contemporaneously with implementation of a buy or sell program or strategy for clients (particularly as these programs typically take place over an extended period of time as desirable buying and selling opportunities make themselves available), all transactions for Affiliated Accounts (with certain exceptions for open end mutual funds) must be precleared with Amerindo's senior trader or chief compliance officer, whose responsibility it is to determine whether the planned transaction can proceed without materially and adversely affecting Amerindo's contemporaneous activities on behalf of its clients and who will, based thereon, either disapprove or approve the planned transaction for the Affiliated Account. In the case of the latter, approval will generally only be given subject to price limitations and time parameters which will usually not exceed one trading day, and approval is |

| Schedule F of Form ADV Continuation Sheet for Form ADV Part II | Applicant: Amerindo Investment Advisors Inc. | SEC File Number: 801-24922 | Date: 07/31/04 |
|---|---|---|---|

(Do not use this Schedule as a continuation sheet for Form ADV Part I or any other schedules.)

1. Full name of applicant exactly as stated in Item 1A of Part I of Form ADV:

   Amerindo Investment Advisors Inc.

   IRS Empl. Ident. No.: 94-299-7472

| Item of Form (identify) | Answer |
|---|---|
| 9 continued | always given subject to rescission prior to execution. The foregoing procedures are all as set forth in the Personal Trading and Insider Trading and Prevention Policy and Procedures which have been adopted by Amerindo. In order to insure compliance with Amerindo's trading policies, all personnel are required to provide Amerindo with copies of confirmations with respect to all of their securities transactions. As used above, the term "Advisory Personnel" means any employee of Amerindo or one of its affiliates who, in connection with his or her regular functions or duties, makes, participates in or obtains information regarding the purchase or sale of securities by Amerindo or whose functions relate to any recommendations with respect to such purchases or sales, and the term also includes all directors and officers of Amerindo.

Subject to the foregoing, Amerindo and its Advisory Personnel may give advice or exercise investment responsibility and take such other action with respect to client accounts and Affiliated Accounts which may differ from the advice given or the timing or nature of advice taken with respect to other client accounts or affiliated accounts, provided that Amerindo and its Advisory Personnel act in good faith and provided further that it is Amerindo's policy to allocate, within its reasonable discretion, investment opportunities to client accounts over a period of time on a fair and equitable basis relative to other client accounts and Affiliated Accounts, taking into account the cash position and the investment objectives and policies of each client account and any specific investment restrictions applicable thereto. In addition, one or more client accounts and Affiliated Accounts may at any time hold, acquire, increase, decrease, dispose of or otherwise deal with positions in investments in which other client accounts may have an interest from time to time, whether in transactions which involve the client account or otherwise, and Amerindo undertakes no obligation to acquire for any client account a position in any investment which any other client account or Affiliated Account may acquire, and no client is given any first refusal right, co-investment or other rights in respect of any such investment.

Amerindo generally has discretion in determining which investments will be made or disposed of by clients and Affiliated Accounts, and the relative degree of participation therein as among clients and those Affiliated Accounts. In that Amerindo or its affiliates and their associated persons may be able to obtain more favorable compensation, cost reimbursement or risk sharing arrangements in connection with some investments if a given client does not participate, Amerindo or its affiliates and their associated persons may be influenced to refrain from causing a client to make such investments even though participation might benefit the client.

2. Private Equity.

Amerindo and its affiliates have also accepted mandates which include authority for the purchase (in "private placements," including "PIPES") of "restricted securities" of issuers within Amerindo's universe, and Amerindo and its affiliates are also involved as sponsor and/or general partner of and/or advisor to several collective investment vehicles which include "private offering" investment authority. In addition, Affiliated Accounts belonging to personnel of Amerindo and its affiliates are generally given the opportunity to invest in private placements sourced by Amerindo. Further, Amerindo clients may also be allocated investment opportunities in "private placements" of issuers whose securities have already been bought in previous "private placements" for other client accounts and/or by Affiliated Accounts. ATF is not permitted to invest in "private |

AUS-066-00252

| Schedule F of Form ADV Continuation Sheet for Form ADV Part II | Applicant: Amerindo Investment Advisors Inc. | SEC File Number: 801-24922 | Date: 07/31/04 |
|---|---|---|---|
| (Do not use this Schedule as a continuation sheet for Form ADV Part I or any other schedules.) ||||
| 1. Full name of applicant exactly as stated in Item 1A of Part I of Form ADV: Amerindo Investment Advisors Inc. ||| IRS Empl. Ident. No.: 94-299-7472 |

