# EXHIBIT A

```
                   5-31-06 suppresion hearing transcript.txt
                                                                              1
     65VVVILH
 1   UNITED STATES DISTRICT COURT
 1   SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 2
 3   UNITED STATES OF AMERICA,
 3
 4              v.                              05 CR 621 (KMK)
 4
 5   ALBERTO VILAR,
 5   GARY TANAKA                                SUPPRESSION HEARING
 6
 6              Defendants.
 7
 7   ------------------------------x
 8
 8                                              New York, N.Y.
 9                                              May 31, 2006
 9                                              10:05 a.m.
10
10
11   Before:
11
12                    HON. KENNETH M. KARAS,
12
13                                              District Judge
13
14                        APPEARANCES
14
15   MICHAEL J. GARCIA
15        United States Attorney for the
16        Southern District of New York
16
17   DEIRDRE McEVOY
17   MARC LITT
18        Assistant United States Attorneys
18
19   HOFFMAN & POLLOK
19        Attorneys for Defendant Alberto Vilar
20   JEFFREY C. HOFFMAN
20   SUSAN C. WOLFE
21
21   Attorneys for Defendant Gary Tanaka:
22
22   WILSON SONSINI GOODRICH & ROSATI
23        GLENN CHARLES COLTON
23            -AND-
24   KOBRE & KIM
24        STEVEN GARY KOBRE
25
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                              2
     65VVVILH
 1         (In open court)
 2         (Case called)
 3         THE DEPUTY CLERK:  United States of America versus
 4   Alberto Vilar and Gary Tanaka.  Criminal cause for suppression
 5   hearing.  If counsel can state their appearances for the record
 6   please.
 7         MS. McEVOY:  Deirdre McEvoy and Marc Litt for the
 8   government.  Good morning, your Honor.  With us is Postal
                                  Page 1
```

```
                        5-31-06 suppresion hearing transcript.txt
 5    congregated in the reception area, with a few exceptions, one
 6    of which was the COO, David Mainzer, was in his office, and
 7    that's where I went.
 8    Q.   Okay.  And how many agents were in the office that day?
 9    A.   I didn't count them.  My sense was there were about a dozen
10    or so.
11    Q.   Did there come a time during the day that you spoke to
12    Assistant United States Attorney Marc Litt?
13    A.   Yes.
14    Q.   Do you recall what time that was?
15    A.   I don't.  I know that I called him prior to returning to my
16    office at K&L, which I think I did about 1 o'clock.
17    Q.   And did you have a discussion with him about a subpoena?
18    A.   I had a discussion, I had several discussions with him,
19    including about a subpoena.
20    Q.   Can you tell us, did you have a number of conversations,
21    different conversations, with him throughout the day?
22    A.   I did.
23    Q.   During the first conversation, did the subject of a
24    subpoena come up?
25    A.   Not that I recall.
                      SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                       14
      65VVVILH              Licker - direct
 1    Q.   During the second conversation, did the subject of a
 2    subpoena come up?
 3    A.   It's hard to number the conversations.  I can't say whether
 4    it was the second or the third.  It was sometime after the
 5    first.
 6    Q.   Okay.  Do you recall what time during the day this subject
 7    came up?
 8    A.   I believe it came up prior to the time I returned to my
 9    office at K&L which, as I said, I thought I place at about 1
10    o'clock.
11    Q.   And what was the substance of the conversation?
12    A.   At some point I became aware, I think, from speaking to Mr.
13    Feiter, Inspector Feiter, Postal Inspector Feiter, that they
14    had doubts about their abilities, the inspector had their
15    doubts about their ability to complete the search that day.
16              And someone, I don't remember if it was me or if it
17    was Marc Litt, I don't believe it was me, but someone suggested
18    that, as an alternative, if we would continue our agreement to
19    preserve the documents, we had already had that conversation,
20    and accept service of a grand jury subpoena that would allow
21    the postal inspectors to leave.
22    Q.   You mentioned that you had a conversation about preserving
23    the contents of the office?
24    A.   We had a general conversation about preserving relevant
25    information, wherever it was found.
                      SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                       15
      65VVVILH              Licker - direct
 1    Q.   Did you see the search warrant that was executed that day?
 2    A.   I believe I did.
 3    Q.   Do you recall whether you read it?
 4    A.   I am sure I looked at it.  I can't say that I studied it.
 5    Q.   There came a time when you received -- you actually
 6    received a subpoena from Mr. Litt, right?
 7    A.   Correct.
 8    Q.   Do you recall what time of day that was?
 9    A.   I don't recall, but it was faxed to me in my office at K&L.
                                Page 7
```

