**EXHIBIT B**

```
                              7-7-06 hearing transcript.txt
                                                                                   1
         6775VILH                  hearing
     1   UNITED STATES DISTRICT COURT
     1   SOUTHERN DISTRICT OF NEW YORK
     2   ------------------------------x
     2
     3   UNITED STATES OF AMERICA,
     3
     4              v.                             05 Cr. 621 (KMK)
     4
     5   ALBERTO VILAR and GARY TANAKA,
     5
     6              Defendants.
     6
     7   ------------------------------x
     7
     8
     8                                             July 7, 2006
     9                                             10:30 a.m.
     9
    10
    10   Before:
    11
    11                  HON. KENNETH M. KARAS,
    12
    12                                             District Judge
    13
    13
    14                       APPEARANCES
    14
    15   MICHAEL J. GARCIA
    15        United States Attorney for the
    16        Southern District of New York
    16   BY:  MARC LITT
    17        DEIRDRE McEVOY
    17        Assistant United States Attorneys
    18
    18   HOFFMAN & POLLOK, L.L.P.
    19        Attorneys for Defendant Vilar
    19   BY:  JEFFREY C. HOFFMAN
    20        SUSAN C. WOLFE
    20
    21   WILSON, SONSINI, GOODRICH & ROSATI
    21        Attorneys for Defendant Tanaka
    22   BY:  GLENN CHARLES COLTON
    22        JESSICA MARGOLIS
    23        and
    23   KOBRE & KIM, L.L.P.
    24   BY:  STEVEN GARY KOBRE
    24        JUSTIN SHER
    25
    25
                 SOUTHERN DISTRICT REPORTERS (212) 805-0300
                                                                                   2
         6775VILH                  hearing
     1            (Case called)
     2            MR. LITT:  Marc Litt and Deirdre McEvoy for the United
     3   States.  With us at counsel table are U.S. Postal Inspector
     4   Cynthia Fraterrigo and Jeff Jarrett.
     5            THE COURT:  Good morning.
     6            MR. HOFFMAN:  Good morning, your Honor.  Jeffrey
     7   Hoffman and Susan Wolfe.  And with us is Joanna Eftychiou, who
     8   is awaiting addition to the bar who is the only member of the
                                      Page 1
```

7-7-06 hearing transcript.txt
```
16    information and testimony that comes out that bears on issues
17    that are close to that but really are beyond issues which is
18    part of what the letters address.
19             THE COURT:  We will take that up next.
20             MR. HOFFMAN:  So, I think if the examination does get
21    into areas of what Inspector Fraterrigo knew at the time, for
22    example, that the search warrant was applied for, or before,
23    what she knew all along, because that information assists the
24    Court in making an objective determination of what a reasonably
25    objective person in her situation with her knowledge would do,
                SOUTHERN DISTRICT REPORTERS (212) 805-0300
                                                                       5
      6775VILH                    hearing
 1    then of course that's information that she shared and
 2    participated in with Mr. Litt and that would certainly cause an
 3    overlap.
 4             THE COURT:  Okay.
 5             Mr. Colton?
 6             MR. COLTON:  The overlap is even far greater than what
 7    Mr. Hoffman points out.
 8             Mr. Litt testified about all of the phone calls he
 9    made during the course of the day of the search, many of which
10    were to Inspector Fraterrigo.  He testified in fact that he had
11    a sudden new memory in, right before this hearing different
12    than his memory in February, different than his memory back in
13    May which was related to a phone call that some unknown postal
14    inspector that he couldn't remember -- and one would assume
15    that inspector from that time will be asked about phone calls
16    that went back and forth -- related to the issues of the search
17    and the grand jury subpoena.
18             Moreover, Mr. Litt testified about the arrest of
19    Mr. Tanaka.  He testified about many, many subjects that
20    overlapped with Inspector Fraterrigo.  And, frankly, the
21    government has him in his control.  The government can put
22    Mr. Litt on to finish his testimony if they don't want him to
23    suggest that.
24             THE COURT:  The easy answer is to have Mr. Litt go
25    first and finish up his cross.
                SOUTHERN DISTRICT REPORTERS (212) 805-0300
                                                                       6
      6775VILH                    hearing
 1             MS. McEVOY:  That's fine, your Honor.
 2             THE COURT:  I think that just solves the issue.
 3             Let's take up the other issue.  There is a couple
 4    other issues.
 5             One is with respect to, it starts off with a letter I
 6    got on June 23rd from Mr. Colton and Ms. Margolis, and
 7    Ms. Wolfe joins in on July 3rd, the government responded on
 8    June 28, and then I got a letter yesterday at about a few
 9    minutes before 4:00 and Mr. Colton responded.
10             The two issues are the scope of the cross-examination
11    of both Inspector Fraterrigo and Mr. Litt and the claim that's
12    initially made by Tanaka is that, and I'm quoting from the
13    second page:  In answering this question as to good faith
14    reliance on the warrant, "it is appropriate for the Court to
15    look to 'the totality of the circumstances including any
16    information known to the officers executing the warrant but not
17    presented to the issuing Judge.'"  That's from the Eighth
18    Circuit decision in U.S. v. Weeks.
19             Tanaka also cites the Eleventh Circuit's decision in
20    Marion; the Eighth Circuit's decision in Marion, the Southern
21    District of Indiana's decision in U.S. v. Uord, U-O-R-D.
22             Those are the main cases that are cited.
                              Page 3
```

7-7-06 hearing transcript.txt
23          There is also a whole back and forth about it.  The
24  qualified immunity doctrine is applicable here.
