**EXHIBIT C**

```
                                                                    1
      67arvilh
 1    UNITED STATES DISTRICT COURT
 1    SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x
 2
 3    UNITED STATES OF AMERICA
 3
 4              v.                          05 Cr. 621 (KMK)
 4
 5    ALBERTO VILAR                         Hearing
 5    GARY TANAKA,
 6              Defendant.
 6    ------------------------------x
 7                                          New York, N.Y.
 7                                          July 10, 2006
 8                                          9:45 a.m.
 8    Before:
 9
 9          KENNETH M. KARAS
10                                          District Judge
10
11    MICHAEL J. GARCIA
11    United States Attorney for the
12    Southern District of New York
12         One St. Andrew's Plaza
13         New York, N.Y.  10007
13    DEIRDRE A. McEVOY
14    MARC O. LITT
14         Assistant United States Attorneys
15
15    JEFFREY C. HOFFMAN, ESQ.
16    SUSAN C. WOLFE, ESQ.
16    Attorneys for Defendant Vilar
17         Hoffman & Pollik, LLP
17         260 Madison Avenue, 22nd Floor
18         New York, New York  10016
18         (212) 679-2900
19
19    GLENN C. COLTON, ESQ.
20    Attorney for Defendant Tanaka
20         Wilson Sonsini Goodrich & Rosati (NYC)
21         12 East 49th Street, 30th Floor
21         New York, New York  10017
22         (212) 999-5804
22
23    STEVEN G. KOBRE, ESQ.
23    Attorney for Defendant Tanaka
24         Kobre & Kim LLP
24         800 Third Avenue
25         New York, New York  10022
25         (212) 488-1200
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

67arvilh

4   A01144105, one of the boxes that you supplied to us with
5   documents taken from the Amerindo offices on Park Avenue.
6           MR. HOFFMAN:  May I approach, your Honor?
7           THE COURT:  You may.
8   Q.  Let me ask you to look at that and tell me if those
9   documents seized are from an entity not named in paragraph B as
10  in "boy", "Amerindo Internet Fund."
11  A.  That's correct.
12  Q.  Parenthetically, if there are documents of brokerage
13  accounts.
14  A.  Yes, but it is covered on another paragraph in the
15  affidavit.
16  Q.  Did you not tell us a moment ago that other than those
17  brokerage accounts named in paragraph B, did you not tell us
18  this two minutes ago that you did not have probable cause --
19  A.  I did not submit probable cause.
20  Q.  You did not submit probable cause in the affidavit
21  concerning any other brokerage accounts, correct?
22  A.  That's correct.
23  Q.  From the same box I am bringing you --
24          MR. HOFFMAN:  If I may approach, your Honor?
25          THE COURT:  You may.
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

36
67arvilh                    Fraterrigo - cross
1   Q.  -- documents seized by the government from an entity,
2   brokerage account, called Dextra, D as in "dog" E-X-T as in
3   "Tom" R-A II.  I ask you to look at that and tell me if in fact
4   that is a file with brokerage accounts from an entity called
5   Dextra II.
6   A.  That's correct.
7   Q.  Again, that is not one of the entities named in paragraph
8   B, page 8, that we just talked about, correct?
9   A.  That's correct.
10  Q.  That would fall into the category, as you said a moment
11  ago, of brokerage accounts other than those named in paragraph
12  B for which you did not submit probable cause in the affidavit,
13  correct?
14  A.  That's correct.
15  Q.  Let me show you from the same box of documents seized by
16  the government a file for a company called O-L-A-F as in
17  "Frank" S as in "Sam" --
18          THE COURT:  Do you have a bunch of them?  Why don't
19  you show them all to her at once and move this along.
