# Exhibit 1

320

6896TAN6                Litt - cross

1        I assume, Mr. Hoffman, you are contemplating an
2    application for a Franks hearing?
3        MS. HOFFMAN:  Correct.
4        THE COURT:  It seemed to me that what you need to tell
5    me now, or you can think about it or canvass among yourselves
6    is what kind of a briefing schedule you want to have.  It may
7    be, Mr. Colton and Mr. Hoffman, that what you want to do is tee
8    up the Franks issue first, have me rule on whether or not there
9    should be a Franks hearing.  If there is no Franks hearing,
10    then we can brief the issues that have been laid out in the
11    hearing.  If there a Franks hearing then there can be one set
12    of posthearing briefing that will cover the Franks hearing and
13    this hearing.  I think that makes more sense than having you
14    all do a posthearing briefing now along with making an
15    application for a Franks hearing and then have a second set of
16    posthearing briefs.  I think that would be less sufficient.
17    Again, you can think about it overnight and canvass among
18    yourselves or you can tell me now.
19        MS. HOFFMAN:  I tend to agree with what your Honor
20    anticipates.
21        THE COURT:  That is that you would want to tee up the
22    Franks hearing first, have me rule on that.
23        MS. HOFFMAN:  Yes.
24        THE COURT:  The next question, Mr. Colton, do you have
25    a view on that?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

321

6896TAN6                    Litt - cross

1          MR. COLTON:  I am only smiling, your Honor, because we

2     had talked among ourselves and had agreed for efficiency

3     purposes to go straight to -- basically this has been a mini

4     trial -- to summation which would be an interactive summation.

5          THE COURT:  I think there may very will be argument

6     here.  My only concern is that this is in effect been a bench

7     trial and I guest posttrial submissions all the time from your

8     colleagues on the civil side of the law.  They fight over

9     money.

10         MR. COLTON:  I was there once.

11         THE COURT:  So you know.  So you know, Mr. Colton.  I

12    know it is a pain in the rear, but I do think that given how

13    extensive this record is that is the most thorough way of

14    resolving.  There are so many subissues here and so many fault

15    lines here and this is a very fact intensive determination.

16    Obviously this credibility issue is beyond that.  There are a

17    lot of issues that I think have to be carefully argued.

18         I think from my standpoint I have to be careful and

19    consider and I think it is better for me to get it right for

20    you all and to obviously do the best I can to get it right

21    based on the record.  I still think we will haver argument.

22         MR. COLTON:  I think your Honor knows what my concern

23    is.

24         THE COURT:  I get the concern, believe me.  When there

25    are similar concerns in other cases, I take argument and I rule

                    SOUTHERN DISTRICT REPORTERS, P.C.

                            (212) 805-0300

322

6896TAN6                    Litt - cross

1  from the bench, because I am very sympathetic to the concern
2  and always have been in this case and others.  The defendants
3  have their speedy trial rights vindicated.  When we have issues
4  as complex as this, searches in two countries involving
5  inspectors.  We had a lot of people testify.  There are some
6  novel legal issues and complicated legal issues.  I would
7  imagine that the defendants would like me decide this based on
8  a thorough record as I could because if I rule in their favor,
9  they are going to want to have that be a thorough ruling if the
10  government should appeal it or vice-versa.
11        In any event, I think if we are going to go with the
12  suggestion that we brief the Franks issue first, then it still
13  leaves open the question as to how extensive the briefing will
14  be on this issue.  I think we need to tee that up before we
15  figure out the form the postbriefs.
16        The question, Mr. Colton and Mr. Hoffman if --
17  assuming you are on board with that, Mr. Colton.  Are you
18  onboard with that?
19        MR. COLTON:  Can I have a moment?
20        THE COURT:  Yes.
21        MR. COLTON:  We are on board.
22        THE COURT:  So then do you want to tell me now when
23  you want to give me the submissions, or do you want to work it
24  out among yourselves?
25        MR. COLTON:  I think we can work it out here.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

323

6896TAN6                    Litt - cross

1        THE COURT:  Fine.

2        MR. COLTON:  If your Honor wants to give us 10

3    minutes.

4        THE COURT:  I am happy to give you 10 minutes if you

5    want to talk about it now.

6        MR. COLTON:  Perhaps the easiest thing is to set it.

7        MS. HOFFMAN:  I would suggest three weeks, your Honor.

8    I think in view of the record --

9        MR. COLTON:  Are you saying the Franks hearing?

10        MS. HOFFMAN:  Correct.  That is obviously a very

11    significant issue.

12        THE COURT:  And it a fact-intensive issue.

13        MS. HOFFMAN:  Correct.  And obviously it could well be

14    that these issues are the dispositive issues to the resolution

15    of the case.  All that being the case, I think that would be

16    appropriate.

17        THE COURT:  Mr. Colton?

18        MR. COLTON:  I was going to say two, but it seems to

19    be quibbling.

20        THE COURT:  So that puts it August 30 for the defense

21    submission for Franks.

22        When did the government want to respond by?

23        MR. COLTON:  Just for the record, we may or may not do

24    a submission.

25        THE COURT:  I was suggesting a joint one.

                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

324

6896TAN6                    Litt - cross

1      MS. McEVOY:  The government would request three weeks.

2      THE COURT:  September 21.

3      And reply?

4      MS. HOFFMAN:  I would think a week.

5      THE COURT:  September 28.

6      What is going on with the privilege issues?

7      MS. MERGOLIS:  I can speak to that, your Honor.

8      THE COURT:  Good afternoon.

9      MS. MERGOLIS:  Good afternoon.  I believe they are

10     resolved is my understanding.  We don't have a representative

11     from the government privilege team here today.  As far as I can

12     tell the U.K. and U.S. are completely resolved and we don't

13     expect litigation on this issue.

14     THE COURT:  Obviously there is, as I think I mentioned

15     before -- presumably whatever it is that you all worked out

16     would cover what remains to potentially be produced by way of

17     the subpoena.  If I grant the motion to quash the subpoena,

18     then that is moot.  If I deny the motion to quash the subpoena

19     there could be the production of additional documents.  I

20     assume whatever you all have worked out will avoid litigation

21     on those materials as well, am I right on that?

22     MS. MERGOLIS:  No.  I was referring to the documents

23     that were produced to us by the government privilege team as

24     potentially privileged materials.  And that did not include

25     materials that have yet to be produced.

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300