# Exhibit 2

1  Mr. Tanaka, believes that since Defendant's AZ was in the
2  government's possession, was in Mr. Litt's possession, that
3  Inspector Fraterrigo testified that Mr. Litt drafted the
4  affidavit, this document should be admitted. And I'm offering
5  it for admission.
6           MS. McEVOY: The government has no objection to that.
7  Obviously both parties can argue what the document means.
8           THE COURT: Okay, that's fine. So AZ is received.
9           (Defendant's Exhibits AZ received in evidence)
10 Q.  You would agree with me, Inspector Fraterrigo, when you
11 swore out the affidavit, had you known or had you recalled or
12 had you been told that Lilly Cates was able to redeem $3
13 million of securities held by Amerindo in February 2005, that
14 would have been something the magistrate would want to know.
15          THE COURT: I think you need to rephrase that
16 question. This is where Ms. McEvoy's point is right on the
17 money.
18 Q.  If you had been told by Mr. Litt that he had evidence
19 stating Lilly Cates was able to redeem $3 million of securities
20 held by Amerindo, would you have told the magistrate?
21          THE COURT: No, it's the same thing. Can I give you a
22 little hint?
23          MR. COLTON: Absolutely.
24          THE COURT: Paragraph 6B, the statement that you went
25 through with the agent, explains that when Ms. Cates went to

1    Mr. Tanaka and Mr. Vilar to get them to redeem her money they
2    said no.  What is discussed in the letter is she went on her
3    own then to Bear Stearns and was able to recuperate some of her
4    money doesn't change -- that's not inconsistent with the
5    statement that's in 6B.  I think that's the basis of the
6    government's objection.
7            MS. McEVOY:  That's correct, your Honor.
8    BY MR. COLTON:
9    Q.   And in the criminal complaint that you swore out with
10   respect to Mr. Vilar, you make allegations about how Lilly
11   Cates' $5 million was transferred to a variety of other places,
12   correct, and a vary of other accounts?
13           MS. McEVOY:  Objection as to relevance.
14           THE COURT:  Yeah, I agree.
15           MR. COLTON:  I'll spell it out, your Honor.  The
16   allegations in the complaint create the clear message that
17   they're trying to deliver to Judge Maas that this money is
18   gone, the money that Lilly Cates -- I want to finish because
19   there's a record -- the money Lilly Cates invested is gone,
20   stolen.  And the fact that Lilly Cates was able to go and get
21   $3 million of securities that Amerindo had in its possession is
22   surely something that the magistrate would have wanted to know.
23           THE COURT:  Ms. McEvoy?
24           MS. McEVOY:  Your Honor, it's the same point, whether
25   Ms. Cates, when she couldn't redeem her money from Amerindo was

```
6bftvilh                Fraterrigo - cross
```

1   able to circumvent Amerindo and go to Bear Stearns and rescind
2   Amerindo's authority over her account has no bearing.
3           THE COURT:  And it's not clear to me -- Mr. Colton you
4   can fill in the gap.  She had more investments with Amerindo
5   other than the SBIC investment.  So on paper the SBIC
6   investment may be gone, that doesn't mean that all her other
7   and investments are gone, and it doesn't seem clear to me that
8   Bear Stearns' transfer would have necessarily been SBIC money
9   as opposed to any of her other investments with Amerindo.
10          MR. COLTON:  I agree with that except the entire
11  premise of the search warrant is Rhodes, SBIC and fixed rate
12  deposit, that's it.  And what they argue and have argued
13  vociferously is because there were alleged problems with just
14  these three vehicles, there must have been problems with every
15  other vehicle Amerindo ever had ever, and therefore they had
16  probable cause to search it.
17          And my point is:  Given that you asked the magistrate
18  based just on three investment vehicles, to search for every
19  one from the beginning of time, the fact that that money in
20  some other investment was actually still sitting there would
21  have been clearly relevant to the magistrate's determination.
22          THE COURT:  But not something that is briefed to have
23  this hearing.
24          MR. COLTON:  We couldn't have known.
25          THE COURT:  Hang on, Mr. Colton, because actually now

```
         6bftvilh                 Fraterrigo - cross
```

1    I'm starting to get impatient, because the problem you got is
2    there was a very specific reason why I granted your request to
3    have this hearing. And now we moved on, we did the Rhodes
4    private placement memo question, now we moved on with whether
5    or not all the SBIC money was gone or not. That wasn't briefed
6    to me. The government hasn't had a chance to respond, I
7    haven't had a chance to decide.
8            MR. COLTON: Your Honor, I respectfully submit that
9    the fact that $3 million was recovered and the government knew
10   it is in the spirit of redemption, profit, interest and a lack
11   of wrongdoing on behalf of the defendants with respect to those
12   funds.
13           THE COURT: But you know what, what's in the spirit
14   has nothing to do with the very clear ruling I made as to what
15   was appropriate for a hearing. So if you think you got a basis
16   to go on with this, then we have to figure out a way to brief
17   it, because I'm not going to do this during a hearing that's
18   only supposed to deal with the question of pre-'02 redemptions.
19           And we're done with this topic. Let's move on. Let's
20   move on.
21           MR. COLTON: Well, this is going to be relevant to
22   other things, your Honor. I did not understand and I still
23   don't understand the Court's ruling that somehow post-2002
24   redemptions, which would actually be even more salient, are
25   somehow out of bounds. The only reason we didn't know about

```
6bftvilh                      Fraterrigo - cross
```

