Exhibit 10

**EDWARD T. SWANSON**
Attorney at Law
1135 17th Street Suite E
Santa Monica, California 90403
Telephone: (310) 586-0082      Fax: (310) 828-6138

## MEMORANDUM

**TO:**      Marc Litt, U.S. Attorney's Office

**FROM:**    Edward T. Swanson

**DATE:**    April 18, 2005

**RE:**      Lily Cates/Amerindo Investment Advisors Inc.

### INTRODUCTION

Amerindo Investment Advisors, Inc. has acted as investment advisor for my client, Lily Cates, a
New York resident, since 1987. **[REDACTED]**


**[REDACTED]**


Furthermore, Mr. Swanson had investigated a $5 million "investment" in a Small Business
Investment Company (SBIC) made by Lily with Amerindo in 2002, and in December 2004 first
requested and then demanded that Amerindo return Lily's funds with interest since Lily had not
signed any subscription or other agreement regarding the investment and had not been provided
with the subscription agreement or other documents regarding the SBIC; Amerindo refused to
return the funds.

When Amerindo failed to deliver $250,000 of Lily's funds to her in January 2005 to pay taxes as
had been requested on several occasions, Lily and Mr. Swanson instructed Amerindo in February
2005 to close her account and deliver all securities and funds to a specified personal account she
maintained at Bear Stearns. Amerindo to date has not done so.



DEFENDANT'S
EXHIBIT
AZ
Franks Hrg.

ES-1000001

In short, Amerindo Investment Advisors (1) **[REDACTED]**
**[REDACTED]**        (2) took $5 million from Lily for a claimed SBIC investment
without any documentation and has refused to return the funds, and (3) has not complied with
Lily Cates' written instructions in February 2005 to close her account and promptly deliver all
funds and securities to her Bear Stearns account.

## [REDACTED]

**BACKGROUND**

## [REDACTED]

Lily
initially invested slightly over $1.3 million with Amerindo. According to the last statement
provided to Lily by Amerindo, which covered the quarter ended September 30, 2004, her
account with Amerindo at that time totaled slightly over $12.2 million. (Exhibit 1)

## [REDACTED]

## [REDACTED]

ES-1000002

[REDACTED]

[REDACTED]

[REDACTED]

ES-1000003

[REDACTED]

[REDACTED]

ES-1000004

[REDACTED]

[REDACTED]

ES-1000005

**SBIC INVESTMENT**

# [REDACTED]

In December of 2004, Mr. Swanson requested on behalf of Lily that the SBIC funds and all interest thereon be returned to her. (Exhibit 14)  Amerindo responded that it would "have to undertake on a best efforts basis the sale of her participation to another prospective investor" and that her funds were "part of the $10 million minimum the General Partner was required to come up with to initiate the fund." (Exhibit 15)  Mr. Swanson then formally demanded the return to her of the SBIC funds, noting that she had not received at the time the private placement memorandum and had never received or executed the subscription documents for the investment. (Exhibit 16)  On December 18, 2004, Alberto Vilar rejected this demand by letter (Exhibit 17), which stated in part:

> The only reason we accepted Lily's $5 million was to invest in the Amerindo SBIC Fund.  No other investment was even discussed or contemplated at that time, or since then.  This includes investing the proceeds of the sale of her New York co-op this year, when she was persuaded to invest it in a declining bond market by Gene Ross.  I advised her to do nothing with the funds.

Mr. Swanson responded to Mr. Vilar's letter on December 21, 2004. (Exhibit 18)

On February 15, 2005, a British Virgin Islands attorney for Amerindo wrote to Mr. Swanson. (Exhibit 19)  The Amerindo attorney stated that Amerindo Investment Advisors, Inc., a Panamanian company, had full discretion with respect to Lily's funds in the account, and neither could nor was obligated to liquidate Lily's position in the SBIC at this time.  He offered, however, the following alternatives "in the interests of an amicable settlement":  (1) Amerindo would seek to find a substitute investor for Lily at face value; (2) the principals would consider the purchase of Lily's position "on a discounted basis on mutually acceptable terms"; or (3) Lily would be given the opportunity to exchange the SBIC interest for "an interest in the main Amerindo investment management entity in the United States, on mutually acceptable terms."

**TERMINATION OF AMERINDO ACCOUNT**

On February 17, 2005, Mr. Swanson provided written notice to Amerindo in New York, by both fax and email, that Lily was instructing Amerindo to close her account with Amerindo and transfer all funds and securities to a specified account Lily personally maintains with Bear Stearns. (Exhibit 20)  The letter also requested an accounting with respect to her Amerindo account.

