


GOVERNMENT EXHIBIT 13
S2 05 Cr. 621 (KMK) (ID)

U.S. Department of Justice

Criminal Division

_Washington, D.C. 20530_
_July 25, 2005_

JUL 2 5 2005

TO: The Central Authority of the United Kingdom

SUBJECT: Urgent Request for Assistance in the Prosecution and Investigation of Alberto William Vilar, also known as Albert Vilar, and Gary Alan Tanaka

The Central Authority of the United States requests the assistance of the appropriate authorities in the United Kingdom pursuant to the Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland on Mutual Legal Assistance in Criminal Matters. The United States Attorney for the Southern District of New York is prosecuting and investigating Alberto William Vilar, also known as Albert Vilar, Gary Alan Tanaka, and others (the subjects) for fraud in connection with a fraudulent investment scheme involving three entities – Amerindo Investment Advisors Inc. (Amerindo US), Amerindo Investment Advisors (UK) Ltd. (Amerindo UK), and Amerindo Investment Advisors, Inc. (Amerindo Panama) (collectively, Amerindo). In addition, the U.S. Securities and Exchange Commission (SEC) has filed a civil enforcement action against the subjects and the foregoing entities for violating federal securities laws. To further the prosecution and the civil action, the prosecutor and the SEC need business records from Amerindo UK's office in London, England. The prosecutor expects Amerindo UK to vacate its office on or before August 1, 2005. Accordingly, we ask that this request be treated as urgent.

## The Facts

In 1985, Alberto William Vilar and Gary Alan Tanaka founded Amerindo US, a U.S. company that provides investment advice and related services for numerous institutional clients and

at least one publicly traded mutual fund. Several years later, Vilar founded Amerindo UK, a U.K. company that handles off-shore accounts and administrative functions for other Amerindo entities, including Amerindo US and Amerindo Panama, a Panamanian company that provides investment advice and related services for private individuals. Vilar and Tanaka are directors, officers and shareholders of all three entities.

Between 1987 and 2002, Vilar and Tanaka met with prospective investors at various locations, including Amerindo UK's London office, located at 43 Upper Grosvenor Street, and encouraged many of them to invest funds in, inter alia, Amerindo Panama's Guaranteed Fixed Rate Deposit Accounts. While doing so, Vilar and Tanaka represented orally and/or in writing (1) that these accounts would provide a fixed rate of interest for a fixed term, (2) that the majority of each investor's funds would be invested in high quality short-term deposits such as U.S. Treasury bills, government bonds, and certificates of deposit, and (3) that approximately one-quarter of each investor's funds would be invested in publicly traded high technology and biotechnology stocks. Based on these representations, at least eight investors invested more than $30 million in Guaranteed Fixed Rate Deposit Accounts. Despite the representations made by Vilar and Tanaka, however, the investors' funds were not invested in high quality short term deposits such as U.S. Treasury bills, government bonds, and certificates of deposit. Instead, Vilar and Tanaka misappropriated millions of dollars and invested the remaining funds in high technology and biotechnology stocks. As a result, investors lost more than $15 million.

In or about December 2000, for instance, Vilar and Tanaka met with Beulah Birrd in Amerindo UK's London office and persuaded her to invest $6 million in a Guaranteed Fixed Rate Deposit Account. While doing so, they represented orally and/or in writing that Amerindo Panama

2

would invest approximately three-quarters of her funds in high quality short-term investments such as U.S. Treasury bills, government bonds, and certificates of deposit, and approximately one quarter of her funds in publicly traded high technology and biotechnology stocks. They also represented that Amerindo Panama would guarantee her 10% interest during the first year and 11% interest during the second year, and that it would make these payments semi-annually. Based on these representations, in December 2000, Ms. Birrd wire-transferred $6 million to a brokerage account held by "Techno Raquia, S.A.," a Panamanian entity, at Bear, Stearns & Co. Inc. (BSC), in New York, New York.

