Glenn C. Colton (GC-2493)
Jessica L. Margolis (JM-7786)
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
1301 Avenue of the Americas, 40th Floor
New York, New York  10019
Tel: 212.999.5800

*Attorneys for Defendant*
*Gary Alan Tanaka*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br> - against - <br><br>ALBERTO WILLIAM VILAR, a/k/a "Albert Vilar," and GARY ALAN TANAKA<br><br>Defendants. | S3 05 Cr. 621 (KMK)<br><br>ECF CASE |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GARY ALAN TANAKA'S MOTION TO EFFECTUATE ORDER OF SUPPRESSION**

Defendant Gary Alan Tanaka, by his attorneys, respectfully submits this memorandum of law in support of Mr. Tanaka's motion to effectuate the Court's April 4, 2007 Opinion and Order suppressing certain documents seized by the Government.

## I.    INTRODUCTION[1]

By Opinion and Order dated April 4, 2007 ("April 4 Order"), the Court suppressed large quantities of documents the Government seized from the New York office of Amerindo Investment Advisors Inc. ("Amerindo U.S.") on May 26, 2005. In determining that the remedy of suppression is required, the Court rejected the Government's argument that the warrant in question was executed in good faith, instead holding that the warrant was so vastly overbroad and disproportionate to the supporting affidavit that no reasonable officer could have believed probable cause existed to execute the warrant.

Despite the Court's clear ruling that the illegally seized documents must be suppressed, the Government asserts that it nonetheless should be permitted to use a sub-set of these documents against Defendants at trial. Specifically, the Government contends – without explanation or justification – that it should be permitted to use illegally seized and suppressed documents that also happen to fall within the scope of the subpoena served on Amerindo U.S. during the search.

The Government's attempt to side-step this Court's suppression ruling must be rejected. As an initial matter, the Government's request that the Court in effect "unsuppress" that which has already been suppressed is untimely. Moreover, the Government has not attempted to – and, in fact, cannot – meet its burden of proving that one of the established exceptions to the exclusionary rule applies so as to permit reliance on items that were illegally seized, regardless of whether these items also happen to fall within the scope of the restricted subpoena.

---

[1] Given the extensive briefing that has been submitted to the Court on related issues, this memorandum assumes a general familiarity with the facts and background of this matter.

Accordingly, the Court should enforce its April 4 Order and preclude the Government from using any of the suppressed documents at trial.

## II.    BACKGROUND

### A.    The Search Warrant and Subpoena

On May 26, 2005, nineteen armed federal agents entered the New York office of Amerindo Investment Advisors Inc. ("Amerindo U.S.") and proceeded to execute a search warrant ("Original Warrant") that called for essentially every document on the premises with writing on it.  Among the categories of documents called for by the warrant were *all* business records, *all* client files, *all* marketing materials, *all* correspondence sent to or received from clients, and *any* documents "reflecting the identities of and communications with clients who have investments managed or advised by Amerindo."  Declaration of Jessica L. Margolis dated July 27, 2007 ("Margolis Decl."), Ex. A at ¶ 1.  Moreover, the Original Warrant requested documents relating not just to Amerindo U.S., but also to four other specified Amerindo entities, and contained no time limitation whatsoever despite the fact that these entities had been in existence for approximately twenty years.  *See* Margolis Decl. Ex. A.

Unsurprisingly, execution of the Original Warrant was devastating to Amerindo U.S. During the search, the Government rummaged through the company's offices and files, seizing over 160 boxes of hard copy documents and approximately 30 computers and servers containing over 1.6 terabytes of information – roughly the equivalent of 125 million hard-copy pages. Despite the magnitude of documents actually seized by the Government on May 26, 2005, the Government did not complete its search on this date.  Nor did the Government secure the site overnight and return the next day.  Instead, at some point during the afternoon of May 26, 2005, the Government served a grand jury subpoena on Amerindo U.S., pursuant to which the

Government demanded the remaining documents that were not physically removed during the search ("Original Subpoena").

    B.    <u>The Court's Invalidation of the Original Warrant and Original Subpoena</u>

On August 12, 2005 and December 15, 2005, respectively, Defendants moved (among other things) to (1) suppress the materials seized pursuant to the Original Warrant, and (2) quash the Original Subpoena (collectively, "Motions"). By Opinion and Order dated April 4, 2007 ("April 4 Order"), the Court granted in part Defendants' Motions. First, the Court held that the Original Warrant was unconstitutionally overbroad and lacked sufficient particularity, such that no reasonable officer could have executed the warrant in good faith. *See* April 4 Order at 37–47. Rather than striking the Original Warrant in its entirety, however, the Court elected to sever the infirm portions such that a sub-set of the Original Warrant remained ("Restricted Warrant"). *Id.* at 59–67.

Second, the Court held that portions of the Original Subpoena lacked sufficient particularity, were unduly burdensome and/or sought materials that were irrelevant. *See* April 4 Order at 88–99. Rather than quash the entire subpoena, however, the Court – consistent with its approach for the search warrant – modified the Original Subpoena such that certain paragraphs or portions of paragraphs remained ("Restricted Subpoena"). *Id.* In so doing, the Court rejected Defendants' argument that Original Subpoena should be quashed in its entirely because it was a mere extension of the Government's unconstitutional search. In particular, the Court relied on AUSA Litt's testimony (which the Court credited) that proceeding by subpoena was Mr. Licker's idea, and that AUSA "had never considered using a subpoena prior to Mr. Licker's suggestion." April 4 Order at 80.

