**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x

UNITED STATES OF AMERICA      :

       -v.-               :       S3 05 Cr. 621 (RJS)

**ALBERTO WILLIAM VILAR,**   :       **ECF CASE**
  a/k/a, "Albert Vilar," and
**GARY ALAN TANAKA,**       :

             **Defendants.**   :
-------------------------------------------------------x

### GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' APPLICATION FOR SUPPRESSION OF THE DERIVATIVE FRUITS OF AN UNLAWFUL SEARCH AND SEIZURE

MICHAEL J. GARCIA
*United States Attorney for the*
*Southern District of New York*

*Attorney for the United States of America*

Marc Litt
Deirdre A. McEvoy
Benjamin Naftalis
*Assistant United States Attorney*
*Of Counsel*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    Point I:        Defendants Have Not Met Their Initial Burden . . . . . . . . . . . . . . . . . . . . 2

        A.      Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        B.      Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    Point II:      Defendants' Requests For Additional Discovery
                      Are Unfounded and Should Be Denied . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        A.      Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

             1.     *Brady* v. *Maryland* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

             2.     "Taint" Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

             3.     Rule 12(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        B.      Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

             1.     *Brady* v. *Maryland* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

             2.     "Taint" Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

             3.     Rule 12(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    Point III:     Any "Taint" Hearing Should Be Held Post-Trial . . . . . . . . . . . . . . . . . 18

        A.      Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        B.      Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

# TABLE OF AUTHORITIES

*Alderman* v. *United States*, 394 U.S. 165 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 10, 16

*Brady* v. *Maryland*, 373 U.S. 83 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Fagan* v. *United States*, 545 F.2d 1005 (5th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Kastigar* v. *United States*, 406 U.S. 441 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 30

*Mapp* v. *Ohio*, 367 U.S. 643 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Nardone* v. *United States*, 308 U.S. 338 (1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4, 7, 20

*Silverthorne Lumber Co.* v. *United States*, 251 U.S. 385 (1920) . . . . . . . . . . . . . . . . . . . . . . . 3

*United States* v. *Ahmad*, 335 F. Supp. 1198 (D.C. Pa. 1971) . . . . . . . . . . . . . . . . . . . . . . 20, 29

*United States* v. *Allen*, 289 F. Supp. 2d 230 (N.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States* v. *Anderson*, 416 F. Supp. 2d 110 (D. D.C. 2006) . . . . . . . . . . . . . . . . . . . . 13-14

*United States* v. *Apple*, 915 F.2d 899 (4th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States* v. *Bagley*, 473 U.S. 667 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States* v. *Birrell*, 269 F. Supp. 716 (S.D.N.Y. 1967) . . . . . . . . . . . . . . . 3, 6-7, 20, 23-26

*United States* v. *Birrell*, 470 F.2d 113 (2d Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*United States* v. *Brock*, 863 F. Supp. 851 (E.D. Wis. 1994) . . . . . . . . . . . . . . . . . . . . . . . 13, 18

*United States* v. *Buck*, 548 F.2d 871 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*United States* v. *Carrington*, No. 02 Cr. 897 (LTS), 2002 WL 31496199
    (S.D.N.Y. Nov. 7, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States* v. *Cheatham*, —F. Supp. 2d —, 2007 WL 2331075
    (W.D. Pa. Aug. 16, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States* v. *Cole*, 463 F.2d 163 (2d Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*United States* v. *Coppa*, 267 F.3d 132 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 16

*United States* v. *Corrao*, No. 91 Cr. 1343, 1993 WL 63018
(E.D.N.Y. Mar. 1, 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States* v. *Cushmeer*, No. 07 Cr. 00046, 2007 WL 1858269
(N.D. Ohio June 26, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States* v. *Cutolo*, 861 F. Supp. 1142 (E.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States* v. *De la Cruz-Paulino*, 61 F.3d 986 (1st Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . 14

*United States* v. *El-Silimy*, 228 F.R.D. 52, 57 (D. Maine 2005) . . . . . . . . . . . . . . . . . . . . . . . 13

*United States* v. *Evanchik*, 413 F.2d 950 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 16

*United States* v. *Fernandez*, No. 00 Cr. 420 (SWK), 2000 WL 1409738
(S.D.N.Y. Sept. 22, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-22

*United States* v. *Francisco*, No. 06 Cr. 791 (SAS), 2007 WL 2265147
(S.D.N.Y. Aug. 6, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States* v. *Fuller*, 149 F. Supp. 2d 17 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States* v. *Gregory*, 611 F. Supp. 1033 (S.D.N.Y. 1985) . . . . . . . . . . . . . . . . . . . . . . . 22, 31

*United States* v. *Gullo*, 672 F. Supp. 99 (W.D.N.Y. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States* v. *Helmsley*, 864 F.2d 266 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 31

*United States* v. *Imadu*, No. 06 Cr. 150-J-32MCR, 2006 WL 2265437
(M.D. Fla. Aug. 8, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States* v. *Jalbert*, 242 F. Supp. 2d 44 (D. Me. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States* v. *Jordan*, No. 06 Cr. 102, 2007 WL 1849985
(E.D. Tenn. June 25, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States* v. *Kimble*, No. Cr. 106-156, 2007 WL 1430303
(S.D. Ga. May 10, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

*United States* v. *Ma*, No. 03 Cr. 734 (DAB), 2006 WL 708559
(S.D.N.Y. Mar. 21, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States* v. *McCall*, 489 F.2d 359 (2d Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 30

*United States* v. *McCarthy*, 292 F. Supp. 937 (S.D.N.Y. 1968) . . . . . . . . . . . . . . . . . . . . . . 27-28

*United States* v. *Mullen*, 451 F. Supp. 2d 509 (W.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . 4

*United States* v. *Nolan*, 420 F.2d 552 (5th Cir. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 16, 29

*United States* v. *Nguyen*, No. 05 Cr. 0205E(F), 2007 WL 1111237
     (W.D.N.Y.  Apr. 13, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States* v. *Olson*, 697 F.2d 273 (8th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States* v. *Ostrer*, 481 F. Supp. 407 (S.D.N.Y. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States* v. *Prebish*, 47 F.R.D. 578 (S.D. Fla. 1969) . . . . . . . . . . . . . . . . . . . . . . 20, 29-30

*United States* v. *Rivieccio*, 919 F.2d 812, 814 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . 31

*United States* v. *Robinson*, No. 05 Cr. 443, 2007 WL 790013
     (M.D. Pa. Mar. 14, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States* v. *Ruiz*, 536 U.S. 622 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States* v. *Sacco*, 428 F.2d 264 (9th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . 10, 20, 30

*United States* v. *Sand*, 541 F.2d 1370 (9th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States* v. *Smith*, No. 07 Cr. 96, 2007 WL 1655417
     (E.D. Wis. June 7, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States* v. *Tortorello*, 480 F.2d 764 (2d Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . 28-29

*United States* v. *Valerio*, 737 F. Supp. 844 (S.D.N.Y. 1990) . . . . . . . . . . . . . . . . . . . . . . . 11

*United States* v. *Volpe*, 42 F. Supp. 2d 204 (E.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . 22, 31

*United States* v. *Williams*, 644 F.2d 950 (2d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States* v. *Yarborough*, No. 06 Cr. 190(A), 2007 WL 962926
     (W.D.N.Y. Mar. 28, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Weatherford* v. *Bursey*, 429 U.S. 545 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 16

*Weeks* v. *United States*, 232 U.S. 383 (1914) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Wong Sun* v. *United States*, 371 U.S. 471 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

<u>Other Authorities</u>

18 U.S.C. § 3731 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Fed. R. Crim. P. 12(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17, 18

Fed. R. Crim. P. 12(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20-21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA           :

        -v.-                    :        S3 05 Cr. 621 (RJS)

ALBERTO WILLIAM VILAR,             :
  a/k/a, "Albert Vilar," and
GARY ALAN TANAKA,                  :

             Defendants.       :
-------------------------------------------------------x


## GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' APPLICATION FOR SUPPRESSION OF THE DERIVATIVE FRUITS OF AN UNLAWFUL SEARCH AND SEIZURE


### PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to

defendants' application for suppression of the derivative fruits of an unlawful search and seizure

and for related relief.  Specifically, defendants are seeking unprecedented and massive discovery

concerning the Government's investigation in advance of a "taint" hearing at which the

Government would be required to demonstrate that evidence and testimony which it intends to

introduce at trial was not unconstitutionally derived from evidence suppressed pursuant to this

Court's April 4, 2007 Order.  Defendants' motion should be rejected.  Defendants have failed to

meet their initial burden of justifying the need for a taint hearing and are seeking expansive

discovery that is wholly without basis in law.  Finally, even were a "taint" hearing justified here,

the overwhelming weight of authority, logic, and common sense, all dictate that any such hearing

occur after the trial, not pretrial as defendants suggest. Accordingly, defendants' motion should be denied without hearing.[1]

## ARGUMENT

## I.

## DEFENDANTS HAVE NOT MET THEIR INITIAL BURDEN

The case law relating to claims of "taint" such as those raised by defendants here establishes that a claimant bears the initial burden of identifying specific "tainted" evidence comprising a "substantial portion" of the case against him. Defendants have failed to identify a single piece of evidence or testimony that was derived from suppressed materials, let alone evidence amounting to a substantial part of the Government's proof. Indeed, defendants candidly "anticipate that few, if any taint issues will be presented in connection with the bulk of the evidence relevant to the charges in the indictment; . . . [and that] it is likely that the majority of such evidence will either consist of or be derived from evidence that this Court did not suppress." Vilar Mem. at 2.[2] Accordingly, defendants cannot meet their burden of going forward and their

---

[1]    Summaries of the background of this case are contained in prior Government briefing, including the Government's December 13, 2006 Omnibus Post-Hearing Memorandum of Law in Opposition to Defendants' Pretrial Motions, and the Government's October 4, 2007 Memorandum of Law in Opposition to Defendants' Motion to Effectuate Order of Suppression.

[2]    "Vilar Mem." refers to the August 20, 2007 Memorandum of Law in Support of Defendant Alberto William Vilar's Application for Suppression of the Derivative Fruits of an Unlawful Search and Seizure and for Related Relief; "Tanaka Ltr.-A" refers to the August 17, 2007 letter to the Court from Jessica L. Margolis, Esq.; "Tanaka Ltr.-B" refers to the August 28, 2007 letter to the Court from Jessica L. Margolis, Esq.; "Litt Decl." refers to the October 4, 2007 declaration of Assistant United States Attorney Marc Litt filed in support of this memorandum; "3/9/06 Tr." refers to the transcript of a pretrial conference held on March 9, 2006.

motion for a "taint" hearing should be rejected.[3]

## A.     **Applicable Law**.

The case law concerning claims of "taint" is an extension of the Exclusionary Rule

established in *Weeks* v. *United States*, 232 U.S. 383 (1914) and *Mapp* v. *Ohio*, 367 U.S. 643

(1961), and the bar on using "fruits" of suppressed evidence established in *Silverthorne Lumber*

*Co.* v. *United States*, 251 U.S. 385, 391-92 (1920) and *Wong Sun* v. *United States*, 371 U.S. 471,

488 (1963), which has developed principally in cases in which illegal wiretaps had been

identified as a possible source of evidence used to convict defendants.  *See, e.g.*, *Alderman* v.

*United States*, 394 U.S. 165 (1969); *Nardone* v. *United States*, 308 U.S. 338 (1939).  Defendants

have also raised claims of "taint" where unconstitutional searches and seizures have occurred in

an effort to suppress evidence derived from those searches.  *See, e.g.*, *United States* v. *Birrell*,

269 F. Supp. 716 (S.D.N.Y. 1967) (seeking a "taint" hearing where a search warrant lacking in

sufficient supporting probable cause had been executed).[4]  Generally, defendants raising "taint"

claims seek hearings at which the Government may be required to demonstrate that the evidence

and testimony used to convict a defendant was not improperly derived from suppressed evidence.

It is well established that the proponent of a "taint" claim bears the burden of going

forward.  Under *Nardone* and its progeny, a defendant must first prove that a constitutional

violation occurred, and then must be given an opportunity, "however closely confined, . . . to

---

[3]     Were the Court to determine that a hearing is necessary, it should defer that hearing until after the trial is completed for the reasons set forth in Point III, *infra*.

[4]     A separate, but somewhat analogous doctrine relates to taint arising from exposure to, and the use of, immunized testimony.  *See Kastigar* v. *United States*, 406 U.S. 441 (1972) and its progeny.

prove that a *substantial portion of the case against him* was a fruit of the poisonous tree."

*Nardone*, 308 U.S. at 341 (emphasis supplied); *Alderman*, 394 U.S. at 183 (quoting *Nardone*);

*see United States* v. *Mullen*, 451 F. Supp. 2d 509, 540 (W.D.N.Y. 2006) ("The proponent of a

taint hearing has the initial burden of 'producing specific evidence demonstrating taint *in a*

*substantial portion of the Government's case against him.*'" (emphasis supplied) (quoting *United*

*States* v. *Sapere*, 531 F.2d 63, 66 (2d Cir. 1966)) (citing *Alderman*, 394 U.S. at 183)); *United*

*States* v. *Sacco*, 563 F.2d 552, 558 (2d Cir. 1977) (in post-trial motion, defendant utterly failed to

meet his "initial burden of producing specific evidence demonstrating taint *in a substantial*

*portion of the Government's case against him*" where no evidence was presented to the district

court apart from the mere existence of the wiretaps) (emphasis supplied); *see also United States*

v. *Apple*, 915 F.2d 899, 906 (4th Cir. 1990) (claimant has the initial burden of coming forward

with specific evidence demonstrating taint). Only after defendant meets that high burden may the

Government be put to the test of convincing the trial court "that its proof had an independent

origin." *Nardone*, 308 U.S. at 341; *Alderman*, 394 U.S. at 183 (quoting *Nardone*); *see Wong*

*Sun*, 371 U.S. at 487-88 ("We need not hold that all evidence is fruit of the poisonous tree simply

because it would not have come to light but for the illegal actions of the police. Rather *the more*

*apt question in such a case is whether, granting the establishment of the primary illegality, the*

*evidence to which instant objection is made has been come at by exploitation of that illegality or*

*instead by means sufficiently distinguishable to be purged of the primary taint.*") (emphasis

supplied) .[5]

---

[5]        As set forth in Point II, *infra*, defendants are entitled to limited discovery in
connection with a "taint" inquiry; and, as described in Point III, *infra*, the overwhelming majority
of courts that have considered the issue have determined that it is appropriate to defer "taint"

**B.**    **Discussion**.

Defendants here have pointed to *no* specific evidence of taint and, as a consequence, they have failed to meet their initial burden.  In lieu of demonstrating a nexus between specific and substantial evidence and the suppressed materials, defendants make two alternative arguments. First, they claim that inferential reasoning is an adequate substitute for specific evidence of taint, stating that:

> [b]ecause the enormity of the amount of materials seized and reviewed by government agents and prosecutors over the course of more than two years, combined with the government's unquestionable interest in developing its case against Vilar, gives rise to the ineluctable inference that the seized materials led to the discovery of other materials and were used to refresh the recollections of potential witnesses and to encourage them to testify, we submit that we have satisfied that burden.

Vilar Mem. at 20-21; *see* Vilar Mem. at 6-7 ("Under these circumstances, it is reasonable to infer that, in developing its case against the defendants, the government has actively followed leads derived from the unlawfully seized evidence and has secured additional evidence, in the form of physical exhibits and information as well as testimony of witnesses, through exploitation of the illegally seized materials."); Tanaka Ltr.-B at 1-2.  Second, they argue that, even if that inference is not sufficiently powerful or specific enough to justify a hearing, the Government should be required to, among other things, promptly:  (a) identify all the evidence and witnesses on which it expects to rely at trial; (b) produce an annotated roadmap to the Government's post-search investigation; and (c) provide "any other information relevant to the question whether the evidence to be presented at trial is tainted by the illegal search."  Vilar Mem. at 19-20.  In

─────────────────

hearings until after the trial is completed.

essence, defendants contend that if they are unable currently to meet their burden, it is because the information necessary to do so is within the Government's control and the Government should be required to provide that information to defendants.[6]

The "ineluctable inference" that defendants ask this Court to draw has no basis in law. Indeed, defendants have failed to locate any authority supporting their position that such an inference may relied upon to meet their initial burden. *Nardone*, *Adelman*, and their progeny do not speak in the language of inferences (ineluctable or otherwise). They speak instead of the defendants' burden to produce "specific evidence" that a "substantial portion" of the Government's evidence is tainted. Indeed, the Ninth Circuit soundly rejected an argument similar to that advanced by defendants.

