Glenn C. Colton (GC-2493)
Jessica L. Margolis (JM-7786)
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
1301 Avenue of the Americas, 40th Floor
New York, New York  10019
Tel: 212.999.5800

*Attorneys for Defendant*
*Gary Alan Tanaka*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | S3 05 Cr. 621 (RJS) |
| - against - | ECF CASE |
| ALBERTO WILLIAM VILAR, a/k/a "Albert Vilar," and GARY ALAN TANAKA | |
| Defendants. | |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF**
**MOTION TO EFFECTUATE ORDER OF SUPPRESSION**

## TABLE OF CONTENTS

**Page**

ARGUMENT .................................................................................................................................. 1

I.    THE GOVERNMENT'S ARGUMENT THAT THE CHALLENGED DOCUMENTS, WHILE SUPPRESSED, CAN NONETHELESS BE INTRODUCED AT TRIAL IS UNTIMELY ............................ 1

    A.    The Government Has Effectively Waived The Right To Invoke New Exceptions To The Exclusionary Rule ........................................................................ 1

    B.    The Government Has Failed To Comply With The Requisite Time Limit For Filing A Motion For Reconsideration .......................................................................... 3

II.    THE GOVERNMENT'S POSITION SHOULD BE REJECTED ON THE MERITS .................................. 5

    A.    The Government Cannot Meet Its Burden Of Demonstrating Inevitable Discovery ...................................................................................................................... 5

    B.    The Government Has Not Met Its Burden Of Demonstrating The Applicability Of The Independent Source Doctrine ............................................................................ 7

    C.    The Relief Sought By Mr. Tanaka Is Entirely Consistent With Previous Court Orders, Including The April 4 Order .......................................................................... 9

CONCLUSION ............................................................................................................................. 10

Defendant Gary Alan Tanaka, by his attorneys, respectfully submits this memorandum in further support of Defendants' motion to effectuate the Court's April 4, 2007 Opinion and Order suppressing certain documents seized by the Government.

## BACKGROUND

Relevant facts pertaining to this motion are set forth in Mr. Tanaka's initial Memorandum of Law in Support of his Motion to Effectuate Order of Suppression, dated August 17, 2007 ("Tanaka Mem.").[1]

## ARGUMENT

**I. THE GOVERNMENT'S ARGUMENT THAT THE CHALLENGED DOCUMENTS, WHILE SUPPRESSED, CAN NONETHELESS BE INTRODUCED AT TRIAL IS UNTIMELY**

A. The Government Has Effectively Waived The Right To Invoke New Exceptions To The Exclusionary Rule

In its opposition memorandum, the Government does not dispute that it failed to raise either the inevitable discovery or the independent source doctrines in any of the literally hundreds of pages of briefing submitted during the approximately twenty months that the Motions were pending. Nor does the Government dispute that these two doctrines – like the "good faith" doctrine relied on extensively by the Government in opposing Defendants' Motions – are exceptions to the very exclusionary rule that was at the heart of the Motions. Instead, the Government argues that it should not have been expected to raise these additional defenses because, prior to the issuance of the April 4 Order, "the category of Challenged Documents did not exist." Gov. Opp. at 10.

---

[1] As used herein, "Original Warrant" refers to the warrant executed at the New York office of Amerindo Investment Advisors Inc. ("Amerindo U.S.") on May 26, 2005. "Original Subpoena" refers to the subpoena served on Amerindo U.S. on May 26, 2005. "Restricted Warrant" and "Restricted Subpoena" refer to the Warrant and Subpoena as revised by the Court's Order dated April 4, 2007 ("April 4 Order"). The "Challenged Documents" refer to illegally seized and suppressed documents that, while outside the scope of the Restricted Warrant, are within the scope of the Restricted Subpoena. "Motions" refer to Defendants' motions to suppress materials seized pursuant to the Original Warrant and to quash the Original Subpoena.

The Government's contention that these additional exceptions were irrelevant prior to the Court's April 4 Order is wrong. From the very first document filed in connection with the Motions, Defendants argued that the Original Warrant was unconstitutionally overbroad, and that all materials seized pursuant to that warrant should be suppressed. In response, the Government asserted that the Original Warrant was valid and, in any event, suppression of the illegally seized evidence was inappropriate because the Original Warrant was executed in good faith. *See United States v. Leon*, 468 U.S. 897, 922 (1984) (solidifying "good faith" exception to exclusionary rule). Although equally relevant to defending against the Motions, and despite the fact that the Government consistently maintained the validity of the Original Subpoena, at no time did the Government argue that the inevitable discovery or independent source exceptions also applied. While in retrospect the Government might regret its decision to rely exclusively on the good faith doctrine – the Court having rejected the Government's position on this issue – regret alone does not justify permitting the Government a second bite of the apple. Simply stated, Defendants' Motions put the applicability of the exclusionary rule squarely before Court, and if the Government was going to raise any exception – good faith, inevitable discovery or otherwise – it was required to do so at the time.

