Glenn C. Colton (GC-2493)
Jessica L. Margolis (JM-7786)
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
1301 Avenue of the Americas, 40th Floor
New York, New York  10019
Tel: 212.999.5800

*Attorneys for Defendant*
*Gary Alan Tanaka*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     - against -<br><br>ALBERTO WILLIAM VILAR, a/k/a "Albert Vilar," and GARY ALAN TANAKA<br><br>                    Defendants. | S3 05 Cr. 621 (RJS)<br><br>ECF CASE |

**<u>MEMORANDUM IN SUPPORT OF DEFENDANT GARY TANAKA'S MOTION TO PRECLUDE THE GOVERNMENT FROM USING "TAINTED" EVIDENCE</u>**

Defendant Gary Alan Tanaka, by his attorneys, respectfully submits this memorandum in support of Mr. Tanaka's motion to preclude the Government from introducing or otherwise using "tainted" evidence.

## INTRODUCTION

On May 26, 2005, nineteen armed federal agents entered the New York office of Amerindo Investment Advisors Inc. ("Amerindo U.S.") and proceeded to execute a search warrant ("Original Warrant") that called for essentially every document on the premises with writing on it. During the search, the Government rummaged through the company's offices and files, seizing over 160 boxes of hard copy documents and approximately 30 computers and servers containing over 1.6 terabytes of information – roughly the equivalent of 125 million hard-copy pages. Despite the magnitude of documents actually seized by the Government on May 26, 2005, the Government did not complete its search on this date. Nor did the Government secure the site overnight and return the next day. Instead, at some point during the afternoon of May 26, 2005, the Government served a grand jury subpoena on Amerindo U.S., pursuant to which the Government demanded the remaining documents that were not physically removed during the search ("Original Subpoena").

On August 12, 2005 and December 15, 2005, respectively, Defendants moved (among other things) to (1) suppress the materials seized pursuant to the Original Warrant, and (2) quash the Original Subpoena. By Opinion and Order dated April 4, 2007 ("April 4 Order"), the Court granted in part Defendants' motions. First, the Court held that the Original Warrant was unconstitutionally overbroad and lacked sufficient particularity, such that no reasonable officer could have executed the warrant in good faith. *See* April 4 Order at 37–47. Rather than striking the Original Warrant in its entirety, however, the Court severed the infirm portions such that a sub-set of the Original Warrant remained ("Restricted Warrant"). *Id.* at 59–67. Second, the

Court held that portions of the Original Subpoena lacked sufficient particularity, were unduly burdensome and/or sought materials that were irrelevant. *See* April 4 Order at 88–99. Rather than quash the entire subpoena, however, the Court – consistent with its approach for the search warrant – modified the Original Subpoena such that certain paragraphs or portions of paragraphs remained ("Restricted Subpoena"). *Id.*

Although in its April 4 Order, the Court modified both the Original Warrant and the Original Subpoena, the Court cut less of the latter, citing the more relaxed standards that apply to grand jury subpoenas (as opposed to search warrants). As a result, there are certain illegally seized documents that, while outside the scope of the Restricted Warrant (and thus suppressed by the Court), nonetheless fall within the scope of the Restricted Subpoena. On August 17, 2007, Defendants moved to preclude the Government from using this category of documents at trial on the ground that such documents were suppressed in the Court's April 4 Order and do not fall within any of the established exceptions to the exclusionary rule. By Memorandum and Order dated January 14, 2008 ("January 14 Order"), the Court denied Defendants' motion, holding (over Defendants' objections) that documents seized from Amerindo U.S. that fall outside the scope of the Restricted Search Warrant but within the scope of the Restricted Subpoena are admissible pursuant to the inevitable discovery and independent source doctrines. *See* January 14 Order at 9-18.

