Glenn C. Colton (GC-2493)
Jessica L. Margolis (JM-7786)
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Tel: 212.999.5800

*Attorneys for Defendant*
*Gary Alan Tanaka*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    - against -<br><br>ALBERTO WILLIAM VILAR, a/k/a "Albert Vilar," and GARY ALAN TANAKA<br><br>                    Defendants. | S3 05 Cr. 621 (RJS)<br><br>ECF CASE |

**MEMORANDUM IN SUPPORT OF DEFENDANT GARY TANAKA'S**
**MOTION TO PRECLUDE INTRODUCTION OF EVIDENCE OF EXTRINSIC ACTS**

Defendant Gary Alan Tanaka, by his attorneys, respectfully submits this memorandum in support of Mr. Tanaka's motion to preclude the Government from introducing certain evidence of extrinsic acts.

## BACKGROUND

By letter dated July 9, 2008, the Government provided notice of evidence of extrinsic acts it intends to offer at trial ("Government Notice"). Specifically, the Government identified four categories of evidence it seeks to admit: (1) Evidence of alleged misappropriation of $175,000 from Lily Cates' Amerindo-Managed Account at Bear Stearns ("Category 1"); (2) Evidence of alleged fraud concerning Lily Cates' Rhodes Capital Investment ("Category 2"); (3) Evidence of alleged fraud concerning Elizabeth Knope's Rhodes Investment ("Category 3"); and (4) Evidence of alleged false statements by Defendant Alberto Vilar to the IRS ("Category 4"). For the reasons stated below, the Court should preclude the admission of the evidence described in Categories 1, 2 and 3. With respect to Category 4, in the event the Court determines to admit the described evidence, the Court should issue a limiting instruction directing the jury to consider the admitted evidence only as against Defendant Vilar.

## ARGUMENT

I. **THE GOVERNMENT HAS FAILED TO JUSTIFY ADMISSION OF THE FIRST THREE CATEGORIES OF EVIDENCE**

   A. <u>The Government Failed To Demonstrate It Is Offering The Proffered Evidence For A Proper Purpose</u>

Pursuant to Federal Rule of Evidence 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b) ("Rule 404(b)"). Upon a proper showing by the Government,

however, such evidence may be admissible if it is relevant for some purpose other than "to show a probability that the defendant committed the alleged crime because he is a man of bad character." *See, e.g., United States v. Cushing*, No. S3 00 Cr. 1098(WHP), 2002 WL 1339101, at *1 (S.D.N.Y. June 18, 2002). The Government bears the burden of demonstrating admissibility of evidence sought to be submitted under Rule 404(b). *Id.* at *2 (citing *United States v. Nachamie*, 101 F. Supp. 2d 134, 137 (S.D.N.Y. 2000)).

With respect to the first three categories of evidence enumerated above (Categories 1, 2 and 3), the Government fails to meet its burden of demonstrating the admissibility of the proffered evidence. After describing generally each category of evidence, at the conclusion of its Notice, the Government lists but does not discuss four purported bases upon which it seeks to introduce the evidence in question. Specifically, Government states (without elaboration) that it intends to offer the evidence "for several purposes, including: (i) to show that the charged conduct was knowing and intentional and not the result of any mistake, (ii) to explain the relationship of trust between defendants Vilar and Tanaka, (iii) because this evidence is inextricably intertwined with the charged conduct and is necessary to complete the story of the charged crimes, and (iv) to rebut any defense by either defendant that the other defendant acted on his own in relation to the charged fraud." Government Notice at 4. Nowhere, however, does the Government indicate which justification allegedly applies to which category of evidence.

The Government's tactic of providing a general description of the evidence sought to be admitted and then listing a hodge-podge of potential justifications at the conclusion of its Notice fails to satisfy the Government's burden. In taking this "kitchen sink" approach, the Government not only fails to specify which purported justification applies to which category of proffered

