Glenn C. Colton (GC-2493)
Jessica L. Margolis (JM-7786)
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
1301 Avenue of the Americas, 40th Floor
New York, New York  10019
Tel: 212.999.5800

*Attorneys for Defendant*
*Gary Alan Tanaka*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> - against - <br><br> ALBERTO WILLIAM VILAR, a/k/a "Albert Vilar," and GARY ALAN TANAKA <br><br> Defendants. | S3 05 Cr. 621 (RJS) <br><br> ECF CASE |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT GARY TANAKA'S MOTION
TO PRECLUDE THE GOVERNMENT FROM USING "TAINTED" EVIDENCE**

Defendant Gary Alan Tanaka, by his attorneys, respectfully submits this reply memorandum in further support of Mr. Tanaka's motion to preclude the Government from introducing or otherwise using "tainted" evidence.

### **Preliminary Statement**

There are certain undeniable realities about the upcoming trial in this matter. First, the Government violated Gary Tanaka's Constitutional rights when 19 armed federal agents conducted an illegal search in a manner that no reasonable law enforcement officer would have done. *See* Order dated April 4, 2007 ("April 4 Order") at 37–47. Second, the Government designated a whopping 40,000 plus pages of proposed trial exhibits (a list that has continued to increase since its production on July 9, 2008 and increased yet again this morning). These two realities undoubtedly will lead to a third harsh reality: Given the lack of information from which the defense can gage the constitutionality of the 40,000 plus pages of exhibits (as well as the other evidentiary infirmities that appear to infect many of the exhibits), the trial forecasts to be a plodding and lengthy affair marked by the need to conduct myriad *voir dire* examinations – as to the permissibility of both the witnesses themselves and the documents the Government will seek to admit.

The efficiency of the trial, and the convenience of the Court and the jury, can be greatly served by ordering the Government to divulge the source and timing of their discovery of the proposed evidence. Gary Tanaka's Fourth Amendment rights have been violated. Moreover, by the time the first exhibit is offered, he will have had to wait 40 months for his day in court. Fundamental fairness and basic practicality demand that the Government be ordered to provide the requested information and otherwise do whatever it can to insure an efficient and Constitutionally fair process.

In addition, to the extent the Government seeks to justify admission of suppressed documents by arguing, *inter alia*, that they were clipped or otherwise connected to what the Government argues are usable documents, the Government should be ordered to provide testimonial proof from the agent or agents who allegedly found the documents, rather than be allowed to rely on general unsupported, unsworn attorney representations in a memorandum of law. Clearly, in making evidentiary rulings of a Constitutional dimension, the Court should have the benefit of first hand information provided under the penalty of perjury. That same argument applies with equal force to representations about when the Government came into possession of certain evidence. Again, the Court should have the benefit of first hand information in sworn testimonial fashion.

## ARGUMENT

I. **TO THE EXTENT THAT THE GOVERNMENT SEEKS TO JUSTIFY ADMISSION OF SUPPRESSED MATERIAL, IT SHOULD BE ORDERED TO PROVIDE SWORN TESTIMONY FROM WITNESSES WITH FIRST HAND KNOWLEDGE**

In his opening brief, Mr. Tanaka noted that "[a]lthough the parties disagree as to the admissibility of suppressed documents that fall within the scope of the Restricted Subpoena, at no time has the Government attempted to argue that it is permitted to use at trial documents obtained from Amerindo U.S. – either by virtue of the search or the subpoena – that fall *outside* the scope of the Restricted Subpoena." The Government's opposition to the instant motion has changed that. Now, the Government argues that merely by virtue of allegedly being clipped together with what it asserts are permissible documents, the suppressed documents magically become unsuppressed. *See* Opp Mem. At 8-10. Even assuming *arguendo* (but without conceding) that the underlying thesis is correct (*i.e.*, a paper clip or staple can transform a

2

document from suppressed to not suppressed), the Government's submission should be rejected as patently insufficient.

Rather than provide declarations from the agents who allegedly found the exhibits at issue, the Government instead attempts to rely on unsworn attorney representations in its Memorandum of Law. Legal briefs are not evidence, they provide argument as to why a court should or should not take certain actions. *See, e.g., Rux v. Republic of Sudan*, No. Civ. A. 2:04CV428, 2005 WL 2086202, at *14 (E.D. Va. August 26, 2005) (holding that memorandum of law is not a substitute for a motion paper seeking a specific form of relief), *aff'd in part, dismissed in part on other grounds*, 461 F.3d 461 (4th Cir. 2006). Not surprisingly, the Government offers no legal authority for the proposition that first hand evidence is not required. The Government bears the burden of demonstrating the admissibility and Constitutional propriety of its evidence. *See, e.g.,* January 14 Order at 8 (Government bears burden of proof if it seeks to admit documents under inevitable discovery doctrine). By failing to provide any reliable, first hand evidence as to the manner in which documents were found, the Government has patently failed to meet its burden. Therefore, the Court should reject the Government's assertions, or, at a minimum, order the Government to provide real evidence for the Court's consideration.

Similarly, Government counsel makes representations as to when the Government came into possession of certain documents and when it learned of certain witnesses. *See* Opp. Mem. at 16-26. The same arguments and rationale apply to those unsworn representations as well. Given that the Government bears the burden of proof, the Court should reject the proffered exhibits and

3

witnesses, or, at a minimum, order the Government to provide real evidence with respect to those witnesses and exhibits for the Court's consideration.

