USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/2/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

ALBERTO WILLIAM VILAR and
GARY ALAN TANAKA,

                  Defendants.

No. 05 Crim. 621 (RJS)
ORDER

RICHARD J. SULLIVAN, District Judge:

    The Clerk of the Court is respectfully directed to docket the attached letters.

    The parties are reminded that, pursuant to the Court's individual sentencing procedures, the Government is responsible for filing all letters from victims, and the Defendants are responsible for filing all letters submitted on their own behalf.

Dated:      February 2, 2010
              New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

Johannah Olsher



Delray Beach, FL 33445

February 1, 2010

Honorable Richard J. Sullivan
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: In Support of Gary Alan Tanaka in the case of U.S. v. Alberto William Vilar and Gary Alan Tanaka

Dear Judge Sullivan:

This letter is in support of Gary Alan Tanaka in the case of U.S. v. Alberto William Vilar and Gary Alan Tanaka. I was a fact witness in the trial proceedings in November, 2008. I worked as Senior Executive Assistant in a team of four assistants to Alberto Vilar for approximately three years beginning in October, 1999. In that capacity, I assisted Mr. Tanaka with hotel reservations, car service pick-ups from the airport and provided secretarial support when he was in the office every six to eight weeks so I got to know him quite well. Additionally, I placed calls to him in his UK office on behalf of Mr. Vilar.

Mr. Tanaka's daily routine was being immersed in his specialized area of expertise - watching the stock market and analyzing investments which were done in the London office of Amerindo Investment Advisors. Alberto Vilar was the face of the Company, working out of the New York office of the Company, and his daily routine was comprised of meeting with pension clients and private clients, speaking at conferences, talking to the press, taking telephone calls from clients, answering correspondence. He traveled frequently and always flew first class, stayed in the most expensive hotels, ate in the finest restaurants, bought expensive clothes. Gary Tanaka, on the other hand, was down to earth, always flew economy class, stayed in moderately priced hotels when he was in New York and was understated in his style of dress. They were exact opposites but each played his own role in running the Company, and their partnership endured

Honorable Richard J. Sullivan
February 1, 2010
Page 2

despite their frequent differences in opinion on many corporate decisions, and in spite of them being very different types of people.

Towards the last year or so that I worked at Amerindo, when the Company had lost money in the stock market fall, Gary personally bailed out Alberto and the Company on several occasions to meet the payroll and to cover the costs of operating the office.

Gary Tanaka was a devoted husband and father and when he was in the New York office of Amerindo, he always shopped for gifts to take home to his wife and son. During sentencing, I hope you will consider the many good qualities in Gary Tanaka as I knew him when I worked for his Company.

Sincerely,

*Johannah Olsher*

Johannah Olsher



MINDA DE GUNZBURG CENTER FOR EUROPEAN STUDIES          HARVARD UNIVERSITY

CHARLES S. MAIER                                         January 30, 2010
  LEVERETT SALTONSTALL
  PROFESSOR OF HISTORY

The Hon. Richard J. Sullivan
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Court House
500 Pearl Street
New York, NY 10007-1312

Dear Judge Sullivan,

      I am writing an unsolicited and very private letter on behalf of Alberto Vilar and to offer what insights I can into his rather complicated character since you are scheduled to sentence him imminently. He does not know I am writing; we have not been in contact for about two years, and I am not a close friend. I do not know his legal representative or even who he or she is.

      I got to know Mr. Vilar through a shared interest in opera and met him originally in the summer of 2001 or 2002 at the Salzburg Festival. I have followed from a distance his arrest and disgrace, and stayed in touch once or twice a year during his home confinement. We breakfasted together once at his apartment two or three years ago. I have never had any interest in soliciting for any cause from him; neither have I received any gifts of any sort from him – one ticket to one opera performance in Bayreuth eight or nine years ago excepted. To the contrary – when he was initially confined to his home with his accounts frozen, I sent him a small cash gift so he could do a bit of shopping and I have sent him an occasional Christmas book either on music or World War II, an amateur historical interest that he maintains.

      I write to ask for leniency on the basis of what I know of Alberto. I cannot speak to the nature of his fraud but I think I know something of his personality. Alberto, I believe, has been a sort of fantasist – living in a world he made up: the background of Cuban expropriation, the close friendship with highly talented singers and conductors, a belief that he was up to following the medical science he also liked to fund, even the conviction for a while that he would soon master the German language, etc. The few conversations we had were, in effect, marked by this unreality, and at the same time his need to be at the center of the opera world. He rode the dot-com wave to considerable personal wealth, a large proportion of which he used to fund the musical world because, no doubt, it made him feel important. And those who received the funds consented to

stroke his need for self-importance. I would have found the behavior insufferable, except that there was such an evident childlike character and lack of self-insight and unreality to it that it was actually hard to take offense. So far as I can tell, the fraudulent activity arose as his positions lost ground, and he (and his partner – I don't know their respective roles, but I think Alberto was the one who solicited accounts) tried to cover their debts by moving funds without the knowledge of their investors. Again, so far as I can tell, he grew anxious or desperate and tried to shore up the firm. But I have no idea of the extent of this behavior beside the case of Mrs. Cates, which precipitated the case. And I really knew nothing about his investments except his enthusiasm for technology stocks – just his musical enthusiasms.

You are a judge; I'm a history professor, and one a year older than Alberto. I cannot say what sort of punishment makes sense in terms of deterrence, equity, or rendering justice. I do believe that you are deciding on the fate not really of a habitual con-man, and certainly not one motivated by avarice – rather by his compulsion to give money away (albeit in a spectacular self-advertising fashion) and beyond that to construct a grandiose life that allowed him to leave behind a very ordinary childhood reality. We have seen far huger cases of fraud, and indeed have just been experiencing a period where the world of finance has rewarded itself lavishly, admittedly legally, but often at the expense of the public. You have to decide on what message the sentence in this case will send and to what degree it is a species of criminality that must be egregiously punished, or – obviously as I feel – an idiosyncratic case deeply embedded in quasi-delusional behavior. You no doubt will have in mind the fact that Mr. Vilar has been spending the past few years in conditions of virtual home confinement, and before that had an extended period in jail before he could raise bail money. I hope these circumstances can be borne in mind.

I hope, too, this letter will not be taken as inappropriate, but I know such testimonies either on behalf of defendants or of victims are often taken by the court. I would not write except that the consequences for Alberto are very high. Thank you for your consideration; should you find it useful you can e-mail me at csmaier@fas.harvard.edu, or phone me at 617-642-3652.

Yours sincerely,

*Charles Maier*