

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

ALBERTO WILLIAM VILAR and
GARY ALAN TANAKA,

                              Defendants.

No. 05 Cr. 621 (RJS)
ORDER

RICHARD J. SULLIVAN, District Judge:

The Clerk of the Court is respectfully directed to docket the attached letter.

The parties are reminded that, pursuant to the Court's individual sentencing procedures, the

Government is responsible for filing all letters from victims, and the Defendants are responsible for

filing all letters submitted on their own behalf.

Dated:      February 4, 2010
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 3, 2010

**By E-Mail**

The Honorable Richard J. Sullivan
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York  10007

Re:  <u>United States</u> v. <u>Vilar and Tanaka</u>,
S3 05 Cr. 621 (RJS)

Dear Judge Sullivan:

The Government respectfully submits this letter in connection with the February 5, 2010 sentencing of Alberto Vilar and Gary Tanaka, as directed by the Court in its January 29, 2010 Order.

**<u>The Government Has Not Seized Any Assets</u>**

Contrary to the January 21, 2009 letter submitted by counsel for Vilar, which states that "[t]he government is holding approximately $37.8 million in cash and securities, which it seized from Amerindo," the Government has not seized <u>any</u> assets in connection with this prosecution.

The Government has sought forfeiture of approximately $80.5 million in the form of a money judgement, and has identified numerous substitute assets to fulfill that judgement, including certain accounts formerly held at Bear, Stearns (now JP Morgan Securities Inc.).  To date, the defendants have opposed the forfeiture order sought by the Government.  Indeed, both defendants have opposed entry of a forfeiture order greater than $6,936,500.  (*See* Tanaka Sentencing Reply Mem. at 34; Vilar

Hon. Richard J. Sullivan
February 3, 2009
Page 2

Sentencing Reply Mem. at 14).  The Court has not ruled on the forfeiture dispute.[1]

     To the extent the Court's inquiry seeks the Government's current estimate of the value of the substitute assets identified by the Government, that estimate is provided in the table below:

| Account | Cash | Securities | Total |
|---|---|---|---|
| Amerindo Management Inc. 102-01485 | $384,780 | $187,680 | $572,460 |
| ATGF Inc. 102-01490 | $522 | | $522 |
| ATGF II 102-01495 | $19,506,873 | (Public) $3,654,517 (Private) $8,000,000 | $31,161,390 |
| Techno Raquia 102-17995 | $31,628 | | $31,628 |
| ATGF SG Americas Securities Options Acct. | $3,147,560 | $20,286 | $3,167,846 |
| @Ventures Mgt. | $273,612 | | $273,612 |
| U.S. Bank f/b/o ATGF II | $1,600,000 | | $1,600,000 |
| Trustees of the Amerindo Advisors (UK) Ltd. Ret. Benefits Scheme (est. Vilar and Tanaka shares) | $1,500,000 | $4,500,000 | $6,000,000 |
| **TOTALS** | **$26,444,975** | **$15,762,483** | **$42,207,458** |

---

    [1]    At the Government's request, and with defendants' consent, on October 26, 2009, the Court entered a post-conviction restraining order with respect to certain of defendants' assets.

Hon. Richard J. Sullivan
February 3, 2009
Page 3

The Government is not currently in a position to
provide a full critique of the January 27, 2010 analysis of David
Ross (the "Ross Report"), which was provided to the Government
only when the Court caused it to be filed on January 29, 2010.
The Ross Report placed "indicative" values on Amerindo's non-
publicly traded securities of approximately $17.4 million in
2005, and $15.5 million in 2009, as compared to the U.S. Marshals
Service's rough estimate of $8 million.

The Ross Report does not disclose the specific
methodology underlying its valuations, nor does it identify the
three accounts that purportedly comprise ATGF nor the six
accounts that purportedly comprise ATGF II.  Most significantly,
the Ross Report acknowledges that its estimates are "indicative,
not actionable," and that they may "differ substantially from an
actionable value, particularly in volatile market conditions."
That caveat renders the report all but useless.  The issue here
is:  what could victims expect to recover today if these assets
were liquidated now.  Theoretical, "indicative," valuations will
not put food on a victim's table or repay years of debt accrued
by victims as a consequence of defendants' crimes.  Victims who
have waited through years of the defendants' stalling tactics are
entitled to their money as soon as possible, not when
theoretically more favorable market conditions may arise.  By
contrast, the U.S. Marshals Service sought to come up with a
valuation of the private securities pertinent to this situation,
and the Government stands by that estimate.[2]

### Sufficiency of Available Assets
### to Compensate All Amerindo Investors

As explained below, the Government believes that the
value of the legitimate claims of Amerindo investors (including
Lily Cates, known GFRDA victims (other than Dextra, which is not
seeking restitution), investors in GFRDA-like products, and ATGF
investors as to which the Government currently has readily

_____

[2]    The Ross Report's observations about "inadequate staff
training" and "inadequate time assigned" are irrelevant to the
assignment as described in the report, which was "to inventory
[Amerindo's] private holdings, obtain pertinent information about
them, and make an initial estimate of the value of these holdings
for informational purposes."  The inclusion of these pejoratives
reflects a bias that further calls the report's conclusions into
question.

Hon. Richard J. Sullivan
February 3, 2009
Page 4

accessible evidence) is in the range of approximately $21.9 to $42.6 million, excluding interest.

**GFRDA and Suspected GFRDA Investors**

The Government pursued criminal charges against the defendants for defrauding investors with respect to Amerindo's GFRDA and SBIC investments. Those investors are owed approximately $21.9 million, plus interest.[3] (*See* Gov't Sentencing Mem. at 80).

In addition, the Government is aware of a number of investors in Rhodes Capital whose investments were subsequently converted into GFRDAs or GFRDA-like products, and other investors who invested directly in Amerindo's Guaranteed Hedged Equity Fund (which bears a strong similarity to the GFRDA as reflected in the the Fund's subscription agreement, attached hereto as Exhibit C).[4] Those investors include, but are not limited to, the following:[5]

---

[3]    The Court has not yet ruled on whether those victims are entitled to interest and, if so, at what rate(s).

[4]    The Government did not include these GFRDA-like investors in the restitution and forfeiture figures previously submitted to the Court because the Government did not have sufficient evidence that they were victims of the frauds of which defendants were convicted. To the extent the Government knows their identities, it intends to provide those individuals notice of any forfeited funds, and expects that they may file claims. The Government will evaluate any such claims to determine whether it is appropriate to use forfeited assets, if any, to allow them to recoup some part of their Amerindo investment.

[5]    To the extent the Government had readily accessible supporting documents, they are attached as exhibits. In other cases, the information was gathered from interviews conducted with investors by the SEC and the Government during the course of their respective investigations.

Hon. Richard J. Sullivan
February 3, 2009
Page 5

| Investor | Exhibit | Estimated Principal Owed |
|---|---|---|
| Elizabeth Knope | A | $84,774.05 |
| Ana Acevedo | | $600,000.00 |
| Ariadna Sanchez-Weir | B | $2,039,313.71 |
| John Preetzman-Aggerholm | | $330,000.00 |
| Maria Dichov | C | $500,000.00 |
| Marilyn Walsh | | $77,411.00 |
| Donald P. Walsh | D | $80,000.00 |
| Robin Sayko | | $152,411.00 |
| Patricia Kabara | | $143,784.00 |
| **TOTAL** | | **$4,007,693.76** |

        Accordingly, based on the incomplete information that
the Government currently has readily available, the Government
estimates that there may be at least $4 million of claims filed
by GFRDA investors other than those victims accounted for in the
$21.9 million of restitution (plus interest) sought by the
Government.

**ATGF Investors**

        The Government did not pursue criminal charges with
respect to the ATGF investment vehicle.  As a consequence, the
Government has not previously attempted to determine the existing
shareholders of ATGF or their holdings as of the date of
defendants' arrests.  In the course of investigating this case,
however, the Government has gathered some evidence about ATGF,
which is summarized below.

        ATGF was an unaudited Panamanian hedge fund.  According
to the offering circular used to market the Fund, Vilar and
Tanaka were directors and the principal Portfolio Managers of the
Investment Manager of the Fund (which was Amerindo Panama).  (*See*
Exhibit E at 11, 15).  Unlike GFRDA investors, ATGF investors
were advised that up to 100 percent of their funds could be
invested in equities.  According to the offering circular, the
Fund could purchase shares of still-private companies, but stated

Hon. Richard J. Sullivan
February 3, 2009
Page 6

that: (a) "The Fund will invest principally in common stocks and
other securities convertible into or exchangeable for common
stocks. . . ."; (b) "Management of the Fund intends to limit its
investment in non-publicly traded securities to no more than 15%
of the value of the Fund's total assets at any time"; and (c)
"the Fund will generally not . . . invest more than 15% of its
total assets (calculated at the time of investment) in securities
that are not listed on a stock exchange or quoted on a recognized
over-the-counter market." (*Id.* at 9-11).[6]

        Amerindo had a number of brokerage accounts held in the
names of ATGF Inc. and ATGF II.  Generally, investments in ATGF
appear to have been made through the Bear, Stearns 104-01490 and
104-01495 accounts held in the names of ATGF Inc. and ATGF II,
respectively.  The Government is currently aware of the following
ATGF shareholders, and their estimated holdings based on the net
asset value of $19.9766 per share that Amerindo announced to
certain ATGF investors in April 2005:[7]

--------------------------------------

        [6]    The Government also obtained information from former
Amerindo UK employees Robert Griffin and James Stableford (both
of whom wrote letters to the Court in connection with Tanaka's
sentencing).  Messrs. Griffin and Stableford informed the
Government that Tanaka calculated the net asset value for ATGF by
hand, with reference to certain stock market indices.  The
Government is unaware of any Amerindo document that accounted for
the ATGF assets separately from those related to GFRDA, nor is it
aware of the existence of any complete record of shareholders and
their respective holdings in the Fund.  Indeed, Mr. Griffin
reported that he had the sense that there was no actual share
register for ATGF and that Tanaka did not have a handle on the
ATGF liabilities.  Based on the current record, it is unclear
whether the defendants deceived ATGF investors by the offering
circular language promising to limit the scope of investments in
pre-IPO securities to 15% of the Fund's assets; however, it
appears that by May 2005, the Fund was far more aggressively
invested in risky non-publicly traded securities than was
contemplated in the offering circular, and it is clear that the
defendants failed to segregate the ATGF assets as they should
have.

        [7]    A copy of the ATGF net asset value announcement dated
March 31, 2005 is attached hereto as Exhibit F.

