

# Begos Horgan & Brown LLP
Attorneys At Law

Patrick W Begos
Christopher G Brown
Michael F Horgan Jr

www.begoshorgan.com

327 Riverside Avenue
Westport Connecticut 06880
Tel 203.226.9990
Fax 203.222.4833

7 Pondfield Road
P O Box 369
Bronxville New York 10708.0369
Tel 914.961.4441
Fax 914.961.4442

November 18, 2011

**By Federal Express**

Hon. Richard J. Sullivan
United States District Court
500 Pearl Street
New York, NY 10007

Hon. Laura Taylor Swain
United States District Court
500 Pearl Street
New York, NY 10007

   Re: **U.S. v. Vilar and Tanaka**
      **05-Cr-0621-RJS**

      **SEC v. Amerindo**
      **05-cv-5231-LTS**

Dear Judges Sullivan and Swain:

  This firm represents three victims of defendants' crimes, Lisa, Debra and Herbert Mayer. Alberto Vilar and Gary Tanaka stole more from the Mayers than from any other victims; of the $34,899,102.53 in restitution awarded in the criminal action, $18,306,984.53 - more than half – is payable to the Mayers.

  As Your Honors know from my prior letters, the Mayers have been, and continue to be, in a desperate financial condition. Since the defendants were found guilty in 2008, no money has been distributed to them, or any other investor, other than the $150,000 that the parties agreed on in a pre-sentencing, November 2009 stipulation. For the last two years, I have been seeking to obtain money for them to live on.

  It appears that the various parties in interest agree on the concept of distributing $17,000,000 to victims and investors without waiting for a resolution of the criminal appeal. The problem, and the reason I am writing to both of you, is two-fold. First, the parties in interest appear to be in disagreement over the mechanism for accomplishing a distribution, and I believe that disagreement could be resolved by a procedure involving both the DOJ and the § Second, Messrs. Vilar and Tanaka have different representation in the two actions, and it appears that positions taken by one lawyer are not necessarily adopted by the other. Therefore, I believe that freeing up money for victims and other investors will require simultaneous action in *both* cases, with *all* attorneys for the parties involved.



Hon. Richard J. Sullivan
Hon. Laura Taylor Swain
November 18, 2011
Page 2

The current situation is this: the DOJ, through the US Attorneys' Office, has expressed a willingness to distribute money to victims and investors through post-forfeiture restoration or remission, or by pre-forfeiture agreement (*see* Transcript of September 23, 2011 Conference before Judge Swain ("9/23 Transcript") at 5-6, 34-35). The money distributed would be credited against the forfeiture award and the restitution judgment (to the extent distributed to the victims, and not other investors). However, in order to do so before the criminal appeals are concluded, the DOJ requires an agreement by Messrs. Vilar and Tanaka not to seek to recover the distributed money from the DOJ, even if they are successful on appeal.

Mr. Vilar supports returning money to investors. His criminal attorney, Vivian Schevitz, advised Judge Sullivan last year that Mr. Vilar "would cooperate with the release of some of the funds being held by the government to pay over to the 'victims'"(July 29, 2010 Memorandum of Defendant Vilar in Response to Government Attempt to Sustain Invalid Forfeiture, at 5). His attorney in the SEC action recently told Judge Swain that Mr. Vilar agrees to a distribution to victims and investors, *pre-forfeiture* (9/23 Transcript at 26:"we have absolutely no objection to invested funds being returned to the investors directly. Not becoming property of the United States, not being forfeited, not being spent at the Government's discretion. That is what we've opposed.").

Mr. Tanaka, in various letters to Judge Swain, has expressed his willingness to distribute funds to victims and investors, and also appears to favor a pre-forfeiture method, involving some "committee" that would determine how much goes to individual victims and investors (*see, e.g.*, Tanaka letter to Judge Swain, dated June 6, 2011; and 9/23 Transcript at 39).

The DOJ has advised that it will not agree to any procedure that would give either Mr. Vilar or Tanaka control over which victims and/or investors received money and how much is given to each of them; it has also raised concern about the expense and delays that would be associated with empaneling a private, *ad hoc* committee to make those decisions (9/23 Transcript at 38-39).

