Vivian Shevitz
Attorney at Law
46 Truesdale Lake Drive
South Salem, New York 10590
914-763-2122
vivian@shevitzlaw.com

November 17, 2013

Hon. Richard J. Sullivan
U.S. District Judge, SDNY
40 Centre Street
New York New York 10007

Re:  United States v. Vilar and Tanaka
05 cr 621 (RJS) and all related cases

Dear Judge Sullivan:

I write in reply to the government's opposition (in two submissions) to the motion for recusal.  In the second submission (DOC 629) the government calls the Court's attention to the superseding opinion by the Second Circuit in the *Ligon*. (*In re Reassignment of Cases,* Case 13-3442, DOC 98, 11/13/13).  We do not know why the government finishes its recitation with a statement that our motion for recusal is "all the more frivolous today."  DOC 629 p.2.

To the contrary the new *Ligon* Court opinion says disqualification is required under 28 USC 455(a) when the court "used" the related case rule in a *procedurally* improper way to accept a related case when the case otherwise "fits" the Court's related case rule.  Here, Judge Sullivan (we use the third person  for clarity, though addressing the letter to Judge Sullivan, as the focus of this recusal motion is Judge Sullivan's conduct) court ***mis***used the "related case" rule *twice*, to transfer civil cases to a criminal case.  This is a **substantive** violation of the "related case" provision:  criminal and civil cases *are not related.*  It leaves no room for discretion.  Judge Sullivan knew that.

In a letter we have never seen before AUSA Naftalis provided it to me on November 14, 2013 (after discussing it in his recusal opposition) – a letter unfiled on the docket and not provided to the defendants when delivered to Judge Sullivan --an Assistant US Attorney wrote Judge Sullivan on July 16, 2012, four months before we ever learned of the existence of this case (filed by one of the testifying witnesses) against JP Morgan to "get" the defendants' property, the government wrote privately to Judge Sullivan that though the case-transfer rules "do not apply when one case is civil and the other case criminal" (citing Rule 13(b)), the Court should take the case anyway because "this case's subject matter overlaps with a criminal matter before Your Honor captioned *United States v. Vilar*,... because the petition contains allegations concerning the Government's rights to property ... pursuant to the criminal convictions of Alberto Vilar and Gary Tanaka, and a forfeiture order entered in that criminal case."  ((July 16, 2012 letter, AUSA Onozawa to Judge Sullivan in 12 Civ 5240(UA) (now RJS).   (Since the government did not attach this exceptional letter, and it is not filed on the public docket, we attach it here).

Two days later, on July 18, 2012, Judge Sullivan accepted the case as related  (Docket Entry 12 cv 5240 (RJS), 12 cv 5240) – signing off on what the government wanted just as he did when AUSA Litt twice put forfeiture orders with inflated figures before him and asked him to sign them (he did).  And on July 27, 2012, Judge Sullivan entered this Order (without notice to the defendants as they were not served with a third party complaint until November 2012 and thus were not "noticed" as parties on the ECF system or otherwise  – instructing the parties that he would direct them further after appointing a receiver in the SEC action:

> ORDER: Respondents' time to respond to the Petition is extended until further Order of the Court. Upon receipt of the submissions regarding the appointment of a receiver in the SEC Action, the Court will direct the parties in this action as to how to proceed. (Signed by Judge Richard J. Sullivan on 7/27/2012) (ft) (Entered: 07/27/2012)

The government's response suggests that it "meant" to "relate" the Mayer action to the *civil case* (the SEC action) (DOC 628).   The prosecutor writes that at the time of the "acceptance" of the case, "the principal business left before the Court in the criminal case related to the forfeiture and distribution of investors' assets".  (DOC 628 p.3)   To the contrary, the principal business for the defendants was litigating the *veritas* of the criminal penalty and efforts of the SEC to *further* penalize defendants in the "civil" case merely *because* they would not agree to forfeit *all* "substitute assets".

The government then makes the vague observation that "the SEC action, of course, circumscribed the very same conduct and assets."  Apparently this means that the SEC action seeks to "distribut[e] investors' assets" and the assets it seeks to distribute happen to be the same "substitute assets".  (However, the SEC has always tied its remedy to the *completion* of "forfeiture" (Feb. 15, 2011 Salzberg letter) – a position the SEC *continued* at the October 25, 2013 conference grudgingly "permitted" by this Court *qua "civil"* SEC Action judge).  In other words, as the government states it, because of this confluence of assets and desires of the government/plaintiffs in the two cases, ("[i]n short"), "the SEC case is obviously a related civil action" to the *Mayer* case.

