E1v1tanc

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

          v.                          05-CR-621 (RJS)

GARY ALAN TANAKA,

               Defendant.             Conference

------------------------------x

                                      New York, N.Y.
                                      January 31, 2014
                                      3:10 p.m.

Before:

               HON. RICHARD J. SULLIVAN,

                                      District Judge


                    APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
BY:  BENJAMIN NAFTALIS, ESQ.
     Assistant United States Attorney

FISHER & BYRIALSEN & KREIZER, PLLC
     Attorneys for Defendant
BY:  JANE H. FISHER-BYRIALSEN, ESQ.

FRED COHN, ESQ., CJA Attorney

ALSO PRESENT:  VIVIEN SHEVITZ, ESQ.
```

E1v1tanc

```
 1              (In open court; case called )
 2              THE COURT:  For the government?
 3              MR. NAFTALIS:  Good afternoon, your Honor.  Benjamin
 4   Naftalis for the government.
 5              THE COURT:  Okay.  Mr. Naftalis, good afternoon.
 6              And for Mr. Tanaka?
 7              MS. FISHER-BYRIALSEN:  Good afternoon, your Honor.
 8   Jane Fisher-Byrialsen for Mr. Tanaka.
 9              THE COURT:  And Ms. Shevitz, you're --
10              MS. SHEVITZ:  I'm Mr. Tanaka's appellate lawyer as of
11   now.
12              THE COURT:  His appellate lawyer as of now?
13              MS. SHEVITZ:  Well, yes.  Yesterday Nat Dershowitz was
14   supposed to be relieved in the Court of Appeals because
15   Mr. Tanaka can't pay them anymore for cert, so I'm probably
16   substituting him, but I'm also his lawyer in the SEC case
17   and --
18              THE COURT:  Oh, okay.
19              MS. SHEVITZ:  -- he would like to stick with me.
20              THE COURT:  You can sit there, but obviously you're
21   not his counsel for purposes of this conference.
22              We're here in connection with whether or not
23   Ms. Fisher-Byrialsen is going to continue as counsel, whether
24   or not Mr. Tanaka will go pro se, or whether we'll have new
25   counsel appointed or retained.  So I just want to go over with
```

E1v1tanc

1   the parties, remind everybody I think where we've been.
2           So on November 15th Ms. Fisher-Byrialsen made a
3   motion to withdraw as counsel. The following day Mr. Tanaka
4   submitted a letter to the court requesting that he be allowed
5   to proceed pro se and explaining his reasons for that. And
6   then on December 4th Ms. Fisher-Byrialsen sent a letter
7   indicating that Mr. Tanaka wished to withdraw his prior request
8   to proceed pro se but he nevertheless wished to have alternate
9   CJA counsel appointed to represent him. And then I guess most
10  recently I adjourned this conference I think at the request of
11  counsel and because not much was really happening, so I put
12  this over from the end of December until now.
13          So that I think is the state of the letters and the
14  requests. Have I missed anything? Is there anything else that
15  I've overlooked?
16          MS. FISHER-BYRIALSEN: No.
17          THE COURT: No. Okay. So Mr. Tanaka, let me ask you,
18  do you want to proceed pro se? You don't want to do that,
19  right?
20          THE DEFENDANT: No, I don't want to do that.
21          THE COURT: No, you don't want to do that, so that
22  request is withdrawn. So that's fine.
23          The next issue then is, should Ms. Fisher-Byrialsen
24  continue to represent you or should you have a new lawyer to
25  represent you?

Case 1:05-cr-00621-RJS   Document 648   Filed 02/27/14   Page 4 of 11     4
E1v1tanc

1         So let me switch over to Ms. Fisher-Byrialsen.  You
2   had made a motion to be relieved.  Are you still making that
3   motion?  That motion is still --
4         MS. FISHER-BYRIALSEN:  Your Honor, I believe that
5   Mr. Tanaka would like to have alternate counsel.
6         THE COURT:  Well, that may be, and that's relevant to
7   the inquiry, but there might be a lot of defendants who have
8   CJA counsel who would like a different lawyer, but that's not
9   the inquiry.  The inquiry is whether or not the communications
10  between appointed counsel and client have so broken down as to
11  basically render the possibility of representation impossible
12  or near to it.  But obviously if you are moving to withdraw
13  still, then I think we have to deal with that first.  So are
14  you making that motion?
15        MS. FISHER-BYRIALSEN:  Yes, your Honor.
16        THE COURT:  You still are.
17        MS. FISHER-BYRIALSEN:  Yes.
18        THE COURT:  All right.  And have you discussed with
19  Mr. Tanaka your reasons for making that motion?
