UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
　　　　　　　　　　　　　　　　　　　　　　　:
UNITED STATES OF AMERICA　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　-v.-　　　　　　　　　　　　　　:　　　05 Cr. 621 (RJS)
　　　　　　　　　　　　　　　　　　　　　　　:
ALBERTO WILLIAM VILAR and　　　　　　　　　　:
GARY ALAN TANAKA,　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　Defendants.　　　　　　　　　　x
------------------------------------------------------------


**GOVERNMENT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
<u>PRELIMINARY ORDER OF FORFEITURE AS TO SUBSTITUTE ASSETS</u>**


　　　　　　　　　　　　　　　　　　　　　　　GEOFFREY S. BERMAN
　　　　　　　　　　　　　　　　　　　　　　　United States Attorney for the
　　　　　　　　　　　　　　　　　　　　　　　Southern District of New York


Joshua Naftalis
Alexander Wilson
Assistant United States Attorneys
　　　- Of Counsel -

The Government respectfully submits this reply memorandum in further support of its motion (the "Motion") for a preliminary order of forfeiture as to substitute assets (the "Substitute Assets Order"), and in response to the opposition filed by defendants Alberto Vilar and Gary Tanaka (the "Defendants"); Paul Marcus, The Deane J. Marcus Trust, The Steven E. Marcus Trust, The Cheryl Marcus-Podhaizer Trust, and The Eve S. Marcus Children's Trust (the "Marcus Claimants");  Lisa and Debra Mayer (the "Mayer Claimants"); and Mr. Alfred Heitkönig (together with the Marcus Claimants and the Mayer Claimants, the "Claimants").[1]

Defendants argue that (1) the Supreme Court's decision in *Honeycutt v. United States* invalidates the existing forfeiture orders, and thus bars the forfeiture of substitute assets here, at least without a further fact hearing; and (2) the Motion is premature until the Defendants' motion to vacate their convictions and sentences under 28 U.S.C. § 2255 (the "2255 Motion") is resolved.[2]  Both the existing money judgment imposed by the Court and the proposed Substitute Assets Order are entirely consistent with *Honeycutt*, however, because the Court has expressly found that both Defendants personally obtained proceeds in the amount of their money judgments, and did not rely on joint and several liability to hold them responsible for proceeds received only by others.  Furthermore, there is no legal basis for deferring consideration of the Motion until the resolution of the 2255 Motion.

Claimants generally oppose the Motion on the grounds that it prejudices their

---

[1] The letter submitted by Mr. Heitkönig does not expressly oppose the Substitute Assets Motion, but arguably does so implicitly by requesting that any excess funds from the Receivership be returned to investors rather than the SEC.

[2] Defendant Vilar raised these arguments in filed a letter memorandum with the Court on September 28, 2018 (the "Vilar Letter") (D.E. 788).  Defendant Tanaka joined in Mr. Vilar's opposition, and made a separate *pro se* submission raising a wide variety of supposed infirmities in the underlying criminal and SEC proceedings, as well as failings by his trial counsel, which have no bearing on the pending Motion and which the Government does not address. (D.E. 791).

rights to the substitute assets that they are asserting through the Receivership process.  Whatever the merits of their claims to the substitute assets, however, both the Supreme Court and the Second Circuit have made clear that third parties have no standing to raise such claims to challenge entry of a preliminary order of forfeiture, which divests only the Defendants of *their* interests in the substitute assets.  The Claimants will have a full opportunity to raise their arguments in the context of the ancillary proceeding following entry of the proposed Substitute Assets Order.  Moreover, to the extent the Claimants suggest that the Court should defer consideration of the Motion because it will interfere with the Receivership process, both the Securities and Exchange Commission (the "SEC"), and Ian J. Gazes, the Court-appointed receiver in the related civil action (the "Receiver"), have expressly stated that granting the Motion will not interfere with the Receivership, and that they have no objection to the Motion. *See* Letters filed October 3, 2018 and October 4, 2018, respectively, in *SEC v. Amerindo Investment Advisors, Inc. et al.,* 05 CV 5231. (D.E. 709, 710).

        Accordingly, the Motion should be granted.