| Item of Form (identify) | Answer |
|---|---|
| 9 continued | placements" after an Affiliated Account has invested in the same private company in earlier rounds of financing.<br><br>3. <u>IPO's</u>.<br><br>From time to time Amerindo receives an opportunity to purchase shares in initial public offerings ("IPO Shares"). IPO Shares can be viewed to a large degree as a client opportunity and many advisory firms allocate these opportunities broadly across client accounts (many, for example, on a rotating basis in order to ensure equal participation over time by all clients or the IPO Shares are allocated across all accounts pro rata). Amerindo does not believe it appropriate to expose all clients to all public offering opportunities which become available to it either on a rotating basis or by allocating a portion of each allocation to each client. Rather, Amerindo has determined that only the following entities are eligible to receive IPO Shares: Amerindo Internet Growth Fund Ltd. and Dextra Holdings, client accounts of Amerindo Investment Advisors (Cayman) Limited, Amerindo Technology Growth Fund Inc., a client account of Morton Financial Corporation, The Amerindo Foundation<br><br>Limited (to be established) and ATF (each an "Eligible Entity"). Certain IPO Shares may be deemed to be an appropriate investment for an Eligible Entity because of the suitability of the investment, size of the available allocation or such other factors that Amerindo deems<br>appropriate. A security purchased in a public offering will be suitable for an Eligible Entity for purposes of this policy if it is consistent with the investment objectives and strategies of the Eligible Entity and permitted by the investment restrictions and limitations.<br><br>Amerindo has complete discretion in determining how to allocate IPO Shares to one or more Eligible Entities. Some of the factors that may be considered by Amerindo when allocating IPO Shares to one or more Eligible Entities include, among others, cash limitations or excess cash in particular client accounts; specific investment restrictions; existing portfolio composition and applicable industry, sector or capitalization weightings; relative underperformance of account (in comparison to peer accounts) for reasons not attributable to client actions or restrictions; partial fill or trade order; small account size (allocation may be adjusted to minimize custodian fees and transaction charges); undesirable position size (allocation may be adjusted to remove an undesirably small or undesirably large position); client sensitivity to turnover; client tax status; regulatory restrictions and suitability restrictions. |
| | 4. <u>Aggregation</u>.<br><br>On occasions where a number of accounts are attempting to purchase the same securities, Amerindo may, but is not obligated to, aggregate orders to purchase or sell securities with its private accounts, including investment funds that are exempted from the definition of investment company under Section 3(c) of the Investment Company Act ("3(c) Funds"), proprietary accounts and ATF ("Accounts"). Amerindo may aggregate the orders of one or more Accounts with ATF only to purchase or sell publicly traded securities or Non-Negotiated Private Placement Securities (see discussion below regarding Non-Negotiated Private Placement Securities). Amerindo is not permitted to aggregate transactions of its affiliates with ATF when purchasing shares in an initial |

AUS-066-00253

| Schedule F of Form ADV Continuation Sheet for Form ADV Part II | Applicant: Amerindo Investment Advisors Inc. | SEC File Number: 801-24922 | Date: 07/31/04 |
|---|---|---|---|

(Do not use this Schedule as a continuation sheet for Form ADV Part I or any other schedules.)

| 1. Full name of applicant exactly as stated in Item 1A of Part I of Form ADV: Amerindo Investment Advisors Inc. | IRS Empl. Ident. No.: 94-299-7472 |
|---|---|

| Item of Form (identify) | Answer |
|---|---|
| 9 continued | public offering.<br><br>Amerindo will review, as applicable, each Account's investment objectives, investment restrictions, cash position, need for liquidity, sector concentration and other objective criteria. Amerindo has developed written aggregation procedures ("Aggregation Procedures") designed to result in fair and equitable aggregation of client orders.<br><br>Amerindo will not engage in an aggregated transaction on behalf of an Account unless the transaction is consistent with Amerindo's duties to the account, including its duty of best execution and the terms of its investment advisory agreement with each client for which trades are being aggregated ("Eligible Account").<br><br>No Eligible Account participating in an Aggregated Transaction will be favored over any other Eligible Account participating, because each Eligible Account taking part in a transaction will participate at the same unit price. Transaction costs and expenses will be shared by Eligible Account participants on a pro rata basis according to the amount of their participation. Amerindo will receive no additional compensation or remuneration of any kind as a result of an Aggregated Transaction that is not shared pro rata with the other participants in the Aggregated Transaction.<br><br>Amerindo will prepare a written statement (the "Allocation Statement") that specifies which Eligible Accounts will participate in the aggregated order and the method of allocation for each such Eligible Account.<br><br>The Allocation Statement will reflect the allocation of available positions among all participating Accounts as follows:<br>Each participating Eligible Account will be allocated the lesser of:<br><br>(i) their Indicated Amount (which is the amount the portfolio manager requests) or<br><br>(ii) pro rata which means allocation of trades among participating accounts based on the participating accounts relative net assets.<br><br>An aggregated transaction may be allocated on a basis different from that specified in the Allocation Statement if all Eligible Account participants receive fair and equitable treatment over time, and the reason for the deviation is recorded in writing (on paper or electronically) promptly and approved by Amerindo's chief compliance officer, in writing (on paper or electronically).<br><br>Amerindo may aggregate the orders of one or more Eligible Accounts with ATF for the purchase or sale of Non-negotiated Private Placement Securities subject to certain conditions. The term "Non-negotiated Private Placement Securities" includes securities, warrants, conversion privileges, and other rights: (a) which are exempt from registration under the Securities Act of 1933, as amended ("Securities Act"), or are purchased in transactions exempt from such registration requirements, including restricted securities of a class or convertible into a class already publicly traded (PIPES); and (b) the terms of which (other than price) have not been directly or indirectly negotiated by Amerindo. Non-negotiated Private Placement Securities sometimes involve securities issued in |