5-31-06 suppresion hearing transcript.txt
(212) 805-0300

48

65VVVILH                Licker - redirect

overwhelming view, as I've said several times, was that we were going to cooperate.
THE COURT:  Okay.  All right.
Q.  And to the extent that the subpoena and the search warrant called for the same materials, did you believe you had a right not to -- or to challenge the subpoena?
A.  I did not go through that analysis.
Q.  But the purpose of -- or at least one of the purposes of the subpoena was to allow the postal inspectors to go home and not to continue searching and seizing the documents called for by the search warrant, right?
MS. McEVOY:  Objection.
THE COURT:  From his perspective, I think he can answer that.  From your perspective, was that one of the purposes of the subpoena?
THE WITNESS:  I certainly had that conversation with Marc Litt.
THE COURT:  When you say that one idea was to let the postal inspectors go home, was it the idea that they would go home the minute you got the subpoena, or is it that they just wouldn't come back another day?
THE WITNESS:  We didn't get as specific as go home the minute we got the subpoena.  And I didn't really expect them to just turn around and leave.  Indeed, it took them hours to pack up.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

49

65VVVILH                Licker - redirect

THE COURT:  Okay.
BY MS. WOLFE:
Q.  When you say that it was your intention on behalf of Amerindo to cooperate with the government, would that include allowing a dozen government agents to search and seize documents from the offices without a search warrant?
A.  You're asking me a hypothetical.  I'm not sure.  I would have to think about that.
MS. WOLFE:  I have no further questions.
THE COURT:  Okay.  Mr. Colton.
MR. COLTON:  Briefly.
THE COURT:  Sure.
DIRECT EXAMINATION
BY MR. COLTON:
Q.  Mr. Licker, you remarked a couple of times about the state of your memory, so I just want to go back over one or two things quickly.
As you sit here today, do you have any doubt that you had not in your legal career previously experienced a grand jury being served during a search warrant?
THE COURT:  A grand jury subpoena.
Q.  Grand jury subpoena being served during a search warrant execution.
A.  I am certain I have not experienced that.
Q.  Are you also certain as you sit here today that you have

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

50

65VVVILH                Licker - direct

never heard of a grand jury subpoena being served during the execution of a search warrant?

Page 23

```
                    5-31-06 suppresion hearing transcript.txt
 3   A.  I don't believe I have.
 4   Q.  There was a discussion with Ms. McEvoy about the effort you
 5   and your team put into gathering documents in response to the
 6   subpoena, do you recall that?
 7   A.  Yes.
 8   Q.  Is it fair to say that there would be substantial
 9   additional effort that would be required in order to fully
10   comply with every one of the A through W or X of the subpoena?
11   A.  We've reviewed about half the documents that were on the
12   premises.
13   Q.  Would it be fair to say that that's an expensive process?
14   A.  Yes.
15   Q.  Does the company have a substantial cash reserve?
16   A.  No.
17   Q.  Does the company have a substantial cash inflow?
18   A.  The company is out of business.
19   Q.  Why?
20   A.  Because the two individuals who were the portfolio managers
21   are not functioning in that capacity.
22   Q.  Had there not been a search warrant, but, instead, a grand
23   jury subpoena at the beginning of the day, would the company
24   potentially still be functioning?
25   A.  I believe so.
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                  (212) 805-0300
                                                                       51
     65VVVILH                     Licker - direct
 1   Q.  And when we discussed the compliance with the subpoena, had
 2   there not been any motion to quash, you and your team certainly
 3   would have conducted a privilege review to avoid divulging
 4   privileged information, correct?
 5   A.  Yes.
 6   Q.  And there would have been substantial effort to create what
 7   is known in the legal community as a privilege log?
 8   A.  Yes.
 9   Q.  And that too would have been an expensive proposition?
10   A.  Yes.
11   Q.  And in your view, given that there was either going to be
12   or there was the pendency of a motion to quash the subpoena, it
13   would be unwise to undertake all of that expense on behalf of
14   an ailing or basically dead company until the Court ruled on
15   that issue?
16   A.  That's why we stopped our efforts.
17           MR. COLTON:  One moment, your Honor.
18           THE COURT:  Sure.
19           (Pause)
20           MR. COLTON:  Nothing further, your Honor.
21           THE COURT:  All right.  Ms. McEvoy, any recross?  I
22   guess that would be a yes.
23           MS. MCEVOY:  Yes, sorry.
24   RECROSS EXAMINATION
25   BY MS. MCEVOY:
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                  (212) 805-0300
                                                                       52
     65VVVILH                     Licker - recross
 1   Q.  Mr. Licker, you testified that you observed the postal
 2   inspectors taking some hours to pack up.
 3   A.  It took them a very long time.  I can't say exactly how
 4   long.
 5   Q.  Excuse me?
 6   A.  I can't say exactly how long, but it took them a long time.
 7   Q.  When you returned to Amerindo's offices that afternoon on
                                  Page 24
```