25          As a result of these cases Tanaka argues that applying
                SOUTHERN DISTRICT REPORTERS (212) 805-0300
                                                                       7
    6775VILH                   hearing
1   the above standards to the instant case, it is clearly
2   appropriate for the Court to hear testimony concerning fact
3   known to the postal Inspectors at the time the search was
4   executed, including but not limited to:  (A), the full extent
5   of the information provided by the two alleged "victims"
6   Including any positive experiences with the defendants; (B),
7   information provided by individual investors other than the two
8   alleged victims noted in the affidavit; (C), information
9   provided by institution of clients of Amerindo U.S.; and (D),
10  information as to the full scope of U.S. Amerindo full various
11  services offered by the company and the total amount of money
12  under management.
13          MR. COLTON:  Your Honor, as much as I hate to
14  interrupt, I would ask that Inspector Fraterrigo step out while
15  we discuss why we should ask certain questions of her.
16          MS. McEVOY:  That's fine, your Honor.
17          THE COURT:  All right.
18          Then, nothing personal, Inspector.
19          After the government responds, but just so it is clear
20  as to the position that Vilar takes, he joins the application
21  and then suggests that the similar -- that the same cases also
22  support the belief that, or the argument that there should be
23  similar cross-examination of Mr. Litt, settling that in Leon
24  one of the inquiries that a warrant was based on an affidavit
25  so lacking in indicia of probable cause as to render official
                SOUTHERN DISTRICT REPORTERS (212) 805-0300
                                                                       8
    6775VILH                   hearing
1   belief in its existence entirely unreasonable.
2           Vilar takes the position that the warrant was so
3   lacking in probable cause that, first, no reasonable agent
4   would believe that it was a valid warrant and that no federal
5   prosecutor would believe that this was a valid warrant and that
6   no magistrate, reasonable magistrate would believe that it was
7   a valid warrant.
8           And so, based on this as put in the Count Four, the
9   inquiry into the reasonableness of official belief and probable
10  cause should therefore include that both that of both the
11  prosecutor and the searching agents because, among other
12  things, Inspector Fraterrigo was Mr. Litt's agent in conducting
13  the search and she should be held to the same standard he would
14  be.
15          The government, not surprisingly, opposes this,
16  claiming that for purposes of this inquiry I need not go beyond
17  the four corners of the affidavit and the warrant itself.
18          Then the government addresses another issue which is
19  the Rule 26.2 issues.
20          The government notes it does not intend to elicit from
21  Inspector Fraterrigo or any other witness details about the
22  investigation including what she might have been told by any
23  victims so, therefore, they don't intend to turn over the
24  reports of the interviews of the victims or her testimony in
25  grand jury, none of which related to the execution of a
                SOUTHERN DISTRICT REPORTERS (212) 805-0300
                                                                       9
    6775VILH                   hearing
1   warrant.
                            Page 4

```
                        7-7-06 hearing transcript.txt
 2           It seems to me that that issue is joined by -- it gets
 3      obviously wrapped up, Tanaka and Vilar, about the scope of the
 4      cross-examinations because if defendants are right, then she's
 5      going to be testifying about these things.  If they're not
 6      right, then she won't be.
 7           Then there is the question of Inspector Fraterrigo's
 8      e-mails.
 9           The government says it located e-mails from Inspector
10      Fraterrigo, I presume, seeking the production by Detective
11      Sergeant Shaw of his "information" and other documents
12      presented to the U.K. Courts or to Cadogan Tate, and the
13      government says it is not appropriate to turn these over but if
14      I would like to review them in camera, that I should do that.
15           Let's start with that one fist.  I think I would like
16      to review them in camera.  I think the defense has no
17      objection.
18           MR. COLTON:  Yes.
19           MS. McEVOY:  Judge, just to clarify.  Even though the
20      government's position was it didn't believe it was 3500
21      material the e-mails surrounding the shipment of materials to
22      Cadogan Tate, the government gave that over to the defense last
23      week.
24           THE COURT:  All right.
25           MS. McEVOY:  But there is a small set of documents
                    SOUTHERN DISTRICT REPORTERS (212) 805-0300
                                                                       10
        6775VILH                   hearing
 1      regarding after the litigation on this motion began Inspector
 2      Fraterrigo reached out to Detective Sergeant Shaw to see if he
 3      had copies of his application.
 4           THE COURT:  I was going to ask.
 5           MS. McEVOY:  I wanted to clarify, because there are
 6      two categories of information.
 7           THE COURT:  The latter category of information, the
 8      timing of those e-mails is after the --
 9           MS. McEVOY:  January 2006.
10           THE COURT:  I will look at them.
11           Look.  I have read the cases that everybody cites.  I
12      have read a bunch of other cases but -- Mr. Colton, is there
13      anything else you want to add to this point?
14           MR. COLTON:  Just one more issue your Honor didn't
15      mention that has to be decided.