20          MR. HOFFMAN:  I think that's it from this box.
21          THE COURT:  OK.  You were spelling Olafson.  Go ahead.
22  Q.  O-L-A-F as in "Frank" S as in "Sam" O-N as in "Nancy."
23  Would this also be documents from a brokerage account not named
24  in paragraph B as in "boy" on page 8 and one of those accounts
25  for which you have told us there was no probable cause to seize
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

37
67arvilh                    Fraterrigo - cross
1   the documents?
2   A.  That's correct, no.
3   Q.  Correct?
4   A.  I did not submit probable cause.
5   Q.  You did not submit probable cause to seize these documents,

6   correct?
7   A.  Correct.
8   Q.  Let me ask you this.  Since I am not prepared to do these
9   in bulk, have you gone through the documents in the various
10  boxes that you supplied to the defense that were brought here
11  in court?
12  A.  Yes.
13  Q.  Would it be accurate to say that there are a number of
14  brokerage accounts in addition to the ones I just showed you
15  whose documents were received which accounts were not named in
16  paragraph B as in "boy" page 8 and for which there was no
17  probable cause submitted to the magistrate?
18  A.  They were seized, but they were seized under a different
19  paragraph of the affidavit.  I had authority to seize it.
20  Q.  I am not asking you whether or not there was a paragraph
21  that gave you authority to seize a whole bunch of things.  That
22  is not my question.
23  A.  OK.
24  Q.  My question is, as with the ones I just showed you, that
25  there are other brokerage accounts that were seized that are

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

38

67arvilh                    Fraterrigo - cross
1   not named in paragraph B as in "boy" on page 8 of the affidavit
2   and for which, as with the others you just testified to, there
3   was no probable cause to support the seizure, correct?
4   A.  There was no probable cause in the --
5   Q.  In the papers submitted to the magistrate?
6   A.  That's correct.
7   Q.  Thank you.  In the same paragraph B as in "boy," page 8, if
8   you look three lines up from the bottom of that paragraph, you
9   stated that there was probable cause to seize, quote, other
10  documents reflecting or relating to securities transactions
11  entered into on behalf of clients by any current or former
12  Amerindo entity, affiliate, principal, officer, and employee.
13  Do you see that?
14  A.  Yes.
15  Q.  Would it be accurate to say that other than the five
16  individuals previously mentioned, there was no probable cause
17  to seize documents reflecting or relating to securities
18  transactions entered into on behalf of clients other than those
19  five that was put before the magistrate, correct?
20  A.  That's correct.
21  Q.  And there was no probable cause that was put before the
22  magistrate to seize any documents other than concerning the
23  five individuals we have mentioned that involved any current or
24  former Amerindo entities, affiliates, principals, officers, and
25  employees, correct?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

39

67arvilh                    Fraterrigo - cross
1   A.  That's correct.
2   Q.  In terms of your instructions to the individuals executing
3   the search warrant, would it be accurate to say that you never
4   instructed them to limit their seizure of materials from the
5   Park Avenue office to materials concerning the five individuals
6   we have been talking about?
7   A.  No, it did not.

16  A.  I don't believe so.
17  Q.  You were the case agent on the case, right?
18  A.  Yes.
19  Q.  And you were the affiant, right?
20  A.  Yes, I am.
21  Q.  And it appeared from the questions that Judge Maas was
22  asking he was struggling a bit with some of the factual
23  allegations that was in the warrant, correct?
24          MS. McEVOY:  Objection.
25          THE COURT:  Sustained as to form.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

139

67ASVILAR2                     Fraterrigo - cross
1  Q.  Well, Judge Maas was asking questions about inferences that
2  could be drawn from the affidavit, isn't that correct?
3          MS. McEVOY:  Objection.
4          THE COURT:  Do you want to ask her what kind of
5  questions he asked?
6  Q.  Sure.
7  A.  I don't recall the questions he asked.  I recall he asked a
8  question and I recall he pointed to the chart in Gary Tanaka's
9  complaint.  That is all I recall.
10 Q.  And you agree with me that had you actually written down at
11 the time what he had asked or what Mr. Litt had said, it may
12 very well have refreshed your memory so that you actually could
13 today testify about what happened that day, correct?