1  them is because the government had the information and didn't
2  produce it.  We thought it was redemptions, period.  I
3  understand the point your Honor made about alleged false
4  statements about Rhodes, but redemptions, whether they're
5  pre-2002 or post-2002 I thought were will within the rubric of
6  the ruling.
7           THE COURT:  But put it this way, take it outside the
8  context of this case:  I lend my lawn mower to my neighbor and
9  I go and I asked my neighbor for it back and my neighbor
10 wouldn't give it back to me, so I went in the middle of the
11 night in the garage and took the lawn mower.  That doesn't
12 change the fact when I asked my neighbor for the lawn mower, he
13 said no.
14          And the allegation in the affidavit is that the
15 defendants said no, so she went through some self-help to
16 recuperate some of her investment.  It's never been argued to
17 me that there should be a Franks hearing because the government
18 misrepresented to Judge Maas or gave him the impression that
19 all of the money, all of the SBIC money that she invested, let
20 alone all the money she invested, was gone.  And it's unclear
21 to me, even if that is true, that the $3 million that she was
22 able on her own -- after being, according to the affidavit,
23 rebuffed by the defendants -- to redeem is SBIC investment
24 money.  So even if the government does allege SBIC is gone, it
25 doesn't mean there aren't other investments that she could on

6bftvilh                Fraterrigo - redirect

2005, and you allowed the defense to introduce Defense Exhibit AZ, the Swanson memo. And I think to be able to make fair -- for the government to be able to make fair arguments to why that was not an Amerindo redemption.

THE COURT: I thought I made that argument for you already, and quite clearly, that the statement in the affidavit about the defendants allegedly rebuffing the request versus Ms. Cates's ability to redeem some of her money by going to Bear Stearns did not, to me, mean the statement in the affidavit was inconsistent with that information. So if you're going to offer these to substantiate what I have already concluded, I don't really see the point.

MS. McEVOY: But all that's in the record right now is Defendant's Exhibit AZ, so to the extent a conclusion needs to be supported by evidence.

MR. COLTON: To try to make life easier, the only one I don't understand the admissibility of, and I'm willing to, for Mr. Tanaka, to stipulate for the purpose of this hearing to admission all but 195. I'm not sure I understand the point of 195 for this hearing.

THE COURT: 195?

MS. McEVOY: The offering circular?

THE COURT: Yeah.

MS. McEVOY: Mr. Colton asked a question on cross-examination about whether the agent was aware at the time

6bftvilh                  Fraterrigo - redirect

1    the extent that these are -- the other documents are coming in
2    sort of complete the record on the one document that Mr. Colton
3    introduced, AZ.  I don't have I problem with that.  Again, I
4    think it's relevant, whether or not it rebuts the point --
5             MR. HOFFMAN:  I understand.
6             THE COURT:  -- or doesn't rebut the point.  So I will
7    get ahead and receive those exhibits then.
8             (Government's Exhibit 126, 128, 129, 132, 162, 166
9    received in evidence)
10            (Government's Exhibit 167, 170, 171 and 195 received
11   in evidence)
12   BY MS. McEVOY:
13   Q.   Directing your attention, Agent Fraterrigo, to Defendant's
14   Exhibit Y, the sentence I was just referring to, this is a
15   letter from whom, Inspector Fraterrigo?
16   A.   From Alberto Vilar.
17   Q.   And prior to -- sorry, based on your investigation that you
18   did leading up to your obtaining the search warrant on
19   May 25th, were you aware of misrepresentations by Mr. Vilar to
20   investors?
21   A.   Yes.
22   Q.   Did you take the statement in this letter by Mr. Vilar, "We
23   have only offered fixed rate deposit accounts to our
24   long-standing private equity clients who sought to diversify
25   their equity capital gains," at face value?

6bftvi1h                    Fraterrigo - redirect

1   A.  No.
2           MR. HOFFMAN:  Objection.
3           THE COURT:  Overruled.
4   A.  No.
5   Q.  As Lisa Mayer described her family's investment history
6   with Amerindo to you, were the Mayers able to redeem their
7   GFRDA investment in 1997?
8   A.  No, they were not.
9   Q.  What happened?
10  A.  In 1997 they were discouraged not to, and they eventually
11  kept their GFRDA investment with Amerindo.  They were able to
12  redeem their ATGF investment.
13  Q.  You were asked a series of questions on cross-examination
14  about whether certain information you knew at the time about
15  redemptions, payments, were relevant to the probable cause
16  determination.  Prior to swearing to a search warrant
17  affidavit, did you consciously give consideration one way or
18  another to whether that information was relevant to the
19  probable cause determination?
20  A.  No, I did not.
21          MS. McEVOY:  No further questions.
22          THE COURT:  Recross at your own risk.
23          MR. COLTON:  I'm examining the difference between no
24  minutes and two minutes.  That's all I'm looking at, a couple
25  of things.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300