ES-1000006

On February 22, 2005, Lily personally delivered to Amerindo a letter signed by her confirming the instructions from Mr. Swanson to close her Amerindo account and transfer all funds and securities to her personal Bear Stearns account. (Exhibit 21) On February 23, 2005, Alberto Vilar provided the following response to Mr. Swanson (Exhibit 22):

> The Investment Management Agreement requires that the client notify the office where the account is lodged of its decision to terminate its service in writing. Lily should write a letter to the Amerindo office where she has been a client for the better part of 20 years, which is:
>
> Amerindo Investment Advisors, Inc.
> Calle Elvira Mendez
> Vallarino Building
> 6th Floor
> P.O. Box 4415
> Panama 5
> Republic of Panama
>
> She can also send a signed copy of this notification to the London office, which coordinates administration.
>
> Amerindo stands by what it has previously said to you regarding Lily's full understanding and agreement with regards to the SBIC investment. There is no other investment that was discussed more extensively over the last three years with her and on which there exists a documented record at Amerindo of these numerous discussions.
>
> Lily is in receipt of statements provided by the Panama company, which includes the accounting you requested.
>
> Please note the net proceeds that will ultimately be sent to her will be net of fees, which have long been accrued but not charged for the duration of her account, plus applicable taxes payable. As a valued client, this was done expressly to maximize her total returns pre fees and taxes.
>
> Sincerely,
>
> Alberto Vilar
>
> AV:ms

## [REDACTED]

ES-1000007

# [REDACTED]

[REDACTED]
on February 28, 2005, Mr. Swanson faxed to Amerindo in Panama, New York and London a letter signed by Lily confirming once again the instructions to close her account. (Exhibit 23)

Bear Stearns was notified in February of the instructions by and on behalf of Lily Cates to Amerindo to close her account with it and transfer all funds and securities to her Bear Stearns account. Bear Stearns, at the written request of Lily Cates dated February 28, 2005, transferred all securities and funds in the custodial account maintained for Lily Cates by Amerindo at Bear Stearns into Lily's individual Bear Stearns account. This represented approximately $3 million of the securities and funds held by Amerindo on behalf of Lily. Notice of this transfer was emailed by Mr. Swanson to Michael Shattner, Mr. Vilar's assistant at Amerindo, on March 2, 2005. There was no response from Amerindo. (Exhibit 24)

As of the date of this Memorandum, Amerindo still has not delivered any funds or securities to the designated Bear Stearns account of Lily Cates.

# [REDACTED]

ES-1000008

## LIST OF EXHIBITS TO MEMORANDUM

| No. | Description |
|-----|-------------|
| 1 | Amerindo Account Statement for Quarter Ended September 30, 2004 |
| 2 | First Two Pages of Proposed Investment Management Agreement Dated April 30, 1987 |
| 3 | Discretionary Power of Attorney Signed By Lily Cates Regarding Starbase Investment Dated September 1, 1994 |
| 4 | Letter From Lily Cates to Alberto Vilar Dated September 13, 2003 |
| 5 | Letter From Maurice Kassimir to Alberto Vilar Dated March 12, 2004 |
| 6 | Letter From Alberto Vilar to Maurice Kassimir Dated March 25, 2004 |
| 7 | Letter From Alberto Vilar to Lily Cates Dated August 3, 2004 |
| 8 | Letter From Amerindo to Bear Stearns Dated August 9, 2004 Bearing Purported Signature of Lily Cates |
| 9 | Memorandum From Alberto Vilar to Edward Swanson Dated October 25, 2004 |
| 10 | Letter From Ed Swanson to Amerindo Dated October 27, 2004 |
| 11 | Letter From Alberto Vilar to Ed Swanson Dated November 3, 2004    [REDACTED] |
| 12 | Letter From Amerindo to Bear Stearns Dated May 17, 2004 Bearing Purported Signature of Lily Cates |
| 13 | Letter From Amerindo to Bear Stearns Dated September 23, 2003 Bearing Purported Signature of Lily Cates |
| 14 | Letter From Ed Swanson to Alberto Vilar Dated December 7, 2004 |
| 15 | Letter From Alberto Vilar to Ed Swanson Dated December 9, 2004 |
| 16 | Letter From Ed Swanson to Alberto Vilar Dated December 14, 2004 |
| 17 | Letter From Alberto Vilar to Ed Swanson Dated December 17, 2004 |
| 18 | Letter From Ed Swanson to Alberto Vilar Dated December 21, 2004 |
| 19 | Letter From Graham Arad to Ed Swanson Dated February 15, 2005 |
| 20 | Letter From Ed Swanson to Amerindo Dated February 17, 2005 |
| 21 | Letter From Lily Cates to Amerindo Dated February 22, 2005 |
| 22 | Letter From Alberto Vilar to Ed Swanson Dated February 23, 2004 (Sic) |
| 23 | Letter From Lily Cates to Amerindo in Panama, New York and London Dated February 28, 2005 |
| 24 | Email From Ed Swanson to Michael Shattner of Amerindo Dated March 2, 2005 |
| 25 | Letter From Ed Swanson to the Securities and Exchange Commission Dated March 31, 2005 |

ES-1000009