Shortly thereafter, Ms. Birrd's lawyer repeatedly asked Amerindo principals for an executed guarantee, but they failed to provide it. As a result, Ms. Birrd demanded that Amerindo Panama return her investment funds – with interest. Over one year later, between on or about July 2, 2002, and July 23, 2002, Amerindo Panama wire-transferred approximately $6.3 million from three other BSC brokerage accounts to Ms. Birrd's account, held in the name of Lynx Investments Ltd., at Lloyd's TSB Bank (Luxemburg).[1] Although Ms. Birrd did not suffer any loss, financial records reflect that Vilar and Tanaka did not invest her funds in high quality short-term investments such as U.S. Treasury bills, government bonds, and certificates of deposit, but rather used them to purchase positions (long and short) in high technology and biotechnology stocks. The records also reflect (1) that within approximately one month of the deposit of Ms. Birrd's funds into the Techno Raquia account, James Stableford, an Amerindo UK employee, transferred approximately $5 million from the Techno Raquia account at BSC to an account held by the Private Trust Corporation Management

---

[1] The brokerage accounts were held by three Panamanian entities affiliated with Amerindo – Amerindo Management Inc., Sub A/C M26, Amerindo Technology Growth Fund Inc., and Amerindo Technology Growth Fund II.

3

Limited (PTC), account number 3308442, at Barclays Bank PLC, in Nassau, Bahamas,[2] (2) that $3.5 million of these funds were subsequently transferred from the foregoing PTC account to one of Vilar's personal checking accounts in the United States, and (3) that Vilar used approximately $1.575 million of these funds to make a charitable contribution to the Metropolitan Opera Association.[3] Financial records also reflect that $3 million of the funds Amerindo Panama returned to Ms. Bird were funds that had been invested on or about June 20, 2002, by an Amerindo investor who had invested $5 million in an Amerindo entity called **Amerindo SBIC Venture Fund LP**[4] – a fact that indicates that Amerindo was operating a Ponzi scheme, i.e., a fraudulent investment scheme maintained and promoted by paying returns to early investors from the investor's own funds or those of other investors.

On December 31, 2000, a group of long-term Amerindo investors also invested funds, i.e., approximately $11,066,713, in a three-year Guaranteed Fixed Rate Deposit Account. At the time of their investment, Vilar and Tanaka represented orally and/or in writing that Amerindo Panama would invest approximately three-quarters of their funds in high quality short-term investments such as U.S. Treasury bills, government bonds, and certificates of deposit, and approximately one quarter of their funds in publicly traded high technology and biotechnology stocks. They also represented that Amerindo Panama would guarantee them 11% interest and that they could redeem their

---

[2] As a result of a merger, **Barclays Bank** is now part of **FirstCaribbean International Bank**.

[3] Vilar is a self-proclaimed billionaire philanthropist and has pledged millions of dollars in charitable contributions to numerous organizations, including the **Royal Opera House**, the **Metropolitan Opera Association**, and his alma mater, **Washington & Jefferson College**.

[4] Vilar represented that this entity would be licensed by the U.S. **Small Business Administration** as a **Small Business Investment Corporation**.

4

investment at the end of the three-year term. Shortly before the expiration of the three-year term, the investors sent a letter to Amerindo UK's London office stating that they wanted to redeem their investment. In a letter dated November 7, 2003, Tanaka's wife, Renata Tanaka, characterized their decision to redeem their investment as "incredibly abrupt and insensitive to [their] lengthy relationship." In addition, Renata Tanaka threatened to disclose their identity to U.S. authorities, and stated that "such a disclosure would create enormous problems beyond description for [them] vis-a-vis federal and state taxation both present and for the past some 15 years." To date, the investors have been unable to redeem their investment.[5]

While investigating this case, U.S. law enforcement officers have discovered that in or about 1987 another investor, through Amerindo Panama, invested $1 million in an entity called **Rhodes Capital**. In the fall of 2004, Vilar told this investor that his investment was sound and that Rhodes Capital had not been affected by the downturn in equity markets. This information, however, directly conflicted with statements Renata Tanaka, who prepared financial reports and correspondence for Rhodes Capital at Amerindo UK's London office, made to another Rhodes Capital investor in May 2005, i.e., that Rhodes Capital had "wound down" in 2003 and that the investor's funds had been placed in a fixed rate investment. Both of these Rhodes Capital investors subsequently demanded that Amerindo Panama return their investment funds, but it failed to do so. These investors lost all of their investment funds.