Although in its April 4 Order, the Court modified both the Original Warrant and the Original Subpoena, the Court cut less of the latter, citing the more relaxed standards that apply to

grand jury subpoenas (as opposed to search warrants).  As a result, there exists a category of

illegally seized documents that, while outside the scope of the Restricted Warrant (and thus

suppressed by the Court), nonetheless fall within the scope of the Restricted Subpoena

(hereinafter, the "Challenged Documents").  These Challenged Documents – in particular, the

permitted uses of such documents – are the subject of this submission.

### III.     ARGUMENT:  THE GOVERNMENT SHOULD NOT BE PERMITTED TO USE THE CHALLENGED DOCUMENTS

    A.     The Government's Attempt To "Unsuppress" The Challenged Documents Is Untimely

While maintaining its right to use the Challenged Documents, the Government has yet to

state the basis for its assertion that the Challenged Documents – though illegally seized – may

nonetheless be used at trial.  As discussed below, for the purposes of the instant motion, Mr.

Tanaka has assumed that the Government intends to rely on the "inevitable discovery" exception

to the exclusionary rule.  *See infra*.  Whatever its supposed basis, the Government is simply too

late in raising this argument.  Defendants' motion to suppress the evidence seized from

Amerindo U.S. was filed nearly two years ago.  In the months that followed, three separate

hearings were held and hundreds of pages of briefing submitted to the Court.  Throughout the

course of these lengthy pre-trial proceedings, the Government consistently and vehemently

asserted that the "good faith" exception to the exclusionary rule applied[2] -- an argument squarely

rejected by the Court in its April 4 Order.  Not once did the Government assert that any other

exception to the exclusionary rule applied so as to overcome suppression of the illegally seized

documents, including the Challenged Documents.

---

[2] *See United States v. Leon*, 468 U.S. 897, 922 (1984).

-4-

Now, almost two years after Defendants' suppression motion was initially filed and months after the Court's decision granting in part that motion, the Government apparently seeks to reopen the issue and assert an additional defense to suppression, without any explanation as to why this defense was not raised in the countless submissions, hearings and court conferences leading up to the April 4 Order. This the Government cannot do. The Government's request that the Court revise its holding that the documents seized during the search should be suppressed so as to permit unlimited use of the Challenged Documents is in essence a motion for reconsideration, which the Government was required to file within ten days of the April 4 Order. *See* Local Civil Rule 6.3; *United States v. Muse*, No. 06-CR-600, 2007 WL 1536704, at *2 (S.D.N.Y. May 29, 2007) (applying Local Civil Rule 6.3 to criminal case); *United States v. Hayward*, No. 05-CR-390, 2006 WL 1559359, at *1 (S.D.N.Y. June 5, 2006) (same); *see also United States v. Nezaj*, 668 F. Supp. 330, 331-32 (S.D.N.Y. 1987) (applying ten-day time period from relevant local civil rule to motion to reopen suppression hearing).[3]

Moreover, even if the Government had made a motion within the requisite period, this motion necessarily would have been rejected because the Government cannot offer any justification for its failure to raise additional defenses to the exclusionary rule – including the defense of inevitable discovery – prior to the April 4 Order. *See Nezaj*, 668 F. Supp. at 334 (rejecting government's attempt to reopen suppression hearing to address a newly-raised legal argument that the suppressed evidence is admissible on inevitable discovery grounds, stating: "To address this argument would effectively reopen the suppression hearing by reaching the merits of a legal issue that the government chose not to raise at the prior hearing . . . That the government's argument did not prevail is not sufficient reason to reopen the hearing to allow the

---

[3] Indeed, to date, the Government has not formally moved for the relief it has suggested it is entitled to, thereby prompting the instant motion.

government to make an alternate argument on inevitable discovery."); *see also United States v. Leaver*, 358 F. Supp. 2d 273, 277-80 (S.D.N.Y. 2005) (holding that the Government cannot subpoena new evidence that it intends to offer at a "reopened" hearing without providing "justification for its failure to seek this evidence at the proper time," noting "[t]he Government had a lengthy and full opportunity to contest this issue, and opted not to do so, representing that the motion was ripe for decision on the record as it stood").[4]  Accordingly, the Government's attempt to avoid suppression of the Challenged Documents by relying on a newly-raised exception to the exclusionary rule – whether the inevitable discovery doctrine or otherwise – must be rejected as untimely.