In *United States* v. *Sand*, 541 F.2d 1370 (9th Cir. 1976), a case involving three illegal seizures, the defendants, like the defendants here, failed to identify allegedly tainted items. *Sand*, 541 F.2d at 1375. Instead, they argued that, "there has been so much illegality that the presumption of regularity of the Government should lapse; [it] should bear the burden of going forward and justifying [its] sources." *Id.* The court sharply disagreed, stating that, "[i]n essence, defendants ask that in cases in which unlawful police activity has reached a certain threshold level they be relieved of demonstrating a nexus between the evidence sought to be suppressed and other evidence illegally seized. We find this approach inconsistent with *Alderman*." *Id.* Similarly, in *Birrell*, the Court rejected "out-of-hand" the analogous argument "that the Government's free access to [a] large collection of unlawfully seized records, over a considerable period of time, should immunize the defendant from criminal prosecution." *Birrell*, 269 F. Supp.

---

[6]     The deficiencies in this argument are addressed in Point II, *infra*.

at 724.  In so doing, the Court pointedly noted that,

> the fact that the Government may have bathed in the illegally
> seized evidence would not preclude it from prosecuting the
> defendant on the basis of completely independent, untainted
> evidence.  A criminal prosecution is more than a game in which the
> government may be checkmated and the game lost merely because
> its officers have not played according to rule.

*Id.* (citing *McGuire* v. *United States*, 273 U.S. 95, 99 (1927)).

But even were the Court to find that defendants could meet their burden through inferential reasoning, defendants' concession that they expect that the bulk of the evidence relevant to the charges in the indictment will be "taint"-free sounds the death knell for their motion.  *See* Vilar Mem. at 2.  That acknowledgment constitutes an admission that defendants will be unable to meet their initial burden of showing that a "substantial portion" of the Government's evidence against them is "tainted."  It also exposes their request for pretrial wide-ranging discovery as a delaying tactic that would also provide the defendants with a valuable preview of the Government's trial evidence and strategy to which they would not otherwise be entitled.  This is exactly the sort of fishing expedition that the Supreme Court warned against in *Nardone*:  "claims that taint attaches to any portion of the Government's case must satisfy the trial court with their solidity and not be merely a means of eliciting what is in the Government's possession before its submission to the jury."  *Nardone*, 308 U.S. at 342.

The Court should not countenance defendants' novel gambit, and should instead deny defendants' motion for failure to meet the burden imposed on them by *Nardone*.

## II.

## DEFENDANTS' REQUESTS FOR ADDITIONAL DISCOVERY ARE UNFOUNDED AND SHOULD BE DENIED

Recognizing the lack of "solidity" of their claim, defendants propose that the Court defer making a final determination concerning the sufficiency of defendants' initial showing until they have had the opportunity to supplement their motion with the benefit of the Government's response to the broad discovery that they seek. After requesting and obtaining nearly four months in which to do so, defendants have failed to make the specific showing required under the law; indeed, they have been unable to identify a single tainted witness or piece of evidence.[7] The law simply does not allow defendants, upon filing a taint motion, to rummage through the Government's work product and to obtain discovery to which they would not otherwise be entitled under the rules governing discovery in criminal cases. None of the theories on which defendants rely – that the material must be disclosed pursuant to *Brady* v. *Maryland*, 373 U.S. 83 (1963), that it is subject to disclosure upon request by the defendants pursuant to Fed. R. Crim. P. 12(b)(4), or that disclosure is required by the case law pertaining to "taint" hearings – has merit. In fact, defendants have failed to cite *any* case in which a court has required the Government to produce to claimants anything approaching the broad scope of discovery that they seek here. There is no basis on this record for this Court to be the first to do so, and defendants' motion for

---

[7]    In justifying the lengthy briefing schedule he sought, counsel for Vilar – who was assisted with the representation of the defendant in the *Birrell* case discussed at length in Point III, *infra* – acknowledged that he had "the obligation of identifying, connecting items that were suppressed to the application. In other words, I cannot just go in and ask you to find poison willy-nilly. I need to be as specific as possible. I have no real familiarity with any of the material as yet. So I want to make clear to the Court that this – is [not in] the parlance of the government sometimes – [a] fishing expedition." (4/27/07 Tr. 50; *see id.* at 46-47).

additional discovery should be denied.

A.    **Applicable Law**.

1.    ***Brady v. Maryland***.

In a criminal prosecution, the Government has a constitutional obligation to disclose evidence favorable to an accused when such evidence is material to guilt or punishment. *Brady* v. *Maryland*, 373 U.S. 83, 87 (1963). "*Brady* does not, however, require the prosecution to disclose *all* exculpatory and impeachment material; it need disclose only material 'that, if suppressed, would deprive the defendant of a fair trial.'" *United States* v. *Coppa*, 267 F.3d 132, 135 (2d Cir. 2001) (quoting *United States* v. *Bagley*, 473 U.S. 667, 675 (1985)). Such a deprivation occurs only where there is a "reasonable probability" that the suppression "affected the outcome of the case," *Coppa*, 267 F.3d at 135 (citing *Bagley*, 473 U.S. at 682), or would have "put the whole case in such a different light as to undermine confidence in the verdict," *Coppa*, 267 F.3d at 135 (quoting *Kyles* v. *Whitley*, 514 U.S. 419, 435 (1995)). Accordingly, "the Government 'suppresses' evidence within the meaning of *Brady* only if it fails to disclose *Brady* and *Giglio* material in time for its effective use at trial." *Coppa*, 267 F.3d at 146.

In accordance with these principles, *Brady* gives rise to no pre-trial remedies, *see* *Weatherford* v. *Bursey*, 429 U.S. 545, 559 (1977); *United States* v. *Evanchik*, 413 F.2d 950, 953 (2d Cir. 1969), requiring only that the defendant receive *Brady* and *Giglio* material before it is too late for him to make use of it at trial. *Coppa*, 267 F.3d at 135; *see United States* v. *Olson*, 697 F.2d 273, 275 (8th Cir. 1983); *cf. United States* v. *Ruiz*, 536 U.S. 622, 633 (2002) (no constitutional obligation to disclose material impeachment evidence prior to entering a pre-trial plea agreement with a criminal defendant).

9

2.    **"Taint" Cases**.

Cases in which taint claims have been raised provide for limited discovery.  As the

Supreme Court noted in *Alderman*, a case in which the Government had conducted an illegal

wiretap, and one on which defendants principally rely in their moving papers,

> [i]t must be remembered that *disclosure will be limited to the*
> *transcripts of a defendant's own conversations and those which*
> *took place on his premises . . . . None of this means that any*
> *defendant will have an unlimited license to rummage in the files of*
> *the Department of Justice.*  Armed with the specified records of
> overheard conversations and with the right to cross-examine the
> appropriate officials in regard to the connection between those
> records and the case made against him, a defendant may need or be
> entitled to nothing else.  Whether this is the case or not must be left
> to the informed discretion, good sense, and fairness of the trial
> judge.

*Alderman*, 394 U.S. at 185 (emphasis supplied) (citing *Nardone*, 308 U.S. at 341-42).  At least

two courts, also in the context of wiretap "taint" hearings, have likewise explicitly held that the

scope of permissible discovery is limited.  In *United States* v. *Nolan*, 420 F.2d 552, 554 (5th Cir.