*United States v. Nezaj*, 668 F. Supp. 330 (S.D.N.Y. 1987), which Mr. Tanaka cites in his moving brief but which the Government fails to specifically address in its opposition, is instructive. In opposing the defendant's motion to suppress, the government in *Nezaj* initially chose to rely exclusively on the argument that the search was legal under Supreme Court's decision in *Steagald v. United States*, 451 U.S. 204 (1981). When that argument failed, the government sought to re-open the issue, this time asserting that the illegally seized evidence, while suppressed by the Court, should nonetheless be deemed admissible on inevitable discovery grounds. *Id*. at 334. The Court rejected

the government's attempt to reargue the issue, stating "to address this [inevitable discovery] argument would effectively reopen the suppression hearing by reaching the merits of a legal issue that the government chose not to raise at the prior hearing . . . That the government's argument did not prevail is not sufficient reason to reopen" the issue. *Id.*

For the same reason, the Court in this case should not permit the Government to reopen issues decided by the April 4 Order and present newly-asserted theories as to why the suppressed documents should nonetheless be admissible. Instead, the Court's April 4 Order requiring exclusion of the Challenged Documents must stand.

### B. The Government Has Failed To Comply With The Requisite Time Limit For Filing A Motion For Reconsideration

The Government does not dispute that motions for reconsideration must be filed within ten days of the order in question. *See* Local Civil Rule 6.3; *United States v. Muse*, No. 06-CR-600, 2007 WL 1536704, at *2 (S.D.N.Y. May 29, 2007). Instead, the Government suggests that its own failure to timely move for reconsideration should be excused because Mr. Tanaka, in his effort to promote efficiency and avoid additional undue delay, promptly brought the dispute to the Court's attention and agreed to file the instant motion in accordance with a schedule set by the Court. The Government's position – while conveniently absolving the Government of responsibility – does not withstand scrutiny.

At the Court conference held on April 13, 2007 – with the ten day period for filing a motion for reconsideration about to expire and no indication that the Government was going to move despite its apparent position that it should be permitted to rely on the Challenged Documents at trial – counsel for Mr. Tanaka raised the issue in the hopes of resolving it expeditiously and preventing

further delays down the line. In so doing, Mr. Tanaka's counsel stated Mr. Tanaka's position that the April 4 Order prohibited use of the Challenged Documents at trial. In response, the Government simply stated its disagreement for the record, making clear its position that the ball was in Defendants' court to ensure that the April 4 Order was effectuated. *See* Supplemental Declaration of Jessica L. Margolis, dated November 2, 2007 ("Margolis Supp. Decl."), Ex. A at 24-25.

In light of the Government's stance – including its unequivocal intention to rely on these documents and its apparent determination not to formally move the Court – Defendants essentially were left with two choices: file the instant motion to effectuate the April 4 Order, or simply object at trial should the Government seek to admit the Challenged Documents. In the interest of efficiency, and in accordance with the Court's express preference, Mr. Tanaka opted for the former. *See* Margolis Supp. Decl., Ex. A at 24 ("MR. COLTON: … So if the government is going to take the position that [the] vast quantity of documents that were suppressed but yet responsive to the [restricted] subpoena are somehow unsuppressed because they would have been received through the subpoena, I would like to know that because that informs the massive evidence that's potentially usable in the trial, the potential length of the trial and how much work is to be done."), 26 ("MR. COLTON: The other way that we would – I would not want to do it this way, but the other way it could be done is simply object at trial when the government seeks to put something in. THE COURT: Not happening."). [2]

---

[2] The Government's suggestion that Mr. Tanaka's consideration of whether to pursue the instant motion somehow reflects his lack of commitment to the position or otherwise excuses the Government's untimeliness is disingenuous to say the least. *See* Gov. Mem. at 9-11. Mr. Tanaka has never wavered in his position that the April 4 Order prohibits the Government from using the Challenged Documents at trial. Instead, as the Court recognized, the issue identified by Mr. Tanaka's counsel at the April 13 conference was the tension between vindicating Mr. Tanaka's speedy trial rights – something he has consistently attempted to do in these proceedings – and

Of course, that Mr. Tanaka was forced to file the instant motion in order to ensure enforcement of the remedy adopted by the Court to redress the Government's constitutional violation in no way absolves the Government of its failure to comply with Court rules – including the rule requiring motions for reconsideration to be filed within ten days of the challenged order. Stated another way, by forcing Mr. Tanaka to move on the issue rather than filing its own motion within the requisite period, the Government assumed the risk that its argument would be deemed untimely. Unfortunately for the Government, the law of this District makes clear that this risk was one not worth taking.