In its January 14 Order, the Court also addressed Defendants' request that the Court order the Government to disclose certain information such that Defendants can properly assess whether the Government intends to rely on "tainted" evidence; that is, evidence derived from information that was illegally obtained. While the Court for the most part denied Defendants' request, the

Court ordered the Government to produce to Defendants at least sixty days in advance of trial a "detailed" exhibit list in order to "(1) permit[ ] Defendants to evaluate whether any of the Government's proffered exhibits raise issues of taint; and (2) narrow[ ] the number of documents and/or witnesses that may be the subject of inquiry at a pre-trial taint hearing in this action, if the Court finds that such a hearing is necessary." January 14 Order at 25. For the same reason, the Court ordered the Government to produce its witness list sixty days prior to trial. *Id*. at 23.[1]

In accordance with the January 14 Order, the Court so-ordered the Parties agreement that the Government would produce its exhibits by July 9, 2008, and that Defendants' "taint" motions (if any) would be filed on or before July 31, 2008 ("Stipulated Schedule").[2] On July 9, 2008, the Government produced to Defendants its exhibits ("Government Exhibits"), which consist of over 40,000 pages, and a witness list containing approximately 80 names. Consistent with the Stipulated Schedule, Mr. Tanaka submits this memorandum to address issues relating to "taint."[3]

---

[1] Defendants subsequently requested that the Court also require the Government to disclose Section 3500 materials relating to these witnesses so that Defendants have a realistic opportunity to address taint issues pre-trial. By Order dated June 22, 2008, the Court rejected Defendants' application for early Section 3500 disclosures.

[2] The Stipulated Schedule does not apply to motions to exclude evidence on grounds *other* than "taint," including, by way of example only, grounds such as hearsay, authenticity, prejudice relevance or privilege. Accordingly, such issues are not addressed in the instant motion, and Mr. Tanaka expressly reserves the right to object to the Government's attempted use of evidence on any and all such grounds.

[3] While the January 14 Order and Stipulated Schedule arguably cover motions addressing *indirect* "taint" only – that is, motions challenging documents allegedly derived from illegally obtained documents – in an abundance of caution, the instant motion also addresses issues of *direct* "taint" – that is, issues pertaining to documents that were seized or otherwise obtained from Amerindo U.S. but fall outside the scope of both the Revised Warrant and the Revised Subpoena.

**ARGUMENT**

I. **THE GOVERNMENT EXHIBITS IMPROPERLY INCLUDE DOCUMENTS THAT WERE OBTAINED FROM AMERINDO U.S. BUT THAT FALL OUTSIDE THE SCOPE OF RESTRICTED SUBPOENA**

Although the parties disagree as to the admissibility of suppressed documents that fall within the scope of the Restricted Subpoena, at no time has the Government attempted to argue that it is permitted to use at trial documents obtained from Amerindo U.S. – either by virtue of the search or the subpoena – that fall *outside* the scope of the Restricted Subpoena. Nevertheless, the Government Exhibits appear to include documents within this forbidden category. Because these documents are covered by a portion of the Original Subpoena found by the Court to be improper, Government should be precluded from using these documents at trial.[4]

    A.  Documents Dated Pre-May 26, 2000

In holding that the Original Subpoena was overbroad, the Court struck down certain paragraphs in their entireties, while revising others in order to narrow their scope. For example, the Court limited Paragraph A – which (according to the Government's own witness) encompassed every business documents with writing on it – to certain specified corporate governance documents, and restricted Paragraphs D and E – which sought, among other things,

---

[4] As the Court is aware, Mr. Tanaka had three weeks to review and assess the 40,000 pages of exhibits and nearly 80 witnesses disclosed by the Government on July 9, 2008. Of course, when Mr. Tanaka agreed to this schedule he did not know that the Government would file two substantial and dilatory motions the very same week – a Rule 15 motion (filed 38 months after indictment) and a privilege motion (filed 24 months after the deadline for such a motion passed). Thus, during what was an already tight time frame, Mr. Tanaka and counsel were required to draft several letter-briefs as well as attend a Court conference. Despite these circumstances, Mr. Tanaka has made a good faith effort to evaluate the issues raised in this motion. If, however, the Government believes it can proffer an alternative basis for offering any of the documents challenged in this motion, Mr. Tanaka welcomes the opportunity to meet and confer prior to the Government's submission of its opposition to see whether the parties are able to resolve the issue without further involvement of the Court.

4

client files and other documents relating to certain categories of clients – to require only production of those documents dated after May 25, 2000. *See* April 4 Order at 93, 97. As a result of these and other restrictions the Court imposed, the Government no longer is entitled to ***all*** documents and files concerning ***all*** Amerindo clients; instead, the Government's entitlement under the Restricted Subpoena is limited in both time and scope.