2

evidence, but also the Government fails to articulate facts sufficient to demonstrate that one or more of these purported justifications applies to any given category. For example, although the Government represents that one or more of the categories of evidence described in the Notice is begin offered "to show the charged conduct was knowing and intentional," the Government fails to identify any alleged similarities between the charged and uncharged transactions – let alone articulate how the supposed similarities support an inference of knowledge or intent. *See, e.g., United States v. Stein*, 521 F. Supp. 2d 266, 270 (S.D.N.Y. 2007) ("To carry its burden of establishing admissibility, the government must explain the uncharged transactions, identify similarities between the charged and uncharged transactions, and articulate how the similarities identified support an inference of knowledge or intent.") (citing *United States v. Aminy*, 15 F.3d 258, 260 (2d Cir. 1994)). Similarly, although the Government summarily claims that the proffered evidence (either some or all – the Government does not say) is admissible "because this evidence is inextricably intertwined with the charged conduct and is necessary to complete the story of the charged crimes," *see* Government Notice at 4, the Government's Notice does not even mention the charged conduct. Surely, the Government cannot be said to have met its burden of demonstrating an "inextricable" link between the charged and uncharged conduct where the Government does not even specify what, if any, charged conduct is allegedly "intertwined."[1]

---

[1] Contrary to what the Government appears to believe, such a link is far from self-evident. For example, Categories 2 and 3 deal with an investment called Rhodes Capital, which is not part of the scheme alleged in the indictment and which the Government Notice does not link to either the GFRDA or SBIC investments that are alleged in the indictment.

3

The Government similarly fails to support the remaining two purposes referenced in the Notice; namely, (a) to explain the relationship of trust between defendants Vilar and Tanaka, and/or (b) to rebut any defense by either defendant that the other defendant acted on his own in relation to the charged fraud. In particular, the Government fails to provide any information to prove its assertion that the proffered evidence demonstrates any sort of relationship or collaboration (let alone trust) between the two defendants. Instead, the Government makes vague references to "Amerindo" or "defendants" without specifying who allegedly did what, let alone how each defendant's alleged participation supposedly demonstrates a "relationship of trust."

For example, in its description of Category 3, the Government alleges that (a) in or about 1989, Elizabeth Knope invested $25,000 "with Amerindo" in Rhodes Capital, (b) although she received profits from her investment, Knope never received account statements and did not receive any information between 1995 and 2004, (c) in 2004, Knope was advised "by Amerindo" that the Rhodes Capital investment had been wound down as an active investment vehicle, (d) Knope requested that "Amerindo" provide her with information about the status of her investment, but that (e) "defendants" failed to respond to Knope's request. Government Notice at 2. Based on the information provided, however, it is simply impossible to tell – and thus the Government fails to prove – what each Defendant's role was in the alleged activities listed in (a) through (e) above, and whether these roles in turn support the Government's contention that the proffered evidence proves a relationship of trust or other collaboration between the Defendants.

The Government's descriptions of Categories 1 and 2 suffer from the same fatal defects. In both descriptions, the Government makes general references to "Amerindo" and "defendants,"

without offering any detail as to the role each Defendant purportedly played in the alleged extrinsic acts – either individually or with respect to one another.  By using such general terms without clarifying either Defendant's supposed role, the Government in effect asks the Court to assume the very facts that the Government must demonstrate in order to justify admission of the evidence – i.e., that the alleged conduct of the individual Defendants supports the Government's assertion that the Defendant's were collaborating or otherwise engaged in a relationship of trust.

In sum, because the Government has failed to meet its burden of demonstrating that the evidence in Categories 1 through 3 of the Notice is being offered for a proper purpose, the Court should preclude the Government from admitting such evidence.

    B.   Any Probative Value Associated With The Proffered Evidence Is Outweighed By Its Potential For Prejudice

Even if the Government meets its burden of demonstrating that the evidence set forth in the Notice is being offered for a proper purpose – something Mr. Tanaka disputes – this evidence should nonetheless be excluded under Federal Rule of Evidence 403 ("Rule 403").  Rule 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Courts have applied Rule 403 to preclude the Government from admitting evidence of extrinsic acts where there exists other, less prejudicial evidence that makes the same points. *See, e.g., Nachamie*, 101 F. Supp. 2d at 142-45.