Finally, to the extent the Government attempts to justify its evidence on substantive grounds, those attempts fall flat. For example, the Government urges that GX 2014, 2018, 2218 and 2219 fall within the scope of Paragraph II.A. of the Restricted Subpoena. This argument, however, urges a far broader construction of the Restricted Subpoena than is supported by the language of the paragraph as revised by the Court in its April 4 Order. The Court limited Paragraph II.A. to "[c]orporate records…concerning the formation of each of the above-listed Amerindo entities, its shareholders, principals, officers, directors, and employees, changes in ownership, bylaws [and] resolutions." April 4 Order at 43-44, 62-63. Contrary to the Government's assertion, the Exhibits noted above – which include general correspondence, service agreements and financial reports – do not fall within the scope of this circumscribed provision.[1] Accordingly, the Court should preclude the Government from relying on these documents.[2]

## II.    THE GOVERNMENT'S FAILURE TO PROVIDE CRUCIAL INFORMATION PREVENTS PROPER ASSESSMENT OF THE LISTED GOVERNMENT EXHIBITS AND WITNESSES

---

[1] Indeed, the Government appears to believe that just because a document identifies employees of Amerindo Panama, that document is within the scope of Paragraph II.D. of the Restricted Subpoena. *See* Opp. Mem. at 31. Such a construction is entirely at odds with the Court's ruling significantly limiting the scope of this paragraph.

[2] The Government does not even attempt to demonstrate the admissibility of certain other documents seized from Amerindo U.S. *See* Opp. Mem. at 25. At least a portion of these documents, however, clearly fall outside the scope of the Restricted Subpoena. *See* GX 4772-4776, 4787-88.

4

There is no dispute that this Court ordered the Government to disclose its exhibits and witnesses at least sixty days in advance of trial largely to permit defendants to assess whether the Government's evidence is tainted by its Constitutional violation of May 26, 2005. *See* January 14 Order at 23-25. In making its disclosures, however, the Government has failed to provide information critical to this assessment. For a significant portion of the Government's evidence, the defense does not know from where it came, how the Government became aware of it, or when the Government learned of it. The Government attempts to justify its failure to provide the requisite information in two ways. First, the Government argues that the Court has already denied the request for additional information to aid the defense in assessing the Constitutionality of the Government's evidence. This is just wrong. The January 14 Order states in no uncertain terms that disclosure of an exhibit list "will aid in the fair and efficient resolution of taint issues . . . by . . . permitting Defendants to evaluate whether any of the Government's proffered exhibits raise issues of taint." *Id.* at 25; *see also id.* at 23 (ordering production of witness list to provide "realistic opportunity to uncover any taint issues"). It is for this reason that the Court ordered that the Government's exhibit list be "detailed." *Id*. at 25. Accordingly, the Government's omission of details critical to the defendants' evaluations is contrary to both the spirit and the letter of the Court's holding.

Second, the Government argues that it has "narrowed a massive quantity of evidence to . . . . 40,000 pages," Opp Mem. at 32, and thus production of further information is not warranted. This argument deserves short shrift. Even a cursory review of the Government's whopping exhibit list demonstrates that the Government has dumped a truckload of material on the defense in a haphazard fashion hardly designed to allow the defense to divine much about its case or the

Constitutionality of its evidence.  Indeed, many of the individual exhibits are hundreds of pages long and are comprised of scores of documents from different time periods, which were penned by different authors and which relate to vastly different subjects.  *See, e.g.,* GX 3061 (538 pages); GX 3329 (403 pages); GX 3326 (145 pages).  Moreover, the Government's exhibits contain such rank irrelevancies as a **lengthy article on Karastan Rugs**.  *See* GX 3351 (pages 125-160).  Plainly, the Government has failed to heed the Court's January 14 Order directing that it produce a list of (1) all witnesses the Government "**intends to call at trial**" and (2) all exhibits the Government "**intends to offer at trial**."  July 14 Order at 21 (emphasis supplied).  Remarkably, the Government practically admits as much when it admits that that despite being ordered to produce a list of witnesses and exhibits it intends to – not might – use at trial, some percentage of its exhibits "**may never see the light of day**"  Opp Mem. at 33 (emphasis supplied).  Simply put, the Government's kitchen sink approach to marking exhibits and listing witnesses hardly provides a basis for the Court to excuse what it has already ordered – the production of information sufficient to provide Defendants with a "realistic opportunity" to assess potential taint issues.  January 14 Order at 23-25.

## **CONCLUSION**

For the foregoing reasons, Mr. Tanaka respectfully requests that the Court (1) grant Mr. Tanaka's motion to preclude the use of the Government Exhibits referenced in Section I of his moving brief, and (2) order the Government to provide additional information with respect to the Government Exhibits and Witnesses as requested in Section II of his moving brief.

Dated: August 18, 2008　　　　　　　　By:   s/ Glenn C. Colton
　　　　New York, New York　　　　　　Glenn C. Colton (GC-2493)
　　　　　　　　　　　　　　　　　　　Jessica L. Margolis (JM-7786)
　　　　　　　　　　　　　　　　　　　WILSON SONSINI GOODRICH & ROSATI
　　　　　　　　　　　　　　　　　　　PROFESSIONAL CORPORATION
　　　　　　　　　　　　　　　　　　　1301 Avenue of the Americas, 40th Floor
　　　　　　　　　　　　　　　　　　　New York, New York  10019
　　　　　　　　　　　　　　　　　　　Tel: 212.999.5800

　　　　　　　　　　　　　　　　　　　*Attorneys for Defendant*
　　　　　　　　　　　　　　　　　　　*Gary Alan Tanaka*