Hon. Richard J. Sullivan
February 3, 2009
Page 7

| ATGF Shareholder | No. of ATGF Shares | Exhibit | Estimated 2005 Holdings |
|---|---|---|---|
| Metropolitan Opera | 123,300.86 | G | $2,463,131.96 |
| Heitkonig | 90,000.00 | H | $1,797,894.00 |
| Dr. Ronald Salvitti | 91,993.83 | I | $1,837,723.94 |
| Paul Marcus, et al. | 213,118.49 | J | $4,261,730.45 |
| NIG Amertech Ltd. | 7,999.61 | K | $159,805.01 |
| Sweetland Trust | 185,000 | | $3,699,445.00 |
| Anthony Gibbs | 19,213.00 | | $384,202.36 |
| Patricia Kabara | 2,810.38 | | $56,199.17 |
| Arkley Associates | 2,466.20 | | $49,268.76 |
| Marilyn Walsh | 7,372.00 | | $147,417.88 |
| Jim Charles | n/a | | $600,000.00 |
| Paul Hannon | n/a | | $360,000.00 |
| Ana Acevedo | n/a | | $200,000.00 |
| Republic Nominees | 3,453.00 | | $69,049.64 |
| **TOTAL** | | | **$16,595,868.17** |

     The data set forth above may represent only a small
fraction of ATGF investors.  As of July 16, 2004, there were
reportedly a total of 73 investors in ATGF, approximately 50 of
which are not accounted for in the above figures.  (*See* Exhibit
L, attached hereto, which Vilar provided to Bear, Stearns in the
course of his efforts to sell Amerindo US).  Assuming that each
of those 50 accounts had a value of only $100,000, Amerindo's
ATGF liability would be $5 million higher than the Government's
current estimate.

     Finally, even were the Court to issue today the
preliminary forfeiture order sought by the Government, the
Government could not definitively say how much of those seized
assets would be available to compensate victims of the
defendants' fraud.  As the Court well knows, a preliminary order
of forfeiture against the defendants merely would extinguish the

Hon. Richard J. Sullivan
February 3, 2009
Page 8

defendants' claims to the assets identified in such an order.
Third parties would receive notice and could file claims to those
assets.  Until such ancillary claims, if any, were resolved, and
a final order of forfeiture entered by the Court, the Government
would not be able to use those assets to satisfy any victim's
loss.  Moreover, until the private securities are actually sold,
the Government will not know how much will be realized from those
assets.  Finally, the Government notes that there is considerable
additional uncertainty associated with the defendants' estimated
$6 million share in a retirement trust because it is subject to
the laws of UK retirement trusts, and it is unclear how the
Government will accomplish its goal of forfeiting those assets,
even were the Court to extinguish defendants' claims to those
funds.[8]

---

[8]   The chiding of the Government by counsel for Vilar for
its failure to tell victims that the Government "has" their money
is nothing short of outrageous.  (See Vilar Jan. 21, 2010 Ltr. at
2).  First, as explained above, the Government has no assets to
distribute.  Second, until trial, and the admission of the Bear,
Stearns records in evidence, those records and their contents
were covered by Fed. R. Crim. P. 6(e) and could not have been
revealed to victims.  Third, many victims have reported to the
Government and to the Court that they had sought information from
the defendants, either directly or through defendants' counsel,
about the whereabouts of their investments, and that they have
been stonewalled by the defendants and their representatives for
years.  Fourth, ever since the jury rendered its verdict
convicting Vilar and Tanaka of defrauding their investors, the
Government has informed every victim who has asked: (a) exactly
what the Government was seeking in forfeiture; (b) what the
claims process will be; (c) that the Government does not know
whether the Court will order forfeiture or in what amount; (d)
that the Government does not know what third parties will step
forward and make claims (whether legitimate or not) on those
forfeited funds; and (e) that the Government does not know how
much money the Government will have available to distribute to
victims once all forfeiture issues are resolved.  Giving victims
false hope by telling them that the Government "has" their money
would have been misleading, unethical, at times in violation of
Fed. R. Crim. P. 6(e), and generally irresponsible.

Hon. Richard J. Sullivan
February 3, 2009
Page 9

## The Likely Availability of Assets to Satisfy Victims' Claims Does Not Mitigate the Seriousness of Defendants' Crimes

Vilar contends that, even were the Court to agree with the Government's Guidelines loss analysis, a far lower sentence should be imposed than that recommended by the Guidelines because the seriousness of crimes is mitigated by the asserted facts that: (a) the defendants always had sufficient assets to repay the investors; and (b) there are now sufficient assets to make the remaining victims whole. For the reasons stated below, the Court should reject these arguments.

First, contrary to Vilar's counsel's assertion that, "[i]t is now clear that the [GFRDA] guarantee was backed up by actual assets, enough to honor all of the victim's [sic] redemption requests," the evidence reveals that in addition to the conduct set forth in the Government's sentencing memo, defendants either misappropriated at least approximately $17.3 million of investor funds, or misled clients about the value of their investments. The following table shows that, as of May 2005, the defendants' "balance sheet," using the Ross Report's generous "indicative" valuation of assets and the Government's current estimates of defendants' obligations to various groups of investors as described above, reveals that the defendants did not have enough assets to repay all their investors. They were more than $17.3 million short.

| ASSETS | | LIABILITIES | |
|---|---|---|---|
| Account(s) | Value | Investor(s) | Amount |
| AMI/M26 | $200,000 | Lily Cates | $9,770,134 |
| ATGF | $2,221,480 | GFRDA Victims | $12,257,345 |
| ATGF II | $42,159,574 | Dextra Mgt. Ltd. | $19,774,431[9] |
| Techno Raquia SA | $500,178 | Rhodes/Other GFRDA/GHEF | $4,007,694 |
| | | ATGF | $16,595,868 |
| **TOTALS:** | **$45,081,232** | | **$62,405,472** |

---

[9]    As of May 26, 2005, Dextra had a GFRDA valued at approximately $19.8 million. (*See* Exhibit M, attached hereto). Although Dextra has since undergone a corporate reorganization and is not now seeking restitution, the defendants could not possibly have anticipated that Dextra would not seek to redeem its investment.

Hon. Richard J. Sullivan
February 3, 2009
Page 10

        Even were Vilar correct in claiming that the defendants
did have sufficient assets to cover their obligations to clients
– a proposition the Government does not concede – defendants'
conduct was nevertheless serious.  They misled investors about
the safety and liquidity of their investments.  Then, even though
the defendants purportedly had the funds to meet redemptions,
purposefully withheld those funds from their clients for years,
thereby causing hardship, stress, debt and litigation – all so
that the defendants could enjoy what was, effectively, an
interest-free loan.  The fact that victims now may receive some
of their money back if the Government prevails on the contested
forfeiture arguments does not materially mitigate the seriousness
of defendants' crimes.

                *           *           *


        In sum: (1) the Government has not seized any assets;
(2) the Government's proposed forfeiture order likely will yield
assets sufficient to compensate all the defendants' victims for
at least a substantial part of their lost principal; and (3)
because at the time of their arrests, the defendants did not have
sufficient assets to meet their liabilities to their clients, in
addition to the conduct for which they were convicted at trial,
the sentences imposed by the Court should reflect the fact that
they either misappropriated an additional approximately $17.3
million of investor funds, or they lied to their clients by
overstating the value of their accounts in that amount.

                        Respectfully submitted,

                        PREET BHARARA
                        United States Attorney

                By:     _____
                        Marc Litt
                        Benjamin Naftalis
                        Assistant United States Attorneys
                        (212) 637-2295/2456


cc:  Glenn Colton, Esq. (by email)
     Jonathan Marks, Esq. (by email)
     David Ross (by email)

# EXHIBIT A

# ELIZABETH KNOPE

## STATEMENT

## RHODES CAPITAL GROUP

| | |
|---|---|
| Invested in 1989: $25,000 plus a loan of $25,000 | $50,000.00 |
| Net Asset Value @ August 5, 1993 | $70,973.75 |
| Year 3 Dividend paid on January 10, 1994 | ($10,979.03) |
| Year 4 Dividend @ 16.2% | $11,497.75 |
| Interest on $10,979.03 for 158 days @ 6.1% | $289.11 |
| Net Asset Value @ August 5, 1994 | $71,781.58 |
| Year 5 Dividend @ 18.1% | $12,992.47 |
| Net Asset Value @ August 5, 1995 | **$84,774.05** |

September 11, 1995

# EXHIBIT B

# AMERINDO INVESTMENT ADVISORS, INC.

AVENIDA SAMUEL LEWIS,
EDIFICIO PLAZA OBARRIO
APARTADO 5215
PANAMA 5 PANAMA
TEL: (507) 264-9673
FAX: (507) 264-9667

**GOVERNMENT
EXHIBIT
3336-14**
05 Cr. 621 (RJS) **(ID)**

## STATEMENT OF ACCOUNT

Ms Ariadna Sanchez-Wier
A.R.I. Investors Inc
~~████████~~
San Diego
CA 92129
USA

| Client Account Number | Reference |
|---|---|
| F890AS | F |

| Statement Period | |
|---|---|
| Opening 01.01.03 | Closing 03.31.03 |
| Closing Account Balances | |

| CXXXXX INT $36,961.93 | Equities ---------- |
|---|---|
| Fixed Deposits $2,039,313.71 | External ---------- |

| Financial Account Summary |
|---|
| $2,076,275.64 |

| Type of Investment | Price | Amount |
|---|---|---|
| FIXED DEPOSIT ACCOUNTS | | |
| AMERINDO FIXED RATE DEPOSIT ACCOUNT | | |
| (Guaranteed at 7% P.A. 05.01.02 to 04.30.03) | | $812,654.31 |
| AMERINDO FIXED RATE DEPOSIT ACCOUNT | | |
| (Guaranteed at 6% P.A. value date 11.30.02, Qtr withdrawals) | | $1,226,659.40 |
| EQUITIES | | |
| | | |
| EXTERNAL CUSTODY ACCOUNTS | | |
| | | |
| MISCELLANEOUS / CASH | | |
| INTEREST 12.01.02 to 12.31.02 on $812,654.31 | | $18,961.93 |
| QUARTERLY INTEREST DUE MARCH 1, 2003 | | |
| @ 6% ON $1,226,659.40 | | $18,000.00 |
| TOTAL | | $2,076,275.64 |

**AUK-36-00096**

# EXHIBIT C

# AMERINDO INVESTMENT ADVISORS, INC.

## Guaranteed Hedged Equity Fund

### Subscription Agreement

Amerindo was established in 1980 to specialize in leading edge technology-oriented companies including electronics and software, companies benefiting from technological advances, biotechnology and allied small healthcare. These companies increase both productivity and standards of living, and improve the quality of life through healthcare advances. The firm manages more than $8 billion for US and European pension funds, large family trusts, wealthy individuals and university endowments. Emerging growth stock portfolios have produced returns over the last five years ending 2000 in excess of 18% (before deductions of fees).

The guaranteed Hedged Equity Fund is a limited program in size that was developed over the past 20 years principally for equity clients who have a long established relationship with the firm. It competes indirectly with insurance companies and banks that offer a variety of comparable guaranteed annuities and /or fixed rate deposits.