At the conclusion of the September 23 conference, Judge Swain outlined her understanding of a potential "settlement" of this issue:

> THE COURT: ... For this settlement proposal, if you will, as to the $17 million, you're not asking Mr. Vilar and Mr. Tanaka to withdraw any objection that they have to the forfeiture orders or withdraw anything on appeal as to the forfeiture order that's been entered as to their assets? You're not asking them to consent or agree to the propriety of a Department of Justice administered forfeiture proceeding. What you're proposing is that there be a contractual agreement under which the $17 million would be distributed to specified investors in specified amounts that part of that contractual agreement would be that that particular distribution would be final as to Messrs. Tanaka and Vilar and no matter what happens in the forfeiture later, whatever happens in the criminal case they wouldn't try to claim any of that money back and say well, those people weren't really victims and so now the Government should pay me back the $17 million; it has to be an agreement that lets that $17 million stay with those people no matter what but you don't intend for this to operate in any way that would prejudice the



Begos Horgan & Brown LLP
Attorneys At Law

Hon. Richard J. Sullivan
Hon. Laura Taylor Swain
November 18, 2011
Page 3

positions that they're taking regarding the forfeiture proceedings, the forfeiture order that's already been entered or the criminal convictions. Is that correct?

MS. LEVIN: Yes, exactly, Your Honor [then going on to explain that Messrs. Vilar and Tanaka cannot be given control over distributions to particular victims or investors].

(9/23 Transcript at 37-38).

Though that discussion took place almost two months ago, my understanding is that there has been no progress on that agreement. (On September 27, 2012, I wrote to criminal counsel for Messrs. Vilar and Tanaka, asking them to agree to make a distribution to the Mayers; they have not responded as of this date.)

In sum, everyone has expressed a willingness to distribute $17,000,000 to victims and investors, but nothing has been distributed. I firmly believe that no agreement will be reached unless and until the criminal *and* civil attorneys for Messrs. Vilar and Tanaka are in the same room with the government lawyers. I think that Judge Swain may have the same belief, because she expected the criminal lawyers for Vilar and Tanaka to appear on September 23; they did not (9/23 Transcript at 33). It is for this reason that I am asking both Judge Sullivan and Judge Swain to order a conference or hearing in *both* actions, to ensure that all parties and counsel are present.

I further believe that there is a mechanism to satisfy all parties' concerns, and it is based on the existence of Judge Sullivan's order of restitution, and the pendency of the SEC action before Judge Swain. The mechanism that I am suggesting is that some portion (presumably the majority) of the $17,000,000 be turned over to the restitution unit of the US Attorney's Office for distribution to the victims specified in the restitution order, in a manner, and in amounts, to be determined by the US Attorney's Office. The balance of the $17,000,000 would be turned over to the SEC, for distribution to investors in a manner, and in amounts, to be determined by the § Presumably, the SEC's process would include providing notice to possible investors and giving them an opportunity to prove their claims. The entire $17,000,000 would be credited against any amount of forfeiture that is ultimately upheld on appeal. The portion given to the restitution unit would be credited against the restitution judgment. Messrs. Vilar and Tanaka would waive any right to seek the return of that $17,000,000, regardless of the outcome of the appeal. The balance of the money and securities that have been restrained would await further order, presumably from Judge Sullivan (a final order of forfeiture), and/or the Second Circuit.

This mechanism should resolve the DOJ's concern that Messrs. Vilar and Tanaka not exercise control over how the available funds are distributed to victims and investors. It should resolve Mr. Vilar's concern that the money not be forfeited to the DOJ before distribution. And it should resolve Mr. Tanaka's concern that there be a procedure to locate additional investors to give them the ability to seek some compensation.


Begos Horgan & Brown LLP
Attorneys At Law

Hon. Richard J. Sullivan
Hon. Laura Taylor Swain
November 18, 2011
Page 4

While I believe that this mechanism would satisfy all partes' stated issues, I do not believe it, or any alternate procedure, can be agreed upon and implemented unless both Judge Sullivan and Judge Swain lend support and assistance.

As final note, I have chosen not to lay blame for the lack of distribution on any particular parties. I certainly have my views about where the blame resides, but I believe that the best route to a resolution at this point is to assume that all parties and their attorneys have been acting in good faith and will continue to do so.

Respectfully submitted,

Patrick W. Begos

Enclosures
cc: (by email; w/enclosures)
  Sharon Levin, Esq. (Sharon.Levin@usdoj.gov)
  Benjamin Naftalis, Esq. (benjamin.naftalis@usdoj.gov)
  Mark D. Salzberg, Esq. (salzbergm@sec.gov)
  Vivian Shevitz, Esq. (vivian@shevitzlaw.com)
  Nathan Dershowitz, Esq. (ndershowitz@lawdea.com)
  David C. Burger, Esq. (dcb@robinsonbrog.com)
  Julian W. Friedman, Esq. (jfriedman@stillmanfriedman.com)
  Eugene F. Hestres-Velez, Esq. (ehestres@bbh-law.com)
  Mr. Gary Tanaka (by regular mail)