If what the prosecutor "meant" to do, was to "relate" the Mayer case to the SEC case, she would have served *me* as counsel to Gary Tanaka in the SEC case.  At the time of the secret "relation" of the *Mayer* "civil" case, I was representing Gary Tanaka in the SEC case and I did not even know about the "related" Mayer case until four months later and *still* am not receiving notices in that case.

The prosecutor then fashions the "remaining business" in these cases as a "civil" matter in any event.  "In addition," the government says, "although the forfeiture proceedings stem from the criminal case, they are at this point more civil than criminal in nature."

This is a shocking statement made to two criminal defendants still fighting excessive criminal penalties, including title to and management rights as to their "forfeited" property, the disposition of which is batted around with such ease in *two* "civil" cases for which they cannot get funds to litigate (neither their own restrained funds nor CJA funds) and where their rights to speak are circumscribed by civil "pre-motion" rules, needs to come to court for conferences,

page limits, and bans on saying "too much" as far as the presiding judge is concerned.

The cases cited by the prosecutor deal not with claims involving criminal defendants who are still litigating *in personam* forfeiture and other penalties, but rather third-parties against the government. *United States v. Moser,* 586 F.3d 1089, 1093-94 (8th Cir. 2009) may say that an "ancillary proceeding is more civil than criminal in nature". But the case – instructive because it states that the court had denied forfeiture as to a pension fund as it is protected from forfeiture (*id.* at 1091-92) (but the court has repeatedly refused to release the UK Pension Fund account wrongfully appropriated and held in violation of UK laws) – *holds* that a proceeding under 28 USC 853(n) by a third party challenging the government's title in a criminal case as inferior to his, may be deemed "civil" (though for purposes of awarding fees in the end it is more "criminal" than "civil").

This case is not about 28 USC 853(n), which applies on its face *not* to defendants in a criminal case but to third parties (who are *banned* from intervening in a criminal forfeiture case). This is not an "ancillary" case (and if it is, we should get CJA fees to fight it because defendants are drawn into it to protect their rights). There is no *in rem* forfeiture. This was not a civil forfeiture proceeding (the normal diet from which Sharon Levin derives her knowledge of how to proceed). There are still criminal "forfeiture" matters pending and now there will be at the least a full resentencing proceeding. Taking a civil case as related to the criminal case while it is still pending and while there is a gun to defendants' heads, is not justified by the fact the government asked for that remedy, and is not justified by the fact that two judges agreed to it.

When this Court first "took" the SEC case for its own docket, no one had asked it to do so and it was not authorized in the normal course. Judge Sullivan took the case only after Mr. Tanaka made a motion for dismissal before Judge Swain, who does *not* have a requirement that a party must submit a "pre-motion" letter in order to get a conference in order to make a motion – the "individual" rule imposed by Judge Sullivan *three days* after he transferred the SEC case to himself (3/19/12) to *dismiss* Mr. Tanaka's motion for non-compliance with his own individual rule. (DOC 221, 3/22/13, SEC case requiring new motion after pre-motion conference.)  (Days after that the Court ruled in the criminal case that, only because the government had withdrawn its request for a final order of forfeiture, the Court was denying that request, at the same time denying Mr. Vilar's motion for a stay.  DOC 518 4/6/12, criminal case).

Judge Sullivan gave no reason for taking the civil SEC case *other than* he had the criminal case and (as the government would say later in the secret July 16, 2012 application for him to take the "related" *Mayer* case) there was a "substantial overlap."  The Court (in an Order "joining" captions in both the SEC and criminal case) wrote simply that he was doing it (Order DOC 516, criminal case, 3/19/12):

> Having reviewed the above-referenced submissions, as well as the parties' proposals ...  the Court concludes that a consensual distribution of the Substitute Assets to investors is not achievable at this juncture, due to the parties' inability to agree on several necessary terms.  Accordingly, the Court in the criminal matter, No. 05 Cr. 621 (RJS), will resolve the government's pending motion for entry of a final order of forfeiture (Doc No. 486) and Defendant 's cross-motion for a

stay of forfeiture pending appeal (Doc. No. 489) in a forthcoming Order.

And then (*id.*, DOC 516 criminal case, 3/19/12):

> "Finally, in light of the substantial overlap between these two cases, the civil matter, No. 05 Civ. 5231 (LTS), will be transferred to Judge Sullivan's docket. SO ORDERED.