20        MS. FISHER-BYRIALSEN:  Yes.
21        THE COURT:  All right.  And your view is that you
22  can't continue to represent Mr. Tanaka in this case.
23        MS. FISHER-BYRIALSEN:  Yes.
24        THE COURT:  All right.  And --
25        MS. FISHER-BYRIALSEN:  Your Honor, I think that the --

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

E1v1tanc

1    yes, but there's more to it than that, but I don't think that I
2    can reveal the reasons why because I believe that they're
3    protected by attorney/client privilege.  It's not that I don't
4    wish to represent Mr. Tanaka, but I think that our relationship
5    has reached such a stage where our communication is not
6    productive and not functioning the way it should.
7             THE COURT:  All right.  Not functioning the way it
8    should.  I'm not sure if there's only one way in which it
9    should, but can you be more specific as to how it's not
10   functioning the way it should?
11            MS. FISHER-BYRIALSEN:  Not really.  Not -- I think
12   that I -- that this is an extremely awkward position because I
13   think that --
14            THE COURT:  Well, but is it going to change?  I'm
15   going to appoint a new CJA lawyer and they're going to be in
16   the exact same position you are, right?  Because it's really
17   about whether or not Ms. Shevitz is really representing
18   Mr. Tanaka in this case, even though that's not technically the
19   case, right?  Is Mr. --
20            MR. COHN:  I'm standing here so I can hear, your
21   Honor, because I think it's germane to whatever it is I do.
22            THE COURT:  I just want to make it clear for the
23   record that Fred Cohn is here.  Mr. Cohn is the CJA duty
24   lawyer, and so if there were to be a replacement of counsel, it
25   would be Mr. Cohn, because it's his turn.

1            All right.  So that's my question.  Is there anything

2     about representing Mr. Tanaka that's going to change with new

3     counsel?

4            MS. FISHER-BYRIALSEN:  Well, I can't say that, your

5     Honor, because situations arise where, in a hypothetical sense,

6     the client may wish something to happen and the lawyer may

7     disagree, and I don't know what's going to happen in the future

8     in regards to that, but that has happened in this

9     attorney/client relationship which has caused massive rifts, I

10    would say, and I don't know if that's going to happen in the

11    future.  I can't read the future.  But it could very well

12    happen or it might not.  I don't -- I mean, I think that's a

13    virtually impossible question to answer.  If -- I mean, I think

14    that I have done everything within the canons of ethics to

15    represent Mr. Tanaka and do so the way that I think is best

16    possible, but we have had major disagreements and, I mean, I'm

17    sort of -- it's very hard to answer that question because I

18    can't divulge any of the conversations that we have had, so --

19           THE COURT:  Well, I mean, at this point I'm not asking

20    you to, but I don't know that you can't at some point if

21    pressed.

22           But in any event, Mr. Tanaka, let me ask you, you've

23    expressed some dissatisfaction with Ms. Fisher-Byrialsen, and

24    that's fine.  I mean, nobody has to think their lawyer is

25    perfect.  The issue, though, is:  Has the level of

E1v1tanc

communication between you and Ms. Byrialsen degenerated to such a point that you really can't go forward with her as your lawyer?

THE DEFENDANT:  Well, I think what you said in the beginning, your Honor, is symptomatic in the sense that counsel has moved to be relieved, and this happened without my prior consultation and without my knowing it, so that would give you an example of the scope of the breach.

THE COURT:  All right.  But you agree with the ultimate conclusion, though, that you don't think that you can communicate with Ms. Byrialsen at this point, given the water under the bridge, given the state of your communications and relationship.

THE DEFENDANT:  I would think so.

THE COURT:  All right.  I think I've heard enough to grant the request, so I'm going to appoint Mr. Cohn to represent you.  I mean, some of the issues that arose before as a source of conflict between you and Ms. Byrialsen may arise again with Mr. Cohn.  I don't know enough about it to say one way or the other, but I think we'll give Mr. Cohn an opportunity.  He's a lawyer on the CJA panel so he's an experienced, capable lawyer who's been recognized as such by the judges of this court.  He's been on the panel for many years.  How many years?

MR. COHN:  Longer than she's alive, I think.