## ARGUMENT

### I. *Honeycutt* Does Not Invalidate the Prior Forfeiture Orders.

        Defendants argue that the Supreme Court's decision in *Honeycutt* requires that the Court vacate the prior forfeiture orders imposing a $20,578,855.28 money judgment as to each defendant, jointly and severally.  In *Honeycutt,* the Supreme Court held that the Government could not hold a defendant responsible based on joint and several conspiracy liability for proceeds of the offense obtained by other co-conspirators, but could only obtain a money judgment for the amount of proceeds the defendant personally obtained or acquired.  137 S.Ct. at 1632-33, 1635.  *Honeycutt* is irrelevant here, however, because joint and several conspiracy

liability was not the basis for the forfeiture order, which covered only proceeds obtained personally by the Defendants.

At the Defendants' resentencing on April 24, 2014, the Court ordered them to forfeit $20,578,855.28 in United States currency, based on the funds fraudulently obtained from the investor victims by the Amerindo Corporations.  In doing so, the Court expressly found that ""the defendants indirectly obtained everything gained by Amerindo because they entirely dominated and controlled the companies and used the companies' assets for their own personal expenses."  (April 24, 2014 Sentencing Tr. (D.E. 694) at 30).  The Court correctly relied on the Second Circuit's decision in *United States v. Peters*, which held that a defendant's forfeiture judgment must include funds paid to companies under the defendant's control. 732 F.3d 93, 104 (2d Cir. 2013); *see also Rajaratnam v. United States*, 2018 WL 2460337, at *3 (2d Cir. June 1, 2018) (summary order) (post-*Honeycutt*, affirming forfeiture of proceeds received by an investment firm rather than the defendant where the defendant "was the founder and managing general partner of" the firm, and "as such, exercised 'control' over both that firm and the proceeds it acquired").  The Court's ruling on forfeiture did not rely in any way on joint and several co-conspirator forfeiture liability, and the Government did not rely on such a theory of liability in support of its request for forfeiture.  *See* Government's Supplemental Sentencing Letter as to Forfeiture dated April 1, 2014 (D.E. 667).

Defendants try to avoid the relevant factual ruling from the Court at the resentencing by suggesting that the Court did not determine what the Defendants "individually obtained" from the scheme.  Vilar Letter at 7.  But that is precisely what the Court has already done, finding that Vilar and Tanaka each individually obtained the funds through their joint control of the Amerindo Corporations.  No further fact-finding is required.  *Honeycutt* requires

only that a defendant personally obtained the proceeds of the offense that he is held liable for, rather than being held liable for proceeds obtained only by others; it does not suggest that only a single defendant may have obtained proceeds, either at the same time or subsequently.  Indeed, the flaw in Defendants' argument is particularly apparent in the context of the instant motion, where they *both* seek to retain their interests in the same corporate assets based on their joint ownership of the corporate entities.  The joint control of the Amerindo Corporations which gives each defendant an interest in funds held by those entities similarly makes each defendant liable for the crime proceeds received by them.  Accordingly, *Honeycutt* is irrelevant to this matter, and the existing forfeiture orders are entirely valid.

**II.       The Pending 2255 Motion Provides No Basis to Deny the Motion.**

Defendants further argue that the Motion should be denied as premature in light of their pending 2255 Motion.  Defendants offer no authority for denying a motion seeking forfeiture of substitute assets on such grounds, and there is no legal basis for doing so.  *See United States v. Saccoccia*, 62 F. Supp. 2d 539, 541–42 (D.R.I. 1999).  Moreover, it would be inconsistent with the procedure for orders of forfeiture established by Federal Rule of Criminal Procedure 32.2.  Rule 32.2(d) provides for a stay of an order of forfeiture where appropriate on direct appeal, but not for the Court to defer entry of an order of forfeiture as premature until the appeal of the conviction is resolved.  Moreover, even that stay provision of Rule 32.2(d) applies only to an appeal, not to a motion pursuant to 28 U.S.C. § 2255.  Given the comprehensive procedural rules for forfeiture orders established in Rule 32.2, there is no basis for granting Defendants request for relief far beyond what the Rule provides.[3]

---

[3] In addition, Defendants' claim that they will be "incurably prejudiced" by entry of the order prior to resolution of the 2255 Motion is incorrect.  The 2255 Motion is entirely meritless, for the reasons set forth in the Government's opposition. But if the 2255 Motion were actually