AUS-066-00254

| Schedule F of Form ADV Continuation Sheet for Form ADV Part II | Applicant: Amerindo Investment Advisors Inc. | SEC File Number: 801-24922 | Date: 07/31/04 |
|---|---|---|---|

(Do not use this Schedule as a continuation sheet for Form ADV Part I or any other schedules.)

| 1. Full name of applicant exactly as stated in Item 1A of Part I of Form ADV: Amerindo Investment Advisors Inc. | IRS Empl. Ident. No.: 94-299-7472 |
|---|---|

| Item of Form (identify) | Answer |
|---|---|
| 12 | reliance upon Rule 144A of the Securities Act, although other exemptions are often involved. The term Non-negotiated Private Placement Securities may also include certain "traditional" negotiated private placement securities, such as securities exempt under the Securities Act by Section 4(2), Rules 505 or 506 under Regulation D thereunder, so long as the terms (other than price) have not been directly or indirectly negotiated by Amerindo.<br><br>5. <u>Brokerage; Use of Solicitors</u>.<br><br>Portfolio transactions for client portfolios are generally effected directly with market makers. Where effected on an agency basis, however, brokers are selected based on other coverage of Amerindo's specialty universe of emerging growth stocks generally, including their institutional equity research coverage. Amerindo always seeks best execution and price but, although it does not believe that its clients pay a premium for research provided by brokers, Amerindo may pay brokers who supply it with research higher commissions than those which might have been charged by other brokers if Amerindo determines that such commissions are reasonable in relation to the value of the brokerage and research services provided. Amerindo shares broker-provided research with all clients.<br><br>Generally, the use of commission or "soft" dollars to pay for research products or services will fall within the safe harbor for soft dollars created by Section 28(e) of the Securities Exchange Act of 1934, as amended. Amerindo has approved arrangements whereby one or more brokers pay certain vendors who provide third party execution and research products and services to Amerindo. Where a product or service obtained with soft dollars provides administrative, as well as execution and research, assistance to Amerindo, Amerindo will make a reasonable allocation of the cost that may be paid for with soft dollars. |
| 12 continued | Although Amerindo discourages the practice owing to the special qualifications which Amerindo believes that brokers and dealers in its universe must have, certain of Amerindo's advisory clients have designated, by written direction, that Amerindo effect transactions through particular designated firms. Generally, the condition of such direction would be that commissions and other fees charged in the execution of such a transaction would have to be substantially the same as would otherwise be available to the account were such designation not made; however, in the event that a client directs Amerindo to use a particular firm or broker/dealer, it is possible that Amerindo may not be authorized under these circumstances to negotiate commissions, price and other charges and may not be able to obtain volume discounts or best execution. In those instances in which clients direct Amerindo to use a particular broker to execute securities transactions for their accounts, such clients may nonetheless derive benefits from research services obtained from the brokerage for those clients who make no such direction, as research furnished by brokers may be used to service any or all of Amerindo's clients and may be used in connection with accounts other than those making the payment to the broker providing the research, as permitted by Section 28(e) of the Securities Exchange Act of 1934, as amended. |
| 13 | Amerindo may effect client transactions with registered representatives who refer clients, although registered broker dealers are selected only on the basis of those factors described in response to Item 12 above. Amerindo has engaged outside firms, under |

AUS-066-00255

| Schedule F of Form ADV Continuation Sheet for Form ADV Part II | Applicant: Amerindo Investment Advisors Inc. | SEC File Number: 801-24922 | Date: 07/31/04 |
|---|---|---|---|
| (Do not use this Schedule as a continuation sheet for Form ADV Part I or any other schedules ) | | | |
| 1. Full name of applicant exactly as stated in Item 1A of Part I of Form ADV: Amerindo Investment Advisors Inc. | | | IRS Empl. Ident. No.: 94-299-7472 |
| Item of Form (identify) | Answer | | |
| | non-exclusive arrangements, to solicit institutional and retirement plan clients on Amerindo's behalf, subject to the limitations and requirements of Rule 275.206(4)-3 under the Advisers Act. Amerindo has also (consistent with Rule 275.206(4)-3) entered into limited ad hoc solicitation or marketing arrangements with other parties, on a client-by-client basis, and Amerindo also has an in-house marketing staff whose members are compensated, in part, pursuant to formulae based on a percentage of the fees generated by their referrals. | | |

AUS-066-00256