16           THE COURT:  Sure.
17           MR. COLTON:  That's the question of whether Brady and
18      Giglio apply in the suppression hearing context.
19           The government is obligated to turn over and start
20      with Giglio, most importantly Giglio material on the witnesses
21      that is proffered into this Court.  And that is just another
22      issue.
23           THE COURT:  Well, it is an issue only if the stuff
24      that the government says it has would be relevant to her
25      testimony.  I mean, I'm not sure that that issue needs to be
                    SOUTHERN DISTRICT REPORTERS (212) 805-0300
                                                                       11
        6775VILH                   hearing
 1      taken up.
 2           For example, what is the scenario in which you don't
 3      get this material under 26.2 but you do get it as Giglio?
 4           MR. COLTON:  I'm not besmirching the Inspector.
 5           THE COURT:  I'm not suggesting you are.
 6           MR. COLTON:  But if she had been previously found by
 7      another Court to have filed false statement, that's clearly
 8      impeachment material.  I'm not saying that happened.
                                   Page 5
```

```
                      7-7-06 hearing transcript.txt
 9          THE COURT:  That's not the context in which this is
10   raised by the government.
11          MS. McEVOY:  No.  Even though -- and the government
12   has turned over -- there was none.  But if the government had
13   that information the government would obviously have turned it
14   over irrespective whether Giglio or Brady applies to this
15   hearing.
16          MR. COLTON:  I'm confused then as to the government's
17   position that they don't have to turn over Giglio material.  If
18   their representation is they don't have any, I will accept the
19   representation for now.
20          THE COURT:  Ms. McEvoy?
21          MS. McEVOY:  The government's position was that the
22   small set of e-mail was not 3500 material.
23          THE COURT:  And also, even if it were Giglio, it
24   doesn't get turned over.
25          MS. McEVOY:  Exactly.
              SOUTHERN DISTRICT REPORTERS (212) 805-0300
                                                                   12
     6775VILH                    hearing
 1          THE COURT:  That's the context in which I understood
 2   it.
 3          Let me ask Mr. Colton's question.  It sounds like you
 4   have answered it, but I take it if there is anything else about
 5   Inspector Fraterrigo's professional history where, for example,
 6   some judge found that she perjured herself or anything like
 7   that -- again, no one is suggesting that that's true -- but,
 8   taking the most extreme hypothetical to make Mr. Colton's point
 9   of forum, that you would have turned that over?
10          MS. McEVOY:  That is correct, your Honor.
11          THE COURT:  Okay.
12          Does that cover that, Mr. Colton?
13          MR. COLTON:  Yes.  We have no other way to know but it
14   wasn't clear and I wanted the record to be clear.
15          THE COURT:  Now, with respect to the scope of the
16   cross.
17          MR. COLTON:  Your Honor, this is most certainly not an
18   attempt to back door a Franks hearing.  We are not, at this
19   point, reopening that question.  Your Honor said we could.  We
20   may, depending on what happens, but we are not doing that now.
21          What we are suggesting is the case law -- and frankly
22   the Leon case itself supports the proposition that we are
23   entitled to look at the totality of circumstances to address
24   the question of what would an objectively reasonable officer or
25   agent do under the same circumstances and, frankly, Leon says
              SOUTHERN DISTRICT REPORTERS (212) 805-0300
                                                                   13
     6775VILH                    hearing
 1   exactly that.  The question, at page 920 of the opinion is the
 2   officer acting as a reasonable officer would and should act in
 3   similar circumstances.
 4          So, without knowing the information available to the
 5   executing agents, how do we know what the similar circumstances
 6   are?
 7          And, frankly, to use an absurd example, your Honor,
 8   just to highlight the point, if this was a homicide case and
 9   the agent had sworn to an affidavit that said, "I interviewed a
10   witness who saw the defendant point a gun at the victim, fire
11   it, and the victim fall," surely that would make probable cause
12   for an arrest or search of premises -- but we find out later
13   that the witness also said, "while the victim was pointing a
14   weapon back at the defendant."
15          Now, a reasonable officer, knowing that second fact,
                                  Page 6
```

                        7-7-06 hearing transcript.txt
16   wouldn't really think the probable cause analysis was the same.
17           THE COURT:  No, because in that situation that would
18   be a Franks problem.
19           I mean, that hypothetical gets you a Franks hearing,
20   it does not get you --
21           MR. COLTON:  It is an extreme example.
22           THE COURT:  But it is so extreme that it takes it
23   outside of Leon and moves it towards Franks.
24           MR. COLTON:  If you look at the Eighth Circuit's
25   rationale, the Eleventh Circuit's rationale and, frankly, the
                    SOUTHERN DISTRICT REPORTERS (212) 805-0300
                                                                        14
     6775VILH                    hearing
1    similar circumstances specific language of Leon, there is no
2    reason to restrict the inquiry to just what the agent put in
3    the four corners of the affidavit.
4            It is important to know what else was known to the
5    agent.  We are not going or are asking your Honor to allow us
6    to ask any agent their subjective opinion, their subjective
7    simply what did you know, what were you told.