14 A.  Yes, that is correct.
15 Q.  Is it your testimony that you do recall Judge Maas actually
16 asking questions?
17 A.  I recall he asked a question.  I don't know how many.  He
18 was referring to the chart.  That is all I recall.
19 Q.  Do you recall whether he was asking it of you or asking it
20 of Mr. Litt?
21 A.  Mr. Litt.
22 Q.  And you recall Mr. Litt, as you say, pointing to the chart
23 and you recall not necessarily what he said but do you recall
24 him actually saying anything?
25 A.  I recall him saying something but I don't recall what it

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

140

67ASVILAR2                     Fraterrigo - cross
1  was.  I saw him answering.
2  Q.  And you also I believe testified on direct examination that
3  you had supervised the search of Amerindo U.S. along with team
4  leader Feiter, correct?
5  A.  That is correct.
6  Q.  Approximately how many searches have you supervised?
7  A.  I would say approximately 20.
8  Q.  Is it essentially the same 20 that you were the affiant on
9  the search warrant?
10 A.  Yes.
11 Q.  I want to ask you just a couple of questions about your
12 preparation for your testimony.
13          First, let me just ask you, in between the lunch
14 break, did you have any conversations with anyone relating to
15 your testimony at this hearing?
16 A.  No, I did not.
17 Q.  Did you have any conversations with anyone even just

18  generally relating to testifying?
19  A.  Yes.
20  Q.  Who did you speak to?
21  A.  My husband.
22  Q.  And without getting into the substance of the conversation
23  with your husband, did the conversation at all touch upon the
24  facts or circumstances of this case we are here on?
25  A.  No, it did not.

                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

                                                            141
    67ASVILAR2              Fraterrigo - cross
1   Q.  I might as well ask you this now, the burning question is
2   who is R. Fraterrigo?
3   A.  My husband, Robert Fraterrigo.
4   Q.  And so your husband was actually present at the search of
5   Amerindo U.S.?
6   A.  Yes.
7   Q.  Prior to your testimony and your direct examination, what
8   did you do to actually prepare to testify?
9   A.  I reviewed my notes.  I reviewed my complaints.  I reviewed
10  the search warrant affidavit.  I reviewed my investigative
11  notes, and my inventory forms.
12  Q.  When you say your investigative notes, what does that mean?
13  A.  I mean my 3500 material, what has been provided.
14  Q.  Basically the MOIs, the memorandum of interviews?
15  A.  No, my notes that I had of the search, my 3500.
16  Q.  I take it you also met with the government prior to
17  testifying, correct?
18  A.  Yes, I did.
19  Q.  Approximately how many times did you meet with the
20  government in preparing to testify?
21  A.  Several times.
22  Q.  How much is several?
23  A.  Maybe 5 or 6, 7 times, probably more than that.
24  Q.  Approximately how much time would you say you spent with
25  them during each one of those sessions?

                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

                                                            142
    67ASVILAR2              Fraterrigo - cross
1   A.  Several hours.
2   Q.  And during those sessions did you rehearse your direct
3   examination?
4   A.  We went over my direct examination.
5   Q.  Did you also go back and -- withdrawn.
6          Inspector Fraterrigo, you were asked a number of
7   questions about inventory and exhibits that were obtained from
8   Alberto Vilar's office, do you recall that?
9   A.  Yes.
10  Q.  And do you recall during one part of your direct
11  examination Ms. McEvoy asking you about a number of items on
12  the inventory sheets and asking you to actually recite what
13  those references on the inventory sheets referred to, do you
14  recall that?
15  A.  Yes.
16  Q.  And do you recall specifically in one instance Ms. McEvoy
17  had asked you if you could recall and recount for the court
18  relating to what was indicated as N6 what three red and black
19  ledger notebooks contained?  Do you recall her asking you