Based on interviews of current and former Amerindo employees and investors, as well as documents and files seized from Amerindo US's New York offices, U.S. law enforcement officers

---

[5] This matter is currently in civil litigation in the New York State Supreme Court in Manhattan.

have also discovered (1) that numerous Amerindo Panama investors invested funds in an investment vehicle called the **Amerindo Technology Growth Fund**, (2) that Amerindo Panama deposited these funds into brokerage accounts at BSC, (3) that Tanaka directed all trading activity relating to these brokerage accounts from Amerindo UK's London office, and (4) that Renata Tanaka prepared financial statements and correspondence relating to the accounts at Amerindo UK's London office. Although Vilar and Tanaka claimed that they did not have any ownership interest in the brokerage accounts – except for the fees they charged for their services, financial records reflect that between 2000 and 2005, Vilar and Tanaka withdrew millions of dollars from those accounts. Specifically, the records reflect (1) that Tanaka withdrew approximately $3.3 million from the brokerage accounts and used the funds to purchase at least 5 thoroughbred race horses, (2) that Vilar withdrew approximately $4 million from the brokerage accounts and wire-transferred the funds into his personal bank account, (3) that Vilar and/or Tanaka wire-transferred approximately $173.8 million from the brokerage accounts to **PTC account number 3308442 in the Bahamas, and** (4) that approximately $19 million of the funds transferred into the PTC account were wire-transferred into Vilar's personal bank accounts at the following four banks -- **Wilmington Trust Company, JP Morgan Chase, the Bank of Boston, and the Royal Bank of Scotland.** Finally, U.S. law enforcement authorities have discovered that documents relating to the foregoing wire transfers were signed by **Tanaka or James Stableford** and that many of these documents were faxed via a London telephone number.

On or about May 26, 2005, U.S. law enforcement authorities arrested Vilar and Tanaka. Vilar was charged with investment adviser fraud, mail fraud, and wire fraud; Tanaka was charged with three counts of wire fraud. On June, 2005, a federal grand jury in the Southern District of New York returned an eight count indictment charging Vilar with investment advisor fraud, securities fraud, mail

fraud, and money laundering.

U.S. law enforcement authorities have been informed that Amerindo UK's office at 43 Upper Grosvenor Street was occupied through on or about May 26, 2005 – the date Vilar and Tanaka were arrested. That day, the Financial Services Authority sent a letter to the Chief Executive of Amerindo UK advising the company to preserve all documents and records, including computer records pertaining to Amerindo UK.

### The Offenses

**18 U.S.C. § 1341. Mail Fraud**

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . for the purpose of executing such scheme or artifice or attempting so to do, [uses the mails] . . . shall be . . . imprisoned not more than 20 years . . . .

**18 U.S.C. Code § 1343. Wire Fraud**

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire . . . communication . . . any writings, signs, pictures, or sounds for the purpose of executing such scheme or artifice, shall be . . . imprisoned not more than 20 years . . . .

**18 U.S.C. § 1956. Money Laundering**

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of . . . unlawful activity, conducts . . . a financial transaction . . . to promote the . . . unlawful activity . . . [or] to conceal or disguise the . . . location, the source, the ownership or the control of the proceeds . . . shall be imprisoned for not more than twenty years.

**15 U.S.C. § 80b-6. Investment Adviser Fraud**

> It shall be unlawful for any investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly –

      (1) to employ any device, scheme, or artifice to defraud any client or prospective client;

      (2) to engage in any transaction, practice, or course of business, which operates as a fraud or deceit upon any client or prospective client;

. . . .

      (4) to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative. . . .

### Persons and Entities Involved

**1. Alberto William Vilar (also known as Albert Vilar)**

| | |
|---|---|
| Date of Birth: | ███ |
| Place of Birth: | United States |
| Citizenship: | United States |
| Social Security Number: | ███9 |
| Passport Number: | ███ |
| Last Known Address: | 860 United Nations Plaza<br>New York, New York |

**2. Gary Alan Tanaka**

| | |
|---|---|
| Date of Birth: | ███ |
| Place of Birth: | United States |
| Citizenship: | United States |
| Social Security Number: |  |
| Passport Number: | |
| Last Known Address: | 7 High Combe Place<br>Warren Cutting,<br>Kingston Upon Thames<br>Surrey, KT2 7HH<br>United Kingdom |

**3. Renata Tanaka**

| | |
|---|---|
| Date of Birth: | Unknown |
| Place of Birth: | Unknown |
| Citizenship: | Unknown |
| Social Security Number: | Unknown |
| Passport Number: | Unknown |
| Last Known Address: | 7 High Combe Place |

        Warren Cutting,
        Kingston Upon Thames
        Surrey, KT2 7HH
        United Kingdom