      B.    <u>The Government Has Failed To Prove Any Exception To The Exclusionary Rule Applies So As To Permit Use Of The Challenged Documents Against Defendants</u>

      1.    <u>Legal Standard</u>

It is well-settled that evidence obtained in violation of the Fourth Amendment generally cannot be used in a criminal proceeding against the victim of the illegal search and seizure.  *See, e.g., United States v. Eng*, 971 F.2d 854, 859 (2d Cir. 1992).  This "exclusionary rule" applies unless the Government meets its burden of demonstrating, by a preponderance of the evidence, that one of the established exceptions to the rule applies.  *Id.*  Although the Government has not articulated its basis for asserting that the Challenged Documents should be spared suppression,

---

    [4] In *Leaver*, Judge Scheindlin – in an analogous context – decided the issue left open by the Second Circuit in *United States v. Bayless*, 201 F.3d 116 (2d Cir. 2000).  In *Bayless*, the Second Circuit declined to decide whether "the Government, when it moves for reconsideration of a suppression order on the ground that it can introduce new evidence intended to show that no Fourth Amendment violation occurred, [is required] to proffer a justification for its failure to present the relevant evidence at the original suppression hearing."  *Id.* at 131-32.  Specifically, the Second Circuit found that it did not have to decide the issue because "the government adequately justified its decision not to introduce [the evidence in question] at the original suppression hearing."  *Id.*  In stark contrast to *Bayless*, the Government in this case has failed to – and, indeed, cannot – offer *any* justification for its failure to raise the inevitable discovery defense prior to the Court's April 4 Order.

one can surmise that the Government will attempt to argue that these documents, while illegally seized, would have inevitably been discovered pursuant to the Restricted Subpoena.

Under the "inevitable discovery" exception to the exclusionary rule, unlawfully obtained evidence may be admitted at trial "if the government can 'establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means.'"  *Eng*, 971 F.2d at 859 (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)).  In deciding whether the exception applies, the court must "determine, viewing affairs as they existed at the instant before the unlawful search, what *would have happened* had the unlawful search never occurred."  *Id*. at 861 (emphasis in original).  Mere speculation as to what may have happened absent the illegal search is insufficient for the Government to meet its burden.  Instead, illegally obtained evidence is admissible under the inevitable discovery exception "only where a court can find, with a high level of confidence, that each of the contingencies necessary to the legal discovery of the contested evidence would be resolved in the government's favor."  *United States v. Heath*, 455 F.3d 52, 60 (2d Cir. 2006); *see also Eng*, 971 F.2d at 859 ("'[P]roof of inevitable discovery 'involves no speculative elements but focuses on demonstrated historical facts capable of ready verification. . . .'" (quoting *Nix*, 467 U.S. at 444 n.5)).

2.    The Government Cannot Prove That The Inevitable Discovery Doctrine Applies

Here, under Government's own recitation of the facts – which recitation was adopted by the Court in its April 4 Order – there can be no doubt that the Challenged Documents would not have been inevitably discovered through a subpoena absent the illegal search.  At the suppression hearing, AUSA Litt testified – and the Court subsequently found – that the idea of a subpoena was raised not by any of the Government officials (including himself), but rather by Mr. Licker, counsel for Amerindo U.S.  *See* Margolis Decl. Ex. B at 92-93.  AUSA Litt further testified that he had not even considered the possibility of a subpoena until Mr. Licker, confronted with

nineteen armed federal agents and a warrant calling for nearly everything with writing on it, suggested it. *Id.* Indeed, according to AUSA Litt, Mr. Licker proposed the subpoena in direct response to the overwhelming magnitude and breadth of the Government's search. *Id.* at 108 (testifying that, in proposing the subpoena, Mr. Licker stated that it would be "more efficient" and "less disruptive to Amerindo's business," and that "the [G]overnment would get what it really wanted . . . instead of having to take so much material"). Accordingly, the Government's own testimony – which formed the basis for the positions taken in its opposition to Defendants' Motions and which the Court ultimately adopted as fact – makes clear that the Government never would have issued the Original Subpoena had the illegal search not taken place. Under such circumstances, the inevitable discovery doctrine cannot apply. *See Eng*, 971 F.2d at 860 (for inevitable discovery doctrine to apply, the government must show that issuance of the subpoena was inevitable).

Even if the Government were not precluded from asserting that it would have issued the subpoena absent the illegal search, the Government has failed to meet its burden of proving that the Challenged Documents in fact would have inevitably been discovered by virtue of the subpoena. The Second Circuit has made clear that, in order to take advantage of the inevitable discovery exception, the Government must prove the inevitability of ***both*** the issuance of the subpoena ***and*** a response to the subpoena producing the evidence in question. *See Eng*, 971 F.2d at 860; *United States v. Roberts*, 852 F.2d 671, 675-76 (2d Cir. 1988); *see also United States v. Debbi*, 258 F. Supp. 2d 313, 314 (S.D.N.Y. 2003). The Government has made no such showing in this case.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Mr. Tanaka respectfully requests that the Court grant his motion to effectuate the Court's April 4, 2007 Opinion and Order and preclude the Government from using the Challenged Documents against Defendants at trial.

Dated:  August 17, 2007
     New York, New York

By:   s/  Glenn C. Colton

Glenn C. Colton (GC-2493)
Jessica L. Margolis (JM-7786)
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
1301 Avenue of the Americas, 40th Floor
New York, New York  10019
Tel: 212.999.5800

*Attorneys for Defendant*
*Gary Alan Tanaka*