1969), the Fifth Circuit denied appellants' contention that their rights to discovery were

expanded by the Supreme Court's decision in *Alderman*.  The court noted that, in *Alderman*, the

Supreme Court had remanded the case for a post-trial hearing and that, "[i]f it were true, as

claimed by appellants, that *Alderman* expanded the rights of discovery . . ., it would seem

reasonable that the Supreme Court would have remanded the case for a new trial in lieu of

remanding it for a post-trial hearing."  *Id.*  Similarly, in *United States* v. *Sacco*, 428 F.2d 264,

273 (9th Cir. 1970), the Ninth Circuit held that the defendant was "entitled to see a transcript of

his own [wiretapped] conversations and nothing else.  He had no right to rummage in

government files."  *Id.* (quoting *Taglianetti* v. *United States*, 394 U.S. 316, 317 (1969)).

10

3.    **Rule 12(b)(4).**

Rule 12(b) of the Federal Rules of Criminal Procedure provides in pertinent part:

> (4) Notice of the Government's Intent to Use Evidence.
>
> . . . .
>
> (B) At the Defendant's Request. At the arraignment or as soon afterward as practicable, the defendant may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16.[8]

Fed. R. Crim. P. 12(b). By its very terms, Rule 12(b)(4) cabins the scope of discovery to which a defendant is entitled to the "evidence that the defendant may be entitled to discover under Rule 16." It is black letter law that Rule 16 does not entitle defendants to an advance preview of the Government's exhibit list. *See, e.g., United States* v. *Carrington*, No. 02 Cr. 897 (LTS), 2002 WL 31496199, at *2 (S.D.N.Y. Nov. 7, 2002) ("It is clear that Rule 16(a)(1)(c) does not require the Government to identify specifically which documents it intends to use as evidence or for impeachment. It merely requires that the Government produce documents falling into the three enumerated categories.") (citing *United States* v. *Nachamie*, 91 F. Supp. 2d 565, 569-70 (S.D.N.Y. 2000) ("In the absence of any controlling authority interpreting the Rule as requiring this action, I cannot direct the Government, at this time, to identify the documents it intends to offer in its case-in-chief.")); *United States* v. *Cutolo*, 861 F. Supp. 1142, 1152 (E.D.N.Y. 1994) (denying request for pre-trial production of exhibit list); *United States* v. *Valerio*, 737 F. Supp. 844, 847 (S.D.N.Y. 1990) (denying defense request for exhibit list on ground that request falls outside scope of Rule 16(a)(1)(c)).

---

[8]    Fed. R. Crim. P. 12(b)(3)(C) requires that a motions to suppress evidence be raised before trial. *See* Fed. R. Crim. P. 12(b)(3)(C).

It is therefore not surprising that numerous district courts across the country have routinely held that where the Government has met its general discovery obligations under Fed. R. Crim. P. 16, defendants are entitled to no more specific disclosures under Rule 12(b)(4), and any such request for additional disclosure is moot. *See, e.g.*, *United States* v. *Ma*, No. 03 Cr. 734 (DAB), 2006 WL 708559, at *18 (S.D.N.Y. Mar. 21, 2006) (denying Rule 12(b)(4) motion where Government had complied with Rule 16 and represented that it would continue to do so); *United States* v. *Cushmeer*, No. 07 Cr. 00046, 2007 WL 1858269, at *2 (N.D. Ohio June 26, 2007) (denying Rule 12(b)(4) motion where Government had complied with Rule 16); *United States* v. *Jordan*, No. 06 Cr. 102, 2007 WL 1849985, at *3 (E.D. Tenn. June 25, 2007) (denying a Rule 12(b)(4) request where the Government had represented that it had complied, and would continue to comply with its Rule 16 obligations, and holding that "Rule 12(b)(4) is not designed nor intended to be used to obtain more specific discovery than that provided by Rule 16. Rather, Rule 12(b)(4) is intended to facilitate the making of pretrial suppression motions by allowing the defendant to avoid filing a motion to suppress when the government does not intend to use the evidence."); *United States* v. *Smith*, No. 07 Cr. 96, 2007 WL 1655417, at *1 (E.D. Wis. June 7, 2007) (denying Rule 12(b)(4) request where the Government had provided all material discoverable pursuant to Rule 16 and *Brady*); *United States* v. *Kimble*, No. Cr. 106-156, 2007 WL 1430303, at *1-2 (S.D. Ga. May 10, 2007) (denying Rule 12(b)(4) request as moot where the Government had fulfilled its Rule 16 obligations, and finding that, "It is clear that what the government is required to disclose early on in the pendency of the case [pursuant to Rule 12(b)(4)] is evidence gathered from searches and seizures including electronic monitoring, and statements and confessions, all of which may be subject to suppression upon motion by

12

defendant. In essence the Rule requires the government to make early disclosure of these matters to allow the Court to determine any suppression motions prior to trial thereby avoiding needless delay during trial."); *United States* v. *Nguyen*, No. 05 Cr. 0205E(F), 2007 WL 1111237, at *5 (W.D.N.Y. Apr. 13, 2007) (motion dismissed as moot where Government had complied with Rule 16); *United States* v. *Yarborough*, No. 06 Cr. 190(A), 2007 WL 962926, at *18 (W.D.N.Y. Mar. 28, 2007) (same); *United States* v. *Robinson*, No. 05 Cr. 443, 2007 WL 790013, at *11 (M.D. Pa. Mar. 14, 2007) (same).

Similarly, courts have consistently held that full disclosure pursuant to Rule 16, when combined with a representation that the Government intends to use all Rule 16 evidence provides all the notice that is required by Rule 12(b)(4). *See United States* v. *Imadu*, No. 06 Cr. 150-J-32MCR, 2006 WL 2265437, at *2 (M.D. Fla. Aug. 8, 2006); *United States* v. *El-Silimy*, 228 F.R.D. 52, 57 (D. Maine 2005) (noting that the Rule is not intended to allow a defendant to force the government to decide precisely which documents provided in discovery it will offer at trial and to prevent it from using any that it does not so designate as a matter of trial tactics. It is not intended as a strategic tool for defendant and was "not designed to aid the defendant in ascertaining the government's trial strategy.") (quoting *United States* v. *De la Cruz-Paulino*, 61 F.3d 986, 994 (1st Cir. 1995)); *United States* v. *Allen*, 289 F. Supp. 2d 230 (N.D.N.Y. 2003) (notice sufficient where government's letter stated it planned to use "all of the evidence referenced in the discovery material provided herein"; *United States* v. *Brock*, 863 F. Supp. 851, 868 (E.D. Wis. 1994); *United States* v. *Gullo*, 672 F. Supp. 99, 105 (W.D.N.Y. 1987); *but see United States* v. *Cheatham*, —F. Supp. 2d —, 2007 WL 2331075, at *5 (W.D. Pa. Aug. 16, 2007) (open file discovery not sufficient to supply Rule 12(b)(4) notice); *United States* v.

*Anderson*, 416 F. Supp. 2d 110, 112 & n.1 (D. D.C. 2006) (requiring Government to specify its

exhibits pursuant to Rule 12(b)(4)); *De la Cruz-Paulino*, 61 F.3d at 992-95 (open file discovery,

without more, does not provide sufficient notice pursuant to Rule 12(b)(4)).

**B.    Discussion.**

Because of their failure to meet their initial burden, defendants seek an order requiring the

Government to:

1.    Identify all agents or prosecutors who had access to the
      unlawfully seized materials;

2.    Identify all agents or prosecutors who read or otherwise
      reviewed the unlawfully seized materials;

3.    Identify any documents that were unlawfully seized that
      were segregated from documents to be reviewed by
      government agents and prosecutors, and that were not in
      fact reviewed;

4.    Identify all documents obtained subsequent to the May 26,
      2005, search, that the government contemplates offering
      into evidence at trial; specify any such documents that were
      mentioned or otherwise referenced in any document that
      was illegally seized;

5.    Identify all individuals, including but not limited to former
      employees and customers of Amerindo U.S., who were
      contacted or interviewed subsequent to the May 26, 2005,
      search and whom the government contemplates calling as
      trial witnesses; as to all such potential witnesses, specify
      any use by a government prosecutor or agent of information
      derived directly or indirectly from the unlawfully seized
      documents, including, for example, customer
      correspondence, complaints, and/or account records to
      refresh the witness's recollection or to persuade the witness
      to assist in the investigation and prosecution of the present
      case;

6.      Disclose any subpoenas issued to obtain documents or other materials that were mentioned or referenced in the unlawfully seized materials;

7.      Disclose any internal notes, correspondence, or memoranda relating to use of the suppressed material in connection with the government's ongoing investigation;

8.      With regard to items that were unlawfully seized from computers, specify all particular files and documents that were accessed by government agents or prosecutors, and identify any use made of those files or documents in acquiring other evidence or communicating with witnesses; and

9.      Disclose any other information relevant to the question whether evidence to be presented at trial is tainted by the illegal seizure.