## II.    THE GOVERNMENT'S POSITION SHOULD BE REJECTED ON THE MERITS

### A.    The Government Cannot Meet Its Burden Of Demonstrating Inevitable Discovery

The Government does not and cannot attempt to retract Mr. Litt's testimony that it was Mr. Licker who first proposed the idea of proceeding by subpoena. Nor does the Government attempt to retract Mr. Litt's testimony that, prior to Mr. Licker's suggestion on the morning of the Amerindo U.S. search, the Government had not even considered issuing a subpoena. Instead, with no choice other than to stand by Mr. Litt's previous testimony (which testimony was credited and adopted by the Court), the Government urges an interpretation of this testimony that, to say the least, defies logic. Specifically, the Government claims it is "unclear" why Mr. Licker asked whether the Government planned to serve a subpoena – except that, according to the Government, Mr. Licker's question apparently had nothing to do with the fact that nineteen federal agents were scavenging through Amerindo U.S.'s New York office and seizing everything with writing on it.

---

ensuring enforcement of the remedy established by the Court for the Government's violation of Mr. Tanaka's fourth amendment rights. *See* Margolis Supp. Decl., Ex. A at 25-27.

The Government's strained interpretation of Mr. Litt's testimony – which requires the Court to unnaturally divorce two clearly related conversations – should be rejected. Far from "unclear," Mr. Licker's motivation for suggesting the subpoena was made abundantly clear when, shortly after proposing the subpoena, Mr. Licker stated that proceeding in this manner would be "more efficient" and "less disruptive to Amerindo's business," and that "the [G]overnment would get what it really wanted . . . instead of having to take so much material." Declaration of Jessica L. Margolis, dated August 17, 2007, Ex. B at 108. Indeed, the Government does not and cannot explain why Mr. Licker would suggest proceeding by subpoena if not in an effort to curtail what was clearly a massively overbroad search and instead negotiate a more reasonable and targeted production. Stated differently, had the Government completed its execution of the Original Warrant there would have been nothing left on the premises to produce in response to a subpoena.[3]

In any event, the burden is on the Government – and not Defendants – to show, by a preponderance of the evidence, that the Government would have served the Subpoena regardless of the unconstitutionally overbroad search. *See, e.g., United States v. Eng*, 971 F.2d 854, 859 (2d Cir. 1992) (inevitable discovery doctrine applies when "the government can 'establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means'") (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)). Merely

---

[3] The Government's implication that Mr. Licker somehow should have done something more to challenge the Original Warrant at the time of the search is disingenuous at best. As the Government knows, the entire purpose of proceeding by search warrant is that it denies the recipient the opportunity to immediately object; indeed, that is why the Government is required to meet the probable cause standard rather than the significantly more liberal standard that applies to grand jury subpoenas. In fact, while suggesting that Mr. Licker should have done something more to object to the Original Warrant, the Government fails to state precisely what they would have had Mr. Licker do in the face of a signed warrant and nineteen armed federal agents.

characterizing Mr. Licker's motives in suggesting the subpoena as "unclear" – particularly in light of the overwhelming evidence to the contrary – is wholly insufficient to meet this burden.

      B. <u>The Government Has Not Met Its Burden Of Demonstrating The Applicability Of The Independent Source Doctrine</u>

Continuing its post facto attempt to resurrect the suppressed documents, the Government asserts – for the first time since Defendants filed the Motions and precisely six months after these Motions were decided – that the Challenged Documents, while illegally seized, should not be suppressed under the independent source doctrine. For several reasons, the Government's argument fails.

First, as with the inevitable discovery doctrine, the Government's newfound reliance on the independent source doctrine is untimely. *See* Tanaka Mem. at 4-6; *supra* at 2-6. Second, the Government's attempt to pitch the independent source doctrine as a wholly separate theory that applies in addition to – as opposed to instead of – inevitable discovery should be rejected. The Supreme Court has made clear that the inevitable discovery doctrine "is in reality an extrapolation from the independent source doctrine: *Since* the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered." *Murray v. United States*, 487 U.S. 533, 539 (1988) (emphasis in original). In other words, while the inevitable discovery doctrine may apply when the Government can demonstrate that illegally seized evidence would nonetheless have been obtained through lawful and wholly independent means, the independent source doctrine is appropriately considered where evidence that was not actually seized in the first instance is later acquired through lawful and wholly independent means. *Id*. at 536-37 (determining applicability of independent source doctrine where marijuana observed in plain view at the time of the illegal entry was *later* seized during a subsequent search)

(emphasis added); *see generally Nix v. Williams*, 467 U.S. 431, 443-44 (1984) (distinguishing the independent source doctrine, which applies where the evidence sought to be introduced at trial was actually obtained from an independent source, from the inevitable discovery doctrine). Because the Government actually obtained the Challenged Documents as part of its initial illegal search and not by virtue of a subsequent independent source, to the extent either exception applies (which, for the reasons discussed herein, neither does) it would be inevitable discovery.