Despite these Court-ordered limitations, the Government Exhibits appear to contain numerous documents that were obtained from Amerindo U.S. by virtue of the Restricted Subpoena, but that fall outside of the Restricted Subpoena's scope.[5] In particular, the Government Exhibits include documents – including correspondence and other documents relating to various Amerindo clients and/or investments – that pre-date May 26, 2000 (thereby falling outside the scope of Paragraphs D and E), but that do not appear to fall within any of the Restricted Subpoena's other provisions. Government Exhibits that include such documents are as follows: Government Exhibits 2092 (correspondence relating to potential client dated 5/5/2000), 2094 (correspondence relating to clients and/or investments dating from 12/1999 through 1/2000), 2095 (correspondence relating to clients and/or investments dating from 12/1999 through 1/2000), 2098 (correspondence relating to clients and/or investments dating from 12/1999 to 1/2000), 2102 (1998 correspondence relating to potential investment), 2103

---

[5] Due to the devastating financial effect the illegal search had on Amerindo U.S., the Company did not have the financial resources to review documents in connection with the Restricted Subpoena. Accordingly, Amerindo U.S. was forced to respond to the Restricted Subpoena pursuant to an agreement with the Government whereby the Government – and not Amerindo U.S. – would review the documents for responsiveness. As part of the arrangement, the parties entered into a limited waiver agreement (so-ordered by the Court), pursuant to which Defendants agreed to forgo any claim that the prosecutors were tainted by virtue of exposure to potentially privileged documents while still preserving Defendants' right to assert privilege claims for all other purposes.

5

(client file containing documents from 9/1999 through 4/2000), 2104 (correspondence and other documents from client file dating from 7/1996 through 7/1998), 2126 (1997 Amerindo form letter), 2197-2203 (correspondence and other documents relating clients and/or investments dating from 1997-98), 2205-2211 (correspondence and other documents relating clients and/or investments dating from 1997-98) and 2234 (Amerindo prospectus listed by the Government as from "approx 1985").[6]

Each of the above-listed Government Exhibits includes documents – sometimes one and sometimes many[7] – that violate the date restrictions imposed by the Court on Paragraphs D and E of the Original Subpoena and yet do not otherwise appear to fall within the Restricted Subpoena's scope. Accordingly, absent a demonstration by the Government that the documents contained within these Government Exhibits fall within the scope of the Restricted Subpoena, the Court should preclude the Government from admitting or otherwise using these documents at trial.[8]

---

[6] All of these documents are bates-stamped "USR," which (according to the Government) indicates these documents were obtained in response to the Restricted Subpoena.

[7] Each Government Exhibit may include one or more separate documents; some of the Government Exhibits encompass nearly 100 separate documents.

[8] Despite the magnitude of evidence at issue and the unexpected dilatory motions, Mr. Tanaka has made a good faith effort to expressly identify the challenged documents and to provide the Court with sufficient information to determine the most efficient means by which to resolve the evidentiary issues resulting from the Government's Fourth Amendment violations and service of an overbroad subpoena raised in this motion. That said, Mr. Tanaka reserves the right to augment this list of tainted documents and exhibits. Moreover, as the Court has recognized, the instant motion is without prejudice to objections (on the ground of "taint" or otherwise) that may be raised by Mr. Tanaka with respect to the Government's evidence either during or after trial.

6

The same argument applies to documents seized by the Government during the constitutionally violative search of Amerindo U.S.; that is, to the extent such documents pre-date the time limitation imposed by the Court on Paragraphs D and E, but do not fall within any of the Restricted Subpoena's other provisions, the Government should be precluded from using these documents at trial. Because the Government does not specify which of the Government Exhibits were part of the massive quantities of hard copy and electronic documents seized from Amerindo U.S. during the illegal search, however, Mr. Tanaka is unable to identify which documents potentially fall within this forbidden category.[9] Thus, in order to enable the Court and Defendants to assess the usability of the Government Exhibits, the Court should order the Government to specify which, if any, of these Exhibits were seized during the May 26, 2005 search of Amerindo U.S.