Here, the Government has not demonstrated that the purposes underlying its proffer cannot be achieved through other less prejudicial means.  To the contrary, the Government's witness

and exhibit lists suggest that the Government intends to present vast amounts of evidence relating to the very same issues. For example, the Government's witness list, which contains 78 names, includes both prior employees and clients of the various Amerindo entities, many of whom have known one or both of the Defendants for decades. Surely, the Government intends to question these witnesses on issues such as Defendants' knowledge and relationship with one another. The Government's exhibit list is even more broad; it contains over 3,000 exhibits consisting of over 40,000 pages. It defies credulity to believe that the Government does not expect at least some portion of these voluminous exhibits to address the very issues with respect to which the Government seeks to rely on evidence of extrinsic acts. In such circumstances, the risk of unfair prejudice resulting from the admission of evidence of extrinsic acts outweighs any probative value associated with such evidence and, in any event, admission of this proof would constitute the needless presentation of cumulative evidence. *Id*. At the very least, the Government should be forced to represent to the Court that it does not intend to rely on any other evidence to prove the four bases set forth in the Government Notice. *Id*. at 145 (excluding "other acts" evidence under Rule 403 where the Government, in response to the court's questioning, represented that it intended to offer other evidence to prove defendant's knowledge).

      C.  In The Event The Court Allows The Government To Admit Any Of The First Three Categories Of Evidence, The Court Should Deliver A Limiting Instruction

In the event the Court permits the Government to admit any of the evidence described in Categories 1, 2 or 3 above, Mr. Tanaka respectfully requests that the Court provide a limiting instruction to ensure that the jury does not consider the admitted evidence for an improper purpose. *See, e.g., United States v. Rutkoske*, 506 F.3d 170, 176-77 (2d Cir. 2007), *cert. denied*, 128 S. Ct. 2488 (2008) (upon admitting evidence of extrinsic acts, court should issue limiting

6

instruction if requested) (citing *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988)). Specifically, Mr. Tanaka requests that the Court instruct the jury – both at the time the evidence is admitted and again at the conclusion of the trial – to consider such evidence only for the limited purpose for which it was offered by the Government, and not as an indication of bad character or propensity to commit bad acts.

**II.     WITH RESPECT TO THE FOURTH CATEGORY OF EVIDENCE PROFFERED BY THE GOVERNMENT, A LIMITING INSTRUCTION IS REQUIRED TO PREVENT UNDUE PREJUDICE TO MR. TANAKA**

The evidence described in Category 4 of the Government Notice appears to pertain solely to Defendant Alberto Vilar. According to the Government, this evidence allegedly demonstrates that Mr. Vilar made false statements in connection with his personal tax returns. There is no allegation that Mr. Tanaka was involved in any way in the preparation of these tax returns and/or the inclusion of the allegedly false assertions. Accordingly, unless the Government contests Mr. Tanaka's interpretation of the evidence described in Category 4 as pertaining to Mr. Vilar only, Mr. Tanaka does not take a position with respect to the admissibility of this evidence, ***provided that*** the Court issue a limiting instruction directing the jury to consider the admitted evidence only as against Mr. Vilar and ***not*** as to Mr. Tanaka. Such an instruction is appropriate in order to decrease the likelihood that jurors will consider evidence that is otherwise inadmissible against Mr. Tanaka when evaluating the Government's case against him. *See, e.g., United States v. Mahaffy*, 446 F. Supp. 2d 115, 121-22 (E.D.N.Y. 2006) (limiting instruction appropriate where there is a risk of "spillover prejudice").

## CONCLUSION

For the foregoing reasons, Mr. Tanaka respectfully requests that the Court grant Mr. Tanaka's motion to preclude the admission of the evidence described in Categories 1, 2 and 3 of the Government Notice or, in the event that request is denied in any part, issue a limiting instruction directing the jury to consider any admitted evidence solely for purposes deemed by the Court to be proper.  With respect to the evidence described in Category 4 of the Government Notice, in the event the Court determines to admit this evidence, Mr. Tanaka respectfully requests that the Court issue a limiting instruction directing the jury to consider this evidence as against Defendant Vilar only.

Dated:  July 31, 2008  
      New York, New York

By:   s/ Glenn C. Colton  
Glenn C. Colton (GC-2493)  
Jessica L. Margolis (JM-7786)  
WILSON SONSINI GOODRICH & ROSATI  
PROFESSIONAL CORPORATION  
1301 Avenue of the Americas, 40th Floor  
New York, New York  10019  
Tel: 212.999.5800

*Attorneys for Defendant*  
*Gary Alan Tanaka*