Amerindo guarantees the amount being subscribed to below as to the original face value of the investment at redemption, plus accrued gains. The guarantee works as follow: between 75%-80% of the investments are in liquid, near immediately redeemable, high grade money-market like instruments that have little of no downside risk of principle. Typically, over half of the funds are invested in a range of other short-term investments including US Treasury bills, Government National Mortgage Association Certificates, Government bonds, Certificates of Deposit, Money Market Funds, etc. These various short-term instruments are arbitraged amongst like competing instruments with the objective of obtaining a high stream of small capital gains. Up to 20% of the deposits are invested in liquid, publicly tradable shares of common stock that can be readily sold and that fall within Amerindo's principal field of expertise. Any differential between the above two items and the face value of the investments at redemption, plus accrued interest or gains, is hereby guaranteed and backed by (a) the total net worth of the firm Amerindo Investment Advisors Inc., and (b) the financial assets of Alberto W. Vilar and Gary A. Tanaka, the principals. The firm recently had an independent, third party produced valuation placed on it that was in the range of $100 million. The principals' net worth is in excess of this latter figure.

### To Subscribe

The undersigned hereby subscribes to as many shares of the Guaranteed Hedged Equity Fund as may be purchased with US$500,000·00 at a price equal to $10.00 per share. Redemption will be in twelve months at a Net Asset Value no less than $11·00 per share. Subscription funds are to be wired to:

Citibank N.A. 20 Exchange place, New York, NY 10004, Credit: Bear Stearns, Account No: 09253186

For further Credit: Amerindo/Guaranteed Hedged Equity Fund, Account No: 102-17995 (Ref: Sub Account Techno Raquia)

Amount US$ 500,000·00 _____  Date: July 20, 2000

By order of (Client's Name/Client's Offshore Corporation): _____

Print or type name: Maria Dichov _____  Signature _____

This must be signed by investor or his nominees. If a joint account, all investors must sign. If a corporation or trust authorized officers, trustees or officials must sign and indicate titles.

Guaranteed on behalf of Amerindo Investment Advisors Inc. and its principals:

Signature: _____  Date: July 24, 2000
Alberto W. Vilar

Signature: _____  Date: July 24, 2000
Gary A. Tanaka

GOVERNMENT
EXHIBIT
3352-3
05 Cr. 621 (RJS)

AUK-36-01589

# EXHIBIT D

**Donald P. Walsh**



**West Hartford, CT 06107**
Home:
Office:
Cell-



January 26, 2010

The Honorable Richard J. Sullivan
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl St.
New York, NY 10007

Dear Judge Sullivan,

I am Alberto Vilar's cousin. Yesterday, I was given a copy of a letter to you dated January 21, 2010 from Jonathan Marks, who I understand is Alberto Vilar's attorney. The letter contends that the government has seized funds from Amerindo which are sufficient to eventually make Amerindo investors whole.

I have had an Amerindo Technology Growth Fund account in my wife's name (Marilyn Walsh) since 1995. We have not had access to our funds since Mr. Vilar was arrested several years ago. We have made many attempts to determine, through inquiries made directly to the Security and Exchange Commission (Ms. Kay Lackey), Mr. Vilar himself, his attorneys, and staff on Amerindo's US and London office, the whereabouts of our funds and the prospects for ever seeing this money again.

The SEC has never stated in response to my inquiries that Amerindo funds had been identified or seized by the government, or that they will be used to repay victimized investors. The other parties have either refused to even acknowledge our request or, in the case of Amerindo's US office several years ago, acknowledged our request but said they could not discuss this matter with us.

I know that you have record of us as Amerindo victims, because a representative from your office contacted me in December, 2009, to invite me to make a statement in court in connection with deliberations about appropriate sentencing for Mr. Vilar. I appreciated the offer but declined, because this matter is very distressing to me. Prior to his arrest, Alberto was very close to my family and me.

I do not know what to make of Mr. Marks' contentions. I do know that our last Amerindo statement, generated a month before Mr. Vilar's arrest, indicated we had $220,000 in our account. That money is my share of the inheritance that my mother, Cecilia Kohl, left to me and to my siblings.

My wife and I are just past the mid-point of putting our five children through college. Our Amerindo funds were and are needed for that purpose. If you or your representative could give us any insight as to the likelihood that we will ever be reimbursed we would be very grateful.

Thank you for your time and consideration.

Cordially,

Donald P. Walsh

# EXHIBIT E

# AMERINDO TECHNOLOGY GROWTH FUND, INC.

# OFFERING CIRCULAR

# AMERINDO
### NEW YORK . SAN FRANCISCO . LONDON

An open-ended investment company specializing in companies benefiting from advances in science and technology, principally in electronics and healthcare.

---

## *OFFERING CIRCULAR*

Relating to the sale of up to 10,000,000
Shares with a par value of US$ 0.01 per Share in

## AMERINDO TECHNOLOGY GROWTH FUND, INC.

Minimum Subscription per Investor:
US$ 5,000,000

---

Amerindo Technology Growth Fund, Inc. ("the Fund") is an open-ended investment company incorporated as an exempted company under the laws of Panama for an unlimited term. The principal objective of the Fund is growth of capital through concentrated investment, primarily in U.S. publicly-traded emerging growth companies that are principally in the fields of electronics and healthcare.

The investments of the Fund are managed by Amerindo Investment Advisors, Inc.

**Amerindo Investment Advisors, Inc.**

**Offeree**

---

January 1985

December 1993 revised

**September 1998 printed**

3

THE DISTRIBUTION OF THIS CIRCULAR IS RESTRICTED TO THE OFFEREE NAME ON THE COVER PAGE HEREOF AND SUCH OFFEREE'S AGENTS AND REPRESENTATIVES. ANY DISTRIBUTION TO ANY OTHER PERSON IS UNAUTHORIZED. BY ACCEPTING DELIVERY OF THIS MEMORANDUM, YOU ARE AGREEING NOT TO REPRODUCE OR DISSEMINATE COPIES OF IT TO ANY OTHER PERSON. IF YOU ARE NOT INTERESTED IN PARTICIPATING IN THIS PLACEMENT, YOU ARE REQUESTED TO RETURN THIS CIRCULAR AND ANY OTHER MATERIAL PROVIDED TO YOU.

PROSPECTIVE INVESTORS ARE NOT TO CONSTRUE THE CONTENTS OF THIS MEMORANDUM AS LEGAL OR TAX ADVICE. EACH PROSPECTIVE INVESTOR SHOULD CONSULT HIS OR HER OWN COUNSEL, ACCOUNTANT AND/OR BUSINESS ADVISOR AS TO LEGAL, TAX AND RELATED MATTERS CONCERNING HIS OR HER POSSIBLE INVESTMENT IN THE SHARES.

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATION IN CONNECTION WITH THE SHARES OFFERED HEREBY OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS CIRCULAR OR IN ANY DOCUMENT INCORPORATED HEREIN OR FURNISHED UPON REQUEST AS PROVIDED HEREIN.

THE SECURITIES DESCRIBED HEREIN HAVE NOT BEEN REQUIRED TO BE REGISTERED WITH THE SECURITIES AND EXCHANGE COMMISSION ("SEC") AND, IT IS ANTICIPATED, WILL NOT BE QUALIFIED OR REGISTERED WITH THE SECURITIES REGULATORY AUTHORITY OF ANY STATE, AND NEITHER THE SEC NOR ANY SUCH AUTHORITY HAS PASSED UPON THE ADEQUACY OR ACCURACY OF THIS OFFERING CIRCULAR. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

## SUMMARY

| | |
|---|---|
| The Fund | The Fund is an open-ended investment company incorporated under the laws of Panama as an exempted company for an unlimited term. Shares of the Fund will not be offered and redeemed continuously at current net asset value; this will be done several times a month in a manner detailed herein. The Fund does not charge any sales commission or redemption fee. |
| The Investment Manager | Amerindo Investment Advisors, Inc. is a portfolio management company specializing in investments in emerging growth companies that tend to be in the fields of high technology, namely electronics and healthcare. |
| Investment Objective and Policies | To achieve high growth of capital through investment in emerging U.S. publicly traded companies undergoing exceptional growth. The Fund will invest principally in high technology companies. The Fund may occasionally sell securities short. |
| Purchase Price and Valuation of Shares | Shares will be offered on the Commencement Date at a purchase price of $10 per Share and at current net asset value thereafter. Net asset value will be computed as of the close of business on the 15th and last day of each month. |
| Purchase and Redemption of Shares | Shares will be offered and redeemed on specific days as noted herein. Shares may be purchased at net asset value. Redemptions can be made at any time, but the net asset value corresponding to any redemption will be the next calculated net asset value released three business days after the 15th and three business days after the last business day of each month. Applications and redemption requests should be sent to the Fund's subscription and redemption agent. All payments to be made in U.S. dollars by bank wire transfer to the Fund's Custodian. |
| Commencement Date | January 1985, or such later date as may be determined by the Fund. |
| Custodian | Bear Stearns & Co., New York. |
| Registrar and Transfer Agent | Overseas Management Company, Panama |
| Legal Advisor | Sucre y Sucre, Panama |
| Accountants | Arad & Co., London. |

Enclosed is information relating to the offering of Shares of Amerindo Technology Growth Fund, Inc. This material is intended solely for the use of the Offeree: any offer or invitation relating to the Shares can be acted upon only by such person for their use unless said person is functioning as a professional advisor to a third person. Investors desiring to subscribe for Shares on the terms set forth in this document and in accordance with the procedures specified on pages 12 and 13 should submit an application, stating the dollar amount they desire to invest and make payment for such subscription in accordance with such procedures. The Fund and its authorized agents reserve the right to reject any application in whole or in part.

---

Persons considering an investment in the Fund ("Investors") represent that Shares purchased by them are being purchased for investment purposes and not with any present intention of resale to the public or any sector of the public, although such Shares may be resold to the Fund under specified conditions noted herein (see "Redemption of Shares").

This Offering Circular is not and should not be construed as an invitation to the public of the Republic of Panama to subscribe for Shares.

The Shares referred to in this Offering Circular are offered solely on the basis of the information contained herein. No person is authorized to give any information or to make any representations concerning the Fund other than those contained in this Offering Circular and any purchase made by any person on the basis of statements or representations not contained in or inconsistent with the information contained in this Offering Circular shall be solely at the risk of the purchaser.

All references herein to "dollars" and to "$" are to U.S. dollars.