"Substantial overlap" between a criminal and civil case does not justify transferring a civil case to the criminal case judge. This is not a "normal course" transfer as discussed in *Ligon*. The transfers came just after Mr. Tanaka filed his motion to dismiss the SEC case on Fifth, Sixth, and Eighth Amendment grounds[1] before Judge Swain (who presided over the first-filed case) [2] and whose individual rules do *not* include any requirement of a pre-motion letter (an "individual" requirement imposed by Judge Sullivan's rules) bespeak partiality—or at least its appearance. [3]

---

[1] This Court hardly addressed our motion except in an offhand oral dismissal on December 11, 2012, p.38-39 stating in essence that the SEC 'always acts this way: "So I am going to deny the motion to dismiss the complaint, the amended complaint. I think the standard is quite clear. The rule in this circuit is to allow a party to amend its pleadings in the absence of a showing by the non-movant of prejudice or bad faith. I don't think that has been shown here. I think this is not that unusual a case, and to the extent it is often the case that the SEC brings a parallel proceeding where there is a criminal proceeding, it is often the case that that civil proceeding is stayed pending resolution of the criminal proceeding. So I think the arguments and facts that are made by the defendants here go to perhaps what are proper remedies, but I don't think it goes to whether or not the amended complaint can be filed. So I am going to deny that motion."

[2] The SEC case was the first-filed case, on June 1, 2005. The criminal case was filed June 9, 2005. (The defendants were arrested on criminal complaints).

[3] By Order dated June 14, 2012 in which Judge Sullivan used the captions of *both* the SEC and the criminal cases (DOC 230, SEC case), the Court wrote that "it" was "in receipt" of a letter from the UK Pension Fund administrator in the UK dated a year earlier "requesting assistance in fulfilling the Adviser's legal responsibilities as to the UK Pension Fund account in that the restraints and circumstances violate UK law. The Court said that the letter was "properly addressed in the first instance" to AUSA Sharon Cohen Levin "who is now handling the forfeiture aspects of this action" – and directed AUSA Levin to respond (and "send a copy of its response to the Court and to the Defendants').

In response to defendants' motion to get these assets *managed,* Judge Sullivan issued an Order dated July 17, 2012 in the criminal case (DOC 530 criminal case) telling the defendants to go seek relief "in a different forum." In a footnote the Court "note[d] that on July 17, 2012 [the same day] it issued an Order in the related case [SEC v. Amerindo] regarding the appointment of a receiver to manage assets in that case." That put defendants back to the "mercy" of the SEC and receiver, who now have said defendants cannot even get *information* about their assets, while at the same time failing to manage them at all.

We brought this up again in objecting to the SEC receiver (appointed pursuant to an order

Even now counsel has to respond (in the civil case) to the Receiver's unsupportable and unsupported three-page tally of assets and claims (DOC 329 SEC case, 11/14/13) -- with our hands tied behind our backs financially and legally, with no funds to hire even one other lawyer to assist in these relentless motions necessary to litigate the "civil" cases, and while the Receiver is allowed to hide documents supporting his "summary analysis". (He provides back-up to "interested parties" but not to the defendants). (What will the Government Entities do when the prosecutor has to *prove* "losses" at a *de novo* resentencing in the criminal case?).

The Court *purposefully* took the SEC case from Judge Swain's docket *because* he had the criminal case. (Conference of May 4, 2012, p.3: "THE COURT: We all know each other and that is really just for the record. This case is now all mine. Judge Swain has passed it over to me because I had the criminal case.") [4]   In a reported statement at the SAC Capital SEC-action-proceeding (where Judge Sullivan is the "SEC judge" but not the criminal case judge though the cases substantially overlap) Judge Sullivan referred to the criminal case as "the main event." *Dealbook*, November 6, 2013, http://dealbook.nytimes.com/2013/11/06/sacs-1-2-billion-settlement-clears-a-judicial-hurdle/?_r=0))   Judge Sullivan made sure that in the main event he would control the destiny of the civil cases standing in the way of "forfeiture."

In fact Judge Sullivan stated expressly at the May 4, 2012 (pre-motion) conference that Judge Swain had been interested in achieving a settlement (and "I with her") but that the Court "cannot make that happen unless the parties here and the government in the criminal case agree", and that if that did not happen "I will rule on the motions, and maybe the way I will rule on them will make it easier for them to get a special master ...." (May 4, 2012 Tr., SEC case, at p.15). Judge Sullivan then forced summary judgment litigation and imposed a receivership. The receiver has not completed the first task, which is to value the assets, and the judge has said nothing about this failure except to *ask* Ian Gazes now a year after his "appointment", whether it is "in the cards' to get this done. (October 25, 2013 Transcript, SEC conference, p. 27).