1     THE COURT:  Okay.  All right.  So Mr. Cohn is coming
2 into this case pretty cold.  There's a lot of history to this
3 case, obviously, but I think he's a pretty quick study, so
4 we'll give him a chance to get to know you.  You folks should
5 talk.  And Ms. Fisher-Byrialsen, you should submit to Mr. Cohn
6 all of your materials, all of your file on this case, and then
7 Mr. Cohn, maybe I'll have you get back in touch with me in a
8 few weeks to let me know just whether you think you need more
9 time or what you propose.
10     MR. COHN:  Fine.  I can certainly do that, your Honor.
11 Can I --
12     THE COURT:  Yeah, hop over, yes.  Walk around would
13 probably be better.
14     MR. COHN:  I can do that.
15     The court should know that I have -- I mean, getting
16 up to date I can do in a couple of weeks.  I have a trial
17 starting on March 4th, which is a murder trial, and I have a
18 big set of civil papers due by March 5th.  So I won't be able
19 to do the actual resentencing work until sometime after that.
20     THE COURT:  All right.  Well, the mandate hasn't yet
21 been issued, I don't think.  We haven't gotten it yet, right?
22 So until that happens, you know, nothing is happening at this
23 point, and I've got to get the mandate back.
24     MR. COHN:  That's fine.  I just wanted to tell you my
25 scheduling problems because being a lawyer on the panel the

1    number of years that I have been, I'm told -- and I don't work
2    24 hours a day anymore, so --
3             THE COURT:  All right.  Well, in any event, you'll
4    need some time to get up to speed, so I think just a status
5    letter from you in three weeks, is that enough?
6             MR. COHN:  That's fine, your Honor.
7             THE COURT:  I expect we'll probably get the mandate
8    between now and then, but who knows.  I don't know.
9             MR. COHN:  Very good.
10            THE COURT:  And then if something changes, then I'll
11   let you know, I'll bring you back in, but in the meantime you
12   will certainly have time to talk to Mr. Tanaka.
13            MR. COHN:  He's at MDC?  Old or new building?
14            MS. FISHER-BYRIALSEN:  New, new.
15            MR. COHN:  All right.  Fine.
16            THE COURT:  All right.  So let me know if you need
17   anything else from me.  Obviously talk to the government if you
18   need anything from them.  Ms. Shevitz is representing
19   Mr. Tanaka in other capacities and so you can talk to her as
20   well.  There's a lot to learn, but I have no doubt that you'll
21   get up to speed.  Okay.
22            MR. COHN:  Sounds like a lot of talking to me.
23            THE COURT:  Ah, maybe.
24            All right.  So that's, Mr. Tanaka, what we're going to
25   do.  Mr. Cohn is now your lawyer.  And then we'll touch base in

E1v1tanc

1    a few weeks.  But if you need anything between now and then,

2    talk to Mr. Cohn and we can bring you back in sooner, okay?

3            Okay.  So the Marshals are okay with Mr. Tanaka

4    getting the card from Mr. Cohn, right?  Yeah.  All right.

5            That's really the sole purpose of today, as far as I'm

6    concerned.  Is there anything else we need to discuss?

7    Mr. Naftalis?

8            MR. NAFTALIS:  No, your Honor.  Just should we wait on

9    the court if the mandate does issue in that window --

10           THE COURT:  Once the mandate issues, then I'll give

11   instructions to the parties.

12           MR. NAFTALIS:  Perfect.  Terrific.

13           MS. SHEVITZ:  I don't know if it's -- I will represent

14   Alberto Vilar for this too, so I don't know if it's too early

15   to talk about this, but I was going to suggest possibly that a

16   updated presentence report, since it's been --

17           THE COURT:  Maybe.  But you know what, let's not do

18   anything without Mr. Vilar.  I think once the mandate issues,

19   depending on when that comes relative to when I'm getting

20   Mr. Cohn's status letter, I may schedule a conference to just

21   talk about scheduling.

22           MS. SHEVITZ:  Okay.

23           THE COURT:  Or I'll issue an order that does the same.

24   I'll issue an order that does the same.  Okay?  So --

25           MR. COHN:  Thank you, your Honor.  Have a nice

E1v1tanc

1 weekend.
2             THE COURT:  You too.  Thanks.  Enjoy the Super Bowl.
3             All right.  Let me thank the court reporter for her
4 time and let me thank the Marshals as well for theirs.
5             Okay.  Have a good day.  And Ms. Byrialsen, thank you.
6 Just make sure you hand off all the stuff to Mr. Cohn.  Good.
7                                 o0o
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25