5

### III. <u>Claimants Have No Standing, or Need, to Oppose the Substitute Assets Order.</u>

The proposed Substitute Assets Order is a preliminary order of forfeiture that seeks to forfeit only the Defendants' right, title and interest in the substitute assets. Accordingly, only the Defendants have standing to oppose the entry of a preliminary order of forfeiture. *DSI Assoc. LLC v. United States,* 496 F.3d 175, 184-85 (2d Cir. 2007) (third party cannot intervene by challenging underlying validity of forfeiture order rather than filing a petition in an ancillary proceeding); *United States v. Andrews*, 530 F.3d 1232, 1236-37 (10th Cir. 2008) (third party victim has no right to challenge a preliminary order's finding of forfeitability but can only seek to amend the order in an ancillary proceeding); *United States v. Porchay,* 533 F.3d 704, 707, 710 (8th Cir. 2008) (third party co-defendant has no right to challenge forfeiture determination against another defendant). Third parties with a claim to the substitute assets, such as the Claimants, may only pursue their claims through the ancillary proceeding after entry of the preliminary order. *Libretti v. United States*, 516 U.S. 29, 44 (1995) ("Congress has determined that § 853(n) . . . provides the means by which third-party rights must be vindicated."); *See also* Title 21, United States Code, Section 853(k) (no party claiming an interest in property subject to forfeiture may intervene except as provided by 21 U.S.C. § 853(n)).[4]

---

meritorious and the Defendants' convictions overturned, they would be able to seek the return of all funds forfeited by the Government. Defendants have identified no unique value to the substitute assets which cannot be recompensed by a monetary payment. Nor, given the need for an ancillary proceeding and the likelihood of appeal of the substitute assets order, is it plausible that a final forfeiture of the substitute assets will be occur before a ruling on the 2255 Motion.

[4] For this reason, the Government was not required to give notice to third parties prior to filing the Motion. Notice to third parties is provided, pursuant to 21 U.S.C. § 853(n) and Rule 32.2(b)(6), only after entry of the preliminary order.

Moreover, Claimants' opposition to the Motion is entirely unnecessary, because they can assert any interest they have in the substitute assets in the ancillary proceeding. Once the Substitute Assets Order is entered, the Claimants may file petitions with the Court pursuant to 21 U.S.C. § 853(n) and will have a full opportunity to demonstrate that they possess a superior interest in the substitute assets. Claimants' concern to preserve their rights to the substitute assets is understandable, but their opposition is premature and provides no legal basis to deny the Motion. Forfeiture of the Defendants' interests is the necessary first step before third party claims can be considered, and so the Court should grant the Motion and enter the Substitute Assets Order.[5]

As for Claimants' argument that entry of the Substitute Assets Order will interfere with the Receivership, the SEC and the Receiver have made clear that granting the Motion will not interfere with it, and that they have no objection to the Motion. Moreover, to the extent any coordination is necessary between the conclusion of the Receivership and the adjudication of third party claims to the substitute assets, that is a matter that can be addressed in the ancillary proceeding. These matters will be simplified, rather than complicated, by the forfeiture of Defendants' interest in the substitute assets through entry of the Substitute Assets Order, which will remove them as potential claimants to the funds.

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the

---

[5] The Marcus Claimants argue that the Government has not demonstrated that the Defendant have any interest in the substitute assets, and so there is no basis or need for the Substitute Assets Order. Marcus Claimants' Opposition, *SEC v. Amerindo Investment Advisors, Inc.*, 05-CV-5231 (RJS) (D.E. 708) at 10-11. The Defendants plainly have interests in the substitute assets that must be addressed, however, as confirmed by their opposition to the Motion in an effort to preserve them, and entry of the Substitute Assets Order is required to terminate those interests.

Court grant the Motion and enter the Substitute Assets Order requested by the Government.

Dated: New York, New York
October 12, 2018

                        GEOFFREY S. BERMAN
                        United States Attorney for the
                        Southern District of New York

By:    */s/*
       JOSHUA A. NAFTALIS
       ALEXANDER WILSON
       Assistant United States Attorney
       (212) 637-2310/2453