8            For example, in this case you have Inspector
9    Fraterrigo saying that there is over a billion dollars under
10   management and yet there is $17 million alleged in loss.  So,
11   for her then to say if she really knew there was a billion
12   dollars under management, to say that of that 1 percent or
13   something of the entire company has probable cause, I can take
14   documents of the entire company, we want to know that.
15           THE COURT:  Is Leon -- Leon, of course, does not
16   explicitly support your claim.  You are more relying on the
17   Eleventh Circuit cases.  Leon says that there are four
18   circumstances where good faith does not apply.  First is that
19   the magistrate judge who issued the warrant was misled.
20           MR. COLTON:  Right.
21           THE COURT:  Second is that the issuing magistrate only
22   abandoned his or her traditional role; the third is that the
23   affidavit in support of the warrant is so lacking in indicia of
24   probable cause as to render official belief in its existence
25   entirely unreasonable; and fourth is that the warrant is so
                    SOUTHERN DISTRICT REPORTERS (212) 805-0300
                                                                        15
     6775VILH                    hearing
1    facially deficient that the executing officers cannot
2    reasonably presume it to be valid.
3            Right?  Those are the four areas where good faith
4    doesn't apply?
5            MR. COLTON:  Correct.
6            THE COURT:  I take it that no one is suggesting the
7    second prong is in play here, that the magistrate judge
8    abandoned his role as a neutral arbiter.  No one is suggesting
9    that, right?
10           MR. COLTON:  We are not making that argument to try to
11   support the evidence.
12           THE COURT:  Right.
13           MS. WOLFE:  I think I did very explicitly suggest it
14   in my letter.
15           THE COURT:  I almost fell out of my chair, frankly,
16   and that's why I asked the question.
17           MR. COLTON:  We are not.
18           THE COURT:  I know, I know, I know.  Believe me, there
19   is a purpose to all these questions, Mr. Colton.
20           MR. COLTON:  I have no doubt.
21           THE COURT:  I am stunned at that.  I am absolutely
22   stunned that you would say that about a magistrate judge in
                                    Page 7

7-7-06 hearing transcript.txt
23    this court house. I mean, you know what the facts are? You
24    know what you have to allege to say that about a magistrate
25    judge, that they ignore their sworn duty?
              SOUTHERN DISTRICT REPORTERS (212) 805-0300
                                                                    16
        6775VILH                hearing
 1              That's stunning to me. We will get back to that,
 2    Ms. Wolfe.
 3              MS. WOLFE:  I really would like to address it.
 4              THE COURT:  You can address it later on.
 5              With respect to these cases, is it your suggestion,
 6    Mr. Colton, that these cases stand for the proposition that in
 7    every circumstance a Court is to go beyond the four corners and
 8    to look at what the agent knew, that maybe he or she didn't
 9    tell the magistrate?
10              Is that the suggestion?
11              MR. COLTON:  First of all, that only arises when the
12    question of good faith is at issue; if you have a warrant that
13    is not a general search, not so grossly overbroad from what is
14    in the affidavit.
15              THE COURT:  Of course, talking about Leon.
16              MR. COLTON:  We have to get past that to get to Leon.
17              THE COURT:  Is it your view that every time the good
18    faith belief in the validity of the warrant is in play that the
19    court is to go beyond the four corners of the affidavit in the
20    warrant and go into, for example, what the agent knew, the
21    entirety of what the agent knew, either the agent who was the
22    case agent or the executing agent or anybody who was involved
23    in the search?
24              Is that what your view is that Martin and the other
25    cases say?
              SOUTHERN DISTRICT REPORTERS (212) 805-0300
                                                                    17
        6775VILH                hearing
 1              MR. COLTON:  Yes.
 2              THE COURT:  The Eleventh Circuit, after Martin, in a
 3    case called U.S. v. Robinson, 336 F.3d 1293, said the following
 4    at page 1297:  The question posed in Martin was "Whether the
 5    Court, in deciding whether the execution of the search warrant
 6    was reasonable may consider information known to the officer
 7    that it was not presented in the initial search warrant
 8    application or affidavit. Martin held that the Court can look
 9    beyond the four corners of the affidavit to answer that
10    question. Martin did not hold, however, that the Court must
11    consider beyond the evidence of the four corners of the
12    affidavit in order to find good faith reliance."
13              "Although we have indicated the government bears the
14    burden of demonstrating the applicability of Leon good faith
15    exception, we discern no reason why that burden cannot be met
16    by reference to facts stated within the affidavit that the
17    government did not present extrinsic evidence of Detective
18    Cook's good faith in this case does not, itself, vitiate
19    finding of good faith relies on the warrant."
20              So, that's not what the Eleventh Circuit's view is.
21              MR. COLTON:  Two points.
22              THE COURT:  Please.
23              MR. COLTON:  First, we don't suggest that the
24    government's failure to put in extrinsic evidence would
25    vitiate. So, there is two points your Honor made from the
              SOUTHERN DISTRICT REPORTERS (212) 805-0300
                                                                    18
        6775VILH                hearing
 1    case, that point is not, I believe, relevant.
                              Page 8

```
                         7-7-06 hearing transcript.txt
 2              THE COURT:  It said, "the Court need not consider,"
 3    which is opposite of what you told me Martin said.
 4              MR. COLTON:  I'm saying Martin says -- if I was
 5    unclear, I'm sorry.