**4. James Stableford**

| | |
|---|---|
| Date of Birth: | Unknown |
| Place of Birth: | Unknown |
| Citizenship: | Unknown |
| Social Security Number: | Unknown |
| Passport Number: | Unknown |
| Last Known Address: | 43 Upper Grosvenor Street<br>London, W1X 9PG<br>United Kingdom |

**5. Amerindo Investment Advisors Inc.**

| | |
|---|---|
| Incorporation: | California |
| Address: | 399 Park Avenue<br>22nd Floor<br>New York, New York<br>U.S.A. |
| Status: | Active |

**6. Amerindo Investment Advisors, Inc.**

| | |
|---|---|
| Incorporation: | Panama |
| Address: | Sucre Building<br>Calle 48 Este Bella Vista<br>P.O. Box 5168<br>Panama 5, Panama |
| Status: | Active |

**7. Amerindo Investment Advisors (U.K.) Ltd.**

| | |
|---|---|
| Incorporation: | England |
| Address: | 43 Upper Grosvenor Street<br>London, W1X 9PG<br>United Kingdom |
| Status: | Active |

### Assistance Requested

The prosecutor and the SEC need all documents, records, files, and other evidence in Amerindo UK's office that relate to Amerindo's investment services to prove that Vilar and Tanaka made fraudulent misrepresentations to investors and misappropriated their funds.

### Assistance Requested

Please search the offices of Amerindo UK's London office at 43 Upper Grosvenor Street and seize all documents, records, files, computers, facsimile machines, photographs and other physical evidence relating to Amerindo U.S., Amerindo U.K., and Amerindo Panama including, but not limited to:

1. Corporate records relating to (a) the formation of the foregoing entities; (b) their shareholders, principals, officers, directors, and employees; (c) changes in ownership; (d) bylaws, resolutions, client lists and client files; (d) investment brochures; (e) marketing materials and investment advisory agreements; (f) copies of correspondence sent to – or received from – clients; and (g) other documents concerning or reflecting the identities of, and communications with, any clients;

2. Documents reflecting financial transactions between and among Amerindo U.S., Amerindo U.K., and Amerindo Panama;

3. Documents concerning the following brokerage accounts at **Bear, Stearns & Company Inc.**: Amerindo Management Inc., sub a/c M26, Amerindo Technology Growth Fund Inc., Amerindo Technology Growth Fund II, and, Techno Raquia, SA (collectively, the "Amerindo Brokerage Accounts"), including account opening documents, account statements, wire transfer requests, correspondence, electronic mail messages, trade tickets, trade blotters, trade confirmations, trade allocation sheets, trade memoranda, trade notes, client account statements, memoranda and notes and other documents reflecting or relating to investment performance, and other documents reflecting or relating to securities transactions entered into on behalf of clients, by any current or former Amerindo entity, affiliate, principal, officer and employee;

4. Current and former client lists, client files, investment brochures, marketing materials, investment advisory agreements, copies of correspondence sent to or received from clients, including redemption requests received from clients, and other documents

concerning or reflecting the identities of, and communications with, clients who have investments in the Amerindo Brokerage Accounts;

5. Current and former client lists, client files, investment brochures, marketing materials, investment advisory agreements, copies of correspondence sent to or received from clients, and other documents concerning or reflecting the identities of, and communications with, clients who have investments managed or advised by **Amerindo Panama**;

6. Documents concerning **Rhodes Capital**, including copies of prospectuses, private placement memoranda, subscription agreements, descriptions of Rhodes Capital, lists of investors, and the allocation and distribution of returns;

7. Documents concerning investments in **Guaranteed Fixed Rate Deposit Accounts**, including lists of investors, account statements, documents pertaining to certificates of deposit, government securities, or other debt instruments held by Amerindo entities, and documents reflecting securities underlying any such investment;

8. Documents concerning **PTC Management Limited**, including all documents reflecting the relationship between any Amerindo entity, principal or employee and PTC, instructions given by any Amerindo entity, principal or employee to PTC, and any investor receiving redemptions of Amerindo investments through PTC;

9. Documents concerning **account number 3308442 at Barclays Bank PLC, Nassau, Bahamas, and/or FirstCaribbean International Bank Limited**, Nassau, Bahamas, including any account opening documents, monthly statements, documents pertaining to any deposits, withdrawals, and wire-transfers, and any documents regarding the beneficial owners of the account;