Vilar Mem. at 18-20.[9] Defendants also seek an order requiring the disclosure of any "other act" evidence that the Government intends to offer pursuant to Fed. R. Crim. P. 404(b) in advance of the time already set by the Court (30 days prior to trial) for such disclosure. *See* Vilar Mem. at 20. Defendants are not entitled to the sweeping discovery that they seek under any of the theories they advance, and their request should be denied.

1.     ***Brady* v. *Maryland*.**

There is no case law to support defendants' contention that *Brady* compels the Government to provide information to defendants to assist defendants with their efforts to prophylactically preclude the Government from improperly introducing fruit of suppressed material in evidence at trial. That is not surprising given the fact that *Brady* does not give rise to

---

[9]     The Government will not here delineate the many clarifications of defendants' discovery requests that would be required before the Government could meaningfully respond, and instead reserves the right to do so should the Court be inclined to grant defendants' motion.

any pretrial remedy. *See Weatherford*, 429 U.S. at 559; *Coppa*, 267 F.3d at 135; *Evanchik*, 413 F.2d at 953. The Government intends to scrupulously comply with the constitutional limitations placed on its use of the suppressed materials and evidence derived from the suppressed materials, *see* Litt Decl. ¶ 1, and defendants have not produced any evidence to the contrary. In these circumstances, any contention that *Brady* compels the disclosure is premature and unfounded. On this record, and in light of defendants' admission that they expect little, if any "tainted" evidence to be introduced at trial, defendants cannot demonstrate that there is *any* possibility, let alone a "reasonable probability" that such disclosure would result in a different outcome at trial. *See Bagley*, 473 U.S. at 682. Because *Brady* requires a retroactive analysis of the effect of the withholding of information on the outcome of a trial, defendants' invocation of *Brady* further supports the Government's position discussed in Point III, *infra*, that if any "taint" hearing is required, it should occur post-trial. Defendants' reliance on *Brady* to obtain pretrial discovery is inapposite, and defendants' motion should be rejected.

    2.    **"Taint" Cases**.

       As described above, defendants' reliance on the "taint" cases, including *Alderman*, for the proposition that they are entitled to additional discovery in order to be able more effectively to pursue their claims, is likewise inapposite. In cases such as *Nardone* and *Alderman*, defendants were entitled to receive nothing more than the transcripts of illegally recorded conversations that either occurred on their property or in which they participated. In fact, the Supreme Court, in *Alderman*, explicitly held that its ruling would not grant defendants the "unlimited license to rummage in the files of the Department of Justice." *Alderman*, 394 U.S. at 185. As the Fifth Circuit held in *Nolan*, the *Alderman* decision did not expand defendants' discovery rights.

*Nolan*, 420 F.2d at 554. Defendants are unable to point to a single "taint" case in which a claimant was found to be entitled to the kind of discovery defendants are seeking here. Defendants already have been provided all of the suppressed materials in discovery. Moreover, the Government has segregated and returned to Amerindo U.S. the non-electronic suppressed materials.[10] They have, therefore, received the materials analogous to those that must be turned over in a case involving an illegal wiretap. Defendants have also received, pursuant to Rule 16, other evidence that the Government may seek to introduce at trial. They are entitled to nothing more, and their motion for additional discovery should be rejected.

   **3.     Rule 12(b)(4)**.

   Defendants' reliance on Fed. R. Crim. P. 12(b)(4) is also unfounded. They claim that Rule 12(b)(4) requires the Government to make additional disclosures concerning its investigation and the evidence and witnesses it intends to rely upon at trial. (*See* Vilar Mem. at 18-19 & n. 2). This Court previously rejected a similar Rule 12 argument advanced by Tanaka prior to the issuance of the Order, *see* 3/9/06 Tr. 89-94; Litt Decl. ¶ 2, Ex. B, and should likewise do so here. As the Court noted at the March 9, 2006 conference, in denying defendants' motion for early discovery, including advance disclosure of the Government's exhibit list, "[t]he Government has] given you itemized inventories of things that were seized pursuant to the types of investigative techniques that are the subject of suppression motions. I don't read anything in

---

[10]    The Government is still in the process of segregating the validly seized data from the seized electronic media and intends to deposit the original mirror images containing both suppressed and unsuppressed data with the Court pursuant to an agreement reached with defense counsel. *See* Litt Decl. ¶ 1, Ex. A. Of course, defendants have had access to all the seized electronic media since the Fall of 2005, and have been aware of the suppressed materials since the Order was entered on April 4, 2007.

Rule 12(b) or any case that applies 12(b) that is a back door way to get an itemization of what the government is going to put in its case in chief of those things that were found during a search warrant." (3/9/06 Tr. at 92-93; Litt Decl. ¶ 2, Ex. B). The defendants have been sufficiently alerted so that they "should look at all of the discoverable material . . . in considering [whether to file] any motion to suppress." *Brock*, 863 F. Supp. at 868 n.33.

Moreover, Rule 12(b)(4), by its very terms, is limited to evidence that a defendant "may be entitled to discover under Rule 16." Fed. R. Crim. P. 12(b)(4). With the exception of part of the fourth item on their laundry list of discovery demands ("Identify all documents obtained subsequent to the May 26, 2005 search, that the government contemplates offering into evidence at trial. . ."), none of the items on their list falls within the scope of Fed. R. Crim. P. 16 and, therefore, their reliance on Rule 12(b)(4) is wholly inapposite with respect to the vast majority of their demands. Defendants are entitled to no more discovery under Rule 12(b)(4) than the discovery that they have already received pursuant to Rule 16. Accordingly, defendants' motion for additional discovery should be denied.

## III.

## ANY "TAINT" HEARING SHOULD BE HELD POST-TRIAL

Defendants urge the Court to conduct a pretrial "taint" hearing, and contend that Rule 12(d) of the Federal Rules of Criminal Procedure compels that result. *See* Vilar Mem. at 2, 25-27; Tanaka Ltr.-A at 1-2. Neither the case law nor common sense supports defendants' suggested approach. Instead, the Court should defer ruling on the unspecified "taint" claims raised by defendants until after the trial is concluded. Doing so would be more appropriate and more efficient because, among other things: (1) in the event of acquittals, there would be no need

to prepare for, and hold, such a hearing; (2) after trial, the record of what evidence and testimony was introduced by the Government at trial would be clear, and any such hearing would be appropriately focused, with no time or resources devoted to arguing about evidence that was never introduced; (3) any issue concerning either the Government's cross-examination of unnamed defense witnesses or its hypothetical rebuttal case, could not readily be evaluated in a pretrial proceeding; (4) delaying any taint hearing until after trial would advance the public interest in a speedy trial; and (5) postponing resolution of defendants' hypothetical claims and preventing pretrial disclosure of the Government's case would be consistent with the pretrial discovery rules applicable to criminal proceedings. That regime is designed to aid the truth-seeking process and to minimize the ability of defendants to manufacture evidence, intimidate witnesses or collude with each other by inventing explanations to rebut expected testimony or evidence.