Third, even if the independent source doctrine were appropriately considered under these circumstances, the Government cannot meet its burden of proving that this exception to the exclusionary rule applies. The independent source doctrine applies where the alleged independent source "would have been sought even if what actually happened had not occurred . . . . That is to say, what counts is whether the actual illegal search has *any* effect in producing the [independent source] . . . ." *Murray*, 487 U.S. at 542 n.3 (emphasis added). This is consistent with the rationale behind both the independent source and the inevitable discovery exceptions: to prevent the exclusionary rule from putting the police in a worse position than they would have occupied if no violation had occurred. *Id.* at 541.

As discussed in both Mr. Tanaka's initial memorandum of law and in the instant reply, there can be no real dispute that the Government would not have issued the Subpoena – either in its original or revised form – had the illegal search never occurred. *See* Tanaka Mem. at 7-8; *supra* at 6-7.[4] Accordingly, the independent source exception cannot apply.

---

[4] Of course, the mere fact that the Court upheld a portion of the Subpoena – thereby rejecting Defendants' argument that the Original Subpoena in its entirety was an improper extension of the unconstitutional search – in no way suggests that the Revised Subpoena constitutes an "independent source." Indeed, in reaching this conclusion, the Court credited Mr. Litt's testimony that it was

-8-

### C. The Relief Sought By Mr. Tanaka Is Entirely Consistent With Previous Court Orders, Including The April 4 Order

Finally, recognizing that it cannot meet its burden of demonstrating the applicability of the inevitable discovery or independent source doctrines, the Government attempts to characterize the relief sought by Mr. Tanaka as inconsistent with prior orders of the Court. According to the Government, Mr. Tanaka's position that the April 4 Order precludes the use of the Challenged Documents at trial is incompatible with the Court's concurrent ruling that Amerindo U.S. is required to produce documents pursuant to the Restricted Subpoena. Well-settled law reveals the Government's argument as a red herring that should be rejected by the Court.

In portraying Mr. Tanaka's position as contrary to previous Court orders, the Government conflates Amerindo U.S.'s obligation to produce documents called for by the Restricted Subpoena – which obligation Mr. Tanaka does not dispute in the instant motion – with the Government's right to use those documents against Defendants at trial – which Mr. Tanaka asserts is impermissible under the April 4 Order and the United States Constitution. In fact, contrary to the Government's suggestion, these two distinct yet equally valid positions are not in any way inconsistent. It is well-established that the exclusionary rule, while proscribing the use of illegally seized evidence (such as the Challenged Documents) at trial, permits the use of such evidence for at least some purposes, including in connection with grand jury proceedings. *See United States v. Calandra*, 414 U.S. 338, 350-51 (1974) (permitting use of suppressed documents in connection with grand jury, noting "[t]he incentive to disregard the requirement of the Fourth Amendment solely to obtain an indictment from

---

Amerindo U.S.'s counsel who suggested proceeding by subpoena and that Mr. Litt "had never considered using a subpona prior to Mr. Licker's suggestion." April 4 Order at 80. Moreover, the Court explicitly distinguished the issue it was deciding – whether the Subpoena was issued for an improper purpose such that Defendants' motion to quash should be granted – from the inevitable discovery context. *See* April 4 Order at 83.

a grand jury is substantially negated by the inadmissibility of the illegally seized evidence in a subsequent criminal prosecution of the search victim"). Thus, the relief sought by Mr. Tanaka would not, as the Government claims, "require the Government to return [the Challenged Documents] to Amerindo U.S., only to require Amerindo U.S. to produce them immediately to the Government." Gov. Mem. at 18. To the contrary, the Government would be permitted not only to retain the Challenged Documents, but also to use them for the precise purpose intended by the Subpoena – that is, in connection with the purported grand jury investigation. What the Government cannot do, however, is attempt to rely on these indisputably illegally seized and suppressed documents against Defendants at trial.

## CONCLUSION

For the foregoing reasons, as well as the reasons stated in his initial memorandum dated August 17, 2007, Mr. Tanaka respectfully requests that the Court grant his motion to effectuate the Court's April 4, 2007 Opinion and Order and preclude the Government from using the Challenged Documents against Defendants at trial.

Dated: November 2, 2007
      New York, New York

By:   s/ Glenn C. Colton
Glenn C. Colton (GC-2493)
Jessica L. Margolis (JM-7786)
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
1301 Avenue of the Americas, 40th Floor
New York, New York  10019
Tel: 212.999.5800

*Attorneys for Defendant
Gary Alan Tanaka*