B.  Other Documents That Fall Outside The Scope Of The Restricted Subpoena

The Government Exhibits include other documents that, while obtained from Amerindo U.S., appear to fall outside the scope of the Restricted Subpoena. Included among these documents are Government Exhibits 2014-2018 (documents relating to the alleged sale of Amerindo Panama),[10] 2213 (documents from a 1998 derivative lawsuit filed by a purported shareholder of Avant!) and 2218-19 (agreements between Amerindo entities and related

---

[9] For example, the Government fails to indicate the source of Government Exhibits 3300-01. These Exhibits, which appear to consist of over 150 separate documents, include documents relating to actual or potential clients and/or investments dating from as far back as 1989. *See also* Government Exhibits 4041, 5202-05. In the event that these documents were seized during the May 26, 2005 search of Amerindo U.S., it would appear that many of them would suffer from the same defect as the "USR" exhibits described above.

[10] Although many if not all of these documents are also privileged, the instant motion is limited to issues of taint. *See supra* at 3 n.2.

correspondence).  Again, absent a demonstration by the Government that each of the documents contained within these Exhibits falls within the scope of the Restricted Subpoena, the Government should be precluded from admitting or otherwise using these documents at trial.

II. **THE GOVERNMENT'S FAILURE TO PROVIDE KEY INFORMATION PRECLUDES MR. TANAKA FROM PROPERLY ASSESSING THE GOVERNMENT EXHIBITS AND WITNESSES**

A primary purpose behind the Court's July 14 Order requiring the Government to disclose its exhibits and witnesses at least sixty days in advance of trial was to provide Defendants with a "realistic opportunity" to assess potential taint issues.  *See* January 14 Order at 23-25.  In making its disclosures, however, the Government has failed to provide certain information critical to this assessment.  For example, the Government fails to indicate the source of a significant portion of the Government Exhibits.  *See, e.g.*, Government Exhibits 301-555, 751-1025, 3300-3301, 4001-4503, 4701-4798, 5201-531, 5401-5709.  Moreover, with respect to all of the Government Exhibits, the Government fails to disclose when it received the documents in question (i.e., before or after the illegal search).  The Government's witness list is similarly devoid of pertinent information; not only does the list fail to specify when the Government first spoke to each witness, but also the list provides no indication as to how the Government came upon the witness.  Such information is necessary for Defendants to evaluate whether (1) the evidence in question was itself improperly obtained, or (2) the evidence was derived from improperly obtained information.[11]  Accordingly, the Court should require the Government to disclose the requested information with respect to each Government Exhibit and Witness.

---

[11] For example, included in the Government Exhibits are certain documents relating to a potential sale of Amerindo U.S. to Bear Stearns.  *See, e.g.*, Government Exhibits 734-35.  Such documents appear either to fall outside the scope of the Restricted Warrant and Restricted Subpoena, or to be derived from improperly obtained information.  Without knowing the source

8

## **CONCLUSION**

For the foregoing reasons, Mr. Tanaka respectfully requests that the Court (1) grant Mr. Tanaka's motion to preclude the use of the Government Exhibits referenced in Section I above, and (2) order the Government to provide additional information with respect to the Government Exhibits and Witnesses as requested in Section II above.

Dated:  July 31, 2008　　　　　　　　　　　By:     s/ Glenn C. Colton
　　　　　New York, New York　　　　　　　　Glenn C. Colton (GC-2493)
　　　　　　　　　　　　　　　　　　　　　　Jessica L. Margolis (JM-7786)
　　　　　　　　　　　　　　　　　　　　　　WILSON SONSINI GOODRICH & ROSATI
　　　　　　　　　　　　　　　　　　　　　　PROFESSIONAL CORPORATION
　　　　　　　　　　　　　　　　　　　　　　1301 Avenue of the Americas, 40th Floor
　　　　　　　　　　　　　　　　　　　　　　New York, New York  10019
　　　　　　　　　　　　　　　　　　　　　　Tel: 212.999.5800

　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendant*
　　　　　　　　　　　　　　　　　　　　　　*Gary Alan Tanaka*

---

of these documents or when they were obtained, however, Mr. Tanaka does not have all the information necessary to evaluate the issue.  Similarly, the Government has disclosed certain documents apparently obtained from a company called De Guardiola, *see* Government Exhibits 1401-11, as well as a witness named Roberto De Guardiola.  At first glance, it would seem that the De Guardiola documents and witness, which also appear to relate to a potential sale of Amerindo U.S. to Bear Stearns, may have been derived from suppressed information.  However, without knowing when the Government began talking with Mr. De Guardiola and when these documents were received, Mr. Tanaka cannot fully assess whether a motion to exclude this evidence is warranted.