## TABLE OF CONTENTS

| | | |
|---|---|---|
| Purpose of the Fund | | 9 |
| Investment Objective and Policies | | 9 |
| Investment Safeguards | | 10 |
| The Investment Manager | | 11 |
| Investment Management Agreement | | 11 |
| Sale of Shares | | 12 |
| (a) | Terms | 12 |
| (b) | How to Purchase Shares | 12 |
| (c) | Eligible Investors | 12 |
| Shareholder Accounts and Share Certificates | | 13 |
| Dividends | | 13 |
| Redemption of Shares | | 13 |
| Net Asset Valuation | | 14 |
| Tax Considerations | | 14 |
| Directors of the Fund | | 15 |
| Organization | | 16 |
| Temporary Suspension of Determination of Net Asset Value and Redemption Rights | | 16 |
| Reports to Shareholders | | 17 |
| Offices of the Fund and the Investment Manager | | 17 |
| Accountants | | 17 |
| Legal and Tax Advisors | | 17 |
| Agreement with Overseas Management Company | | 17 |
| Custodian | | 18 |
| General Information | | 18 |
| Liability of Investment Manager: Indemnification | | 19 |
| Application Form | | *separate sheet* |

**PURPOSE OF THE FUND**

The Fund is being established in order to provide an opportunity for investors to invest in a professionally managed portfolio of securities of the character described below, under the direction of Amerindo Investment Advisors, Inc. The Fund will operate on a basis similar to that of a U.S. "mutual fund", which is a special type of investment company designed to provide a means for its shareholders to pool their assets with the assets of other shareholders in order to obtain professional management, and to obtain diversification by owning an interest in a portfolio of securities of companies in different investment sectors.

**INVESTMENT OBJECTIVES AND POLICIES**

**Philosophy**

The investment objective of the Fund is to achieve high growth of capital by investing principally in companies undergoing exceptional growth of earnings in the field of emerging technologies.

Emerging technology-based companies flourish in the United States due to ample availability of venture capital, the size and liquidity of the U.S. securities markets, readily available management skills, a pervasive entrepreneurial spirit, and government support in basic research and military programs. On the contrary, it is difficult for investors to capitalize to any great extent on the commercial development of technological advances in Japan and Europe, as this tends to occur most frequently within the confines of large corporations. The U.S. has gained leadership in many key emerging technologies this century such as semiconductors, computer systems (including graphics, software and peripherals), telecommunications, medical technology, and the biosciences. "Breakthrough" sectors over more recent years include computerized design/computer-aided manufacturing (CAD/CAM), custom VLSI semi-conductor technology, biotechnology and medical diagnostic and instrumentation.

The Fund aims for the early identification of and investment in publicly traded emerging technology companies relatively new to the market with superior earning power. The Investment Manager searches in both the public market and the venture capital market for the fastest growing and best managed companies that have the potential to become large corporations, focusing on companies that offer the prospect of superior capital appreciation within an average time horizon of two-to-three years.

Many of these companies operate in the fields of high technology and applied science, either developing new technologies or related products, or using them in their businesses.

The Fund's emphasis on technology-oriented companies permits it, in essence, to seek investments in companies in virtually any industry.

The principal reason for investing in emerging growth companies is their extraordinary potential for capital gains. The performance achieved by investment in emerging technologies over the past 50 years is impressive and speaks for itself.

The Fund will invest principally in common stocks and other securities convertible into or exchangeable for common stocks having, in the opinion of the Investment Manager, a potential for above-average appreciation. The Fund may also, to a certain extent, sell short securities when, in the opinion of the Investment Manager, they are likely to decline in value.

Many securities which the Investment Manager believes would have the greatest growth characteristics may be regarded as more speculative than those of more seasoned companies, and the assets of the Fund can be subject to volatility of a magnitude greater than prevailing market fluctuations. However, the Investment Manager believes this can be compensated for by the significantly higher projected growth of a particular technology industry segment, innovative products, relatively high liquidity and top quality management.

In addition, when the Investment Manager believes that a more defensive or conservative position seems appropriate, the Fund may hold all or a portion of the portfolio in cash or cash-equivalent investments.

The investment objective, policies and methods of the Fund may be changed, without shareholder vote, when in the judgment of the Directors, such changes are advisable in order to maximize or to protect the investments of the Fund.

### Non-publicly-traded Securities

The Fund may purchase shares of still-private companies in the period shortly before their initial public offering, which the Investment Manager believes have considerable potential. This is known as "late-stage venture capital financing", and the Investment Manager would generally expect the shares of such companies to be held for at least twelve months. Shares of such companies are not readily marketable without registration under the U.S. Securities Act of 1933. The Investment Manager believes, however, that the interim limitations associated with holding these shares, such as their limited marketability, are compensated for by their extraordinary appreciation potential.

Non-publicly-traded securities held by the Fund will be valued at book value. Management of the Fund intends to limit its investment in non-publicly-traded securities to no more than 15% of the value of the Fund's total assets at any time.

### INVESTMENT SAFEGUARDS

While the Fund will have broad powers as to the type of investments it may make and the investment methods it may adopt, the Fund intends to limit its investments to the types described in this Offering Circular. To that end, the Directors of the Fund have resolved that the Fund will generally not:

1. invest more than 15%, except in exceptional circumstances (but in no event more than 20%), of its total assets (calculated at the time of investment) in the securities of any one issuer, except that the Fund may invest an unlimited portion of its assets in the securities of any U.S. governmental issuer;

2. invest in more than 4.99% (calculated at the time of investment) of the voting securities of any one issuer, except in exceptional circumstances;

3. underwrite or participate (except as an investor) in the marketing of securities of any other company;

4. buy or sell commodities;

5. buy or sell currencies, except as required to pay operating expenses as and if appropriate;

6. invest in debt instruments other than bonds, government securities, certificates or deposit with recognized banking or investment institutions, or similar short-term securities, publicly-distributed debt securities, or non-publicly-distributed debt securities, subject to the limitations set forth in (9) below;

7.  lend money, except to the extent that the investments permitted by (6) above may be considered to be loans;

8.  purchase securities of any other investment company or investment trust except temporarily in connection with merger or consolidation with, or acquisition of the assets of, any such company or trust;

9.  invest more than 15% of its total assets (calculated at the time of investment) in securities that are not listed on a stock exchange or quoted on a recognized over-the-counter market;

10. purchase securities of any issuer for the purpose of exercising control of management of that issuer;

11. purchase securities of the Investment Manager or any affiliate thereof.

## THE INVESTMENT MANAGER

The investments of the Fund will be managed by Amerindo Investment Advisors, Inc. a portfolio management firm incorporated in Panama. The predecessor of the Investment Manager was founded in 1976. The principal Portfolio Managers of the Investment Manager, Alberto W. Vilar and Gary A. Tanaka, have a total of 51 years' investment experience. Mr. Vilar and Mr. Tanaka manage the assets of Amerindo Management Limited; Amerindo Investment Advisors Inc. and Amerindo Advisors (UK) Limited, which are investment management companies specializing in emerging growth stocks. Mr. Vilar and Mr. Tanaka will also serve as Directors of the Fund; summary biographies are set forth in "Directors of the Fund".

The principal Portfolio Managers of the Investment Manager believe that investment management performance may be negatively impacted when managers undertake to manage too large an investment pool; accordingly, they have determined that they will limit the number of clients invested in the emerging growth stock portfolios they manage.

## INVESTMENT MANAGEMENT AGREEMENT

The Fund entered into an investment management agreement with the Investment Manager ("the Investment Management Agreement"), pursuant to which the Investment Manager will manage the investment and reinvestment of the cash, securities, and other properties constituting the assets of the Fund. The Investment Manager will bear all expenses related to services performed by it for the Fund, including advisory and operating expenses incurred by the Investment Manager and its affiliates and advisors. Brokerage commissions, charges of custodians, and other appropriate operating costs of the Fund will be payable by the Fund.

The Fund has agreed to pay the Investment Manager an annual investment management fee equal to 1.75% of total assets under management. The investment management fee will be calculated and paid quarterly in arrears on average total assets.

The Investment Management Agreement will be for a term of 30 years from the date of the Agreement, but may be terminated by either party at any time upon 90 days' written notice to the other party.

## SALE OF SHARES

The capitalization of the Fund consists of 10,000,000 Shares of equal class.

(a) **Terms**

Shares will be available under conditions specific herein for issue by the Fund to Investors except as noted under "Temporary Suspension of Determination of Net Asset Value and Redemption Rights".

Shares are first being offered on the Commencement Date at a price of $10 per Share and will be offered on a continuing basis twice monthly thereafter at their net asset value (see "Net Asset Valuation"). Net asset value will be computed as of the close of business twice a month, three days after the 15th as of the 15th and three days after the last day of the month as of the last day of the month on which the New York Stock Exchange is open for trading and which is a business day in Panama.

There is no sales commission on the purchase of Shares.

(b) **How to Purchase Shares**

The Commencement Date will be January 1985 or such later date as shall be specified by the Fund (the "Commencement Date"). Investors desiring to purchase Shares on the Commencement Date should submit an application and payment at least one business day before the Commencement Date.

Applications for Shares should be submitted by telex or facsimile and confirmed in writing to Amerindo Technology Growth Fund, Inc., c/o Overseas Management Company, P.O. Box 4297, Bank of Boston Building, 8th Floor, Via Espana 122, Panama 5, Republic of Panama (telex: 2111 OMANCO PA). Each application should specify (i) the name and address of the Investor, (ii) the amount of money the Investor wishes to invest, (iii) instructions for transmittal of any dividend payments or distributions which may be made, and (iv) such other particulars as the Investor deems pertinent. It is assumed that most Investors will prefer to have their shares held in the form of a registered account; if an Investor desires to receive a Share certificate, that fact and the particulars thereof should also be set forth in the application. (See below for further information as to Shareholder accounts.)

Payment for Shares in U.S. dollars in immediately available funds should be made to Citibank, N.A., 20 Exchange Place, New York, N.Y. 10004, for credit to the account of Bear, Stearns & Company, Account 09253186, for further credit to Amerindo Technology Growth Fund account 102-01495. The Fund will ordinarily acknowledge all payments within fifteen days after receipt. Inquiries concerning payments of subscription monies may be directed to Overseas Management Company, P.O. Box 4297, Bank of Boston Building, 8th Floor, Via Espana 122, Panama 5, Republic of Panama.

In the event an Investor submits his subscription payment before the official start of the fund, interest earned on such payment up to the Commencement Date will be used to purchase additional Shares for such Investor. To the extent that a subscription payment remitted after the Commencement Date is in excess of the subscription price of whole Shares allotted, the excess will be returned promptly to the Investor.

(c) **Eligible Investors**

Although Shares are freely transferable, the Fund reserves the right to prevent or restrict the ownership of Shares by any individual or organization.

## SHAREHOLDER ACCOUNTS AND SHARE CERTIFICATES

The Directors of the Fund assume that Investors will prefer to have their own Shares held in the form of registered accounts, and that will be the standard arrangement unless a shareholder requests on his application form that a Share Certificate be issued. Shareholders whose Shares are held in registered accounts will receive confirmation of their shareholdings within 30 days after issuance of the Shares. Share certificates, if requested, will be issued in registered form only and will normally be sent within 45 days after issuance of the Shares.

## DIVIDENDS

The Fund may have net investment income after operational expenses. It will be the policy of the Fund to reinvest such net investment income as well as any realized capital gains.

Payment of any dividends or distributions which may be declared will be made to holders of Shares by mailing bank checks within 21 days after the declaration of the dividend or distribution to record shareholders at their address in the register of shareholders or to such other address as they have specified to the Fund.