In July 2012 the defendants offered a payout plan that included all known investors and their best estimate of amounts due as of May 25, 2005. The government rejected it because it would not release personal assets. (DOC 569-1 filed in criminal case 2/25/13 as exhibit to motion for CJA fees as Exhibit A) . On May 29, 2013 we suggested an alternative to the expensive and expansive receiver (in the SEC case, DOC 575 not filed until 6/18/13): that the court replace the receiver with the former SEC Monitor Robert Knuts, who oversaw the closing of Amerindo US in a "straight down the middle" way, and asked to be discharged after concluding in November 2005 that Amerindo US was "clean," in that *all* investors had been paid dollar for dollar on their accounts due, and have him watch Gary Tanaka manage out the assets that have now been "de-forfeited" to the government (with no "disgorgement" amounts proven

---

as to which this Court has "sat" on a motion for reconsideration filed last March (in the "civil" case. (DOC 289 6/18/13, 05 cv 5231, and also DOC 575 in the criminal case, 05 cr 621). Judge Sullivan ignored the objections.

[4] The Court allowed third party investors to attend and speak even at the pre-motion conference concerning summary judgment and dismissal motions. Order DOC 225, 4/24/12, 05cv 5231.

and "loss amounts" vacated in the criminal case).

Judge Sullivan did not even consider this reasonable suggestion. There has been no reasoned response to any of defendants' motions or suggestions (except the denial of CJA fees in the civil cases in which Judge Sullivan wrote a lengthy legal opinion (citing cases) that these related cases are not "ancillary" *enough* to the criminal case to require payment of defense fees), motions remain undecided, and the court's finger has been on the trigger in the criminal case.

Gary Tanaka and Alberto Vilar have told the receiver and the court that the information about claims and account holders were provided in the July 2012 submission. It is incomprehensible that on October 25, 2013, the government (now represented by the SEC receiver who adopted the SEC's stance that there must be complete submission here or (unlike SAC) there is no deal) takes the position[5] that the defendants have withheld information when the receiver and the SEC refuse to reveal the backup for the useless summary charts purportedly

---

[5] At Tr. 17 of the October 25, 2013 SEC case hearing, Ian Gazes, reporting on assets he was supposed to find and protect as of over a year ago (assets subjected to SEC and DOJ scrutiny since 2005), accused that defendants were not "revealing" information to him which has caused *him* to "spend time ..."  I immediately asked Gazes to specify the "charge" and he lashed out:

 MR. GAZES:  All the money, all the accounts, where is it all?  I've asked you to tell me that.  I even asked you to give me the list of investors that your clients are sending letters to and you refuse to do that.  You referred me to the government again.

This sounds like Day One 2005, with  public statements of "tip of the iceberg" losses by Amerindo US in the mega millions; and like the bail hearing on June 3, 2005, where AUSA Litt said he could not evaluate bail for Alberto Vilar because he had not (yet) found no evidence that Alberto Vilar has offshore  funds in the 160 cartons taken from the Amerindo US search (but there must be and we will find it, just wait); and like Litt's 2/3/10 sentencing letter (DOC 418-2), where he could not say what the losses would be because he did (and could not) "know" until some later time when it would all be made clear, at the same time dismissing $50 million in Amerindo Panama assets as "not relevant."

This is obviously nothing defendants can do to convince any Government Entity that information as presented in the July 2012 submission is accurate as to legitimate claims as of the time of the shutdown and that he should check Sharon Levin's information because she reported in February 2012 based on what the government collected in the then-seven-years-pending criminal case (DOC 514).  (To the extent she complained about a lack of records which makes reliance on defendants themselves necessary, the records complied with Panama law and account statements are accurate.  To the extent the Government Entities *refuse* to rely on defendants and have convinced this Court that they should be disregarded entirely, Judge Sullivan should remember – as Judge Swain would have remembered as she was the judge on the SEC case at the time -- that the SEC Monitor found no flaw with defendants' management of the 98% of their business that was Amerindo US.  This track record, rather than past hysterical fears of "more" that they "don't know" (yet) now reincarnated in Ian Gazes, should drive the remedy here.  The Court will not hear this; it would upset the criminal case. Disqualification is required.

setting forth "unexaminable" investor claims (and when Neal Jacobson needs another six weeks to support "disgorgement" and "penalties" because he has not worked through the information in Gazes' possession yet).   The government will never be satisfied that it made a mistake and that it will never know more because there is no more to know.