 6              Martin says and the other cases say the Court may.
 7    And in this case I'm not saying your Honor must, but I'm saying
 8    your Honor should exercise his discretion to do so because you
 9    have a case here where the government, very strenuously, fought
10    against putting Inspector Fraterrigo on the stand, against
11    putting other witnesses on the stand, only to turn around 180
12    degrees and say this witness is critical, this witness is
13    necessary.  These other witnesses are necessary.
14              And I venture to say that this witness who was
15    previously dubbed by the government to be a fishing expedition
16    would be on the stand under the government's admonition for
17    hours.  And that raises some question in and of itself.
18              Moreover, when you look at what is in the affidavit
19    allegation about two clients in a huge operation, allegations
20    that go from 2003 to 2005 but yet a warrant that covers 20
21    years, there are facts that scream out to say, your Honor,
22    before you can actually say there was good faith in executing
23    such a blatantly overbroad and blatantly unsupported warrant
24    that we should find out what the executors knew.
25              THE COURT:  The record will speak for itself under
                        SOUTHERN DISTRICT REPORTERS (212) 805-0300
                                                                          19
      6775VILH                     hearing
 1    colloquy on what the Eleventh Circuit held, but I think the
 2    important point is that the Eleventh and Eighth Circuit, they
 3    don't describe it in terms of the Court's discretion.  There is
 4    no such language in any of those opinions or frankly those that
 5    apply to those opinions, because that is what I looked at.
 6    What they talk about is what the government itself is allowed
 7    to put forth in a suppression hearing to substantiate the good
 8    faith belief of the agent.
 9              I mean, one interesting case on this is Marion.  And
10    what happened there is that it was the third Leon exception
11    that was in play there, that is, that the warrant was so
12    lacking in indicia of probable cause as to render official
13    belief in its existence entirely unreasonable, and there the
14    defendant argued that the executing officer's reliance on the
15    issuing Judge's determination of probable cause was entirely
16    unreasonable because the affidavit contains so few indicia of
17    probable cause to believe criminal activity was occurring in
18    the motel room, or that evidence of criminal activity would be
19    found there.
20              And what the Eighth Circuit said was we disagree.
21    First they think that the affidavit was sufficient but then he
22    went on to say that when assessing the objective reasonableness
23    of police officers executing a warrant, in looking at the
24    totality of the circumstances they said it was appropriate for
25    the government to proffer and for the Court to consider
                        SOUTHERN DISTRICT REPORTERS (212) 805-0300
                                                                          20
      6775VILH                     hearing
 1    information known to the officers but not presented to the
 2    issuing judge.
 3              Now, the logic frankly escapes me on that but because
 4    what it allows is it allows the government to argue that even
 5    if the affidavit didn't substantiate a finding of probable
 6    cause, if the applying law enforcement officer knew of
 7    additional incriminating information that he or she didn't
 8    share with the magistrate, that it would be objectively
                                    Page 9
```

```
 9      reasonable for that person to go ahead and search the premises.
10              As I said, that's an elliptical analysis because, if
11      you ask me, it allows an agent to say, oh, I am allowed to do
12      it, the piece of paper itself was justified by a piece of paper
13      that didn't contain enough PC but since I didn't tell the
14      judge, it is okay by me, whatever.
15              But, the point is all of these cases come up in that
16      context where it is okay for the government to offer what it is
17      that the agent knew beyond what was in the four corners of the
18      affidavit that would substantiate that agent's belief that he
19      or she was properly searching the premises, not that it is
20      error for the Court not to consider all the other things
21      swimming around in the agent's head that wasn't told to the
22      magistrate and there is nothing to suggest otherwise in these
23      cases.
24              MR. COLTON:  It cannot be that the standard is a
25      double standard, that if we are in a Leon analysis and the
                    SOUTHERN DISTRICT REPORTERS (212) 805-0300
```
                                                                    21
```
        6775VILH                    hearing
 1      government needs to put in more information it can but the
 2      defense cannot.  That can't be the law.
 3              THE COURT:  What is surprising to me is that -- let me
 4      put it to you this way.  If the situation were that the
 5      affidavit here, the government conceded that the affidavit did
 6      not even substantiate PC to search the place at all, let alone
 7      the scope of the warrant that we are talking about here and the
 8      government came to me and cited me Marion; I would say, thank
 9      you very much, it is the Eighth Circuit, I'm not bound by it,
10      don't buy it.  Have a nice day.
11              And I think you and I agree and it is surprising to me
12      that you think these cases are good because I think they are
13      suggesting that the government is allowed to proffer and the
14      Court may consider -- may consider this information because it
15      would go to, frankly, the subjective belief of the executing
16      agent because it would go to what he or she knew beyond that
17      which was told to the magistrate.
18              There is nothing from these cases and they all come up
19      in this context of whether or not the agent knew something that
20      he or she wasn't telling the judge that was incriminating and
21      therefore it was okay for them to search the premises.  That's
22      all they say.  And I think that the Robinson case makes clear
23      that they were sort of putting the brakes on anybody thinking
24      that this requires a court to look beyond the four corners.