10. Documents reflecting any effort made by any Amerindo entity, including **Amerindo SBIC Venture Fund LP, to obtain an SBIC** license from the **U.S. Small Business Administration, including** correspondence, Management Assessment Questionnaires, license applications, documents reflecting efforts to obtain investor funds or commitments from investors to invest funds, capital commitments and investments, investments undertaken prior to licensure and the investment of funds received prior to licensure were invested pending licensure;

11. Documents reflecting any private bank, brokerage account or any other account with any financial institution held by Amerindo principals, including Vilar and Tanaka;

12. Documents reflecting any direct financial or beneficial ownership interest held by Vilar or Tanaka in Amerindo and the Amerindo Brokerage Accounts;

13. Documents reflecting brokerage accounts maintained by Amerindo at any broker-

11

dealer other than Bear, Stearns & Co. Inc., including documents reflecting trades conducted "away" from Bear, Stearns, and settled in Amerindo Brokerage Accounts at Bear, Stearns;

14. Bank account statements, brokerage account statements, transaction records, wire transfer instructions and records, copies of checks sent to or received from clients, notes, ledgers, cash receipt journals, deposit tickets and records, and other documents reflecting or relating to movements of funds into or out of the Amerindo Brokerage Accounts;

15. Records of expenses, including copies of checks and wire-transfers to landlords, employees, counsel, accountants, brokers, utility companies, and other organizations and individuals who provide goods and services to Amerindo; incorporation and governance documents relating to various entities through which Amerindo, Vilar and Tanaka conduct business (including Amerindo U.S., Amerindo U.K., and Amerindo Panama); accounting records; documents relating to any communications with accountants, boards of directors, and the operation and supervision of Amerindo's investment advisory business(es);

16. Documents reflecting information about any current or former Amerindo employee who had any contact with, or responsibility for, the management of, redemptions from, or preparation of account statements for, any current or former Amerindo client that had a direct or indirect interest in the Amerindo Brokerage Accounts;

17. Photographs, address books, Rolodex indices, diaries, calendars, identification documents, travel documents, and other documents relating to any participants in the fraudulent investment schemes;

18. Facsimile machines to determine the telephone numbers used to send and receive documents;

19. Computers, hard drives, and any other devices or equipment capable of storing data or text in any format, including but not limited to cellular telephones, personal digital assistants, and any other storage media capable of containing data or text in magnetic, electronic, optical, digital, analog, or any other format, used to store information described above, as well as drafts and final versions of documents and correspondence prepared in connection with the running and supervision of the operations of the investment advisory business;

20. Any device (mechanical or electronic, including stamps, electronic signatures, etc.) by which the signature of any current or former client or current or former employee has been or may be affixed to a document by a person other than the individual whose signature is contained on or in the device;

21. Documents concerning the purchase of thoroughbred horses, or goods and services related to the training and maintenance of thoroughbred horses;

22. Documents and records identifying all current and former employees of Amerindo and their contact information (e.g., addresses and telephone numbers) and personal identifiers (e.g., date of birth, social security number, and passport number);

23. Documents related to any audited financial records relating to Amerindo advised accounts other than the audited financial records for any publicly traded Amerindo mutual fund; and

24. Documents related to the withdrawal of funds from the Amerindo Brokerage Accounts for the direct or indirect benefit of Vilar, Tanaka, Ms. Tanaka, or any individual or entity other than an investor in the accounts.

### Procedures To Be Followed

Please have the seizing officials complete an Attestation With Respect to Seized Articles in the form attached hereto and forward the seized articles with the Attestation to the appropriate authorities for transmittal to the United States. If it should become necessary, please invite the official producing the seized articles to appear at some future date in the United States, at the expense of the United States government, to testify in proceedings related to this case.

Thank you for your assistance in this matter.

July 25, 2005
Date

Lisa C. Burnett
Deputy Director
Office of International Affairs

13

## Attestation With Respect To Seized Articles

I, _____, attest on penalty of criminal
  (Name)

punishment for false statement or attestation that my position

with the Government of _____
                                (Country)

is _____ . I received custody of the articles
    (Title)

listed below from _____ on _____,
                      (Name of Person)                (Date)

at _____. I relinquished custody of the articles
     (Place)

listed below to _____ on _____
                    (Name of Person)                  (Date)

at _____ in the same condition as when I received
    (Place)

them (or, if different, as noted below).

Description of Articles (attach separate page):

Changes in condition while in my custody (attach separate page if necessary):

Official Seal

_____
Signature

_____
Title

_____
Place

_____
Date