Defendants' suggestion also flies in the face of the overwhelming weight of authority. The vast majority of courts that have considered the question of when to hold such "taint" hearings (whether in the context of unlawful searches, illegal wiretaps, or immunized testimony), have concluded that any such hearings should be deferred until after the trial is completed. At that time, it will be clear to the defendants what exhibits were introduced, what testimony was adduced on direct, cross, and rebuttal, and what was the relevance and materiality of that evidence to the case. Only then will the Court be in a position to evaluate the propriety of a request for a "taint" hearing, to determine the proper scope of any such hearing, and to resolve the merits of any taint claims. The rationale for deferring resolution of "taint" motions amply satisfies the "good cause" requirement of Fed. R. Crim. P. 12(d) which, as a consequence, offers

19

no succor to defendants. Defendants' unsupported motion should be rejected, and if any taint

hearing is to be held in this case, it should be deferred until after the jury has pronounced

defendants' guilt.

**A.    Applicable Law.**

The decision concerning when to hold a "taint" hearing is within the Court's sound

discretion. *See, e.g., Nardone*, 308 U.S. at 342; *United States* v. *McCall*, 489 F.2d 359, 363 (2d

Cir. 1973) (holding that the trial court's decision to hold a wiretap taint hearing post-trial was not

an abuse of its discretion); *Sacco*, 428 F.2d at 273-74 (finding no abuse of discretion in denying

defendant's motion for a pre-trial taint hearing); *Birrell*, 269 F. Supp. at 726 (timing of taint

hearing is within trial court's discretion); *United States* v. *Ahmad*, 335 F. Supp. 1198, 1201 (D.C.

Pa. 1971) (same); *United States* v. *Prebish*, 47 F.R.D. 578 (S.D. Fla. 1969) (same).

Rule 12(d) of the Federal Rules of Criminal Procedure ("Rule 12(d)"), which was revised

in 1975, after the above-cited cases were decided, does not demand a different result. Rule 12(d)

provides that:

> **Ruling on a Motion.** *The court must decide every pretrial motion*
> *before trial unless it finds good cause to defer a ruling.* The court
> must not defer ruling on a pretrial motion if the deferral will
> adversely affect a party's right to appeal. When factual issues are
> involved in deciding a motion, the court must state its essential
> findings on the record.

Fed. R. Crim. P. 12(d) (emphasis supplied).[11] Rule 12(d) explicitly permits trial judges to defer

---

[11]    Prior to the 1975 amendment, the substance of the predecessor to Rule 12(d) was
contained in Fed. R. Crim. P. 12(b)(4), which provided in pertinent part that: "[a] motion before
trial raising defenses or objections shall be determined before trial unless the court orders that it
be deferred for determination at the trial of the general issue." Rule 12(d) was denominated Fed.
R. Crim. P. 12(e) until the adoption of the 2002 amendments. The wording of Rule 12(d) has not
changed, however, since the operative language became effective on December 1, 1975.

ruling on pretrial motions upon a finding of "good cause." *Id.* "Courts in this District routinely

defer deciding pretrial motions when a defendant's claims are substantially founded upon and

intertwined with the evidence to be presented at trial." *United States* v. *Francisco*, No. 06 Cr.

791 (SAS), 2007 WL 2265147 at *3 (S.D.N.Y. Aug. 6, 2007) (quoting *United States* v. *Bodmer*,

342 F. Supp. 2d 176, 180 (S.D.N.Y. 2004) (quoting *United States* v. *Williams*, 644 F.2d 950, 953

(2d Cir. 1981)) (internal quotations omitted); *see United States* v. *Helmsley*, 864 F.2d 266, 270-

71 (2d Cir. 1988) (Van Graafeiland, J. concurring) (finding good cause for the district court's

decision to defer a *Kastigar* hearing based on its finding that "the trial record would enable the

Court to better determine whether [the appellant's] Fifth Amendment rights were infringed.");

*Williams*, 644 F.2d at 953 (affirming district court's decision to defer considering defendant's

pretrial claim that the Government had obtained the indictment of the defendant, a U.S. Senator,

through presentation of his staff members' testimony to the grand jury in violation of the Speech

and Debate and Due Process Clauses of the U.S. Constitution, and noting that "[b]ecause full

development of the facts would help the district judge in reaching a wise decision, postponement

was not without benefit to appellant."); *see also United States* v. *Jalbert*, 242 F. Supp. 2d 44, 46

(D. Me. 2003) ("A motion [to dismiss the indictment for outrageous Government conduct]

requiring the presentation of a significant quantity of evidence relevant to the question of guilt or

innocence constitutes good cause to defer.").

In the context of *Kastigar* claims,

> it is the general practice in this circuit to defer such a *Kastigar*
> hearing until after trial. *See, e.g.*, *United States* v. *Helmsley*, 941
> F.2d 71, 80 (2d Cir. 1991); *United States* v. *Rivieccio*, 919 F.2d
> 812, 814 (2d Cir. 1990); *United States* v. *Volpe*, 42 F. Supp. 2d
> 204, 219 (E.D.N.Y. 1999). After a trial a court can better evaluate

> the Government's evidence *and avoid disclosure of the*
> *Government's proof before trial. See United States* v. *Gregory*,
> 611 F. Supp. 1033, 1042 (S.D.N.Y. 1985); *United States* v.
> *Helmsley*, 941 F.2d at 80 (post-trial hearing enabled trial judge to
> determine "with the benefit of trial evidence whether there was a
> sufficient nexus between the immunized testimony and the federal
> prosecution to warrant a hearing").

*United States* v. *Fernandez*, No. 00 Cr. 420 (SWK), 2000 WL 1409738, at *3 (S.D.N.Y. Sept.

22, 2000) (emphasis supplied); *see United States* v. *Fuller*, 149 F. Supp. 2d 17, 26 (S.D.N.Y.

2001) ("any hearing to determine whether the Government relied on such evidence [derived from

immunized statements] should be deferred until after all the evidence has been presented and the

trial concluded.") (citations omitted); *United States* v. *Gregory*, 611 F. Supp. 1033, 1042

(S.D.N.Y. 1985); *United States* v. *Corrao*, No. 91 Cr. 1343, 1993 WL 63018, at *2 (E.D.N.Y.

Mar. 1, 1993) (determination of when within the parameters of Rule 12(d) a motion is to be

resolved rests within the discretion of the court. "In the exercise of th[e] court's discretion under

Rule(d) to determine when a motion is to be resolved], a *Kastigar* hearing, if still warranted, will

be delayed until the conclusion of the trial so that a determination can be made, informed by a

fully developed trial record.") (citations omitted); *United States* v. *Volpe*, 42 F. Supp. 2d 204,

219 (E.D.N.Y. 1999) (holding that the timing of a *Kastigar* hearing is within trial court's

discretion; finding that the general practice in the Second Circuit is to defer such hearings until

after trial; and, noting that one benefit of deferral is avoiding the disclosure of the Government's

proof before trial).

**B.    Discussion**.

Defendants have failed to articulate any persuasive reason why this Court should not

follow the lead of courts in this district, and all over the country, which defer the resolution of

"taint" claims and analogous *Kastigar* claims until after the trial is completed. Accordingly, their request for a pretrial "taint" hearing should be denied.

The case which bears the closest analogy to that presented here was decided in this District by Judge Herlands in *United States* v. *Birrell*, 269 F. Supp. 716 (S.D.N.Y. 1967). In *Birrell*, a search was conducted in August 1959 by Deputy U.S. Marshals in the Eastern District of Pennsylvania pursuant to two search warrants, from which more than 50 file cabinets and cartons of records containing between one and two million documents were seized. *Birrell*, 269 F. Supp. at 718-19. The documents were seized in connection with a bankruptcy proceeding, and were subsequently provided to the U.S. Attorney's Office for the Southern District of New York. *Id.* at 719. In 1964, Birrell filed a motion to suppress the documents, and for the return of the documents to him. *Id.* The District Court found that the affidavits underlying the warrants were insufficient to establish probable cause to seize the evidence, ordered the seized property suppressed, and held that Birrell was entitled to the return of the seized materials upon proof of ownership. *Id.* (citing *United States* v. *Birrell*, 242 F. Supp. 191, 201 (1965); *United States* v. *Birrell*, 243 F. Supp. 38, 41 (1965)). Birrell subsequently filed a motion seeking an itemized inventory of the seized materials, and claimed that, "if the Government cannot presently produce every single document originally seized, the Court must rule, as a matter of law, that the Government cannot meet its burden of proving the independent origin of its trial evidence." *Id.* at 723. Finally, Birrell moved for a pretrial evidential hearing "to probe the genesis and evolution of the Government's prospective trial proof." *Id.* at 725.