## REDEMPTION OF SHARES

The Fund offers to redeem its Shares twice a month, based on share price valuation calculated three days after the 15th and three days after the last business day of the month. Shareholders desiring to redeem Shares should submit to Amerindo Technology Growth Fund, Inc., c/o Overseas Management Company, P.O. Box 4297, Bank of Boston Building, 8th Floor, Via Espana 122, Panama 5, Republic of Panama, an irrevocable written request for redemption in a form acceptable to the Fund. If Share certificates have been issued for the Shares to be redeemed, such certificates, in form for transfer with transferor's signature guaranteed by a bank, brokerage house or the sales agent through which the Shares were purchased, must be received by Overseas Management Company before payment for the redeemed Shares may be made. If no Share certificates have been issued for the Shares to be redeemed, the signature on the redemption request should be guaranteed as stated above.

The redemption price of the Shares will be either the share price valuation as of the 15th or the last business day of the month calculated after the receipt of the notification of intent to redeem. The Fund does not charge a redemption fee. Payment for Shares redeemed will be made in accordance with the shareholder's instructions normally within 21 days following the date on which they were redeemed provided that share certificates (if issued) with signature guaranteed as stated above have been delivered to Overseas Management Company. The redemption price may be more or less than the price paid by the shareholder, depending on the net asset value per Share at the time of redemption (see "Net Asset Valuation"). (See page 15 for events which may cause temporary suspension of rights of redemption.) Upon redemption, any certificate representing Shares redeemed shall be canceled by the Fund. Redeemed Shares shall not be reissued and shall have no dividend, voting or other.

## NET ASSET VALUATION

The net asset value of the Fund will be determined as of the close of business twice a month, to be released three business days after the 15th and three business days after the last day of the month.

The Articles of Association provide that, for the purpose of determining total net assets of the Fund:

(1)  Marketable securities listed on national securities exchanges will be valued at the closing sales price on the stock exchange on which the security is traded on the date of valuation or, if the security is traded on more than one stock exchange on such date, at the closing sales price on the principal exchange as determined by trading volume on that date; in the absence of a sale on such a date, such securities will be valued at the closing bid price on such exchanges on the date of valuation.

(2)  Marketable securities traded in over-the-counter markets will be valued at the last bid price reported by NASDAQ (with respect to securities quoted on NASDAQ) or by the National Quotations Bureau, Inc. (with respect to other securities traded in the over-the-counter market)

(3)  Restricted but publicly-traded securities will be valued at their fair value as determined in good faith by the Directors. Factors which may be considered in making such determinations are: (a) the nature and duration of the restrictions upon the sale or transfer of the securities; (b) marketability for securities of the same class or for securities into which the restricted securities are convertible; and (c) the discount, if any, at which such restricted securities were acquired from the market value of unrestricted securities of the same class of securities into which they are convertible.

(4)  Non-publicly-traded securities will be valued at book value.

(5)  All other assets will be valued at their respective fair values as determined in good faith by the Directors in accordance with generally accepted U.S. accounting principles.

If the Fund determines that in connection with marketable securities, some other form of quotation better reflects their fair value, that quotation will be used. In addition, the valuation of any security could in an extreme case involve a discount if warranted by the size of the holding relative to its daily average trading volume.


## TAX CONSIDERATIONS

The following statements as to tax considerations are based on the laws and regulations of the jurisdictions mentioned herein in effect as of the date of the Offering Circular and assume that the Fund will invest primarily in securities of U.S. corporations.

Since it is anticipated that the Fund will not be engaged in the conduct of a trade or business in the United States within the meaning in the U.S. Internal Revenue Code, no capital gains tax will be payable by the Fund in the United States on capital gains realized on the sale of securities to the extent such securities are not classified as U.S. real property interests within the meaning of Section 897 of the Internal Revenue Code. In addition, no capital gains tax will be payable in Panama.

Interest and dividend income received by the Fund from sources within the United States are generally subject to U.S. income (withholding) tax at a rate of 30%. However, interest received on deposits with U.S. banks or on Treasury Bills payable within six months of issuance is not subject to U.S. withholding tax. It is anticipated that the Fund will temporarily invest any uninvested funds in deposits and obligations which generate interest not subject to

U.S. withholding tax. Interest and dividend income received by the Fund from sources outside the United States will not be subject to U.S. tax.

Dividends or distributions paid by the Fund to holders of Shares are not subject to U.S. or Panama withholding tax. No other U.S. or Panama income or capital gains taxes are applicable to the Fund.

Gains derived by the shareholders from the sale or exchange of Shares will not be subject to U.S. income tax unless the selling shareholder is an individual who sells his Shares in the United States and is physically present in the United States for 183 days or more in the year of sale. No Panama tax will be imposed on such gain.

Holders of Shares who are neither citizens nor residents of the United States will not be subject to any U.S. estate tax with respect to Shares owned by them regardless of the value of such Shares at the time of death, which might not be so if a direct investment in the securities of the U.S. corporations were made by them.

No gift, estate or inheritance tax is imposed by Panama on holders of Shares.

Investors should acquaint themselves with any income tax consequences which may apply in their own countries relevant to the purchase, holding or sale of Shares.

## DIRECTORS OF THE FUND

Alberto W. Vilar, 53, began his career with Citibank, N.A. in New York in 1964 and worked there as an International Credit Officer until 1967. From 1967 to 1971, he served as Vice President, Portfolio Manager and Manager of the Investment Management Division of Burnham & Company, Inc. in New York. From 1971 to 1973, he served as Executive Vice President, Portfolio Manager and Director of Equity Strategy at M.D. Sass Investor Services in New York. In 1973, he became Vice President and Portfolio Manager of Endowment Management & Research Corporation in Boston. From 1977 to 1979, he served as Senior Vice President, Director of Research, Chief Investment Strategist and Fund Manager of The Boston Company in Boston. He founded the predecessors of Amerindo Investment Advisors, Inc. and Amerindo Management Limited in 1976 and has served since then as a Principal Portfolio Manager. Mr. Vilar holds the degrees of B.A. in Economics from Washington & Jefferson College and M.B.A. and M.S. in Mathematical Economics from New York University, where he also completed the program in Doctoral Studies.

Gary A. Tanaka, 51, served as Portfolio Manager for Crocker Bank in San Francisco from 1971 to 1977 and as a Fund Manager for Crocker Investment Management Corp. in San Francisco. In 1980, he joined Amerindo Investment Advisors Inc. and Amerindo Management Limited as a Principal Portfolio Manager. Mr. Tanaka holds the degrees of B.S. in Mathematics from Massachusetts Institute of Technology and Ph.D. in Applied Mathematics from the University of London, Imperial College.

B.C. Fong, 51, served as a Trust Department Portfolio Manager for Crocker National Bank from 1969 through 1974. From 1978 until 1981 he served as Vice President and Portfolio Manager for Crocker Investment Management Corp. in San Francisco. Thereafter and until he joined the firm in 1984, Mr. Fong was employed as Vice President and institutional equity portfolio manager at McMorgan & Company in San Francisco. Mr. Fong holds the degree of B.S. in Finance from Boston University.

Overseas Management Company, the subscription agent, registrar and transfer agent, and redemption and paying agent, is a corporate management company and will perform certain administrative and management services for the Fund (see "Agreement with Overseas Management Company").

## ORGANIZATION

The Fund was incorporated in January 1985 in Panama, Republic of Panama. It is an investment company organized as an exempted company under the laws of Panama and is constituted for an unlimited term. Subject to the Companies Law of Panama, the Memorandum and Articles of Association provide that the Fund may be liquidated only upon recommendation of the Directors and vote of two-thirds of all Preferred Shares represented at a meeting called to consider such liquidation.

The Fund has an authorized share capital of $100,000.00 divided into 10,000,000 Shares, par value $0.01 (the "Share"), of equal class.

This offering is limited to Shares of the Fund. Upon issue, out of the subscription price received by the Fund, $0.01 per Share will be applied to paying up in full the par value of the Shares issued and the balance will be credited to the Share premium account. Each Share is entitled to one vote at all meetings of shareholders.

Each Share when issued will be fully-paid and non-assessable. No shares will have preemptive, conversion, or exchange rights. There are no options or any special rights outstanding relating to any Shares.

Lost, stolen or destroyed Share certificates may be replaced subject to the provisions of applicable law and to conditions imposed by the Directors of the Fund. These conditions may include delivery of a satisfactory surety bond, normally of an unlimited amount.
If the Fund should be voluntarily liquidated, holders of Shares shall be entitled to a liquidation distribution equal to the net asset value per Share for each Share held.

### Expenses

The Fund will bear its organizational expenses, which will be amortized over a three year period. The Fund will also bear its expenses, including the investment management fee, commissions, charges of custodians, auditing and legal and fees of the registrar and transfer and redemption agent.

## TEMPORARY SUSPENSION OF DETERMINATION OF NET ASSET VALUE AND REDEMPTION RIGHTS

The Fund may suspend the determination of net asset value and the redemption or issue of Shares under certain highly extraordinary circumstances, including any period when (a) any market or stock exchange on which a significant portion of the Fund's investments are quoted is closed or during which dealings therein are restricted or suspended; (b) there exists any state of affairs which, in the opinion of the Directors of the Fund, constitutes an emergency as a result of which disposition by the Fund of investments owned by it is not reasonably practicable or would be seriously prejudicial to its shareholders; (c) there has been a breakdown in the means of communication normally employed in determining the price or value of any of the Fund's investments, or of current prices on any stock exchange as aforesaid, or when for any reason the prices or values of any investments owned by the Fund cannot reasonably be promptly and accurately ascertained.

16

## REPORTS TO SHAREHOLDERS

The Fund will publish quarterly financial reports containing a list of the Fund's holdings.

The Fund's fiscal year will end on the 30th day of September of each year.

## OFFICES OF THE FUND AND THE INVESTMENT MANAGER

The registered offices of the Fund will be Overseas Management Company, P.O. Box 4279, Bank of Boston Building, 8th Floor, Via Espana 122, Panama 5, Republic of Panama. Communications by shareholders with the Fund should be addressed to Amerindo Technology Growth Fund, Inc, c/o Overseas Management Company at that address.

## ACCOUNTANTS

The accounts of the Fund will be maintained by independent chartered accountants. Arad & Co., 46 Gloucester Place, London, England have been appointed and have consented to accept such appointment. The Fund was incorporated in January 1985, and has had no operations as of the date of this Offering Circular.

## LEGAL AND TAX ADVISORS

Sucre y Sucre, P.O. Box 6277, Panama 5, Republic of Panama, are legal advisors to the Fund in Panama.

## AGREEMENT WITH OVERSEAS MANAGEMENT COMPANY

The Fund will enter into an agreement with Overseas Management Company ("OMC"), pursuant to which OMC will serve as subscription agent, registrar and transfer agent, and redemption and paying agent for the Fund. OMC will also provide all office staff and accommodations required by the Fund in Panama, maintain the books and records of the Fund, and prepare and file the Fund's annual return.