There is more than an "appearance" of partiality here.  But even if there were no more than an "appearance", 28 USC 455(a), as reaffirmed in the superseding *Ligon* opinion of November 13, 2013, requires this Court to disqualify itself and let chips fall where they may, not where the prosecutor and the SEC place them.

The manner in which this case has been handled has created a financial, personal, and judicial crisis as far as the defendants are concerned.  Forced to litigate "related" civil cases without funds for almost ten years now to the drummer of the criminal case judge whose agenda was to get the investors paid out of "substitute assets" never valued and in amounts not set even yet, the defendants have been forced to use lawyers who did not affirmatively challenge these actions because they had to worry about their clients' being sent to jail and penalized yet further. Excepting for the imposed financial hardship, Mr. Tanaka would have preferred to hire a top criminal defense lawyer to assist him when the Court of Appeals remanded for *de novo* resentencing and the SEC continued to step on his rights and try to force him to his knees. Instead, without funds, he was obligated to take Ms. Jane Fisher-Byrialsen , a very delightful young lawyer, the "duty" CJA counsel for the day, who is not experienced enough to handle a high-stakes case in which "jail" is bandied about so easily but where the "main event" continues to be the SEC and "related" actions where the presiding judge remained unaware that there is a stay.  Now Ms. Fisher-Byrialsen (as could be expected), uncomfortable with the challenge, has withdrawn, and Mr. Tanaka is faced with the "choice" of taking the next "duty" lawyer without knowledge of the nine-year case still in play,[6] or to represent himself.  He has written the Court to say he wants to proceed in the criminal case *pro se* and will execute any waivers required, and has asked me to file this letter for him with this submission.  It is attached.

Very truly yours,

/s/ Vivian Shevitz

---

[6] In May 2005, Gary Tanaka was arrested in New York on a criminal complaint signed by AUSA Marc Litt charging that he stole money from his Amerindo clients then bought horses for himself.  He has not been allowed to go home since that time.  He was not charged by a grand jury with such "crime" and did not commit it.  In a proceeding held without notice to Gary Tanaka or Alberto Vilar in the SEC "civil action" Mr. Tanaka was stripped of management rights and kicked out of not only his US advisory firm but also Amerindo Panama, of which the SEC was familiar as it had expressed regulatory "interests" based on the "conduct and effects" test. (Amerindo passed)  Detention hearing transcripts show that Litt did not know about their SEC file.  It is no wonder Gary Tanaka wants an aggressive lawyer to challenge a prosecutor who might have shuttered SAC Capital on the theory that it is dirty (so admitted), arrested Cohen on the charge that he must have purchased art with stolen client money, and forced litigation by tearing up SAC's Greenwich, Connecticut and London offices to try to uncover the extent of the crimes (thatt he didn't know "yet.")  Shouldn't someone question such disparate punishment?



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

86 Chambers Street
New York, New York 10007

July 16, 2012

**BY HAND DELIVERY**
Honorable Richard J. Sullivan
United States District Judge
United States Courthouse
500 Pearl Street, Room 640
New York, NY 10007

Re:   *In the matter of the Application of Lisa Mayer and Debra Mayer,*
      **12 Civ. 5240 (UA)**

Dear Judge Sullivan:

This Office represents respondent United States of America (the "Government") in the above-referenced petition, which was removed from the Supreme Court of the State of New York, New York County (Index No. 652201/2012), on July 5, 2012.  The petition seeks delivery of property by petitioners Lisa Mayer and Debra Mayer ("Petitioners") to respondents J.P. Morgan Securities LLC, the Government, Amerindo Technology Growth Fund II Inc. and Amerindo Management, Inc., to satisfy judgments obtained by Petitioners against other individuals and entities in a separate state court action.  The docket sheet reports that this case has been "referred" to Your Honor's chambers as "possibly related" to another matter.  Although the local rules governing assignment of related matters do not apply when one case is civil and the other case criminal, *see* Rule 13(b) of the S.D.N.Y. Rules for the Division of Business Among District Judges, we believe this case's subject matter overlaps with a criminal matter before your Honor captioned *United States v. Vilar*, 05 Cr. 621 (RJS), because the petition contains allegations concerning the Government's rights to property at issue in the petition, pursuant to the criminal convictions of Alberto Vilar and Gary Tanaka, and a forfeiture order entered in that criminal case.  *See, e.g.,* Ex. A, Petition for Payment to Judgment Creditors, or Delivery of Property Not in Possession of Judgment Debtors, dated June 25, 2012, at ¶¶ 3, 35.