25              MR. COLTON:  The Eleventh Circuit says "may."  We are
                    SOUTHERN DISTRICT REPORTERS (212) 805-0300
```
                                                                    22
```
        6775VILH                    hearing
 1      talking the position "may" but the Eighth Circuit definitively
 2      says must.
 3              THE COURT:  Okay.  Be careful.  Be careful about that
 4      but go ahead.
 5              MR. COLTON:  Well, I mean, the quote from Marion on
 6      the last page says:  When assessing the objective
 7      reasonableness of police officers executing a warrant, we must
 8      look to the totality of circumstances including any information
 9      known to the officers but not presented to the issuing judge.
10              THE COURT:  Right, so that you must look at the
11      totality of the circumstances.
12              MR. COLTON:  Right.  And.
13              THE COURT:  And when the government says that the
14      executing officer didn't tell the judge, then you must look at
15      that.  That's not to say that you need to look at everything
```

7-7-06 hearing transcript.txt
16  that was inside the agent's head regardless of which prong of
17  the four that we are looking at in Leon. You always have to
18  look at it beyond what is regardless of the circumstance. It
19  is not what they're saying. In fact, the Court within the
20  Eighth Circuit have interpreted it as may.
21              United States v. Summage, an April 5, '06 case, it
22  says:  In some circumstances, an executing officer's knowledge
23  that is not contained in the affidavit may still provide a
24  basis for the good faith exception.
25              And that's exactly right. I mean, that is a proper
                SOUTHERN DISTRICT REPORTERS (212) 805-0300
                                                                    23
    6775VILH                     hearing
1   interpretation of Marion.
2              And Mr. Colton, I think you and I agree that the
3   notion that what is -- if Inspector flat out knows something
4   that is incriminating and she didn't tell the magistrate judge,
5   I guess being neutral here, so what?
6              Looking at this from an objective viewpoint, what
7   about all the other agents who executed the warrant who didn't
8   know what Fraterrigo knew. And if they look at this thing and
9   say or a reasonable inspector in their position would look at
10  that affidavit and say, there is no way there is PC here.  You
11  win.  I could care less also what is in Fraterrigo's head if it
12  is incriminating.
13             But, those cases don't say in every circumstance I am
14  required to go beyond the four corners of the affidavit, and I
15  don't think they talk about in terms of the Court's discretion.
16  They're talking about in specific context that is not at issue
17  here
18             MR. COLTON:  Again, the distinction that the
19  government can save a search with extrinsic evidence outside of
20  the warrant but the defense can't try to neutralize good faith
21  by that very same set of information is a problematic double
22  standard to the defense.
23             THE COURT:  You don't have any authority from the 8th
24  or 11th circuits that takes that view.  And also, there isn't
25  any.  There is none.  That's the point of Robinson.
                SOUTHERN DISTRICT REPORTERS (212) 805-0300
                                                                    24
    6775VILH                     hearing
1              Robinson rejects a defendant's argument that Martin
2   should be read as requiring a Court to go beyond.  They say,
3   no, that's not at all what we are saying. And in the context
4   of which Martin is decided, like Marion and the context in
5   which Robinson is decided, that's point they're making.
6              And in any event, there is -- there is no authority
7   that is making the proposition you are making, either in the
8   11th, 8th or any other circuit.
9              MR. COLTON:  You are right, your Honor, we are arguing
10  fundamental fairness that says that the standard for both sides
11  should be the same. And the government in this case continues
12  to take the position that the standards are not the same for
13  both sides.
14             THE COURT:  No, they're not.  The government is saying
15  that your cases are distinguishable.  The government actually
16  relied on cases within the circuit that suggest that it is --
17  look, you can look at the totality of the circumstances.
18             For example, Judge Mukasey in Burke looked at what was
19  taken. But, in terms of evaluating the objective good faith
20  belief of the Inspectors carrying out or law enforcement
21  officers carrying out the search, there is nothing in Burke
22  that says you have to go inside their heads and figure out what
                                Page 11

```
                        7-7-06 hearing transcript.txt
23      else they knew that they didn't tell anybody.
24              Nothing in Burke that says that. And no other case
25      within the Second Circuit.
                    SOUTHERN DISTRICT REPORTERS (212) 805-0300
                                                                           25
        6775VILH                  hearing
 1              What I'm saying to you is the analysis in Marion, to
 2      me, is unpersuasive. I wouldn't allow the government to do
 3      this. And maybe it is in part because it is an asymmetric
 4      benefit to the government but also it just doesn't flow from
 5      Leon. It doesn't flow. It doesn't matter if the inspector has
 6      other incriminating evidence in her head that she didn't tell
 7      the magistrate judge. It doesn't matter, especially to the
 8      other inspectors.
 9              So, I don't think that these cases, they certainly
10      don't say that I'm required to go beyond the four corners of
11      the affidavit. To the extent they allowed it in circumstances
12      there are certain circumstances that are different. Even if
13      they are buying, which they're not and persuasive, they're
14      different.
15              And so, I just don't see that they remotely support
16      the extensive cross that you want to do.
17              MR. HOFFMAN: Your Honor, before we leave that point
18      may I make a comment on it?
19              THE COURT: Of course.
20              MR. HOFFMAN: And we may be talking about something
21      different but let me suggest the following:
22              In the first prong under Leon where it says
23      suppression is warranted, may be warranted, is where the
24      issuing magistrate judge was misled by information in an
25      affidavit.