The Court rejected Birrell's motions. With respect to the pretrial "taint" hearing, the Court held that "the question of the timing of a hearing on the issue of taint falls within the well-

established range of judicial discretion entrusted to federal trial judges in ruling upon preliminary questions of fact." *Id.* at 726 (citing *Nardone*, 308 U.S. at 342).  The Court noted that, "[i]n the exercise of the Court's discretion, the primary desideratum should be the common interest of the Court and the litigants in a fair and expeditious trial." *Id.*  After rejecting the notion of holding such a hearing during the trial, the Court denied Birrell's request for a pretrial hearing.  In so doing, the Court found that numerous reasons supported the Government's view that it was more appropriate to hold any such hearing after trial.

First, the Court found that the taint hearing promised to be time-consuming, would unnecessarily delay the trial, and could prove to be wholly unnecessary in the event of an acquittal. *Id.* at 727.

Second, the Court found that "a pretrial hearing would not definitively resolve the issue of taint" because "at a pretrial hearing, only a largely hypothetical or tentative case could be presented, not fully anticipating the questions actually asked and the answers actually given at trial." *Id.*  Moreover, it would prove impossible to evaluate the constitutionality of the Government's cross-examination of defense witnesses, or its rebuttal case, in advance of trial. *Id.*  As the Court found,

> [w]ere a hearing on the issue of taint to be held in advance of the main trial, it is more than likely that a supplemental hearing would be required either during or after trial, involving some of the same witnesses who had testified at the pretrial hearing or involving the possible linkage of trial exhibits with the seized material.  A piecemeal approach to the solution of this problem of taint should be avoided, for it is bound to result in duplicity of questioning and an inordinate expenditure of time.  In a real sense it would closely approximate a double trial.  On balancing the pros and cons, the Court believes that the more expeditious alternative is to postpone the entire inquiry into the issue of taint, if needed, until after a jury

> verdict. At that time, the Government's actual trial evidence will
> have been made completely a matter of record and a searching
> probe into the genesis and evolution of the proof could be
> conducted with a minimum of confusion, repetition and delay.

*Id.* at 727-28.

Third, the Court agreed with the Government that, "a pretrial hearing of the scope desired by defendant would unavoidably amount to a comprehensive and unrestricted preview of the Government's entire case." *Id.* at 728. The Court found that the rights of the defendant to be tried on the basis of untainted evidence "can and will be vindicated more effectively at a post-trial hearing than at a pretrial hearing," and refused to expand the scope of pretrial discovery permitted under Rule 16 in connection with Birrell's motion for a pretrial hearing. *Id.*

Fourth, the Court found that were such a pretrial hearing to occur, the defendant's right to a fair trial could be prejudiced by unflattering pretrial publicity. As the Court noted,

> [t]his case will probably attract extensive publicity, as it did in its
> earlier stages. Public exposure of any inculpatory proof against
> defendant and other potentially damaging evidence at a pretrial
> hearing may prejudice defendant's right to a fair trial. . . . Pretrial
> publicity may create a problem in the selection of unbiased jurors,
> which may in turn prompt defendant to request continuances or a
> change of venue. Postponement of the hearing on the issue of taint
> until after trial would minimize the risk of prejudice, and avert the
> possibility of further delay.

*Id.* Fifth, the Court credited the sincerity of the Government's representations that it intended to comply with its constitutional obligations with respect to suppressed evidence and any fruit derived from that evidence. *Id.* at 729. The Court found that "[t]he prosecuting attorney's clear consciousness of this sharply focused issue has been heightened by defense counsel's blunt and insistent challenge. The Court has discerned no reason to doubt the sincerity of the prosecuting

25

attorney's pledge that he will satisfy scrupulously all constitutional criteria." *Id*. Based on those

five considerations, the Court in *Birrell* denied defendant's motion for a pretrial "taint" hearing.

The circumstances here are on all fours with those in *Birrell*. In both cases, the "taint"

claims arise from a search and seizure of evidence pursuant to a search warrant determined to be

lacking in adequate supporting probable cause. As in *Birrell*, defendants are here seeking a

pretrial hearing "to probe the genesis and evolution of the Government's prospective trial proof."

*Id*. at 725. Just as in *Birrell*, the Government has acknowledged its intent to comply with the

constitutional limits placed on its use of suppressed evidence and the fruits thereof. *See* Litt

Decl. ¶ 1 ("The Government is aware of, and intends to comply with, the constitutional limits

placed on its use of evidence suppressed by, or derived from the materials suppressed by, the

Court's April 4, 2007 Order."). Like the circumstances in *Birrell*, the quantity of suppressed

evidence is relatively large – indeed, it is even larger here – and any "taint" hearing could be

expected to be quite lengthy and would further delay the start of the trial.[12] Finally, both cases

attracted pretrial publicity, and any "taint' hearing could likewise be expected to attract further

press attention. The rationale of the *Birrell* court is, therefore, applicable here, too.

In one key respect, however, this case differs from *Birrell*. Here, defendants admit that

they expect the bulk of the evidence introduced by the Government to prove the allegations

contained in the indictment will *not* be derived from suppressed materials. Defendants' explicit

---

[12]    According to the docket sheet for *United States* v. *Birrell*, 61 Cr. 692 (S.D.N.Y.), the *post-trial* taint hearing in a case involving approximately 50 boxes of documents (and no computer evidence) stretched over approximately 86 days of hearings during the fifteen month period between February 1968 and May 1969. The hearings did not resolve the issues raised because Judge Herlands, who presided over the hearings, died before rendering a decision. *See* Litt Decl. ¶ 4, Ex. C.

acknowledgment of the relative insignificance of any allegedly tainted evidence that hypothetically could surface at trial provides even more reason to hold a taint hearing, if necessary, *after* trial. The pretrial expenditure of time and resources and the premature disclosure of the Government's case will, in these circumstances, serve no function other than to delay trial and to provide defendants with an unwarranted preview of the Government's case. Should the defendants, after conviction, be able to make the required connections between specific evidence constituting a substantial part of the Government's case and suppressed evidence, they can then file a new motion for a "taint" hearing. If the Court then finds that they have met their initial burden, a hearing will be held, and if the Government cannot meet its burden, the defendants' rights then will be vindicated. There is no need to engage in a lengthy fishing expedition before trial to prophylactically protect against hypothetical unspecified harms that the defendants themselves do not even expect to be visited upon them at trial. Accordingly, their motion should be denied.

The court's reasoning and decision in *Birrell* does not stand alone. That decision has served as a model for other courts that have likewise considered the issue of when to hold a "taint" hearing. For example, in *United States* v. *Ostrer*, 481 F. Supp. 407 (S.D.N.Y. 1979), defendants requested a pretrial taint hearing based on allegations that unlawful searches were conducted on the basis of information obtained from unlawful wiretaps and that "[m]uch of the Government's case" was derived from the immunized testimony of one of the defendants. *Ostrer*, 481 F. Supp. at 414. Judge Duffy denied defendants' requests for pretrial taint and *Kastigar* hearings, and in so doing adopted the reasoning of *Birrell*. *Id.* at 415. Likewise, in *United States* v. *McCarthy*, 292 F. Supp. 937 (S.D.N.Y. 1968), the trial judge postponed a

27

wiretap taint hearing until after trial.  Among other things, the court found that

> a hearing on the relevance of the[] eavesdropped conversations to
> the indictments would be difficult now because . . . [t]he relevance
> of evidence in a conspiracy case is not susceptible of a ready
> answer.  Indeed, what is relevant in a conspiracy case is usually so
> uncertain, even on trial, that most of the evidence is received
> subject to connection.  Like a jig saw puzzle, the picture is revealed
> only when the bits and pieces of the evidence are fitted together.
> Relevance thus depends on the whole context of circumstances.
>
> A conversation, a name, a place or an event, utterly meaningless
> or completely innocent to a stranger, as the cryptic statements in
> the proffered logs are to us, may prove to be tellingly significant
> and irreparably incriminating to one with knowledge of all the
> nuances of the conspiracy.  The knowledge essential to a decision
> on the question of relevancy in a conspiracy case, thus, cannot be
> learned without a full exposition of all the facts and circumstances.
> This requires a plenary trial.
>
> Common sense and judicial economy, thus, dictate that the
> hearing, if any, be left to the sound discretion of the trial judge.  To
> hold otherwise would surely give defendants a preview of the
> government's evidence and the court an exercise in futility.
>
> . . . .
>
> Postponing the eavesdropping hearing in these circumstances is the
> appropriate course of action.  *Lengthy hearings before trial are
> usually fruitless, and whatever the outcome are a burden on the
> efficient and effective administration of the business of this
> congested court.*  The interruption of a complex conspiracy trial for
> such auxiliary inquiries also hampers the administration of justice.
> Such hearings impede the progress of the main proceeding,
> obstruct the scheduling of testimony, and distract or break the
> jury's attention.  The result is not infrequently an aborted trial.  We
> think, therefore, that the appropriate time to hold such hearings is
> after trial.