The agreement may be terminated at any time by either party upon 90 days' written notice to the other party. As compensation, OMC will receive from the Fund a fee competitive with those charged by others for the provision of similar services in Panama.

## CUSTODIAN

The Fund and the Investment Manager will enter into an agreement (the "Custodian Contract") with Bear, Stearns & Co., New York ("the Custodian") pursuant to which securities as well as cash of the Fund will be held by or to the order of the Custodian. The Custodian Contract may be terminated at any time at the option of either party upon 30 days' written notice to the other party. The Custodian will accept delivery and make payment on securities purchased, receive interest and dividend income on securities held, and receive payment and delivery securities sold by the Fund, and will charge its customary fees for these services.

The Memorandum and Articles of Association provide that the Directors shall have the power to grant to the Investment Manager or a subcommittee of Directors of the Fund the power to instruct the Custodian to cease to hold the assets of the Fund to the order of the Fund and instead to hold those assets in trust for the benefit of creditors and shareholders of the Fund, or to the order of some other person or persons for the benefit of creditors and shareholders of the Fund. Such power, if granted, will generally be exercised in the event that the Investment Manager or subcommittee of Directors, as the case may be, in its sole discretion, considers it to be necessary or desirable in order to protect the interests of creditors and shareholders under circumstances including, but not limited to, conflict, insurrection or political transition in the Republic of Panama, the expropriation or threatened expropriation of any assets of the Fund or the passage or threatened passage of any legislation in any country affecting the status or profitability of the Fund.

## GENERAL INFORMATION

Investors should inform themselves as to (1) the legal requirements within their own countries for purchases of Shares; (2) any foreign exchange restrictions which they might encounter; and (3) the income and other tax consequences which may apply in their own countries relevant to the purchase, holding or sale of Shares.

Copies of the documents listed below will be available for inspection during normal business hours at the principal offices of the Fund in Panama.

(a)     Memorandum and Articles of Association of the Fund.

(b)     Investment Management Agreement with Amerindo Investment Advisors, Inc.

(c)     Custodian Contract with Bear, Stearns & Co.

(d)     Agreement with Overseas Management Company.

The agreements listed above may be amended from time to time by mutual consent of the parties thereto.

This Offering Circular may be translated into other languages but in the event of any inconsistency or any ambiguity as to the meaning of any word or phrase in any such translation, the English text shall prevail.

18

## LIABILITY OF INVESTMENT MANAGER: INDEMNIFICATION

### Limitation on Liability

The Investment Manager shall have no liability whatsoever to the Fund or to any Shareholder for any loss suffered by the Fund which arises out of any action or inaction of the Investment Manager if the Investment Manager, in good faith, determines that such course of conduct was in the best interest of the Fund, and such course of conduct did not constitute negligence, gross negligence, bad faith or willful misconduct of the Investment Manager.

### Indemnification

The Investment Manager may authorize the Fund to pay expenses incurred by, or to satisfy a judgment or fine rendered or levied against, a present or former officer or employee of the Investment Manager, or a former or present employee of the Fund in an action brought by a third party against such person (whether or not this Fund is joined as a party defendant) to impose a liability or penalty on such person for an act alleged to have been committed by such person while in the employ of the Investment Manager or the Fund, provided that (i) the person to be indemnified was acting in good faith within what he reasonably believed to be the scope of his employment or authority and for a purpose which he reasonably believed to be in the furtherance of the purpose and best interests of the Fund or the Shareholders, and (ii) the action or failure to act in respect of which indemnification is sought does not constitute negligence, gross negligence or willful misconduct. Payments authorized hereunder include amounts paid and expenses incurred in settling any such action or threatened action. This provision does not apply to any action instituted or maintained in the right of this Fund or by a Shareholder. The indemnification authorized by this Section shall be made from assets of the Fund and no Shareholder shall be personally liable to an indemnitee.

### Successors and Assigns

This Section shall inure to the benefit of the Investment Manager, its shareholders, partners, employees and agents, the employees and agents of the Fund, and their respective heirs, executors, administrators, successors and assigns.

**Amerindo Investment Advisors Inc.**
399 Park Avenue, 22nd floor
New York, NY 10022

Tel:   (1 212) 371 6360
Fax:   (1 212) 371 6988

*Contact: Alberto Vilar; JaDeane Ing*


**Amerindo Investment Advisors Inc.**
One Embarcadero Center, Suite 2300
San Francisco, CA 94111-3162

Tel:   (1 415) 362 0292
Fax:   (1 415) 362 0533

*Contact: Jim Kiriakis*


**Amerindo Advisors (UK) Limited\*\***
43 Upper Grosvenor Street
London W1X 9PG

Tel:   (44 171) 629 2349
Fax:   (44 171) 499 5166

*Contact: Albert Murray; Gary Tanaka*


**Amerindo Investment Advisors, Inc.\***
Sucre Bldg, Calle 48 Este Bella Vista
PO Box 5168, Panama 5, Panama

Tel:   (1 507) 264 9673
Fax:   (1 507) 264 9667


**Website: www.Amerindo .com**


\*   Domicile of the Amerindo
    Technology Growth Fund

\*\*   Regulated by IMRO.

# AMERINDO TECHNOLOGY GROWTH FUND INC.

## APPLICATION FORM

EXPEDITE TO:     Amerindo Technology Growth Fund Inc.
                 c/o Overseas Management Company
                 Bank of Boston Building, 8th floor
                 Via Espana 122
                 Panama 5, Republic of Panama

1.   ACCOUNT NAME (Name of the investor or his nominees. If joint account, all names must be included – such accounts will be registered as "Joint Tenants with Right of Survivorship" unless otherwise specified. If a corporation or trust, the legal name must be given as well as the names and titles of those authorized to give instructions for the account.):

     ......................................................................................................................................
     ......................................................................................................................................

2.   ADDRESS:

     ......................................................................................................................................
     ......................................................................................................................................

3.   I/We hereby apply to purchase as many shares of Amerindo Technology Growth Fund Inc. as may be purchased with:

     U.S. $ .....................................   (Minimum Subscription per Investor: U.S. $ 5,000,000)

     for a price equal to (a) $10.00 per Share, with respect to Shares issued on the Commencement Date, or (b) the net asset value next computed after receipt of the Application Form (provided that payment has previously been received in New York) with respect to Shares issued after the Commencement Date. I/We confirm receipt of the Fund's Offering Circular, dated July 1998, relating to the Shares. It is understood that if this subscription is rejected, the Fund shall return the full amount tendered herewith without interest. Unless and until rejected, this subscription shall be irrevocable by the subscriber(s).

4.   METHOD OF INITIAL PAYMENT (check one)

4A)  Bank Wire Transfer. Investors using the wire transfer method for an initial payment should send:

     To:                  Citibank N.A., 20 Exchange Place, New York, NY 10004

     Credit Account:      Bear Stearns & Co., Account No. 09253186

     For Further Credit:  Amerindo Technology Growth Fund Inc., Account No. 102-01495

     Amount U.S. $:       ...................................
     (initial transfer)

     By Order of:         ...................................
                          (Client's Name / Client's Offshore Corporation Name)

4B)   Check or draft enclosed, payable to the order of Amerindo Technology Growth Fund Inc.

Checks or bank drafts with accompanying cover letter should be sent to:

> Bear Stearns Co. Inc.
> Specialist Clearance
> 1 Metrotech Center North, 5th Floor
> New York, NY 11201

Credit:   Amerindo Technology Growth Fund
Account No. 102-01495

---

5.   REPRESENTATIVES

In signing this Application Form the undersigned warrants that (1) neither he nor any beneficial owner of the shares to be purchased is a citizen of Panama, and that he will not transfer any shares or interest therein to a citizen, resident or entity of that country, (2) he has the right and authority to make the investment pursuant to this Application Form whether the investment is his own or is made on behalf of another person or organization, (3) he has the right and authority in regard to this account to redeem shares of the Fund, (4) the Fund's Transfer Agent and the Custodian, respectively, are authorized by him to honor redemption instructions given in person or by telephone, facsimile, telex, cable or mail from anyone provided that the proceeds are transmitted only to the name of the account as give n above at either the address so given or at the Designated Bank so given, unless changed by authorized signature.

Signature:   ....................................   Title:   ....................................

....................................................   Date:   ....................................
Print or Type Name

Signature:   ....................................   Title:   ....................................

....................................................   Date:   ....................................
Print or Type Name

Must be signed by investor or his nominee. If a joint account, all investors must sign. If a corporation or trust, authorized officers, trustees or officials must sign and indicate titles.

---

6.   CLIENT'S SPECIAL INSTRUCTIONS TO THE FUND

Example: "In case of my demise notify and remit to:

................................................................................................................

---

# EXHIBIT F

# AMERINDO TECHNOLOGY GROWTH FUND, INC.

As per your request, please find below details of the Net Asset Value of the above referenced fund.

Please consider this e-mail attachment as confirmation of the Net Asset Value below.

| $19.9766 |
| --- |

| March 31, 2005 |
| --- |

Should you have any questions, please do not hesitate to contact us on +44-207-629-2349.

# EXHIBIT G

# THE METROPOLITAN OPERA



**COPY**

FEB 23 2004

SHARON E. GRUBIN
GENERAL COUNSEL

February 23, 2004

**By Facsimile and Federal Express**

Renata Tanaka
Amerindo Technology Growth Fund
c/o Amerindo Investment Advisors
43 Upper Grosvenor Street
London W1K 2NJ
England

*Extremely*
**CONFIDENTIAL**

### REQUEST FOR REDEMPTION

Dear Ms. Tanaka:

As you will recall, we spoke several weeks ago with respect to redemption of the shares owned by the Metropolitan Opera Association, Inc. (the "Met") in the Amerindo Technology Growth Fund (the "Fund"). At that time you confirmed to me that 123,300.86 shares are currently owned by the Met.

You explained that to redeem the shares, the Met would need to advise you in writing of its request, at which time you would notify us of the redemption date. You thereafter told me that you had found a "note" in the file saying that nothing could be done with the Met's shares without the consent of Mr. Alberto Vilar. However, I have once again reviewed our Fund materials and find no such condition on redemption (nor do I believe one would be permitted under existing law).

**Accordingly, please take notice that the Metropolitan Opera Association, Inc. hereby requests immediate redemption of 123,300.86 shares it owns in the Fund.** As I understand the Fund's procedures, the redemption proceeds should be available in about 4 weeks from now, at which time we will wish you to wire them to the Met's account at JP Morgan Chase Bank in New York City. (See enclosed letter from you dated April 30, 1999). I will supply you with specific wire instructions once you let me know the date the transfer will be made.

Please inform me by return facsimile (or email: Sgrubin@mail.metopera.org) if there are any further steps the Met needs to take prior to the upcoming Value Date at the end of this month

**MET 000170**

THE METROPOLITAN OPERA

Renata Tanaka
February 23, 2004
Page 2

to assure the redemption within three weeks therefrom.  You may also call me if you have any questions at (212) 799-3100, Ext. 2270.