In case it may assist the Court, pursuant to Section 2.D of your Honor's Individual Practices, enclosed is a courtesy copy of the Notice of Removal and the accompanying Exhibit A, which was docketed on ECF on July 11, 2012.

Respectfully submitted,

PREET BHARARA
United States Attorney

By:

TOMOKO ONOZAWA
Assistant United States Attorney
Telephone: (212) 637-2721
Facsimile:  (212) 637-2686

Honorable Richard J. Sullivan                                      Page 2 of 2
July 16, 2012


Enclosure

cc:   By electronic mail, without enclosures
      Patrick Begos, Esq.
      Counsel for Petitioners

      Andrea L. Weiss, Esq.
      Counsel for Respondent J.P. Morgan Securities LLC

      Sharon Cohen Levin, Assistant United States Attorney
      Co-counsel for Respondent United States of America

      By Federal Express, without enclosures
      David Mainzer, Esq.[1]
      Spolin, Cohen, Mainzer & Bosserman LLP
      1601 Wilshire Boulevard, Suite 2410
      Los Angeles, CA 90025
      On behalf of Amerindo Technology Growth Fund II Inc. and Amerindo Management,
         Inc.

      By Express Mail, without enclosures
      Gary Tanaka
      Fed. Reg. No. 57819-054
      FCI Terminal Island
      P.O. Box 3007
      San Pedro, CA 90731
      On behalf of Amerindo Technology Growth Fund II Inc. and Amerindo Management,
         Inc.

---

[1] The undersigned attorney served the federal Notice of Removal on the parties listed in the attached Affirmation of Service (Exhibit 1) that had been filed in state court by Patrick Begos, Esq., counsel for the petitioners. With respect to respondents Amerindo Technology Growth Fund II, Inc. and Amerindo Management, Inc. ("Amerindo respondents"), the Affirmation of Service listed David Mainzer, Esq. of Spolin, Cohen, Mainzer & Bosserman LLP, as counsel of record for the Amerindo respondents, and Gary Tanaka, as Director of Amerindo Technology Growth Fund II, Inc. and Executive Vice President of Amerindo Management Inc. On July 6, 2012, Mr. Mainzer contacted the undersigned attorney to acknowledge receipt of the federal Notice of Removal, but asserted that he does not represent the Amerindo respondents. When I relayed Mr. Mainzer's message to petitioners' counsel, Mr. Begos replied that Mr. Mainzer is an appropriate representative for the Amerindo respondents because Mr. Mainzer was purportedly designated as the Amerindo respondents' agent for brokerage accounts at J.P. Morgan Securities LLC, which are at issue in this case. I have not heard from Mr. Tanaka, who is currently incarcerated at the Federal Correctional Institution, Terminal Island, in San Pedro, California. Until the identity and contact information of a designated representative for the Amerindo respondents have been confirmed, the Government will continue to serve the Amerindo respondents with Court filings and correspondence by transmitting service copies to Mr. Mainzer and Mr. Tanaka.

*Gary A. Tanaka*
46 Truesdale Lake Drive
South Salem, New York 10590
16 November 2013

Judge Richard J. Sullivan
United States District Judge
Southern District of New York
40 Centre Street
New York, NY 10007

Re:  United States v Vilar and Tanaka 05 cr 621
Self-Representation

Dear Judge Sullivan:

I write to say that I wish to proceed *pro se* for the remainder of this criminal case.  I do so because it is clear that the provision of a CJA lawyer, appointed solely on a lottery basis—a person selected 'randomly' from the duty roster on any particular day—does not render me effective representation.

This is a very complicated case.  Jane Fisher-Byrialsen is a personable individual but is a relatively inexperienced lawyer who cannot be expected to appreciate or comprehend the interrelationships and intricacies of the "related" "civil" cases in which she found herself immersed on her appointment.

The Court has denied me CJA counsel in the civil cases and has held my funds since 2005.  This has had the effect of compromising my defense by precluding me from hiring a skilled lawyer with expertise commensurate with the <u>real</u> demands of this case.  I could have afforded such counsel prior to the government's wanton destruction of my company and its assets.

I mean no disrespect to anyone appointed to represent me, but I choose to deal with this criminal case without a "regular" CJA lawyer.  I will execute whatever waiver is necessary to represent myself *pro se*.

Sincerely,

Cc:  Government lawyers and my lawyers. (by email)