                    SOUTHERN DISTRICT REPORTERS (212) 805-0300
                                                                           26
        6775VILH                  hearing
 1              THE COURT: Yes.
 2              MR. HOFFMAN: If there is information in the affidavit
 3      that would be misleading, if the Court knew of information that
 4      the agent --
 5              THE COURT: A material omission --
 6              MR. HOFFMAN: -- had --
 7              THE COURT: -- yes.
 8              MR. HOFFMAN: -- that we should be allowed to explore,
 9      I take it?
10              THE COURT: That's Franks. That's Franks. And
11      Mr. Colton made clear that he wasn't trying to reopen the
12      Franks issue.
13              That's Franks. That's misleading the magistrate judge
14      and I have already ruled that the defense hasn't given me any
15      basis to believe that the magistrate judge in this case was
16      misled by a misrepresentation or material omission and so I'm
17      not going to allow Franks.
18              MR. HOFFMAN: Let me suggest the following.
19              THE COURT: Sure.
20              MR. HOFFMAN: I understand you say it is Franks, but
21      let me suggest the following.
22              In the affidavit one of the -- and I don't have it in
23      front of me but I can pull it out if you want to read specific
24      words, one of the statements made to the magistrate judge is
25      that historically Amerindo was an advisor to institutional
                    SOUTHERN DISTRICT REPORTERS (212) 805-0300
                                                                           27
        6775VILH                  hearing
 1      clients.
                                  Page 12
```

```
                        7-7-06 hearing transcript.txt
 2   A.  That's correct.
 3   Q.  Did you ever tell the people who you briefed on what they
 4   were allowed to seize that they were not allowed to seize any
 5   of the various documents I just went over with you as it
 6   related to clients of institutional clients of Amerindo
 7   Investment Advisors, Inc., the American licensed company?
 8   A.  No, I did not.
 9   Q.  Would it be accurate to say that any of the other
10   paragraphs in attachment A that refer to generic-type documents
11   as I just read to you, broadly described documents that were
12   between Amerindo Investment Advisors, Inc., the licensed
13   American registered investment advisory company, and its 20
14   years' worth of institutional clients, you had no probable
15   cause for the seizure of those documents?
16           MS. McEVOY:  Your Honor, objection.  Just ambiguous
17   question.
18           MR. HOFFMAN:  I can go through it.
19           THE COURT:  Go ahead, Mr. Hoffman.
20           MR. HOFFMAN:  Okay.
21   Q.  Sticking with paragraph 4 you also asked for other
22   documents -- if you look at paragraph 4, after you asked for
23   the documents we just discussed concerning those that were sent
24   to or received from client, you then go on and say:  And other
25   documents concerning or reflecting the identities of and
               SOUTHERN DISTRICT REPORTERS (212) 805-0300
                                                                  154
     6775VILH                    Fraterrigo - cross
 1   communications with clients who have investments in the
 2   Amerindo brokerage account.
 3           Do you see that?
 4   A.  Yes.
 5   Q.  Would it be accurate to say that there was no probable
 6   cause to seize documents of any of the institutional clients of
 7   the licensed investment advisor Amerindo Investment Advisors,
 8   Inc., U.S., that had investments in Amerindo brokerage
 9   accounts, is that correct?
10   A.  Yes, that's correct.
11   Q.  And it would be equally correct to say that you never told
12   that to any of the agents who executed the search warrant that
13   those documents, there was no probable cause for and they
14   shouldn't take them, correct?
15   A.  That's correct.
16   Q.  Would it be equally correct that nowhere in your
17   submission, in your sworn affidavit, do you state that there
18   are 20 years' worth, give or take, of institutional clients of
19   Amerindo Investment Advisors, the licensed U.S. company, whose
20   documents should not be taken?
21   A.  I didn't put that in my affidavit.
22   Q.  And, in fact, nowhere in your affidavit do you even say
23   that there are such clients?
24           MS. McEVOY:  Your Honor, objection for -- based on
25   your earlier rulings of what is not in the affidavit.
               SOUTHERN DISTRICT REPORTERS (212) 805-0300
                                                                  155
     6775VILH                    Fraterrigo - cross
 1           THE COURT:  Overruled, because that has to do with
 2   something different.  You are talking about a relationship
 3   between what has been sought or not sought and that's what we
 4   are going through --
 5           MR. HOFFMAN:  Correct.
 6           THE COURT:  -- and why?  Overruled.  Go ahead.
 7           THE WITNESS:  Can you repeat it?  I'm sorry.
 8   BY MR. HOFFMAN::
                              Page 69
```

7-7-06 hearing transcript.txt
```
 9   Q.  And, in fact, you never even state in your affidavit and
10   the attachment thereto that there are such institutional
11   clients as Amerindo U.S., the licensed Amerindo investment
12   advisory company that they exist, these institutional clients?
13           You never state that in the affidavit, is that
14   correct?