*McCarthy*, 292 F. Supp. at 944-45 (emphasis supplied) (internal citations omitted).  Numerous

other courts that have reached the same conclusion.  *See, e.g.*, *United States* v. *Tortorello*, 480

28

F.2d 764, 785 n. 18 (2d Cir. 1973) (rejecting appellant's reliance on the Circuit's decision in a

case related to second, separate, conviction of Birrell, noting the Circuit's disapproval of the

practice of postponing suppression hearings until after trial and explaining that the court did not

disapprove of that practice "where the issue is the legality of a search or seizure which . . .

require[s] a preview of the government's case as in a taint hearing.");[13] *United States* v. *Cole*, 463

F.2d 163, 171 (2d Cir. 1972) (noting that Judge Pollack had deferred a wiretap "taint" hearing

until after trial "when he would be better able to analyze what evidence the prosecution had

used."); *United States* v. *Buck*, 548 F.2d 871, 874 (9th Cir. 1977) ("The propriety of holding such

hearings post-trial has been recognized widely and is within the trial court's discretion.") (citing

cases); *United States* v. *Ahmad*, 335 F. Supp. 1198, 1200-01 (D. Pa. 1971) ("in nearly all the

cases where the matter has been considered it has been held that a post-trial hearing was

preferable if required at all.") (citing *United States* v. *Addionzio*, 313 F. Supp. 486, 492 (D. N.J.

1970) ("Nowhere in *Alderman* does the Supreme Court indicate that a pretrial hearing must be

granted to determine possible taint, even where . . . it is admitted before trial that defendants were

subjected to electronic surveillance.  Logically, it would seem that a post[-]trial procedure to

determine taint would be the better practice."); *Nolan*, 420 F. 2d at 554 (affirming postponement

of taint hearing until after trial); *Prebish*, 47 F.R.D. at 578 (finding *Birrell* reasoning persuasive

---

[13]    *See United States* v. *Birrell*, 470 F.2d 113, 115 (2d Cir. 1970) (Friendly, J.)
("When a motion to suppress has been made prior to trial, we do not approve such an extension
of the practice of postponing a 'taint' hearing until after verdict, which was devised by the late
Judge Herlands to meet the exceedingly hard problem confronting him in another prosecution of
the appellant, *United States* v. *Birrell*, 269 F. Supp. 716 (S.D.N.Y. 1967); in such cases, *there
may indeed be serious difficulties in conducting a 'taint' hearing until the court knows what
evidence the Government will offer.*  Here the issue was not 'taint' but the legality of the
search.").

and delaying hearing until after trial); *McCarthy, supra; Birrell, supra); Sacco*, 428 F.2d at 273-74; *but see United States* v. *McCall*, 489 F.2d 359, 363 (2d Cir. 1973) (disapproving of the practice of holding wiretap taint hearings post-trial, but holding that the trial court's decision to do so was not an abuse of discretion); *Fagan* v. *United States*, 545 F.2d 1005, 1006 (5th Cir. 1977) (affirming denial of a *habeas* petition in a case in which the trial court had required the Government to show that each witness it planned to call, and each exhibit in planned to use, had been derived from a source independent of the previously suppressed evidence).

The consistent practice within this Circuit of deferring resolution of claims brought pursuant to *Kastigar* v. *United States*, 406 U.S. 441 (1972), until after trial is also instructive here because a *Kastigar* hearing is analogous to the "taint" hearing defendants are seeking. In *Kastigar*, the Supreme Court held that the Government may not use the testimony of an individual given under a grant of immunity against that individual in a subsequent criminal proceeding, and that the Government has the burden of proving affirmatively that the evidence it proposes to use is derived from legitimate sources independent of the compelled testimony. *See Kastigar*, 406 U.S. at 453. The similarity between the two situations is patent. In both contexts, a condition precedent must be met before a hearing will be held. In the *Kastigar* context, that pre-condition is the fact that immunized testimony was taken from an individual who was the subject of some criminal proceeding in which that testimony may have been used, directly or indirectly. In the "taint" context, the condition is that a Fourth Amendment violation occurred. In both contexts, the Government may be required to prove that "tainted" information – that is, either information derived from immunized testimony in the *Kastigar* context, or information derived from unlawfully seized material in the instant context – was not being used against the

30

defendant. Finally, pretrial hearings in both types of cases implicate equally the concerns raised by the court in *Birrell*.

As set forth in Point III.A., *supra*, courts in the Second Circuit routinely defer *Kastigar* hearings until after trial because the trial court would then have the benefit of a fully-developed record. *See, e.g.*, *Helmsley*, 941 F.2d 71, 80 (2d Cir. 1991); *United States* v. *Rivieccio*, 919 F.2d 812, 814 (2d Cir. 1990); *United States* v. *Gregory*, 611 F. Supp. 1033, 1042 (S.D.N.Y. 1985); *United States* v. *Volpe*, 42 F. Supp. 2d 204, 219 (E.D.N.Y. 1999). There is no logical reason why the timing of a hearing concerning use of the fruit of a Fourth Amendment violation should be any different from the timing of a hearing concerning the use of the fruit of a Fifth Amendment violation, and the Court, accordingly, should reject defendants' motion for a pretrial "taint" hearing.

Finally, defendants' reliance on Fed. R. Crim. P. 12(d) is unavailing. Rule 12(c) and Rule 12(d), which require defendants to make suppression motions pretrial and require courts, in the absence of good cause, to resolve such motions before trial, were designed to protect the Government and the truth-seeking interests of the public in the criminal justice system. Rule 12 prevents the postponement of the filing and resolution of suppression motions until after a trial jury is sworn, a circumstance that would have the effect of precluding Government interlocutory appeals pursuant to 18 U.S.C. § 3731.[14] Here, where deferral of decision does not affect any

---

[14]    Section 3731 provides, in pertinent part: "an appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding." 18 U.S.C. § 3731.

appellate rights of the defendants, and where a pretrial hearing would be inefficient and harm the interests of the Government by requiring premature revelation of its trial evidence and strategy, interpreting Rule 12(d) to require a pretrial "taint" hearing would run counter to the intent embodied in the structure and language of the Rule. Courts in this district, and courts all over the country, routinely defer the resolution of "taint" claims and the analogous *Kastigar* claims until after the trial is completed. Defendants have not made a compelling case for why this Court should not likewise defer defendants' "taint" claims until after the verdict is announced. Accordingly, their request for a pretrial "taint" hearing should be denied.

## **CONCLUSION**

For the foregoing reasons, defendants' motion for additional discovery and for a pretrial "taint" hearing should be denied without hearing.

Dated: October 4, 2007
      New York, New York

                                    Respectfully submitted,

                                    MICHAEL J. GARCIA,
                                    United States Attorney for the
                                    Southern District of New York,
                                    *Attorney for the United States of America*

By:     /s/
            Marc Litt
            Deirdre A. McEvoy
            Benjamin Naftalis
            Assistant United States Attorneys
            (212) 637-2295 /-2309 /-2452