Very truly yours,

Sharon E. Grubin
General Counsel and Assistant Secretary

Encl.

cc:    Amerindo Investment Advisors, Inc. (By Facsimile)
       Sucre Building
       Calle 48 Este Bella Vista
       P.O. Box 5168
       Panama 5, Panama

MET 000171

# AMERINDO INVESTMENT ADVISORS, INC.

Sucre Building
Calle 48 Este Bella Vista
P.O. Box 5168, Panama 5, Panama
Tel: (507) 264-9673
Fax: (507) 264-9667

February 6, 2001

Stewart Pearce
Chief Financial Officer
Metropolitan Opera Association, Inc
████████████
New York, New York 10023

Gentlemen:

### Re: Amerindo Technology Growth Fund

We are pleased to inform you that Mr Alberto Vilar made a new donation in favour of Metropolitan Opera Association, Inc. in the above Fund, on January 31, 2001.

Details of the new subscription are as follows:

| | |
|---|---|
| Amount Invested: | $3,000,000.00 |
| Net Asset Value @01/31/01: | $73.0516 |
| Number of Shares Purchased: | 41,066.86 |
| **Total Number of Shares @01/31/01:** | **123,300.86** |

We have informed the Registrar of the new investment and have duly instructed them to issue a new share certificate to you.

Please feel free to contact us should you have any questions regarding the above.

With kind regards.

Renata Tanaka

GOVERNMENT
EXHIBIT

**1864**

05 Cr. 621 (RJS)          (ID)

MET 000663

e have today made entry to your Account as indicated below.
e below explanations of symbols in 'Type of Entry' column.

# AMERINDO INVESTMENT ADVISORS, INC.

## CLIENT CONFIRMATION

SUCRE BUILDING, CALLE 48 ESTE
BELLA VISTA, P.O. BOX 5188, PANAMA 5, PANAMA
TEL: (507) 264-9673  FAX: (507) 264-9667

| T/SOLD | DATE | DESCRIPTION | CLASS | TYPE OF ENTRY | AMOUNT | ACCOUNT |
|--------|------|-------------|-------|---------------|--------|---------|
| BOT | 01.31.01 | BOT 41,066.86 SHARES OF AMERINDO TECHNOLOGY GROWTH FUND @ 473.0518 PER SHARE | D | SUB | $3,000,000.00 | 0199M03 |

METROPOLITAN OPERA ASSOC. INC.
NEW YORK
NY. 10023

| | | | |
|---|---|---|---|
| MAT | Maturity | RED | Redemption |
| GK | Check | CJE | Correcting Entry |
| DIV | Dividend | JE | Journal Entry |
| TAX | Taxes Witheld | INT | Interest |
| EXI | Security Exchange | TFD | Funds Transfer |
| SUB | Subscription | FRS | Fractional Shares |

MET 000664

# EXHIBIT H

# AMERINDO INVESTMENT ADVISORS, INC.

AVENIDA SAMUEL LEWIS,
EDIFICIO PLAZA OBARRIO
APARTADO 5215
PANAMA 5 PANAMA
TEL: (507) 264-9673
FAX: (507) 264-9667

## STATEMENT OF ACCOUNT

**Heitkoenig Account**

████████████

Santurce
Puerto Rico  00911

| Client Account Number | Reference |
|---|---|
| F390H | F |

| Statement Period | |
|---|---|
| Opening 08.01.03 | Closing 05.31.04 |
| Closing Account Balances | |
| Cash | Equities |
| ------- | $1,962,468.00 |
| Fixed Deposits | XXXXXInterest |
| $3,164,889.13 | $132,008.27 |
| Financial Account Summary | |
| $5,259,365.40 | |

| Type of Investment | Price | Amount |
|---|---|---|
| FIXED DEPOSIT ACCOUNTS | | |
| AMERINDO FIXED RATE DEPOSIT ACCOUNT | | |
| GUARANTEED @ 5% P.A. 08.03.03 - 08.02.04 | | $3,164,889.13 |
| | | |
| EQUITIES | | |
| AMERINDO TECHNOLOGY GROWTH FUND | | |
| (90,000.00 shares) | $21.8052 | $1,962,468.00 |
| | | |
| EXTERNAL CUSTODY ACCOUNTS | | |
| | | |
| MISCELLANEOUS/CASH | | |
| ACCRUED INTEREST @ 5% P.A. 08.03.03 - 05.31.04 | | $130,822.64 |
| INTEREST @ 7% P.A. 08.01.03 - 08.02.03 | | |
| on $3,091,132.58 | | $1,185.63 |
| TOTAL | | $5,259,365.40 |

GOVERNMENT
EXHIBIT
5201-H
05 Cr. 621 (RJS)   (ID)

# EXHIBIT I

# AMERINDO INVESTMENT ADVISORS, INC.

Avenida Samuel Lewis
Edificio Plaza Obarrio
Apartado 5215
Panama 5, Panama
Tel: (507) 264-9673
Fax: (507) 264-9667

April 15, 2004

Dr. E Ronald Salvitti
<span style="background:black">████████</span>
Washington, PA 15301
USA

**VIA FACSIMILE: 724-228-4367**

Dear Dr. Salvitti:

**Re: Amerindo Technology Growth Fund**

We are pleased to confirm that you currently hold **91,993.83** shares of Amerindo Technology Growth Fund.

Please find below the details of your subscription:

Net Asset Value
@ 03/31/04:          $21.8900

Total Value of
Holding as at
03/31/04:            $2,013,744.94

Please do not hesitate to contact me should you have any questions.

With kind regards,

P.P.:

Renata Tanaka

TOTAL P.01

# EXHIBIT J

# AMERINDO INVESTMENT ADVISORS, INC.

AVENIDA SAMUEL LEWIS,
EDIFICIO PLAZA OBARRIO
APARTADO 5215
PANAMA 5 PANAMA
TEL: (507) 264-9673
FAX: (507) 264-9667

## STATEMENT OF ACCOUNT

Ms Deane Marcus
~~●●●●●●●●●●●●~~
Saddle River
NY 07458
USA

| Statement Period | |
|---|---|
| Opening 04.01.03 | Closing 07.31.04 |
| Closing Account Balances | |
| Cash ———— | Equities $172,017.07 |
| Fixed Deposits ———— | External ———— |
| Financial Account Summary | |
| $172,017.07 | |

| Client Account Number | Reference |
|---|---|
| F1298-D1M-200 | F |

| Type of Investment | Price | Amount |
|---|---|---|
| FIXED DEPOSIT ACCOUNTS | | |
| EQUITIES | | |
| AMERINDO TECHNOLOGY GROWTH FUND | | |
| (8,559.00 shares) | $20.0978 | $172,017.07 |
| EXTERNAL CUSTODY ACCOUNTS | | |
| MISCELLANEOUS / CASH | | |
| TOTAL | | $172,017.07 |

156

PM 000312

TOTAL P.06

# AMERINDO INVESTMENT ADVISORS, INC.

AVENIDA SAMUEL LEWIS,
EDIFICIO PLAZA OBARRIO
APARTADO 5215
PANAMA 5 PANAMA
TEL: (507) 264-9673
FAX: (507) 264-9667

## STATEMENT OF ACCOUNT



Mr Paul Marcus
~~████████~~
Saddle River
NJ 07458
USA

| Client Account Number | Reference |
|---|---|
| F1296-F1C-160 | F |

| Statement Period | | |
|---|---|---|
| Opening 04.01.03 | Closing 07.31.04 | |
| Closing Account Balances | | |
| Cash ---------- | Equities $3,659,910.67 | |
| Fixed Deposits ---------- | External _____ | |
| Financial Account Summary | | |
| $3,659,910.67 | | |

| Type of Investment | Price | Amount |
|---|---|---|
| FIXED DEPOSIT ACCOUNTS | | |
| EQUITIES | | |
| AMERINDO TECHNOLOGY GROWTH FUND (182,105.04 SHARES) | $20.0978 | $3,659,910.67 |
| EXTERNAL CUSTODY ACCOUNTS | | |
| MISCELLANEOUS / CASH | | |
| TOTAL | | $3,659,910.67 |

PM 000313

# AMERINDO INVESTMENT ADVISORS, INC.

AVENIDA SAMUEL LEWIS,
EDIFICIO PLAZA OBARRIO
APARTADO 5215
PANAMA 5 PANAMA
TEL: (507) 264-9673
FAX: (507) 264-9667

## STATEMENT OF ACCOUNT

Mrs. Cheryl Marcus-Podhaizer

Saddle River
NJ 07458
USA

| Client Account Number | Reference |
|---|---|
| F1298-C1M-200 | F |

| Statement Period | |
|---|---|
| Opening  04.01.03 | Closing  07.31.04 |
| Closing Account Balances | |
| Cash | Equities |
| ------------ | $259,885.65 |
| Fixed Deposits | External |
| ----------- | ------------ |
| Financial Account Summary | |
| $259,885.65 | |

| Type of Investment | Price | Amount |
|---|---|---|
| FIXED DEPOSIT ACCOUNTS | | |
| EQUITIES | | |
| AMERINDO TECHNOLOGY GROWTH FUND | | |
| (12,931.05 shares) | $20.0978 | $259,885.65 |
| EXTERNAL CUSTODY ACCOUNTS | | |
| MISCELLANEOUS / CASH | | |
| TOTAL | | $259,885.65 |

# AMERINDO INVESTMENT ADVISORS, INC.

AVENIDA SAMUEL LEWIS,
EDIFICIO PLAZA OBARRIO
APARTADO 5215
PANAMA 5 PANAMA
TEL: (507) 264-9673
FAX: (507) 264-9667



## STATEMENT OF ACCOUNT

Mr Lee Chevron & R. Stuckleman

Weston CT 06883
USA

| Client Account Number | Reference |
|---|---|
| F30-0799ET | F |

| Statement Period | |
|---|---|
| Opening 04.01.03 | Closing 07.31.04 |
| Closing Account Balances | |

| Cash | Equities |
|---|---|
| ----------- | $19,382.31 |
| Fixed Deposits | External |
| ----------- | ----------- |

| Financial Account Summary |
|---|
| $19,382.31 |

| Type of Investment | Price | Amount |
|---|---|---|
| FIXED DEPOSIT ACCOUNTS | | |
| EQUITIES | | |
| AMERINDO TECHNOLOGY GROWTH FUND | | |
| (964.40 shares) | $20.0978 | $19,382.31 |
| EXTERNAL CUSTODY ACCOUNTS | | |
| MISCELLANEOUS / CASH | | |
| TOTAL | | $19,382.31 |

# AMERINDO INVESTMENT ADVISORS, INC.

AVENIDA SAMUEL LEWIS,
EDIFICIO PLAZA OBARRIO
APARTADO 5215
PANAMA 5 PANAMA
TEL: (507) 264-9673
FAX: (507) 264-9667

## STATEMENT OF ACCOUNT



Mr Steven Marcus



Saddle River NJ 07458
USA

| Client Account Number | Reference |
|---|---|
| F1298-S1M-200 | F |

| Statement Period | |
|---|---|
| Opening 04.01.03 | Closing 07.31.04 |
| Closing Account Balances | |
| Cash ---------- | Equities $172,017.07 |
| Fixed Deposits ---------- | External ---------- |
| Financial Account Summary $172,017.07 | |

| Type of Investment | Price | Amount |
|---|---|---|
| FIXED DEPOSIT ACCOUNTS | | |
| EQUITIES | | |
| AMERINDO TECHNOLOGY GROWTH FUND (8,559.00 shares) | $20.0978 | $172,017.07 |
| EXTERNAL CUSTODY ACCOUNTS | | |
| MISCELLANEOUS / CASH | | |
| TOTAL | | $172,017.07 |

# EXHIBIT K

# NIG-AMERTECH LTD.

�▬▬▬▬▬▬   ████████████   Grand Cayman • Cayman Islands • B.W.I.
Telephone (345) ██████ • Telefax (345)████████

June 23, 2005

**Amerindo Technology Fund**
**P.O. Box 446**
**Portland, Maine 04101**

**Subject : Redemption of all units in Amerindo Technology Growth Fund**

Please note that we would like to redeem all our holdings (7,999.61 shares) in the Amerindo Technology Growth Fund.   Please see attached a copy of the client confirmation which details our holdings in the fund.