15   A.  That's correct.
16   Q.  Looking at paragraph 5 you ask for client lists, client
17   files, investment brochures, marketing materials, investment
18   advisory agreements, copies of correspondence sent to or
19   received from clients and other documents concerning or
20   reflecting the identities of an communications with clients who
21   have investments managed by Amerindo who receive redemptions
22   through or make investments through overseas bank accounts and
23   trust companies including PTC Management, Limited, and
24   Barclays.
25           Do you see that?
             SOUTHERN DISTRICT REPORTERS (212) 805-0300
                                                                     156
     6775VILH                 Fraterrigo - cross
 1   A.  Yes.
 2   Q.  Did you have any probable cause to ask for client lists
 3   that would include, for example, any of the institutional
 4   clients of Amerindo U.S., the licensed investment advisors
 5   company, whose monies were so invested?
 6   A.  No.
 7   Q.  And that would be the same under that paragraph, you would
 8   have no probable cause to those clients to their client files,
 9   investment brochures, marketing materials, etc., correct?
10   A.  That's correct.
11   Q.  Now, in paragraph 6 you ask for documents reflecting all
12   investments in which Brian Harvey was involved, correct?
13   A.  That's correct.
14   Q.  And, again, you swear and state that you have probable
15   cause to seize all documents reflecting Brian Harvey's
16   investments, correct?
17   A.  That's correct.
18   Q.  And, what was the probable cause that you had, that you
19   swore you had concerning Brian Harvey?
20   A.  I had information to believe that this individual did
21   not -- attempted to redeem an investment, had trouble with his
22   investment.
23   Q.  Was that information you got from Brian Harvey?
24   A.  No, it was not.
25   Q.  Was that a document?
             SOUTHERN DISTRICT REPORTERS (212) 805-0300
                                                                     157
     6775VILH                 Fraterrigo - cross
 1           MS. McEVOY:  Objection.
 2           THE COURT:  Sustained.
 3           Mr. Hoffman, if it is in the affidavit it is in the
 4   affidavit, fine, if she wants to point to something in the
 5   affidavit.  What's behind it, we're not going there.
 6           MR. HOFFMAN:  Thank you.
 7   Q.  Show me what in this affidavit supports probable cause that
 8   you swore you had that Brian Harvey documents reflecting
 9   investments should be seized; what probable cause you had --
10   I'm sorry -- what probable cause there was in these documents
11   that show that there was evidence of criminality concerning
12   Brian Harvey, on the premises at Park Avenue?
13   A.  Paragraph E of the affidavit.
14           THE COURT:  Which paragraph?  I'm sorry.
15           THE WITNESS:  E.
                             Page 70
```

```
                        7-7-06 hearing transcript.txt
16              THE COURT:  E.
17              MR. HOFFMAN:  Can I have one moment?
18              THE COURT:  Sure.
19     BY MR. HOFFMAN::
20     Q.  Are you talking about page 9?
21     A.  I'm sorry.  Page 5 of the affidavit, paragraph E.
22     Q.  Okay, there are two paragraph Es.  They're on different
23     numbers.  There is one on page 9.  But, on paragraph E you are
24     talking about page 5 where you state:  Cates told me about
25     other individuals who she believed to be investors with
                   SOUTHERN DISTRICT REPORTERS  (212) 805-0300
                                                                        158
       6775VILH                    Fraterrigo - cross
1      Amerindo.  Let's stop there.
2              That is correct?
3      A.  That's correct.
4      Q.  So, that statement is that you were told by Cates that she
5      believed as opposed to knew, is that what you are saying?
6              MS. McEVOY:  Objection.
7              THE COURT:  It speaks for itself.
8              MR. HOFFMAN:  Okay.
9      Q.  When you wrote down that you were told that she believed
10     was it your understanding, since it is your words, that that
11     meant she wasn't sure?
12             MS. McEVOY:  Objection.
13     A.  She believed.
14             THE COURT:  Sustained.  Sustained.  It speaks for
15     itself.
16     BY MR. HOFFMAN:
17     Q.  She believed to be invested with Amerindo, some of whom may
18     have had trouble redeeming all or part of their investment
19     including Brian Harvey.
20     A.  That's correct.
21     Q.  So, what you swore was your probable cause was a statement
22     that Brian Harvey may have been or was believed to potentially
23     have been an investor and may have had trouble redeeming all of
24     his shares.
25             Is that what are you telling us was your sworn
                   SOUTHERN DISTRICT REPORTERS  (212) 805-0300
                                                                        159
       6775VILH                    Fraterrigo - cross
1      statement that that was probable cause?
2      A.  It's in my affidavit was probable cause, yes.
3      Q.  And there is nothing else in any of these submitted papers
4      for this warrant concerning Brian Harvey, correct?
5      A.  That's correct.
6              MR. HOFFMAN:  If I can have another second, your
7      Honor?
8              THE COURT:  Sure.
9              (Pause)
10     Q.  Going back to Exhibit A, paragraph 6 --
11             THE COURT:  Attachment A.
12     Q.  -- sorry -- where you say documents reflecting all
13     investments naming certain people including Brian Harvey; you
14     then say Joy Urich.
15             Do you see that?
16     A.  Yes.
17     Q.  So, you are aware that you have probable cause to seize
18     documents reflecting investments of Joy Urich.  Is that right?
19
20     A.  Yes.
21     Q.  And your understanding, again, was that you have probable
22     cause to believe that there are documents that are at the Park
                                    Page 71
```