The **wiring instructions** for the redemption proceeds are as follows:

| | | |
|---|---|---|
| Bank | : | National Bank of Kuwait SAK |
| | | 299 Park Avenue, 20th Floor |
| | | New York, NY 10171, USA |
| | | Swift # : ████████ |
| | | Chips ABA : ███ |
| For credit to | : | National Bank of  Kuwait SAK |
| | | Head Office Branch |
| | | Kuwait |
| Swift Code | : | ████████ |
| Account # | : | ████████████ |
| Beneficiary | : | National Investors Group Holdings Ltd. |
| Reference | : | NIG-Amertech  Ltd. |
| Attention | : | George Nasra |

Sincerely,

_____
NIG-Amertech Ltd.
George Y Nasra
Managing Director

_____
NIG-Amertech Ltd.
Isam Jassem Al Sager
Director

Encl : As above

# AMERINDO INVESTMENT ADVISORS, INC.

SUCRE BUILDING, CALLE 48 ESTE
BELLA VISTA, P.O. BOX 5166, PANAMA 5, PANAMA
TEL (507) 264-9573  FAX: (507) 264-9667

## CLIENT CONFIRMATION

We have today made entry to your Account as indicated below.
See below explanations of symbols in 'Type of Entry' column.

| BOT/SOLD | DATE | DESCRIPTION | CLASS | TYPE OF ENTRY | AMOUNT | ACCOUNT |
|---|---|---|---|---|---|---|
| BOT | 01.14.00 | BOT 7,999.61 SHARES OF AMERINDO TECHNOLOGY GROWTH FUND @ $125.0061 PER SHARE | F | SUB | $1,000,000.00 | F100-NIG14 |

MR G NASRA
NATIONAL BANK OF KUWAIT
KUWAIT

MAT Maturity
CK Check
DIV Dividend
TAX Taxes Withheld
EXI Security Exchange
SUB Subscription

RED Redemption
CJE Correcting Entry
JE Journal Entry
INT Interest
TFD Funds Transfer
FRS Fractional Shares

# EXHIBIT L

07-16-2004  01:34pm  From-AMERINDO                    +2123717003         T-396  P.004/005  F-522

08-10-2003  03:07pm  From-AMERINDO              +2128805118        T-721  P.002/002  F-118

10    UANA        Fax:001 212 980 5118

## ATGF Client list

1) Jan Chr G. Sundt
2) Brian Clarke
3) Morris Sweetland Living Trust
4) Regents of the University of Michigan
5) Jenny Zanauri
6) John Warren Sweetland
7) Tim David Sweetland
8) Peter Mark Sweetland
9) Chrysler Corp
10) Maria Dienov
11) Robin Bayko
12) Chapman Capital Management Inc
13) Brewin Dolphin
14) Ramer Living Trust
15) Somerset Enterprises
16) Pendleton Profits Ltd
17) Travis Co. Jr / Milam Partnership / Roger Hill
18) Imagineers L.L.C.
19) Paul Marcus
20) Jens A. Wilhelmsen
21) Sundial Int. Fund Ltd
22) Dude & Shirley Crain
23) Crain Family Ltd Partnership
24) Kenneth S. Apfel
25) Cheryl Marcus
26) Steven Marcus
27) Deane Marcus
28) Joy & Ron Urich
29) Citco Global Custody N.V. / Strand Nominees
30) Pisces Ltd
31) QGCI Nominees Ltd
32) EFG Eurofinnncière D'Investment
33) Anthony W. Chibbs
34) Southfields Investments
35) UBS Jersey Nominees Ltd
36) Denver Ltd
37) Laurence Keen U.T.M. Ltd
38) CNCA + SCT Brunoy sub acct LCF
39) Bank Sal. Oppenheim Jr & Cie ( Schweiz) AG
40) CIBC Bank& Trust Co (Cayman) Ltd
41) Tapir Investments (Bahamas) Ltd / Ruwallon Ltd
42) Dr. E. Ronald Salvini/ Constance Salvini
43) Rava Shurkleman & Lea Chavron Educational Trust
44) Heilkoening
45) Natexis Banques Populaires
46) Meriken Nominees Ltd
47) Guernsey Nominees Ltd Acct CIP1204

OR-10-2003   OR:07pm   From-AMERINDO                    +2128805118          T-721   P.003/003   F-115

48)  Oracle Management Ltd
49)  Spread Trustee Company Ltd as Trustees of the PO Trust
50)  Octavian Nominees Ltd
51)  Abu Dhabi Commercial Bank HH Sheik Khalifa Bin Hamad Al Thani
52)  Abu Dhabi Commercial Bank HE Dr Issa G Hanom Al Kawari
53)  Charles A Kaye & Quetta P Kaye
54)  J.P. Morgan (Suisse) S.A.
55)  Baltic Overseas Finance Ltd
56)  Bermuda Trust Company Limited as Trustee of the SAL Trust / Strand
Nominees
57)  Youssef Hussain Ali Kamal
58)  NIO Amertech Ltd
59)  Fidulex Management Incorporated
60)  Retail Nominees Ltd
51)  SEB Securities Services (Publ) as Nominee
62)  Les Fils Drayfus & Cie SA Banquiers
63)  John & Susan Swearland Trust
64)  Arklay Associates Ltd
65)  Andrew Leighton Craig Bell & Yvonne Sally Bell
66)  Anthony F Heally
67)  HSBC Republic Bank (Suisse) SA
68)  Pictet & Cie
69)  Surinder & Nirmala Rametra
70)  Mrs M Kaye & Mr B Kaye
71)  CDB Web Tech International S.A.
72)  Zeban Nominees
73)  Earle Ledwell

TOTAL P.22

# EXHIBIT M



# Dextra Bank & Trust Co. Ltd.

GEORGE TOWN, GRAND CAYMAN, BRITISH WEST INDIES

TELEPHONE: (345) ████ TELEFAX (345) ████ EMAIL: ████

---

## FACSIMILE TRANSMITTAL SHEET

| TO: | FROM: |
|---|---|
| Renata Tanaka | A. Wood |

| COMPANY: | DATE: |
|---|---|
| Amerindo Investment Advisors Inc. | 6/16/2005 |

| FAX NUMBER: | TOTAL NO. OF PAGES INCLUDING COVER: |
|---|---|
| 011 44 207 493 5158 | 4 |
| 011 44 207 499 5166 | |

| PHONE NUMBER: | SENDER'S REFERENCE NUMBER: |
|---|---|
| | |

| RE: | YOUR REFERENCE NUMBER: |
|---|---|
| Notices | |

---

☐ URGENT   ☐ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY   ☐ PLEASE RECYCLE

NOTES/COMMENTS:

Please see attached.



GOVERNMENT
EXHIBIT
3362-11
05 Cr. 621 (RJS)

AUK-36-02100

TO:         Amerindo Technology Growth Fund II Inc.
                Sucre Building
                Calle 48 Este Bella Vista
                P.O. Box 5168
                Panama 5
                Republic of Panama

                and

                c/o Renata Tanaka
                Amerindo Investment Advisors Inc.
                43 Upper Grosvenor Street
                London, W1X 9PG
                England

**Your Guarantee in favour of Graphic Enterprises Ltd. dated**
**18th May, 1998.**

Pursuant to the above guarantee, we hereby demand immediate payment from you of all money owing to us by Amerindo Investment Advisors Inc. The amount due as of today is US$ 19,774,431.18, together with interest accruing at the rate of US$7,313.83 per day.

If we do not receive immediate payment from you in full, we will institute proceedings against you to recover the amount due.

DATED the 15th day of June, 2005.

GRAPHIC ENTERPRISES LTD.

Per: Dextra Management Ltd
            Director

C:\Documents and Settings\alitsia.ftnisson.DEXTRABANK\Local Settings\Temporary Internet Files\Content.IE5\WPY3O16Rdm.Graphic Ent.Var Tanaka Notice Munder (2).doc

AUK-36-02101

TO:   (1)   Alberto Vilar
              and
     (2)   Gary Tanaka
             both c/o Amerindo Investment Advisors Inc.
             43 Upper Grosvenor Street
             London, W1X 9PG
             England

**Your Guarantee in favour of Graphic Enterprises Ltd. dated
18th May, 1998.**

Pursuant to the above guarantee, we hereby demand immediate payment from you of all money owing to us by Amerindo Investment Advisors Inc.  The amount due as of today is US$ 19,774,431.18, together with interest accruing at the rate of US$7,313.83 per day.

If we do not receive immediate payment from you in full, we will institute proceedings against you to recover the amount due.

DATED the 15th day of June, 2005.

GRAPHIC ENTERPRISES LTD.

Per: ~~Dextra Management Ltd~~
          Director

AUK-36-02102

TO:    (1)    Alberto Vilar
             and
    (2)    Gary Tanaka
             both c/o Amerindo Investment Advisors Inc.
             43 Upper Grosvenor Street
             London, W1X 9PG
             England

**Your Guarantee in favour of Graphic Enterprises Ltd. dated
18th May, 1998.**

Pursuant to the above guarantee, we hereby demand immediate payment from you of all money owing to us by Amerindo Investment Advisors Inc.  The amount due as of today is US$ 19,774,431.18, together with interest accruing at the rate of US$7,313.83 per day.

If we do not receive immediate payment from you in full, we will institute proceedings against you to recover the amount due.

DATED the 15th day of June, 2005.

GRAPHIC ENTERPRISES LTD.

Per:   __**Dextra Management Ltd**__
             Director

AUK-36-02103